Michael J. Walleri
Law Offices of Michael J. Walleri
330 Wendell Street, Suite E
Fairbanks, Alaska  99701
(907) 452-4716
(907) 452-4725 (Facsimile)
Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| REGINALD FLEMING, CHRISTOPHER DELEON,  CHRIS HAMPTON, WILLIAM D. MCKILLICAN, and  TODD SCHLUMBOHM<br><br>                             Plaintiffs,<br><br>  vs.<br><br>FANNIE CARROLL, and the CITY OF FORT YUKON, ALASKA<br><br>                             Defendants. | **OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON COUNTS II-IV**<br><br><br><br>Case No. F04-0034 CIV (RRB) |

      This is an action brought by five (5) former members of the Fort Yukon Police Department against the City of Fort Yukon and the City Manager. Two of the police officers (Flemming and Deleon) allege that they were wrongfully terminated because they were investigating illegal conduct by city officials and their family members. (Count II)  The three remaining officers allege that they were

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

*Fleming, et. al. v City of Fort Yukon*      Page 1 of 15
Op: Def. Mot. S. J. (Counts II-IV)

constructively terminated for the same reasons. (Count III). All the officers allege that their due process rights were violated. (Count IV).[1] The City argues that a settlement agreement was reached and executed by the parties with regard to the termination claims. The officers deny that any agreement was finalized.

## A.   BACKGROUND

On September 1, 2005, the undersigned sent a letter to Matt Singer, counsel for the City, proposing dismissal of counts II, III and IV on certain terms.[2] The letter was clearly labeled "Partial Settlement Discussions".[3] Essentially, the officers suggested that they would be willing to dismiss all the plaintiff's wrongful termination claims, if the City would reclassify Flemming and DeLeon from "terminated for cause" to "resigned" and limit reporting data to prospective employers.[4] After receiving the letter, the undersigned called Singer to discuss the suggestion.[5] In that phone call, Singer and the undersigned agreed that settlement of the termination claims would be desirable, but difficult because of personalities in the case. We also agreed that we had a rare opportunity to reach a partial settlement

---

[1] Count I is a wage and hour claim brought by all officers, and is not implicated in this motion.
[2] See Def. Exhibit A
[3] Id.
[4] Essentially, the three officers who resigned would receive limited benefit in exchange for clearing the record of the two dismissed officers.
[5] See Aff't of Counsel, (Plt. Ex. 1)
**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725
*Fleming, et. al. v City of Fort Yukon*                                       Page 2 of 15
Op: Def. Mot. S. J. (Counts II-IV)

on limited issues given certain political developments. However, Mr. Singer advised that he thought his client, the City of Fort Yukon, was particularly unstable and that if settlement was possible, we would have to move quickly to formalize a settlement because it was highly likely that his client would change their mind between the time a settlement was agreed to and formally signed. In that meeting, Mr. Singer specifically reserved the right of the parties to change their minds prior to formal signing of a settlement because of the needs of his client. Mr. Singer sent a letter five days later (September 6, 2005) advising that he hoped to have a response no later than September 16th.[6] In reality, it took over a month for the City Council to meet and discuss the offer. In his letter of October 13, 2005, Mr. Singer indicated that he would prepare the paperwork to effectuate the settlement.[7] Several days later, Mr. Singer sent a draft settlement agreement,[8] and proposed that the principals sign. In a later e-mail, Mr. Singer confirmed the need to keep the "momentum" toward partial settlement going,[9] which was a reference to the possibility that parties might change their minds regarding settlement. On November 7, 2005, the undersigned

---

[6] Def. Ex. B
[7] Def. Ex. C
[8] Def. Ex. D & E
[9] Def. Ex. G

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

informed Mr. Singer that the officers had changed their mind about settlement. This motion followed.

B.   **LEGAL ARGUMENT**

The City advances the rather imaginative argument that the exchange of letters between counsel operated to create an enforceable agreement to dismiss. Unfortunately, the City offers no legal precedence supporting its conclusion under similar facts presented in this Case.

### 1. Dismissal Would Violate FRCP 41 and 68

The FRCP provide for three methods of voluntary dismissal: 1) Plaintiff filing of a notice of dismissal, 2) stipulation, and 3) motion for leave to dismiss.[10] There is no assertion that the police officers filed either a notice of dismissal or a motion for leave to dismiss. The City is essentially arguing that the officers, though their attorney, entered into a stipulation to dismiss, however, it is very clear that the writings submitted to the Court do not amount to a stipulation contemplated by the FRCP.

---

[10] Moore's Federal Procedure, §41.20 (3rd Ed.); American Cyanamid Co. v McGhee 317 F2d 295 (1963, CA5 Fla)

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

*Fleming, et. al. v City of Fort Yukon*                                                          Page 4 of 15
Op: Def. Mot. S. J. (Counts II-IV)

Dismissal of claims is governed by FRCP 41, which states in part, "an action may be dismissed ... (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action. "[11] The rule is very clear in that a stipulation needs to be in writing, signed by all parties. The City has submitted and stipulation that has not been signed by any plaintiffs [12] and requests the Court to enter a dismissal. The Court's approval of a unsigned stipulation for dismissal is reversible error.[13]

The City seeks to circumvent the application of FRCP 41 by arguing that there was an contract between the parties for settlement citing *Jeff D. v Andrus, 899 F.2d 753, 759 (9th Cir. 1990).* That case is substantially dissimilar from the present case, because the parties in that case actually filed stipulations with the court to settle the claims. *Jeff* involved a class action lawsuit against state officials in Idaho involving more than 2000 mentally ill children alleging insufficient mental health services. The case involved an interpretation of a stipulated settlement agreement. *Jeff* is distinguishable to the present case, because in *Jeff* the parties signed and filed a

---

[11] FRCP 41(a)(1)
[12] Def. Ex. F.
[13] Wheeler v. American Home Products Corp. (Boyle-Midway Div.), 582 F.2d 891 (5th Cir. 1977)

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

settlement stipulation.  The parties in this case did not finalize the settlement stipulation.  The City glosses over this most important fact.  Indeed, the City has failed to offer a single federal precedence to support its contention that written exchanges between counsel negotiating possible settlement, in the absence of a written stipulation is enforceable as an agreement to dismiss claims.  All the precedence cited by the City involve cases in which the parties filed signed settlement agreements that were filed with Court.

The City seeks to have the Court treat the letter exchange as an offer of judgment governed by FRCP 68.  If the September 1 offer was binding if accepted, it was an offer of judgment under the rule, but the offer was not particularly in the form of an offer of judgment.  More importantly, if it had been an offer of judgment, the offer must be accepted within 10 days to be valid.  An offer not accepted within the 10 day period is deemed withdrawn.  Hence, if the September 1 offer were treated as an offer of judgment, the City's response was so delayed that it would have been deemed withdrawn.  Thus, the City wishes to have the offer treated as an offer of judgment, that was open ended, and without time limit.

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

*Fleming, et. al. v City of Fort Yukon*   *Page 6 of 15*
Op: Def. Mot. S. J. (Counts II-IV)

In summary, the letter exchange did not satisfy FRCP 41 nor 68 and did not create a binding obligation to settle if accepted.

**2. The Parties Did Not Reach An Enforceable Agreement Under State Law.**

The City seeks to bootstrap its argument by asserting that an enforceable agreement was entered into by the parties under Alaska State law, but again, the City fails to offer any meaningful precedence. The City principally cites *Davis v. Dykman, 938 P.2d 1002 (Alaska 1997)* to suggest that letter negotiations between counsel can give rise to an enforceable contract. The reliance is misplaced. In fact, *Davis v. Dykman,* holds quite the opposite.

In *Davis v. Dykman,* the claimant offered to settle upon terms with an insurance company. The insurance company agreed, after negotiations, to the essential terms and sought to enforce its assent as a purported contract for settlement. The Court disagreed, holding that a contract to negotiate is unenforceable.[14] In particular, the Court noted that where parties are expected to

---

[14] *938 P.2d, at* 1007

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

*Fleming, et. al. v City of Fort Yukon*                              *Page 7 of 15*
Op: Def. Mot. S. J. (Counts II-IV)

draft and execute a formal agreement, their prior negotiations do not constitute a contract.[15]

There is plenty of evidence in the written documentation that the parties were merely agreeing to negotiate a settlement agreement.  For example, the undersigned's original letter was clearly captioned as "Partial Settlement Discussions".[16]  The City clearly assumed the obligation of drafting a settlement agreement and stipulation to dismiss, which evidences an understanding that this was contemplated and necessary to effectuate the settlement and dismissal.  In forwarding the draft settlement agreement, Mr. Singer specifically stated "If the Agreement meets with your approval, please have your clients sign the document."[17]  This statement by the City's attorney clearly evinces an understanding that the undersigned retained the right to object to the document and not sign the agreement.  And finally, in his e-mail on October 26, 2005, Mr. Singer makes reference to the need to keep up the momentum an get the agreement signed soon.[18]  This last statement supports the understanding discussed in the

---

[15] Id. at 1008: I citing *Thrift Shop, Inc. v. Alaska Mut. Sav. Bank, 398 P.2d 657, 659 (Alaska 1965)*
[16] See Ex. A
[17] Ex. D
[18] Def. Ex. G

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

undersigned affidavit, which was that the parties had specifically discussed the possibility that the settlement would fall apart if not accepted quickly, and that Mr. Singer reserved the right of the parties to reject the settlement until it was formally executed. It is very clear that the parties merely agreed to negotiate. Moreover, the parties clearly expected to draft and execute a formal agreement. Under *Davis v. Dykman,* no enforceable agreement was created.

> As an alternative basis for its holding, the Court in *Davis v. Dykman* held
>
> there was no valid offer to settle, because Dykman did not propose a specific amount or a method of calculating a specific amount. At most, Dykman simply offered to negotiate. Davis's "acceptance" therefore did not form an enforceable settlement agreement.[19]

In particular, the Court held that "formation of a valid contract requires an offer encompassing all essential terms, unequivocal acceptance by the offeree, consideration, and an intent to be bound."[20] There is nothing in the September 1 letter that indicated an intent to be bound by the City's acceptance. It is equally clear that the September 1 letter did not encompass all essential terms. The final draft settlement agreement produced by the city's attorney clearly added issues that

---

[19] *938 P.2d, at* 1006
[20] Id.

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

*Fleming, et. al. v City of Fort Yukon*                                                                  *Page 9 of 15*
Op: Def. Mot. S. J. (Counts II-IV)

had not been previously discussed. In particular, the final settlement agreement addressed

- No admission of liability as to the City

- Releases of all officers, board members, directors, supervisors, as well as the named Defendants,

- Release of additional, besides Counts II though IV, including all claims arising from the officers employment with the City, "which could have been alleged or asserted"

- Young v State waiver

- Witt v Watkins waiver

- Remedies in case of breach

- Dismissal with prejudice.

While it obvious that the parties had been successful in reaching an agreement in principle, the actual agreement document proposed by the City addressed numerous issues not addressed in the written negotiations. The City basically took almost two months to produce a settlement agreement, when it was fully understood that time was of the essence if the settlement were to occur. But more importantly, the final draft is clear evidence that the negotiations had not

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

*Fleming, et. al. v City of Fort Yukon*            *Page 10 of 15*
Op: Def. Mot. S. J. (Counts II-IV)

progressed to a point where there was a meeting of the minds as to all essential terms of the agreement.

The Court in *Davis v. Dykman*, particularly noted that the settlement provisions relating to remedies in breach was a major concern in enforcing such settlement agreements. As Alaska Court noted, "As a general rule, agreements to negotiate are unenforceable because they do not provide a basis for determining the existence of a breach or for giving an appropriate remedy."[21] That is particularly important in this case. The remedy in breach clause of the agreement had a mutual damage clauses, but no basis to determine if the officers could breach the agreement, and no measure of damages for the City's violation of the agreement. The agreement begs the question as to the officer's remedy if, after the agreement were signed, the City made allegations against the officers to future employers. This was a particularly sensitive issue given that officers had made allegations that the City had made false reports of wrongdoing in at least one case, which required the Fairbanks Police Department to investigate the officer after the officer had been hired.[22]

---

[21] *938 P.2d, at* 1008
[22] See Ex. A.

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

In addition, it is clear that the settlement agreement proposed by the City addressed several other issues that had not been previously discussed, and which are listed above. The *Witt v Watkins* and the *Young* waivers are most notable. These clauses would have waived unknown claims against unknown parties, and claims for unknown damages at the time of the waiver. These waivers went well beyond the terms of the negotiated settlement, which merely sought to dismiss Count II through IV. Such waivers could have included waivers for workman compensation, unemployment, slander/liable, negligent dissemination of employment records, etc. The *Witt v Watkins* and the *Young* waivers only have application with the complete dismissal of all claims. It would be foolish for any attorney to have clients sign *Witt v Watkins* and the *Young* waivers as part of a partial settlement of claims. Stated otherwise, the City was seeking a complete waiver of all other claims, including claims unknown to the officers. At no time did the officers ever consider such a broad and sweeping settlement. Indeed, at all time, the undersigned indicated that the officers were only contemplating a "partial" settlement. Clearly, the release sought more than a mere dismissal of Counts II-IV, which was the subject of the September 1st letter.

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

*Fleming, et. al. v City of Fort Yukon*                                              *Page 12 of 15*
Op: Def. Mot. S. J. (Counts II-IV)

The fact that the settlement agreement drafted by the City addressed issues largely beyond the scope of the discussions is clear and unequivocal evidence that the parties had not reached agreement as to the specific terms of the settlement before the settlement efforts collapsed. Additionally, the Court would be faced with a near impossible task of trying to interpret the fine points of the settlement agreement. Specifically, what would the City propose the Court do if the officers learn that city officials violated the agreement, and if so, when would such violations amount to a breach. For example, what if a city official negligently disseminated employment records related to the officers

      a) before October 13th

      b) after October 13th but before the Court rules on this motion, or

      c) after the Court rules on this motion.

In each instance, have the officers waived the claim(s)? If they haven't waived the claims, would an action lie for breach of the agreement or for common law claims only? The City's position would embroil the Court in interpreting the "agreement" on issues that were not discussed between the parties, and over which they clearly would not agree.

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

*Fleming, et. al. v City of Fort Yukon*  Page 13 of 15
Op: Def. Mot. S. J. (Counts II-IV)

Simply put, the written documents evidence a certain willingness by the parties to agree in principle, subject to negotiation of various important issues. The settlement fell apart before those issues could be addressed, largely due to the City's failure to respond in a timely manner as promised. Clearly, the parties did not reach a meeting of the minds, and if the Court were to find some enforceable agreement, it would be compelled to graft upon the agreement various terms and conditions without benefit of any evidence that the parties discussed the issues. No meeting of the minds occurred sufficient to form an enforceable settlement agreement.

### 3. Dismissal Would Operate An Injustice Upon Plaintiffs.

Finally, the settlement would impose an unjust settlement upon some plaintiffs who are surrendering rights to the benefit of other plaintiffs. As noted above, only two of the officers were terminated for cause; three were constructively terminated, meaning that they resigned in the face of an extremely hostile work environment. The agreement would only change the status of the two terminated officers, but release the claims of the three constructively terminated officers in exchange. Clearly, the benefit of this bargain inures mostly to the benefit of the terminated officers as opposed to the officers who resigned. While clearly the

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

*Fleming, et. al. v City of Fort Yukon*  Page 14 of 15
Op: Def. Mot. S. J. (Counts II-IV)

constructively terminated officers may settle in exchange for such benefits, it would be unjust to force these officers to accept such a settlement against their will.

**CONCLUSION**

The court should deny the motion for summary judgment for the reasons stated above.

DATED: February 8, 2006                    s/ Michael J. Walleri
                                           Michael J. Walleri
                                           AK. Bar No. 7906060
                                           Attorney for Plaintiffs

Certificate of Service
I hereby certify that under penalty of perjury that a true and
Correct copy of the foregoing was sent to the following counsel
of record on February 8, 2006 via electronic filing to:

Mr. Howard S. Trickey
Mr. Matt Singer
Jermain, Dunnagan & Owens, P.C.
3000 A Street, Suite 300
Anchorage, AK 99503

s/ Michael J. Walleri

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

*Fleming, et. al. v City of Fort Yukon*                    *Page 15 of 15*
Op: Def. Mot. S. J. (Counts II-IV)