Howard S. Trickey
Matthew Singer
JERMAIN, DUNNAGAN & OWENS, P.C.
3000 A Street, Suite 300
Anchorage, Alaska 99503
(907) 563-8844

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| REGINALD FLEMING, CHRISTOPHER DELEON, CHRIS HAMPTON, WILLIAM D. MCKILLICAN, and TODD SCHLUMBOHM,<br><br>            Plaintiffs,<br><br>vs.<br><br>FANNIE CARROLL, and the CITY OF FORT YUKON, ALASKA,<br><br>            Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case 4:04-cv-00034-RRB |

**OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY**

**I.   INTRODUCTION**

Plaintiffs' motion to compel is frivolous. Civil Rule 37 and Local Rule 37.1 require a movant to certify that he has conferred in good faith before moving to compel. Not only did Plaintiffs fail to provide the required certification, they failed to confer with defendants whatsoever. Despite having Defendants' discovery responses in their possession for many months, Plaintiffs never made a single telephone call or wrote a single letter suggesting any discovery discrepancy. The timing of Plaintiffs' angry

motion, filed along with a reply on their motion to reset all pretrial deadlines, strongly suggests that the motion is nothing but a thinly veiled attempt to build a record so Plaintiffs can again ask for even more delay. Because Plaintiffs failed to confer as required, this Court must deny the motion. In addition, pursuant to Civil Rule 37(a)(4)(B), the Court should award to Defendants their actual attorney's fees and costs incurred in defending this improper motion to compel.

## II.   COURSE OF DISCOVERY

Plaintiffs filed this action on December 9, 2004. On October 24, 2005, Plaintiffs submitted their first discovery requests. The City timely responded on November 22, 2005. Plaintiffs incorrectly contend that defendants objected and stonewalled as to each discovery question. This is not true.

Rather, the discovery responses show that the City made a diligent effort to respond. For example, out of thirty three Requests for Admission, the City "Admitted" eight of the requests, "Denied" twenty four of the requests, and objected to one. In response to the Interrogatories, the City provided substantive answers to several of the questions. As for documentary discovery, the City has produced over 1,400 pages of documents in this case. [*See* Affidavit of Sherry Sims]  Despite receiving the first discovery responses almost five months ago, Plaintiffs never mentioned a single concern about the discovery until their motion to compel.

Plaintiffs mailed their second discovery requests on February 7, 2006. Defendants timely responded on March 9, 2006.[1] While Plaintiffs allege that these responses were "stonewalling," the responses were in fact complete. The City substantively answered one of the two interrogatories and asserted a valid objection as to the second. As for the Requests for Production, the City promised to produce any responsive documents as to all but one of the requests. Plaintiffs' accusations of "bad faith" are simply misplaced and unsupported by the record.

## III. DISCUSSION

### A. The Court Must Deny the Motion Because Plaintiffs Failed to Meet and Confer In Good Faith as Required by Civil Rule 37

Plaintiffs fail to comply with Civil Rule 37 and Local Rule 37.1. Plaintiffs were required to certify that they had met with Defendants and in good faith attempted to resolve the discovery dispute without seeking court intervention.[2] This "meet-and-confer" requirement mandates that the parties:

> meet, in person or by telephone, to resolve the dispute by determining … what the requesting party is actually seeking; what the discovering party is reasonably capable of producing that is responsive to the request; and what specific genuine issues, if any, cannot be resolved without judicial intervention.[3]

---

[1] Plaintiffs' incorrectly claim that these responses were late. In fact, when discovery requests are mailed, the respondent has 33 days to respond. Defendants mailed the responses early, before they were due. Plaintiffs' incorrect accusation to the contrary is just one of many examples of the misinformed bluster that is their motion to compel. The Court should not look favorably on Plaintiffs' bogus accusations.

[2] *See* FRCP 37(a)(2)(B); Local Rule 37.1(a).

[3] *In Sook Yoon v. Celebrity Cruises, Inc.*, 1999 WL 135222 at *6 (S.D. N.Y. March 12, 1999) (quoting *Prescient Partners LP v. Fieldcrest Cannon, Inc.*, 1998 WL 67672 at *2-3 (S.D. N.Y. Feb. 18, 1999)).

In *In Sook Yoon v. Celebrity Cruises, Inc.*, the trial court denied a motion to compel "in all respects" when the plaintiff failed to provided a certification with the motion that they had met and conferred in good faith and had not satisfied the meet-and-confer requirement.[4]  In *Larkin v. United States Department of Navy*, the court denied a motion to compel because while the government had provided the required certificate, the court found that the government's efforts to meet and confer where "woefully inadequate and [violate] the spirit and purpose of the rule."[5]

Plaintiffs have not provided the required certificate.  Nor could they, because Plaintiffs' counsel did not send a single letter or e-mail, make a single telephone call, or do anything whatsoever to meet and confer about any of these alleged discovery disputes. [*See* Declaration of Matthew Singer]  As explained below, Plaintiffs could have saved significant time and avoided this dispute or at least narrowed it by simply conferring with opposing counsel.  Plaintiffs' failure to comply is particularly egregious since most of these discovery responses have been in their possession since November 2005.  Because Plaintiffs have disregarded the meet-and-confer requirement, their motion to compel is improper and must be denied.

---

[4]     *See id.*

[5]     *Larkin v. United States Department of Navy*, 2002 WL 31427319 *2 (E.D. La, Oct. 25, 2002).

### B. Even if the Court considers the Motion to Compel, Plaintiffs' Angry Accusations are Without Merit

**Interrogatory No. 2: Cost of Housing**

In response to this interrogatory, the City explained that it provided housing only for Reginald Fleming, and that the cost was approximately $700 plus utilities. In their motion to compel, Plaintiffs contend that the City failed to provide information about cost of providing housing for other officers, and that it also should have provided information about utilities (even though the interrogatory did not mention utilities).

On the first point, Plaintiffs are incorrect about the underlying facts. The City only formally offered to pay for housing for Chief Fleming. [*See* City's Response to Interrogatory No. 2, attached to Plaintiffs' Mtn. to Compel]  Apparently, Fleming subsequently offered to share his Fort Yukon housing with several of the patrolmen. The City paid only for the single cabin for Fleming. There was no additional housing and no additional housing cost. The interrogatory response is therefore accurate.

As for the utility costs, Plaintiffs did not ask about them in the interrogatory. Defendants will supplement the response with any information the City can provide about utilities. This is a prime example of why a movant is required by Civil Rule 37 and Local Rule 37.1 to confer in good faith before moving to compel. If Plaintiffs had bothered to ask for utility information, the City would have cooperated.[6] Instead of wasting Court

---

[6] Plaintiffs seem to think that the City should have somehow foreseen the relevance of the utility costs. The civil rules do not, however, require clairvoyance. Since the City is exempt from the FLSA under 29 U.S.C. 213(b)(20), it can hardly have been expected to glean that Plaintiffs deemed this information significant to their overtime claim. Had Plaintiffs simply asked for the information, or telephoned to explain its significance, the City would have obliged.

and party resources with an angry motion to compel, Plaintiffs could have saved everyone time by actually asking for this utility information in the interrogatory or by making a simple follow up request.

**Interrogatory No. 3: VPSOs and VPOs**

Interrogatory No. 3 stated: "Please identify all persons serving as a Village Public Safety Officer, or Public Safety Officer, for the community of Fort Yukon during Plaintiff's periods of employment with the City of Fort Yukon."  Defendants provided the following legitimate response: "Objection, vague, ambiguous, unintelligible and burdensome.  The City of Fort Yukon does not employ VPSOs.  The City employed the following Public Safety Officers during the relevant period…. [the City then listed each public safety officer, plus a temporary public safety officer]."

Plaintiffs now move to compel, and their argument only confirms that the City's objection was appropriate.  Plaintiffs contend that they were not asking for the identity of Public Safety Officers (even though the interrogatory expressly did ask about them) and that the City should have known that they were asking only about the Village Public Safety Officer ("VPSO") program.  But the question plainly asked about both VPSOs and "Public Safety Officers."  These are two different jobs, employed by two different government entities.  The Public Safety Officers are the patrolmen employed by the City, and so the City possesses knowledge to answer the question as to them.  But, as Plaintiffs concede, the VPSOs are not employed by the City but by the Regional Native Nonprofit Corporation, the Tanana Chiefs Council ("TCC").

It is not reasonable for Plaintiffs to request the City to identify the names of VPSOs who were employed by a separate entity, the Tanana Chiefs Council. The City does not have any file or documents with this information. If Plaintiffs want information about the identity of VPSOs, then they should seek that information not from the City, but from the VPSOs' employer, the Tanana Chiefs Council.

Plaintiffs contend that the City must be aware of the VPSO program because an Alaska regulation, 13 AAC 96.030, requires a village corporation to enter into a cooperative agreement with the village governing body in order to use state funds to employ a VPSO. It appears, however, that in this instance the regional corporation has not complied with 13 AAC 96.030, as the City is not aware of any written agreement between it and Tanana Chiefs Council regarding VPSOs. If any such agreement exists, it is apparently not in the City's files or cannot be located to date. Again, the regulation places the burden on the regional nonprofit corporation, not the City, to execute this contract, so Plaintiffs should serve discovery on TCC for this information.[7]

---

[7] None of this information about VPSOs has any possible relevance to the instant dispute. Plaintiffs seek overtime pay under the FLSA. The City is exempt under 29 U.S.C. 213(b)(20) because it never employed more than four law enforcement officers. Plaintiffs apparently have some wild notion that they can increase the size of the police department by including VPSOs in the officer count. But VPSOs are not employed by the City. Rather, VPSOs are by law employed by the Native regional corporation. *See* 13 AAC 96.030 (requiring as part of the VPSO program an agreement between the State and the nonprofit regional corporation that "names the corporation as the employer, *for all purposes*, of a village public safety officer.") (emphasis added).

**Interrogatory No. 7: Nights of Uninterrupted Sleep**

In this interrogatory, Plaintiffs requested: "Please identify every night during Plaintiff's on call status that plaintiff received five (5) hours of uninterrupted sleep." Defendants objected that "The interrogatory seeks information within the exclusive control of Plaintiffs. Defendant has no way of knowing how much sleep any Plaintiff received either while on call or off." [Response to Interrogatory, Attached to Mtn. to Compel]

Defendant's objection is valid. These officers were not monitored by the City when they left work to go to sleep. The City simply does not know how much sleep each officer received each night. Appearing to acknowledge that their original interrogatory was objectionable, Plaintiffs now seek to rewrite the Interrogatory. They claim that the City could review log nights for each night between November 2001 and February 2004 and figure out "how often the officers were called out during sleep time." [Mtn to Compel at 6] Even assuming it would be proper to ask Defendants to undertake such a ridiculously burdensome task, Plaintiffs did not ask the City for this information. Instead, they asked the City to identify each night that Plaintiffs actually received five hours of uninterrupted sleeps. [*See* Interrogatory No. 7] Police log reports do not contain the requested information. If Plaintiffs want to rewrite their interrogatory, they should serve a new interrogatory, not a motion to compel. The City cannot be compelled by Civil Rule 37 to provide information that was not first requested in a valid discovery request.[8]

---

[8] *See* Federal Civil Rule 37.

**Interrogatory No. 8: Police Funding**

Plaintiffs' motion to compel asks for additional information about the City Safety Prevention Account. This account consists of a portion of profits from the City-owned liquor store, and the City will supplement its discovery responses to explain the same. Again, if Plaintiffs had simply called and asked for this information, the City would have explained. This is another example of why Civil Rule 37 requires a party to meet and confer before filing a motion to compel.

**Interrogatory No. 9: Persons Employed in Law Enforcement**

In response to this question, the City incorporated by reference its motion for summary judgment *and the affidavits filed therewith.* Plaintiffs complain in their motion to compel that the City did not provide the answer under oath. But this overlooks the detailed *affidavits* provided with the summary judgment motion, including the affidavit of Vera James, who is Treasurer and was Acting City Manager when she signed her sworn statement identifying each person employed in law enforcement during the relevant period. In addition, the City also identified every person employed by the police department during the relevant time, including the civilian dispatchers. Since the City has provided a fully responsive, sworn response, there is nothing more to compel.

**RFP No. 1: Interagency Agreements**

The City does not appear to posses any interagency or intergovernmental agreements regarding the provision of law enforcement. The City cannot produce what does not exist or what it does not possess. The City does not have in its files any VPSO

agreement with Tanana Chiefs Council.  If such an agreement ever existed, the City cannot locate it.  As explained above, the prevention account is money from the City-owned liquor store, not an interagency agreement.  The City is searching its files again for any information about its federal COPS grant, and expects to supplement discovery with any responsive documents in its possession.

**RFP No. 3: Payroll Records**

In their motion to compel, Plaintiffs claim that this request seeks payroll records for every person employed by the police department (the actual RFP and related Interrogatory were not nearly so clear).  While Defendants dispute that the payroll records will show anything about job duties or other information relevant to this dispute, the City will supplement its responses with these records.  This is a voluminous request, and the City will need to redact private information, such as social security numbers, before production.  Again, had Plaintiffs either submitted an intelligible RFP and interrogatory in the first place, or followed up with a telephone call to explain the request, as is contemplated by Civil Rule 37's meet and confer requirement, these documents would have been disclosed without need for motions practice.

    **C.**    **Defendants are Entitled to Their Attorney's Fees for Responding to Plaintiffs' Improper Motion to Compel**

Civil Rule 37(a)(4)(B) provides that if a motion to compel is denied

> the court may enter any protective order authorized under Rule 26(c) and shall, after affording an opportunity to be heard, require the moving party or the attorney filing the motion or both of them to pay to the party or deponent who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney's fees, unless the court finds that

the making of the motion was substantially justified or that other circumstances make an award of expenses unjust.

Plaintiffs utterly ignored the express requirement of Civil Rule 37 and Local Rule 37.1 to meet and confer prior to filing a motion to compel. Since Plaintiffs ignored the civil rules, they can hardly contend that their motion was "substantially justified." There was no legitimate reason for Plaintiffs' angry motion, and so the Court should award Defendants their reasonable attorney's fees in responding to the motion.

## IV.  CONCLUSION

Five months after receipt of most of these discovery responses, and without lifting a finger to meet and confer as required by Civil Rule 37 and Local Rule 37.1, Plaintiffs filed their angry, accusatory motion to compel. This appears to be part of a completely baseless and irrational campaign by Plaintiffs to blame Defendants for Plaintiffs' own failure to timely prosecute this case. Plaintiffs' failure to meet and confer violates Civil Rule 37 and wastes the resources of this Court and the parties. Since Plaintiffs failed to meet and confer in good faith, and because there is therefore nothing to compel, Defendants respectfully submit that the Court must deny the motion and award Defendants their reasonable costs in responding to the motion.

//

//

//

//

DATED at Anchorage, Alaska this 14th day of April, 2006.

        JERMAIN, DUNNAGAN & OWENS, P.C.

By:   s/ Howard S. Trickey
      Howard S. Trickey
      3000 A Street, Suite 300
      Anchorage, AK 99503
      Phone: (907) 563-8844
      Fax: (907) 563-7322
      Alaska Bar No. 7610138

CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2006,
a true and correct copy of the foregoing
document was served electronically
on the following counsel of record:

s/ Michael J. Walleri
330 Wendell St., Suite E
Fairbanks, AK 99709

s/ Howard S. Trickey