IN THE UNITED STATES DISTRICT COURT

FOR THE STATE OF ALASKA

REGINALD FLEMING, CHRISTOPHER, )
DELEON, CHRIS HAMPTON, WILLIAM )
D. MCKILLICAN, and TODD )
SCHLUMBOHM, )
                              )
          Plaintiffs,         )
                              )
vs.                           )
                              )
FANNIE CARROLL and THE CITY OF )
FORT YUKON, ALASKA,           )
                              )
          Defendants.         )
_____)
Case No. F04-0034 CIV (RRB)

DEPOSITION OF ERIC TREMBLAY
June 15th, 2006

APPEARANCES:

    FOR THE PLAINTIFFS:    MR. MICHAEL J. WALLERI
                           Attorney at Law
                           330 Wendell Street
                             Suite E
                           Fairbanks, Alaska 99701
                           (907) 452-4716

    FOR THE DEFENDANTS:    MR. MATTHEW SINGER
                           Jermain, Dunnagan & Owens
                           3000 A Street, Suite 300
                           Anchorage, Alaska 99503
                           (907) 563-8844

    ALSO PRESENT:          MR. MICHAEL JACKSON

                    * * * *

## Page 2

1  PURSUANT TO NOTICE, the Deposition of Eric Tremblay was
2  taken on behalf of plaintiffs before Marci Lynch, Notary Public
3  in and for the State of Alaska, and Reporter for Liz D'Amour &
4  Associates, Inc., in the Gwichyaa Zhee Gwich'in Tribal
5  Government Office conference room, 3rd and Alder, Fort Yukon,
6  AK 99740 on the 15th day of June, 2006, commencing at the hour
7  of 9:39 o'clock a.m.
8        TABLE OF CONTENTS
9  Direct Examination by Mr. Walleri .......... 3
   Cross Examination by Mr. Singer .......... 22
10 Redirect Examination by Mr. Walleri ........ 24
   Recross Examination by Mr. Singer ......... 28
11 Redirect Examination by Mr. Walleri ........ 30
12 EXHIBITS:
13 (No exhibits marked during this deposition)
14              * * * *

## Page 3

1           PROCEEDINGS
2       (On record)
3       COURT REPORTER: We're on record. My name is
4  Marci Lynch with Liz D'Amour & Associates in Fairbanks, Alaska.
5  Today's date is June 15th, 2006. The time is 9:39 a.m. We are
6  here in the case of Reginald Fleming, Christopher Deleon, Chris
7  Hampton, William McKillican, and Todd Schlumbohm v. Fannie
8  Carroll and the City of Fort Yukon, case number F04-0034 Civil.
9  We are meeting for the deposition of Mr. Eric Tremblay. Will
10 counsel please identify themselves for the record before I
11 swear in the witness?
12      MR. WALLERI: Michael Walleri on behalf of the
13 plaintiffs.
14      MR. SINGER: Matthew Singer on behalf of the
15 defendants.
16      COURT REPORTER: Thank you. Sir, would you
17 please raise your right hand?
18      (Oath administered)
19      MR. TREMBLAY: Yes, I do.
20      COURT REPORTER: Thank you.
21         ERIC TREMBLAY
22 having first been duly sworn under Oath, testified as follows
23 on examination:
24      COURT REPORTER: For the record, please state
25 your full name and spell your last name.

## Page 4

1  A    Eric E. Tremblay, T-r-e-m-b-l-a-y.
2       COURT REPORTER: E-y?
3  A    A-y.
4       COURT REPORTER: A-y. Thank you. And your
5  mailing address?
6  A    P.O. Box 363, Fort Yukon, 99740.
7       COURT REPORTER: And a daytime contact phone?
8  A    662-3610.
9       COURT REPORTER: Thank you. You may proceed
10 counselor.
11         DIRECT EXAMINATION
12 BY MR. WALLERI:
13 Q    Eric, have you ever had your deposition taken before?
14 A    No.
15 Q    Okay. Let me just go over some of the ground rules.
16      Essentially, I'm going to ask you some questions. Of
17      course, you're under oath and so it's pretty much just
18      as if it was in court; same situation in terms of
19      implications that it's under oath and the need to be
20      truthful about all of it. The -- I'm going to go ahead
21      and ask you questions. I'm the attorney for the
22      plaintiffs, the former police officers that worked here
23      in Fort Yukon. And when I do that, if you could wait
24      until -- it's going to be recorded, obviously, and it's
25      being taped. So if you could just kind of let me

## Page 5

1       finish the questions and then go ahead and answer so
2       that we don't run into a situation where we talk over
3       each other, that would really help. There may be
4       points in the -- in our conversation where Mr. Singer
5       is going to want to put objections on the record. If
6       he does that, he's just going to -- if he goes -- if he
7       starts to talk, if you would just stop, let him get his
8       objection on the record and then go ahead and answer
9       the question and we'll let a judge sort it out if that
10      needs to be done. Okay.
11      MR. WALLERI: Just for the record, Mr. Singer,
12 are you representing -- do you have an attorney-client
13 relationship with Eric Tremblay?
14      MR. SINGER: Mr. Tremblay is the director of
15 the city department and is entitled to attorney-client
16 privilege.
17      MR. WALLERI: Okay.
18 Q    Have you -- so are you ready? Do you have any
19      questions about it or.....
20 A    (No audible response)
21 Q    Okay. Let's do it. Have you reviewed anything in
22      preparation for this deposition at all?
23 A    No.
24 Q    Okay. Have you talked to anybody to prepare for the
25      deposition?

Page 6

| | | |
|---|---|---|
| 1 | A | No. |
| 2 | Q | Okay. Could you describe your educational background? |
| 3 | A | High school graduate and just correspondence training. |
| 4 | Q | Okay. And how long have you lived in Fort Yukon? |
| 5 | A | 19 years. |
| 6 | Q | And where did you live before there? |
| 7 | A | In Montreal, Canada. |
| 8 | Q | Okay. The -- and you indicated that you work for the |
| 9 | | city at the current time? |
| 10 | A | Yes. |
| 11 | Q | And what do you do as -- for the city? |
| 12 | A | Maintenance department. |
| 13 | Q | And how long have you -- what's -- are -- he said |
| 14 | | director of the maintenance department? |
| 15 | A | I started first as a maintenance worker, then I worked |
| 16 | | up to become the maintenance director, yeah. |
| 17 | Q | Okay. And when did you start with the city? |
| 18 | A | 1995. |
| 19 | Q | And when did you become the director? |
| 20 | A | About three years ago. |
| 21 | Q | And who was the director before you? |
| 22 | A | Grafton Bergman. |
| 23 | Q | The -- have you ever worked as a -- with the public |
| 24 | | safety department or the police department here? |
| 25 | A | Just a few -- a couple times when I got put on call or |

Page 7

| | | |
|---|---|---|
| 1 | | something, yeah. |
| 2 | Q | Okay. Could you tell me about that? |
| 3 | A | Well, there was an officer who was supposed to come in |
| 4 | | on the last flight and another guy was going to take |
| 5 | | off, but the officer didn't -- to relieve him didn't |
| 6 | | come in, so I filled in for them. |
| 7 | Q | And do you know when that was? |
| 8 | A | I don't know, a couple years ago. |
| 9 | Q | Do you know who the officers were? |
| 10 | A | I don't know. I think one time it was -- Chris was |
| 11 | | leaving. |
| 12 | Q | That's Chris DeLeon? |
| 13 | A | Yep. And I guess Reggie was supposed to come in and, I |
| 14 | | don't know, maybe one time with Todd. I think one time |
| 15 | | he had to -- got -- one of them had to go take a |
| 16 | | prisoner in or something and there was nobody else |
| 17 | | around this -- I don't know. |
| 18 | Q | You had to take a prisoner in? |
| 19 | A | No, no. He -- the -- the officer had to take a |
| 20 | | prisoner over, so..... |
| 21 | Q | Okay. |
| 22 | A | .....that left no -- no one here. |
| 23 | Q | Okay. And do you know how often that happened? |
| 24 | A | I don't know, two or three times. |
| 25 | Q | Okay. Two or three times in your entire employment |

Page 8

| | | |
|---|---|---|
| 1 | | with the city? |
| 2 | A | Yeah. |
| 3 | Q | And who arranged that? |
| 4 | A | I don't know. They just asked me. |
| 5 | Q | Who asked you? |
| 6 | A | I guess -- I guess Fannie or the officers or something. |
| 7 | Q | Okay. Did you ever discuss that with Fannie Carroll? |
| 8 | A | Discuss..... |
| 9 | Q | You filling in as..... |
| 10 | A | .....to -- for me to be on call? |
| 11 | Q | Uh-huh. |
| 12 | A | Well, yeah. |
| 13 | Q | And when -- what did she say about that? |
| 14 | A | They just asked me to fill in, so..... |
| 15 | Q | So she asked you to do it? |
| 16 | A | I'm not 100 percent sure. It's either the officer |
| 17 | | or -- or she did, yeah. |
| 18 | Q | Okay. Did she ever tell you not to? |
| 19 | A | No, no. |
| 20 | Q | Did she ever tell you that it was okay to do that? |
| 21 | A | They -- I'm -- I'm not sure. Yeah, I don't know. I |
| 22 | | know she -- she didn't tell me not to do it. I don't |
| 23 | | know if she told me to do it. I know she knew about |
| 24 | | it, so..... |
| 25 | Q | Okay. Did you ever patrol in the car, use a police |

Page 9

| | | |
|---|---|---|
| 1 | | car? |
| 2 | A | Yep. |
| 3 | Q | And how many times did you do that? |
| 4 | A | I don't know, once or twice. |
| 5 | Q | Okay. Is that the times that you were on call? |
| 6 | A | Yeah. |
| 7 | Q | Okay. And the -- when you did that, did -- were -- was |
| 8 | | your pay differential or were you paid for that or..... |
| 9 | A | No. |
| 10 | Q | So you were just on your normal salary? |
| 11 | A | Yep. |
| 12 | Q | Are you an hourly -- were you hourly or are you on a |
| 13 | | salary? |
| 14 | A | Hourly. |
| 15 | Q | Okay. Were you ever called out while you were on call? |
| 16 | A | I don't think so, no. |
| 17 | Q | Okay. Did you ever arrest anybody? |
| 18 | A | No. |
| 19 | Q | Okay. Do you know whether or not you had the power to |
| 20 | | arrest anybody? |
| 21 | A | I have -- I don't think I did. |
| 22 | Q | Okay. Do you remember signing an oath of office as a |
| 23 | | police officer? |
| 24 | A | No. |
| 25 | Q | Okay. The -- do you remember if Chris DeLeon ever had |

3 (Pages 6 to 9)

### Page 26

1  A   I -- yeah. Of course, I've seen them.
2      I've -- I -- I -- I'm the one that wrote my hours down
3      on them.
4  Q   Okay. No, that -- I think we're miss- -- you're
5      misunderstanding my question. In other words, in
6      drafting -- in get -- preparing that affidavit.....
7  A   Yeah.
8  Q   Okay. You didn't write the affidavit, right? You
9      didn't write it?
10 A   I didn't type it up, no.
11 Q   Okay.
12 A   I didn't, no.
13 Q   And who typed it up for you?
14 A   I've -- I don't know.
15 Q   Okay. Who at -- who gave you the copy of the affidavit
16     to sign?
17 A   I don't know.
18 Q   You have no idea who gave you the copy of the affidavit
19     to sign? Do you remember signing the affidavit?
20 A   No -- no. What's the date on it? It's a year, a
21     couple years ago? I don't know. 2005, last year.
22     Okay. Well.....
23 Q   Okay. So do you remember signing the affidavit last
24     year?
25 A   I guess I do.

### Page 27

1  Q   Well.....
2  A   I -- I -- I knew there was a -- there was a lawsuit
3      going on. I don't know -- would have -- well, they
4      just asked me question -- what do -- what I -- what I
5      did, blah, blah, blah. And I said, okay, yeah, that's
6      what -- that's -- that's the story. I.....
7  Q   Okay. But when you were -- when they were asking you
8      those questions, did they give you all your time cards?
9  A   I -- I can't recall. I know that's how we -- I -- I
10     don't recall.
11 Q   You never actually saw your time cards. You never
12     reviewed your time cards in preparing that affidavit or
13     discussing.....
14 A   I might have. I don't know. I don't remember. I
15     didn't think nothing of this. It's.....
16 Q   Okay. So in terms of -- you're not exactly sure how
17     many times you worked, in terms of.....
18 A   Well, I know -- I know it was only a few times.
19 Q   It was only a few times?
20 A   Yes.
21 Q   But how many, you don't exactly know for sure?
22 A   Two or three.
23 Q   Okay. Do you know in -- how is it that you know that
24     if you can't remember?
25 A   Because I've only done it a few times.

### Page 28

1  Q   Okay. But I -- my question is this. In going over,
2      have you ever sat down and gone over all of your time
3      cards during the period that Reggie Fleming was the
4      chief of police and reviewed all of your time cards to
5      determine what -- when you actually were on call with
6      that police department?
7  A   Why would I?
8  Q   I take it that's a, no?
9  A   No.
10 Q   Okay. Thank you.
11        MR. WALLERI: Anything else?
12        ERIC TREMBLAY
13 testified as follows on:
14        RECROSS EXAMINATION
15 BY MR. SINGER:
16 Q   Let's just -- so there's no confusion here, let's just
17     try to -- Mr. Tremblay, do you remember that we met
18     last summer? Remember, my name is Matt Singer and....
19 A   No. Truth -- the truth, no, I don't. I'm a busy man.
20     I don't remember facing this.....
21 Q   .....I know. Do you remember -- see my signature here
22     as the notary on your affidavit?
23 A   Yeah.
24 Q   Yeah.
25 A   The paper clearly shows it, yeah.

### Page 29

1  Q   And do you remember that we sat down in a conference
2      room at the city? Do you remember that, 15, 20
3      minutes?
4  A   Yeah, yeah.
5  Q   And do you remember I had a computer with me? Do you
6      remember that?
7  A   Yeah.
8  Q   And I interviewed you and we prepared an affidavit?
9        MR. WALLERI: Objection; leading.
10 Q   Do you remember that?
11 A   Yeah, I -- I kind -- yeah. It come- -- it's coming
12     back, yeah.
13 Q   And do you remember -- who at the city has all the time
14     sheets?
15 A   Vera James in accounting, yeah.
16 Q   Yeah. Do you remember, was she there?
17 A   I think so. I think that's -- yeah. She must -- she's
18     the one that pulled the time cards out. Yeah, so we
19     could figure out what days I worked, yeah.
20 Q   And do you recall that all of your time cards are kept
21     in a -- were kept in a large file?
22 A   Oh, yeah. Yeah, yeah, yeah.
23 Q   And that that file was in the room?
24 A   Yeah.
25        MR. WALLERI: Continuing objection as to