Michael J. Walleri
Law Offices of Michael J. Walleri
330 Wendell Street, Suite E
Fairbanks, Alaska 99701
(907) 452-4716
(907) 452-4725 (Facsimile)
Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| REGINALD FLEMING, CHRISTOPHER DELEON,  CHRIS HAMPTON, WILLIAM D. MCKILLICAN, and  TODD SCHLUMBOHM<br><br>                  Plaintiffs,<br><br>   vs.<br><br>FANNIE CARROLL, and the CITY OF FORT YUKON, ALASKA<br><br>                  Defendants. | **MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT I**<br><br><br>Case No. F04-0034 CIV (RRB) |

The City of Fort Yukon and Fannie Carroll (Defendants in this action) have

moved for summary judgment on Count I, which is the overtime wage an hour

claim under the Fair Labor Standards Act (FSLA)[1] brought by five former policemen

---

[1] 29 USC § 207(a)(1) provides
(N)o employer shall employ any of his employees… for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

Michael J. Walleri
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907)-452-4716
FACSIMILE
(907) 452-4725

*Fleming, et. al. v City of Fort Yukon*
Memo: Op to Def. Sum Jud Motion &
Support Plt. Cross Motion for Sum Jud.

against the City of Fort Yukon.[2]  The thrust of the City's motion is that the small

police department exception to the FSLA[3] precludes the officer's overtime claim.

Fleming, et. al. (i.e. the policemen) oppose the City's motion for summary

judgment and seek partial summary judgment holding that

1)  The City employed more than four (4) employees in law enforcement

activities during the plaintiff's employment, and

2)  The City has the burden of proof to show that it employed less than five

(5) employees law enforcement activities during any of the plaintiff's

workweek,

3)  notwithstanding a lack of training, temporary and emergency officers

should be included within the number of employees engaged in law

enforcement activities under 29 USC 213(b)(20), and

4)  the dispatcher exclusion contained in  29 cfr part 553.2111(g) is invalid.

---

[2] Counts II through IV relate to wrongful/constructive termination, and §1983 claims.
[3] 29 USC § 213(b)(20)  provides
The provisions of section 207 of this title shall not apply with respect to—
…
(20) any employee of a public agency who in any workweek … is employed in law enforcement
activities (including security personnel in correctional institutions), if the public agency employs
during the workweek less than 5 employees in… law enforcement activities….

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907)-452-4716
FACSIMILE
(907) 452-4725

*Fleming, et. al. v City of Fort Yukon*                                    *Page 2 of 29*
Memo: Op to Def. Sum Jud Motion &
Support Plt. Cross Motion for Sum Jud.

## I.    STANDARD FOR SUMMARY JUDGMENT.

Summary judgment is appropriate if the Court finds no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[4] A dispute over a material fact exists if the evidence would allow a reasonable fact-finder to return a verdict for the non-moving party.[5] "(T)he mere allegation of a factual dispute will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.[6] The non-moving party may defeat judgment by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial.[7] "The plaintiff, to survive the defendant's motion, need only present evidence from which a jury might return a verdict in his favor. If he does so, there is a genuine issue of fact that requires a trial."[8] The standard for granting summary judgment and directed verdict are the same. [9]

---

[4] *See* FRCP 56(c)  The rule provides " A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may … move with or without supporting affidavits for summary judgment in the party's favor upon all or any part thereof." "Summary judgment is also available to a party defending a claim."

[5] *See Anderson v Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)

[6] *Anderson v Liberty Lobby, Inc.,* 477 U.S., at 247-248

[7] *Celotex Corp. v Catrett,* 477 U.S. 317, 322 (1986).

[8] *Anderson* v. *Liberty Lobby, Inc., ante,* at 257.

[9] *Id.,* at 250. That is to say, "the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed Id., at 250-251

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

*Fleming, et. al. v City of Fort Yukon*                                    *Page 3 of 29*
Memo: Op to Def. Sum Jud Motion &
Support Plt. Cross Motion for Sum Jud.

Determining which party bears the burden of proof at trial is important in considering summary judgment. "(I)n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden."[10] That is to say, the Court must consider, "whether the evidence presented is such that a jury applying that evidentiary standard could reasonably find for either the plaintiff or the defendant." The entry of summary judgment is mandated, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.[11]

## II.     THE CITY OF FORT YUKON HAS THE BURDEN OF PROOF AS TO THE APPLICABILITY OF THE EXEMPTION.

The Fair Labor Standards Act was designed "to extend the frontiers of social progress" by "insuring to all our able-bodied working men and women a fair day's pay for a fair day's work." Any exemption from such humanitarian and remedial legislation must therefore be narrowly construed, giving due regard to the plain meaning of statutory language and the intent of Congress. To extend an exemption to other than those plainly within its terms and spirit is to abuse the interpretive process and to frustrate the announced will of the people.[12]

---

[10] id. at  254
[11] Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).
[12] *Phillips Co. v. Walling*, 324 U.S. 490, 493 (1945)

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

*Fleming, et. al. v City of Fort Yukon*                                    *Page 4 of 29*
Memo: Op to Def. Sum Jud Motion &
Support Plt. Cross Motion for Sum Jud.

As a result, the Ninth Circuit has clearly and repeatedly held that "An employer who claims an exemption from the FLSA has the burden of showing that the exemption applies. . . ."[13]  In this regard, the proper standard of proof requires the employer to show the applicability of the exemption "plainly and unmistakably"[14] Hence, there is little questioning that the City has the burden to prove that Plaintiffs meet each and every element of the claimed exemption.[15]

In this case, the City claims an FSLA overtime exemption because it argues that the City employed less than 5  (i.e. no more than four) employees engaged in law enforcement activities during the workweeks in which Fleming et. al were employed by the City.   This is essentially a factual matter.  At trial, the City has the burden to prove that it employed less than five such workers at all applicable times.  As noted, the Court must view the evidence presented through the "prism of the substantive evidentiary burden,"[16] which means, the City has the burden to "plainly and unmistakably" show that it employed less than five employees engaged in law enforcement at all the applicable times.  As demonstrated below, the City has failed to do this.

---

[13] *Donovan v. Nekton, Inc.,* 703 F.2d 1148, 1151 (9th Cir. 1983).
[14] *Cleveland v. City of Los Angeles, 420 F.3d 981,* 988 *(9th Cir. 2005);* See also *Donovan v. Nekton, Inc.,* 703 F.2d 1148, 1151 (9th Cir. 1983) (quoting *Phillips Co. v. Walling,* 324 U.S. at 493).
[15] *Cleveland v. City of Los Angeles, 420 F.3d at,* 988
[16] id. at  254

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

### III.    THE SMALL POLICE FORCE EXEMPTION – GENERALLY.

**i. The Exemption.** The FLSA provides for the payment of premium overtime compensation at one and one-half times the regular rate when an employee works more than forty hours in a seven-day week.[17]  However, a department is exempt if it employs less than five (5) employees during any given workweek.[18]  Persons employed in law enforcement activities include security personnel in correctional institutions.

ii) **Policemen.** The City correctly notes that the Department of Labor has developed a three-part test to define which employees (i.e. policemen) are employed in law enforcement activities; employees in law enforcement activities include employees who  are members of an organized police force, have the power to arrest and have, are, or will undergo training.[19]

---

[17] *See* 29 U.S.C. §  207(a).

[18] As one court explained, "The FLSA provides an exemption for public agencies, and employees of public agencies, engaged in fire protection or law enforcement activities when said agency employs less than five (5) employees during any given workweek. Thus, the overtime provisions of the FLSA do not apply to…any employee of a public agency who in any workweek is employed in fire protection activities or any employee of a public agency who in any workweek is employed in law enforcement activities (including security personnel in correctional institutions), if the public agency employs during the workweek less than 5 employees in fire protection or law enforcement activities, as the case may be . . ." (emphasis added)" *Cleveland v. City of Elmendorf, 9 Wage & Hour Cas. 2d (BNA) 539 (WD Tex., 2004) quoting 29 USC § 213(b)(20)*

[19] 29 CFR Part 553.2111(a)  define employees employed in law enforcement activities as
   1)  are  members of a body of officers empowered by State statute or local ordinance to enforce laws designed to maintain public peace and order and to protect both life and property from accidental or willful injury, and to prevent and detect crimes,
   2)  has the power to arrest, and

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

*Fleming, et. al. v City of Fort Yukon*                                      *Page 6 of 29*
Memo: Op to Def. Sum Jud Motion &
Support Plt. Cross Motion for Sum Jud.

The first and second test is easily met in light of Alaska law.  Any member of a police force of an Alaskan municipality is a peace officer with all appurtenant powers.[20]  The mere fact that a city employs a person within its police force in Alaska makes that person a "member of a body of officers empowered by State statute or local ordinance to enforce laws peace officer" within the meaning of §213(b)(20).  Equally, all peace officers have the power of arrest.[21] Therefore, as a matter of Alaska law, all the officers of the Fort Yukon Police Department meet the first and second criteria of the statute.

The third part of the test requires that the employee be "undergoing or has undergone or will undergo" law enforcement training.  It is not necessary that the

---

3)   is presently undergoing or has undergone or will undergo on-the-job training and/or a course of instruction and study which typically includes physical training, self-defense, firearm proficiency, criminal and civil law principles, investigative and law enforcement techniques, community relations, medical aid and ethics.

[20] AS 01.10.060 (7), which provides
     (7) "peace officer" means
     (A) an officer of the state troopers;
     (B) a member of the police force of a municipality;
     (C) a village public safety officer;
     (D) a regional public safety officer;
     (E) a United States marshal or deputy marshal; and
     (F) an officer whose duty it is to enforce and preserve the public peace;
See also AS 11.81.900 (44) which defines "peace officer" in the State criminal code as meaning
     a public servant vested by law with a duty to maintain public order or to make arrests,
     whether the duty extends to all offenses or is limited to a specific class of offenses or
     offenders;
As noted above, under Alaska law, an arrest may be made by a peace officer or by a private person.
See AS 12.25.010.
[21] AS 12.25.010.

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

*Fleming, et. al. v City of Fort Yukon*                                      *Page 7 of 29*
Memo: Op to Def. Sum Jud Motion &
Support Plt. Cross Motion for Sum Jud.

employee receive the training before or during employment in question. Rather the regulation plainly requires inclusion of employees who "will undergo" law enforcement training in the future.   It is this third test that is the most critical in determining inclusion or exclusion relative to the police officers employed by the City.

      **iii) Jail Guards.** In addition to persons falling within the above described category (i.e. police),

> The term 'any employee in law enforcement activities' also includes, by express reference, "security personnel in correctional institutions." A correctional institution is any government facility maintained as part of a penal system for the incarceration or detention of persons suspected or convicted of having breached the peace or committed some other crime…. Typically, such facilities include penitentiaries, prisons, prison farms, county, city and village jails, [22]

Fort Yukon has a state holding facility located in the State Building.[23] As explained by Chief Fleming, the City employed jail guards to man the Fort Yukon jail when the incarceration was under Title 47 or a violation of the City ordinances.[24] If prisoner was being charged under a state statute, the city arranged for the guards, but the state paid for the jail guards.[25]  Of course, the jail in Fort Yukon is a

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

---

[22] 29 CFR Part 553.2111(f); See 29 USC 213(20)
[23] Plt. Ex. A (R. Fleming Depo) at pp. 89-90
[24] Id., at pp. 90 - 91
[25] Id.

*Fleming, et. al. v City of Fort Yukon*                         *Page 8 of 29*
Memo: Op to Def. Sum Jud Motion &
Support Plt. Cross Motion for Sum Jud.

"government facility maintained as part of a penal system for the incarceration or detention of persons suspected or convicted of having breached the peace or committed some other crime."  As Chief Fleming indicated, the principal purpose of the jail is for incarceration of criminals.  Therefore, during weeks in which the City paid jail guards, those jail guards would be counted as an "employee in law enforcement activities' by express operation of the statute.

It is anticipated that the City will argue the jail was not a "correctional institution" within the meaning of § 213(b)(20) while housing persons incarcerated under Title 47 and violations of city ordinances.  It is assumed that the City will argue that such incarcerations are not "criminal" in nature.  The argument is clearly in error with regard to incarcerations of people for violations of city ordinances. Clearly those are criminal.  While Title 47 commitments are not criminal, it must be understood that the focus of 29 USC 213 and 29 CFR Part 553.2111(f) are not upon the prisoner; rather it is upon the nature of the facility.   It is not seriously disputed that the facility is a correctional facility.  Moreover, the incarceration of persons under Title 47 is clearly because of a "breach of the peace", and assuming that the focus is upon the reason for incarceration, the incarceration would qualify the guard as a guard of a correctional facility under 29 CFR Part 553.2111(f).

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907)-452-4716
FACSIMILE
(907) 452-4725

*Fleming, et. al. v City of Fort Yukon*                                          *Page 9 of 29*
Memo: Op to Def. Sum Jud Motion &
Support Plt. Cross Motion for Sum Jud.

The term "Title 47" refers to AS 47.37.170, which allows a police officer to
incarcerate an intoxicated person who is "in need of help"[26] or  a person who
incapacitated by alcohol or drugs in a public place, if it "appears necessary for the
protection of the person's health or safety."[27]  If no treatment facility or emergency
medical service is available, the person is to be taken to a state or municipal
detention facility.[28]  Clearly, detention facilities are correctional facilities, and hence,
the facility at issue is clearly within the statutes meaning of a correctional facility
under the FSLA. The fact that the facility was used by the city to hold public
inebriates does not render the facility something other than a detention or
correctional facility.   The regulations define a correctional institution to include
facilities intended to hold persons suspected breaches of the peace.  It is clear that
public drunkenness is traditionally within the common law definition of breach of
the peace.[29]


Therefore, jail guards employed by the City of Fort Yukon for persons
charged with violations of city ordinances and held under Title 47 would be

Michael J. Walleri
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

[26] AS 47.37.170(a)
[27] AS 47.37.170(b)
[28] Id.
[29] *Barr v. Columbia, 378 U.S. 146, 149 (1964)*; The Fort Yukon municipal code prohibits public
drunkenness.  Ft. Yuk. Code, 9.16 et seq.

*Fleming, et. al. v City of Fort Yukon*                                         *Page 10 of 29*
Memo: Op to Def. Sum Jud Motion &
Support Plt. Cross Motion for Sum Jud.

"security personnel in correctional institutions" to be included within any count of "employees in law enforcement activities" within the meaning of § 213(b)(20).

**iv) Dispatchers.** The statute does not specifically exclude dispatchers from treatment as law enforcement employees.  However, the regulations specifically exclude dispatchers and radio operators employee in law enforcement activities' does.[30]  This is discussed below.

**v) Week-by-week Analysis.** The statute is clear that the number of qualifying employees is determined on a workweek basis. [if the public agency employs <u>during the workweek</u> less than 5 employees[31]]  The City of Fort Yukon maintained a workweek that commenced on Saturday and ended on Friday[32] (Therefore, the Court must examine the employee workforce on a week-by-week basis, and determine whether there were five or more policemen and jail guards employed in that workweek.

**IV.    THE TRAINING PROVISION OF 29 CFR Part 553.2111(a)(3)  IS INVALID AS APPLIED TO ALASKA**.

The requirement that the small police department exception only applies to trained officers is not rooted in the statute.   The statute treats all employees in law

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

---

[30] 29 CFR Part 553.2111(g)
[31] 29 USC § 213(b)(20)
[32] Plt. Ex C (FY 1 & 10)

*Fleming, et. al. v City of Fort Yukon*                                          *Page 11 of 29*
Memo: Op to Def. Sum Jud Motion &
Support Plt. Cross Motion for Sum Jud.

enforcement within a department the same.  Rather, the training provision is found

in an interpretive regulation: i.e 29 CFR Part 553.2111(a)(3)   The relevant question,

therefore is whether this requirement is actually consistent with the statute. The

question is a one of first impression, since a review of the case law demonstrates that

no court has considered whether the small police department exemption, as

interpreted by the regulation, is valid.


As noted above, the US Supreme Court has generally held that exemptions to

FSLA remedial effects should be narrowly construed, "giving due regard to the

plain meaning of statutory language and the intent of Congress" [33] Again, as noted

above, the Ninth Circuit has generally followed this instruction, holding that an

exemption to the general provisions of FSLA must be proven "plainly and

unmistakably"[34]   The FSLA regulations are to be given controlling weight unless

found to be arbitrary, capricious, or contrary to the statute.[35] On the other hand,

---

[33] *Phillips Co. v. Walling,* 324 U.S. 490, 493 (1945)

[34] *Cleveland v. City of Los Angeles, 420 F.3d 981, 988 (9th Cir. 2005);* See also *Donovan v. Nekton, Inc.,* 703 F.2d 1148, 1151 (9th Cir. 1983) (quoting *Phillips Co. v. Walling,* 324 U.S. at 493).

[35] *Reich v. John Alden Life Ins. Co., 126 F.3d 1, 20 (1st Cir., 199) citing, Chevron U.S.A. Inc. v. Natural Resources Defense Council, 467 U.S. 837, 843-44, 81 L. Ed. 2d 694, 104 S. Ct. 2778 (1984).*

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907)-452-4716
FACSIMILE
(907) 452-4725

*Fleming, et. al. v City of Fort Yukon*                                    *Page 12 of 29*
Memo: Op to Def. Sum Jud Motion &
Support Plt. Cross Motion for Sum Jud.

interpretive regulations are not conclusive, as they merely set forth the Secretary's

official position on how the regulations should be applied in specific contexts.[36]


It is conceded that in many states, the training requirement is appropriate

because state law requires extensive training as a requirement for a person to be a

peace officer, policeman, law enforcement officer, etc.  However, that is not a

requirement under Alaska law in communities like Fort Yukon which have less than

1000 residents.[37]  In Alaska, communities which have more than 1000 residents must

have an extensive training for all officers.[38]  In contrast, communities with less than

1000 residents only require training for "full time" officers, and the training is

minimal.[39] There is no training requirement for emergency or part-time officers in

these small communities.

---

[36] *Reich v. John Alden Life Ins. Co.* supra, *citing Reich v. Newspapers of New England, Inc., 44 F.3d 1060 (1st Cir. 1995)*
[37] The population of Fort Yukon 570.  See  http://www.commerce.state.ak.us/dca/commdb/CIS.cfm
[38] See 13 AAC 87
[39] See 13 AAC 89  Specifically, required training for communities the size of Fort Yukon for full time officers is only 48 hours of instruction and include (1) 10 hours of first aid instruction sufficient to qualify students for a standard Red Cross first aid certificate or the equivalent; (2) instruction in the administration of justice, criminal law, fire fighting, crime scene investigation, arrest procedures, and, if the officer is to be armed while on duty, instruction on the use of firearms; and (3) instruction concerning problems unique to the administration of justice in a rural community.

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

*Fleming, et. al. v City of Fort Yukon*                          *Page 13 of 29*
Memo: Op to Def. Sum Jud Motion &
Support Plt. Cross Motion for Sum Jud.

The situation in Fort Yukon illustrates the problem best.  As noted below, Fort Yukon employed trained officers.[40]  At the same time, the City employed untrained officers on a temporary basis.[41] As noted above, all the police officers had the same powers and duties under Alaska law. The operation of the training rule has the irrational effect of rending the untrained officers eligible for over-time, while rendering the trained officers ineligible for overtime.  Contrary to the plain meaning of the statute, not all police officers in the department would be exempt; only the trained officers.

The distinction, at least as applied to Alaska, fails to "giving due regard to the plain meaning of statutory language and the intent of Congress".  It is rather obvious that Congress intended to exempt all the employees of small police departments--- i.e. departments having less than five law enforcement members. The regulation, as applied to Alaska, creates an irrational system in which the departments are not exempt based upon size as intended by Congress; rather particular members of the police department are exempted or not exempted based upon their individual training.   Moreover, the implementation in Alaska creates an incentive against employment of trained officers in mixed departments, like Fort

Michael J. Walleri
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

---

[40] i.e. the plaintiffs and officers Mike Hardy, G. Alexander, and Wallace. See below.
[41] E.g. Trembley, Debbie Hardy, Challotte Fleener, and Audry Fields. See below.

*Fleming, et. al. v City of Fort Yukon*                                    *Page 14 of 29*
Memo: Op to Def. Sum Jud Motion &
Support Plt. Cross Motion for Sum Jud.

Yukon.   The City can hire as many untrained officers as it wishes without overtime implications; it is limited to only four trained officers.  Moreover, the regulation only requires training of officers; not jail guards.  The statute, however, includes jail guards as law enforcement personnel[42].

In short, the distinction, as applied in Alaska, is irrational and fails to give effect to the obvious intent of Congress.  More to the point, the regulation expands the exemption in a manner that is not "plainly and unmistakably" within the statutory exemptions.

**V.    THE DISPATCHER EXCLUSION CONTAINED IN  29 CFR Part 553.2111(g) IS INVALID.**

The requirement that the small police department exception does not include dispatchers as employees involved in law enforcement is also not rooted in the statute.   The statute treats all employees in law enforcement within a department the same.  Rather, the provision relating to dispatchers is found in an interpretive regulation: i.e 29 CFR Part 553.2111(g)  The relevant question, therefore is whether this requirement is actually consistent with the statute. The question is also a

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

---

[42] See below

question of first impression.  Apparently no court has considered whether the small

police department exemption, as interpreted by the regulation, is valid.


    Again, the facts raised in Fort Yukon raise critical problems with the

operation of the regulation, and demonstrate the irrational operation of the

regulation in Alaska.  As noted above, under Alaska law, **all** members of a police

department are peace officers.[43]  This includes the dispatchers.  Under Alaska law,

dispatchers have the power to arrest persons as peace officers because they are

members of a police department.[44]   In the facts of this case, the City of Fort Yukon

blurred the line between dispatchers and police officers. As noted below, the city

admits that three dispatchers --- Gary Webber, Audrey Fields and Charollote Fleener

--- were deputized and employed as emergency/temporary police officers or jail

guards.  Indeed, Webber was hired as a "dispatcher/jail guard."


    As a general matter, police dispatchers are necessarily engaged in law

enforcement activities, however, in the case of Fort Yukon, it is clear that the

dispatchers actually engaged in patrol and served as temporary, part time officers.

To suggest that police officers differ rationally from dispatchers, who share the same

Michael J. Walleri

*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

---

[43] See discussion and citations at footnotes, 20 and 21 above.
[44] Id.


*Fleming, et. al. v City of Fort Yukon*                              *Page 16 of 29*
Memo: Op to Def. Sum Jud Motion &
Support Plt. Cross Motion for Sum Jud.

legal powers of arrest with other police officers in Alaska, and who occasional serve as police officers, is to suggest a distinction without a difference.

As noted above, the FSLA regulations are intended to be interpretative of the statute.  Congress did not delegate to the Secretary the power to enact law.  There can be no question that Congress sought to exempt small police departments – not portions of small police departments.     In short, the distinction, as applied in Alaska, is irrational and fails to give effect to the obvious intent of Congress.  More to the point, the regulation expands the exemption in a manner that is not "plainly and unmistakably" within the statutory exemptions.

## VI.    FORT YUKON HAS FAILED TO MEET ITS *PRIMA FACIE* BURDEN OF PROOF.

As noted above, the City has a burden of proof with regard to the applicability of the exemption.  In the context of summary judgment, the moving party, with the burden of proof as to an issue at trial, must make a *prima facie* showing as to the lack of a genuine issue of material fact.[45]   The City's proof in this regard is noticeably absent the requisite showing.  While the City has provided

---

[45] *See Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)

Michael J. Walleri
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907)-452-4716
FACSIMILE
(907) 452-4725

various affidavits of various employees, the City has failed to provide an affidavit

from a City official stating the identity, job descriptions of all police department

employees during the relevant times.  The City offers Vera James affidavit, which

fails to certify that she has reported all officer and all guards.[46] This is a very

important oversight, and critical to this case.  As noted in the various discovery

motions, the City has withheld all employment records of police department

employees unless requested by name by the plaintiffs.  More importantly, the City

has refused to certify that the payroll records of the police department are full and

complete.    Absent such a showing, the city has failed to make a *prima facie* showing

as to its burden of proof that at no relevant time did the city employ more than four

law enforcement employees.  As noted below, it is clear that at various times, the

City did employ more than four such employees.   As such, the Court should deny

the motion for summary judgment because the City failed to make a prima facie

showing as to the existence of a genuine issue of dispute.

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

---

[46] Aff't of V. James (attached to City Memo

VII.    **FORT YUKON EMPLOYED MORE THAN FOUR PERSONS AT A TIME IN LAW ENFORCEMENT ACTIVITIES DURING PLAINTIFF'S EMPLOYMENT.**

As indicated below, it is clear that there were many weeks in which five or more policemen, dispatchers, and jail guards were employed by the city.

**i) The Plaintiffs.** As a general matter, it is conceded that all five plaintiffs fall within the definition of "employees . . . in law enforcement activities" contained in §213(a)  All were members of the police force, had the power to arrest, and had training in law enforcement activities.[47]  However, it is true that the five plaintiffs were not employed by the City at the same time.  Chief Flemming was employed at all relevant times [i.e. between November 20, 2001 and February 9, 2004).   The other officers were continuously employed during the following times:[48]

Hampton:   January 15, 2003 – February 18, 2003

Schlumbohm: March 15 2003 – February 16, 2004

McKillican: August 17, 2002 – August 2003

DeLeon  June 30, 2003 – February 9, 2004

Michael J. Walleri
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907)-452-4716
FACSIMILE
(907) 452-4725

---

[47] See City's Memo, at 2-5
[48] Id.

*Fleming, et. al. v City of Fort Yukon*
Memo: Op to Def. Sum Jud Motion &
Support Plt. Cross Motion for Sum Jud.

However, during certain weeks of employment, the City employed sufficient other "employees . . . in law enforcement activities" to invalidate the  213(a) exemption.

**ii) J.R. Wallace**.  The City acknowledges that J.R. Wallace  worked as a police officer for the City of Fort Yukon in November 2003 through September 2004.[49] There is also no dispute that during his employment, he qualified as an "employee in law enforcement activities."  Therefore, it is clear that during his employment, he would be included within the number of such employees in determining whether the City employed "less than five" such employees.  As a result, the employment documentation before the court demonstrates that it is undisputed that there were 26 weeks in which the City employed a minimum of four trained officers.[50]

**iii) Mike Hardy.**    The City acknowledges that Mike Hardy worked as a police officer for the City of Fort Yukon in 2002.  City payroll records indicate that Mike Hardy worked in this capacity between February 2, 2002 and June 28, 2002.[51] The city argues that Mike Hardy "did not believe that he had the power to arrest and had received no training.  Both of these concerns are irrelevant.  As noted above, the fact that Mike Hardy was employed as a police officer empowered him to

---

[49] id at 14-15
[50] Fleming, Schlumbohm, DeLeon, and McKillican between June 21, 2003 through August 15, 2003; Fleming, Schlumbohm, DeLeon, and Wallace between October 25, 2003 and February 13, 2004.
[51] Id. at 15.  The City incorrectly stated Hardy's hire date in March 2002. Mike Hardy began employment with the City during the pay period beginning on February 2, 2002 [ Plt. Ex. B]

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

arrest by operation of Alaska state law.    Additionally, while it is true that Mike

Hardy had not received training prior to or during his employment, Chief Fleming

points out that he was hired with the intention that Mike Hardy would receive

training in the future.[52]  Indeed, it is a requirement of the program that a VPSO

commit to do to law enforcement training.[53]   Clearly, during his employment with

the City, Mike Hardy would be included within the number of such employees in

determine whether the City employed "less than five" such employees in law

enforcement.

**iv) Gerald Alexander.**      The City acknowledges that Gerald Alexander

worked as a police officer for the City of Fort Yukon from January 12, 2001 until May

20, 2002. [54]  The City concedes that Mr. Alexander should be considered in the

number of employees in law enforcement but argues that there were never more

than four such employees during his employment.  As demonstrated below, that

latter point is not actually correct, in that the city hired guards and untrained officers

during Alexander's tenure.

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

[52] Plt. Ex. A,. at 276:2-6
[53] 13 AAC 96.080(b)
[54] City Memo, at 16-17

*Fleming, et. al. v City of Fort Yukon*                          *Page 21 of 29*
Memo: Op to Def. Sum Jud Motion &
Support Plt. Cross Motion for Sum Jud.

**v) Untrained Officers.** The city acknowledges that it hired untrained officers on a part time basis. In particular, the Trembley was employed as an emergency police officer during the pay periods for August 6, 2002, December 13, 2002 and January 9, 2004.[55] Indeed, Mr. Trembely was formally sworn in as an officer.[56] In these last two pay periods, Mr. Trembely was the fifth police officer. (i.e. Fleming, Schlumbohm, DeLeon, Wallace, and Trembely).    Additionally, the evidence is clear that on occasions, the City Manager would have Audrey Fields and Charlotte Fleener deputized and they would patrol the city.[57] The dates of these actions have not been disclosed by the City.  Additionally, the City admits to employing Debra Hardy as an untrained public safety officer from December 27, 2000 until December 4, 2001.  As noted above, the City has the burden of proof to show the employment date of these persons.  Indeed, the FSLA regulations require the employer to maintain employment records to document compliance with wage and hour laws.[58] An employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance

---

[55] Aff't of Trembley (attached to City Memo)   Trembley was not a dispatcher prior to his employment as an officer.
[56] Plt. Ex. H
[57] Aff't of Fleener and Aff't of A. Fields (attached to City Memo); See also, Plt. Ex. J (Fleener Depo) at pp. 3-4, 9, 12-15
[58] 29 U.S.C. § 211(c); 29 CFR Part 516

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907)-452-4716
FACSIMILE
(907) 452-4725

with statutory requirements.[59]  In such cases, where the claimant can demonstrate

his overtime hours, and the employer cannot prove the exemption, the plaintiff may

recover the full overtime.[60]  That is largely the case here.  The plaintiffs can show

that the City had a course of dealing in which it employed untrained law

enforcement officers, but failed to maintain records relative to such employment.  As

a consequence, the employer has failed to carry its burden of proof with regard to

the applicability of the exemption.

        **vi) Gary Webber.**  Gary Webber was hired as a dispatcher/jail guard by the

City of Fort Yukon.[61]  Unfortunately, the city records relative to Mr. Webber are not

the best.  However, the records clearly show that Mr. Webber was employed by the

City as a jailer in the following work weeks (shown by ending date – Friday):  Dec

27, 2001; January 4, 2002; April 5, 2002; April 12, 2002; April 19, 2002;January 17,

2003;  and March 14, 2003.[62]  Clearly, during these weeks of employment with the

City, Gary Webber would be included within the number of such employees in

determine whether the City employed "less than five" such employees in law

enforcement.

---

[59] *Anderson v Mt. Clemens Pottery Co. 328 US 680 (1946)*
[60] *Wirtz v McClure, 333 F2d 45 (10th Cir., 1964)*
[61] Plt. Ex. A, 106: 20-21; 110:7-8
[62] Plt. Ex. D

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907)-452-4716
FACSIMILE
(907) 452-4725

**v) Dale Hardy.**  Dale Hardy was employed by the City as a jail guard during the following work weeks (shown by ending date – Friday):  March 12, 2002 and April 12, 2002.[63]  It is therefore clear that there were at not less than five law enforcement employees during the weeks ending March 12, 2002 and April 12, 2002 (R. Fleming, G. Alexander, Mike Hardy, Gary Webber and Dale Hardy)

**vi) Other Jail Guards.** In her deposition, Fannie Carroll claimed that the City never hired jail guards.[64]  This is obviously untrue.   In addition to Webber and Dale Hardy, there were clearly other jail guards hired by the City.   Indeed, City payroll records demonstrate the employment of five (5) other jail guards during the relevant time period: i.e. Alfred Peter, Cynthia Taylor, Gregory Sims, Judy Alexander, and Harold Yeager.[65]  In her memorandum to the City Council of February 13, 2004, the City Manager named five (5) additional persons who were serving as jail guards:[66] John Druck, Amanda Scholsman, Diana McCarty, Richard Bassett and David Bridges.   According to the memo, Druck and Scholsman worked as guards prior to August, 2003. In that month, and the preceding two (2) months, there were four officers employed by the City (i.e. Fleming, Schlumbohm, DeLeon, and McKillican). The City has not produced all records related to these jail guards.

---

[63] Plt. Ex. E
[64] Plt. Ex F (Carrol Depo) 37:8- 38:5
[65] Plt. Ex. I
[66] Plt. Ex. G, at 6 See also, Plt. Ex F (Carrol Depo) 152:7-16

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907)-452-4716
FACSIMILE
(907) 452-4725

*Fleming, et. al. v City of Fort Yukon*                                    *Page 24 of 29*
Memo: Op to Def. Sum Jud Motion &
Support Plt. Cross Motion for Sum Jud.

Diana McCarty, Richard Bassett and David Bridges worked in the "fall" of 2003. As of November, there were four police officers (i.e. Fleming, Schlumbohm, DeLeon, and Wallace) Again, however, the critical issue is that the City did not maintain proper employment records with regard to all jail guards. Clearly, the City payroll records demonstrated seven (7) jail guards, but failed to document the status of five (5) other jail guards. The plaintiffs can show that the City had a course of dealing in which it employed various jail guards, but failed to maintain records relative to such employment. As a consequence, the employer has failed to carry its burden of proof with regard to the applicability of the exemption.[67]

**vi) <u>Dispatchers</u>.** There is no dispute that the City employed dispatchers during the entire relevant period, including Helona Cadzow, Bobbie Gail James, Charlotte Fleener, Tara Fields, Audrey Fields, and Summer Alexander.[68] It is also not disputed that if they are included in determining the number law enforcement personnel, they would push the number of law enforcement employees in law enforcement over the permitted four employees rendering the plaintiffs non-exempt under FSLA as to overtime.

---

[67] See *Anderson v Mt. Clemens Pottery Co. 328 US 680 (1946); Wirtz v McClure, 333 F2d 45 (10th Cir., 1964*)
[68] See City's memo, at pp 9-14

Michael J. Walleri
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

### VIII.  CONCLUSION.

The court should deny the City's motion for summary judgment because, at a minimum, there is a genuine issue of material fact as to the applicability of the small police department exemption under FSLA. To summarize, the City has the burden of proving that it employed fewer than five law enforcement employees at all times between November 20, 2001 and February 9, 2004.  The FSLA requires the City to maintain records on all employees sufficient to prove such claim for exemption. Assuming that 29 CFR Part 553.2111(a) is a proper interpretation of the small police department exemption contained in 29 USC 213(b)(20), in order to make a prima facie case for summary judgment, the City must prove that it employed fewer than five trained policemen and jail guards at all time.  The city has not done this. Clearly, the payroll records demonstrate that on the weeks of March 12, 2002 and April 12, 2002 the city had five law enforcement personnel (three officers and two jail guards)  as defined by the regulation.[69]  It is also undisputed that there were 26 weeks in which the City employed a minimum of four trained officers.[70] Additionally, plaintiffs are able to show that during this period, there were twelve (12) jail guards employed by the City, seven of whom have payroll documentation

---

[69] R. Fleming, G. Alexander, Mike Hardy, Gary Webber and Dale Hardy
[70] Fleming, Schlumbohm, DeLeon, and McKillican between June 21, 2003 through August 15, 2003; Fleming, Schlumbohm, DeLeon, and Wallace between October 25, 2003 and February 13, 2004.

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

Case 4:04-cv-00034-RRB    Document 88    Filed 08/31/2006    Page 27 of 29

and five who do not.  Of these five, the evidence is that the State was refusing to pay the guards, with the obvious implication that they were employed by the City.  The City has failed to submit any cognizable evidence (i.e. payroll records) as to the time these undocumented five jail guards worked.  In the absence of such documentation, the City cannot prove that it employed less than five law enforcement personnel, hence  the plaintiffs would be eligible for overtime.

However, the situation becomes more clear if the regulatory training and dispatcher provisions are reconciled with Alaska state legal requirements respecting the regulation of Alaska law enforcement officers in rural Alaska; i.e. that the training requirement only applies where state law requires such training as a condition of employment as a police officer or where state law makes a distinction between a dispatcher and officer.  Neither is the case in Alaska as to Fort Yukon.  Thus, the employment of the untrained officers and dispatchers (some of who were the same people) would be included in determining whether the exemption applies. In this case, the evidence is clear that Trembley, A. Fields and C. Fleener were employed in this period as untrained police officers, with employment records

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

applying only to Trembley.  In these two (2) week periods, Mr. Trembely was the

fifth police officer,[71] and hence the other officers would be eligible for overtime.


The Court should hold that the training component of 29 CFR Part

553.2111(a) applies when state law requires such training as a requirement of

employment as a peace officer, and that Alaska law does not require such training

for temporary officers in Fort Yukon, because it is a community with less than 1000

people.  Hence notwithstanding a lack of training, temporary and emergency

officers should be included within the number of employees engaged in law

enforcement.  Dispatchers in Alaska should also be included within the FSLA

definition of law enforcement personnel under 29 USC 213(b)(20).


Date: August 31, 2006                              MICHAEL J. WALLERI

                                                   /s/ Michael J. Walleri
                                                   Law Offices of Michael J Walleri
                                                   330 Wendell St., Suite E
                                                   Fairbanks, Alaska 99701
                                                   (907) 452-4716
                                                   (907) 452-4725
                                                   walleri@gci.net
                                                   AK Bar No. 7906060

Michael J. Walleri
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

---

[71] December 13, 2002 and January 9, 2004.. Fleming, Schlumbohm, DeLeon, Wallace, and Trembely were all employed.

*Fleming, et. al. v City of Fort Yukon*                              *Page 28 of 29*
Memo: Op to Def. Sum Jud Motion &
Support Plt. Cross Motion for Sum Jud.

<u>Certificate of Service</u>
I hereby certify that under penalty of perjury that a true and
 Correct copy of the foregoing was sent to the following counsel
of record on the 31st  day of August, 2006 via ECF to:

Mr. Howard S. Trickey
Jermain, Dunnagan & Owens, P.C.
3000 A Street, Suite 300
Anchorage, AK 99503

<u>s/ Michael J. Walleri</u>

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

*Fleming, et. al. v City of Fort Yukon*                          *Page 29 of 29*
Memo: Op to Def. Sum Jud Motion &
Support Plt. Cross Motion for Sum Jud.