Matthew Singer
JERMAIN, DUNNAGAN & OWENS, P.C.
3000 A Street, Suite 300
Anchorage, Alaska 99503
(907) 563-8844

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| REGINALD FLEMING, CHRISTOPHER DELEON, CHRIS HAMPTON, WILLIAM D. MCKILLICAN, and TODD SCHLUMBOHM, <br><br>     Plaintiffs, <br><br> vs. <br><br>FANNIE CARROLL, and the CITY OF FORT YUKON, ALASKA, <br><br>     Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case 4:04-cv-00034-RRB |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT FOR FAILURE
TO EXHAUST CONTRACTUAL REMEDIES (DELEON)**

## I.   INTRODUCTION

Having refused to avail himself of the City of Fort Yukon's administrative remedies to grieve his termination, Plaintiff Christopher DeLeon now asks this Court to hear his claim arising out of that termination. Because Alaska law requires employees to exhaust their administrative remedies before seeking redress through the courts, DeLeon's wrongful discharge claim is barred. Having refused to participate in the City's

grievance process, DeLeon is likewise barred from claiming that the City violated his due process rights. Accordingly, Defendants are entitled to summary judgment against DeLeon as to Counts II and IV of the Complaint.

## II.   RELEVANT FACTS

### A.   DeLeon's Employment with the City

DeLeon began working as a police officer in the City of Fort Yukon in June 2003. [DeLeon dep., p. 26] He worked on the City's police force, first as a patrol officer and then as an investigator, until his employment was terminated on February 9, 2004. [*Id.*, pp. 79-81 and Singer Dec. Ex. D (Dep. Ex. 5)] On February 9, 2004, DeLeon was notified in writing that he was being terminated "for just cause, including [his] insubordination, disrespect to superiors, and [the City's] receipt of a petition" by Fort Yukon residents demanding DeLeon's termination. [Singer Dec. Ex. D (Dep. Ex. 5)] However, the nature of DeLeon's job performance and the issues leading to his termination are immaterial to the instant motion.

### B.   The City's Grievance Procedures

The City's personnel policies, including its grievance procedure, are set forth in the Employee Personnel Manual Handbook ("Handbook"). DeLeon signed a form acknowledging receipt of the Handbook on September 15, 2003. [Singer Dec. Ex. C (Dep. Ex. 3)]

Chapter 5 of the Handbook sets forth the procedures for dismissal for cause, including the right to a pre-termination hearing and the right to grieve the termination

after such a hearing pursuant to the process set forth in Chapter 7. [Singer Dec. Ex. B, p. 14 (Dep. Ex. 2)] Chapter 7, in turn, sets forth a four-step grievance process, beginning with a verbal complaint to the employee's supervisor (Step 1); then a written presentation to a Personnel Officer (Step 2); then a written decision by the Personnel Officer (Step 3); and, then a hearing before the City Council (Step 4). [Singer Dec. Ex. 2, pp. 20-21 (Dep. Ex. 2)] Chapter 7 provides that "[t]he employee's final step would be the department of labor or superior court." [*Id.*, p. 20]

    **C.**    **DeLeon's Awareness of the City's Grievance Procedures**

As noted above, DeLeon signed an acknowledgment form stating that he had received a copy of the Handbook. [DeLeon dep., p. 71 and Singer Dec. Ex. C (Dep. Ex. 3)] DeLeon also testified that prior to his termination, he and then-Chief Reginald Fleming had discussed the application of grievance process to DeLeon's employment with the City. Fleming had cautioned DeLeon about the City Manager potentially "writing him up" for insubordination, to which DeLeon responded that if that were to happen, "I can grieve it." [DeLeon dep., p. 205]

> Q    And in your conversation with – when Chief Fleming was counseling you after this February 5th meeting, you specifically referred to your ability to grieve an employment matter?
> A    Okay.
> Q    Isn't that right?
> A    Yes. [DeLeon dep., p. 138]

### D. DeLeon's Refusal to Participate in the Grievance Process.

When he was terminated, the City provided DeLeon with a letter notifying him of his right to have a hearing and use the grievance process. [DeLeon dep., p. 142 and Singer Dec. Ex. D (Dep. Ex. 5)] Under the City's normal grievance procedures, the City Manager conducts the pre-termination hearing. Because DeLeon's termination arose out of a dispute with then-City Manager Fannie Carroll, the City acknowledged that a hearing before Carroll would be inappropriate. Accordingly, DeLeon was informed that his hearing, if he choose to request one, would not be held before the City Manager. [*Id.*] DeLeon testified that he agreed with the decision not to have Carroll hold the hearing. [DeLeon dep., p. 150]

On February 11, 2003, the City had hand-delivered to DeLeon a letter notifying him that a date had been set to have a pre-termination hearing in front of Mary Beth Solomon, a member of the City Council. [DeLeon dep., p. 151 and Singer Dec. Ex. E (Dep. Ex. 6)]

DeLeon, with the advice of counsel, refused to attend the hearing or begin the grievance process. [Singer Dec. Exs. F & G (Dep. Exs. 7 & 8)] On February 13, 2004, DeLeon's attorney notified the City that DeLeon "declines to participate in such a hearing." [DeLeon dep., pp. 152-153 and Singer Dec. Ex. F (Dep. Ex. 7)] A second letter sent the same day again states, "Mr. DeLeon does not request and will not be participating in any hearing at which any remedy for job action or discipline recently taken against him could result." [DeLeon dep., p. 152 and Singer Dec. Ex. G (Dep. Ex.

8)] DeLeon confirmed at his deposition that these letters represented his own position as to participation in the grievance process. [*Id*.]

At his deposition, DeLeon stated that the hearing with Mary Beth Solomon would have been "futile." [DeLeon dep., p. 137] However, DeLeon admitted that the hearing before Solomon was not the final stage in the grievance process. Rather, the grievance process set forth in Chapter 7 entitled DeLeon to, *inter alia*, a hearing before the full City Council if he were unhappy with the outcome of the hearing before Ms. Solomon.

> Q    Okay, so you understood that there were four steps [in the grievance process]?
> A    Correct.
> …
> Q    Step 4 was a – was a right to appeal to the city council, correct?
> A    Correct.
> Q    Now, you didn't do that, right?
> A    I was advised by counsel not to do that.
> Q    You did not do that?
> A    Correct.
> Q    And, now, you don't have – you don't know what the outcome would have been in front of the city council, do you?
> A    No one would[.]    [DeLeon dep., pp. 139-140]

Further, DeLeon testified that several City Council members had conveyed to him their impression that his termination had been unfair, that they were unhappy with the City Manager, and that "some things were going to change." [DeLeon dep., pp. 147-148] Nonetheless, and admittedly having no idea whether a Step 4 hearing would have resulted in the reversal of his termination, DeLeon notified the City in writing of his refusal to participate in the grievance process.

In December 2004, despite having refused to attend the termination hearing or otherwise participate in the grievance process, DeLeon filed this suit alleging various employment wrongs, including allegations that he was wrongfully terminated and denied procedural due process. [*See* Complaint, Counts II and IV]

### III.  ARGUMENT

#### A.  Standard for Granting a Motion for Summary Judgment

Summary judgment is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to a judgment as a matter of law.[1] Under Alaska law, the determination of whether exhaustion of remedies is required is a question of law.[2] Whether available remedies were exhausted is a question of fact that is within the trial court's discretion.[3] However, whether exhaustion of remedies is excused is a question of law.[4]

#### B.  DeLeon's Wrongful Discharge Claim is Barred by His Failure to Exhaust His Administrative Remedies

The Alaska Supreme Court has "consistently held that employees must first exhaust their contractual or administrative remedies, or show that they were excused

---

[1] *See* Fed.R.Civ.P. 56(c).

[2] *Varilek v. City of Houston*, 104 P.3d 849, 852 (Alaska 2004). Plaintiff's wrongful termination claim is based on Alaska law.

[3] *Id.*

[4] *Bruns v. Municipality of Anchorage, Anchorage Water & Wastewater Utility*, 32 P.3d 362, 366 (Alaska 2001) (*citing State v. Beard*, 960 P.2d 1, 5 (Alaska 1998)).

from doing so, before pursuing a direct action against their employer."[5]  "A central principle of this doctrine is that a party is not entitled to seek judicial relief for a supposed or threatened injury until the available administrative remedies have been exhausted."[6]

In *Voigt v. Snowden, II*, the Alaska Supreme Court upheld the trial court's decision to dismiss the employee's lawsuit because he failed to exhaust administrative remedies.[7] Voigt argued that he had been wrongfully terminated.[8]  Voigt had the right to file a grievance under the Alaska Court System Personnel Rules.[9]  The Personnel Rules outlined the grievance procedures that concluded with an administrative hearing.[10] Although Voigt did file a timely grievance, he failed to follow-up by requesting a hearing.[11]  The Court held that Voigt's failure to exhaust his administrative remedies was unexcused and dismissed the claim.[12]

In *Grant v. Anchorage Police Dep't.*, the Alaska Supreme Court held that a terminated police officer's lawsuit alleging wrongful termination, breach of contract, unlawful discrimination, and breach of covenant of good faith and fair dealing was

---

[5] *Grant v. Anchorage Police Dep't.*, 20 P.3d 553, 557 (Alaska 2001) (*quoting Cozzen v. Municipality of Anchorage*, 907 P.2d 473, 475 (Alaska 1995)).

[6] *Eidelson v. Archer*, 645 P.2d 171, 176 (Alaska 1982) (*citing McKart v. United States*, 395 U.S. 185, 193 (1969); *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 51 (1937)).

[7] 923 P.2d 778 (Alaska 1996).

[8] *Id.* at 778-79.

[9] *Id.* at 781.

[10] *Id.* at 780.

[11] *Id.* at 780.

[12] *Id.* at 783.

precluded because the officer had failed to grieve his termination.[13]  Likewise, in *Eidelson v. Archer*, the plaintiff was required to exhaust administrative remedies in a suit alleging both contract and tort claims, including wrongful removal, intentional interference with contract and defamation.[14]  The Court held that it was appropriate to require exhaustion of remedies because "[o]ne of the primary purposes of the exhaustion of remedies rule is to promote judicial economy by affording an institution the opportunity to correct its own errors, so as to render judicial action unnecessary."[15]

In applying the Alaska state law doctrine of exhaustion of remedies, a "court must decide the following: (1) is exhaustion of remedies required; (2) did the complainant exhaust those remedies; and  (3) is the failure to exhaust remedies excused?"[16]

### 1.     DeLeon was required to exhaust his administrative remedies.

This first part of the three-part test requires the Court to characterize the claim at issue.[17]  If an action is "an attempt to substitute a damage claim in tort for an unperfected

---

[13] *See* 20 P.3d 553, 555-56 (Alaska 2001).

[14] 645 P.2d 171 (Alaska 1982).

[15] *Id.* at 181 (*citing Van Hyning v. University of Alaska*, 621 P.2d 1354, 1356 (Alaska 1981)); *see also Municipality of Anchorage v. Higgins*, 754 P.2d 745 (Alaska 1998) (holding that claims of breach of contract, breach of implied covenant of good faith, intentional infliction of emotional distress, false procurement of employment, and violation of due process were barred because the plaintiff failed to exhaust administrative remedies); *Walt v. State*, 751 P.2d 1345 (Alaska 1988) (holding that wrongful discharge, defamation, breach of duty, violation of public policy, and negligence claims were barred by failure to exhaust remedies available under an applicable collective bargaining agreement).

[16] *Eufemio v. Kodiak Island Hosp.*, 837 P.2d 95, 98-9 (Alaska 1992).

[17] *Moore v. State, Dept. of Transp. & Pub. Facilities*, 875 P.2d 765, 767 (Alaska 1994).

administrative remedy," the complainant must first exhaust administrative remedies.[18] It is indisputable that DeLeon was subject to the City of Fort Yukon's Personnel Policy Handbook, which functioned as an employment contract. [*See* Complaint ¶ 123] The Handbook expressly states that the grievance process is applicable to an employee who is dismissed. [Handbook, Ch. 5 § 3, Singer Dec. Ex. B, p. 14 (Dep. Ex. 2)]

DeLeon's wrongful discharge claim is clearly subject to the grievance process. The claim is based upon his dismissal from a position as a regular employee. [Complaint ¶¶ 123-124] Dismissal is expressly recognized as grievable in the employment contract. [Handbook, Ch. 5 § 3, Singer Dec. Ex. B, p. 14 (Dep. Ex. 2)] The reviewing committee appointed by the City Council had the power to remedy his termination and therefore the power to remedy this claim. [*Id.*, Ch. 7 § 2, Singer Dec. Ex. B, pp. 20-21 (Dep. Ex. 2)] As a matter of law, DeLeon was required to exhaust his contractual administrative remedies.[19]

### 2. DeLeon did not exhaust his administrative remedies.

The City of Fort Yukon scheduled a hearing for DeLeon in order to hear any grievances regarding his termination. [DeLeon dep., p. 151 and Singer Dep. Ex. E (Dep. Ex. 6)] DeLeon was notified that the hearing was scheduled. [*Id.*] At the advice of his attorney, DeLeon refused to attend the hearing or otherwise participate in the City's

---

[18] *Id.* at 767; *State, Dept. of Transp. & Public Facilities v. Fairbanks North Star Borough*, 936 P.2d 1259, 1260-61 (Alaska 1997).

[19] *Id.*

grievance process. [DeLeon dep., pp. 152-153 and Singer Dec. Exs. F & G (Dep. Exs. 7 & 8] The facts are thus undisputed that DeLeon failed to exhaust his contractual administrative remedies.

### 3. DeLeon's failure to exhaust his administrative remedies is not excused.

It is apparent from DeLeon's pleadings and deposition testimony that, having failed to exhaust his administrative remedies, he intends to claim that exhaustion would have been futile. [Complaint, ¶¶ 98, 99; DeLeon dep., pp. 137, 144] Futility is recognized by the Alaska Supreme Court as an excuse for failure to exhaust administrative remedies.[20] But, even viewing the facts in the light most favorable to DeLeon, exhaustion of contractual remedies was not futile in this case.

The Alaska Supreme Court has recognized an exception to this duty to exhaust remedies "where the administrative remedy is inadequate or where the pursuit of the administrative remedy would be futile due to the certainty of an adverse decision."[21] Under this doctrine, it is a "requirement that an adverse decision be a 'certainty.'"[22] A reviewing committee's involvement in a prior decision will not establish futility unless that involvement has made it impossible for the committee to render an impartial decision.[23] Situations where the court has found that exhaustion was excused include

---

[20] *Eidelson v. Archer*, 645 P.2d 171, 181 (Alaska 1982).

[21] *Id.*

[22] *Voigt v. Snowden, II*, 923 P.2d 778, 782 (Alaska 1996).

[23] *Id.*

where one party is not subject to the contract in question,[24] where the reviewing board did not have the power to grant relief,[25] and where the form of the procedure itself was the contested issue.[26]

None of these circumstances is present here. Rather, DeLeon appears to contend that participating in the scheduled hearing would have been futile because of his perception that Ms. Solomon would not be fair to him. [DeLeon dep., p. 145] Even if his perception were accurate, however, the Solomon hearing would not have been the end of his administrative remedies for his termination. In fact, it would have only been the first step. After his hearing, DeLeon would have had the contractual right to grieve his termination. [Handbook, Ch. 5 § 3, Singer Dec. Ex. B, p. 14 (Dep. Ex. 2)] The final step of this process would have been a binding decision from the entire City Council, after which he could bring his case to the courts. [*Id.*, Ch. 7 § 2, Singer Dec Ex. B, pp. 20-21 (Dep. Ex. 2)]

DeLeon admitted that he did not know how the City Council would rule and that in fact several members of the council were sympathetic to his position. [DeLeon dep., pp. 140-147] Accordingly, an adverse ruling by Ms. Solomon would not have been a certainty, as is required by the Alaska Supreme Court to excuse exhaustion.[27] DeLeon's

---

[24] *See Sprucewood Inv. Corp. v. Alaska Housing Finance Corp.*, 33 P.3d 1156, 1164 (Alaska 2001).

[25] *See State, Dept. of Revenue v. Andrade*, 23 P.3d 58, 67 (Alaska 2001).

[26] *See Kleven v. Yukon-Koyukuk School Dist.*, 853 P.2d 518, 525 (Alaska 1993).

[27] *Voigt*, 923 P.2d at 782.

failure to exhaust his administrative remedies is therefore not excused, and Defendants are entitled to summary judgment on this claim.

### C. DeLeon's Refusal to Participate in the City's Grievance Process Likewise Defeats His Procedural Due Process Claim

The Complaint also appears to state a claim for violation of "Procedural Due Process" as to each Plaintiff, including DeLeon. [*See* Complaint, Count IV] Defendants are entitled to summary judgment on this claim as well. "A claim for violation of procedural due process has two components. First, plaintiff must show that a protected property interest was taken. Second, it must show that the procedural safeguards surrounding the deprivation were inadequate."[28] In the context of public employment terminable only for cause, the right to adequate procedural safeguards requires "notice and an opportunity to respond."[29] DeLeon's due process claims cannot survive because he was provided with adequate procedural safeguards, which procedures he then chose to forego.[30]

As is set forth above, the undisputed facts establish that DeLeon was fully informed of his procedural rights to a multi-step grievance process, including a hearing

---

[28] *Sierra Lake Reserve v. City of Rocklin*, 938 F.2d 951, 956 (9th Cir. 1991) (*citing Board of Regents v. Roth,* 408 U.S. 564, 568-69 (1972)).

[29] *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546 (1985).

[30] *See Hibbs v. HDM Dep't of Human Res.*, 273 F.3d 844, 873 (9th Cir. 2001), *aff'd on other grounds*, 538 U.S. 721 (2003) ("Because they gave Hibbs clear notice and a full opportunity to be heard, the procedures followed by the Welfare Division amply satisfy the due process requirements spelled out in *Loudermill* and *Gilbert [v. Homar,* 520 U.S. 924, 929 (1997)]. We therefore find no error in the district court's grant of summary judgment against Hibbs on his procedural due process claim.")

before the full City Council.  The undisputed facts further establish that DeLeon, on the advice of his attorney, refused to participate in the grievance process.

Thus, whatever due process rights DeLeon had vis-à-vis the grievance process were clearly not violated by the City, which actively notified DeLeon of his rights to participate in the grievance process.  Rather, DeLeon's failure to exercise his rights amounts to a "self inflicted wound," and not a due process violation on Defendants' part.[31]  In short, the same facts which entitle the City to summary judgment based on DeLeon's failure to exhaust his administrative remedies likewise bar DeLeon from pursuing his procedural due process claim.[32]

## IV.   CONCLUSION

Defendants respectfully request that this Court grant summary judgment on DeLeon's claims for wrongful discharge (Count II) and due process (Count IV) because he has failed to exhaust his contractual remedies.

---

[31] *See, U.S. v. Segal*, 423 F.3d 767, 776-77 (7th Cir. 2005) ("Segal first challenges the district court's decision to proceed with the hearing even though he had not received IFG financial statements from Fireman's Fund. The problem with Segal's challenge is that he did not receive the documents because he did not sign a confidentiality agreement. … This was a self-inflicted wound, not a deprivation of due process by the district court.").

[32] *See also, Pederson-Szafran v. Baily*, 837 P.2d 124, 129, n.3 (Alaska 1992) ("[O]ur conclusion that the superior court correctly granted summary judgment to the state because of Szafran's failure to file a timely administrative appeal, or to exhaust her administrative remedies, makes it unnecessary to address [her due process claim].").

Case 4:04-cv-00034-RRB     Document 92     Filed 09/06/2006     Page 14 of 14

DATED at Anchorage, Alaska this 6th day of September, 2006.

JERMAIN, DUNNAGAN & OWENS, P.C.

By:   <u>s/ Matthew Singer</u>
     Matthew Singer
     3000 A Street, Suite 300
     Anchorage, AK 99503
     Phone: (907) 563-8844
     Fax: (907) 563-7322
     Alaska Bar No. 9911072

**CERTIFICATE OF SERVICE**

I hereby certify that on September 6, 2006,
a true and correct copy of the foregoing
document was served electronically
on the following counsel of record:

s/ Michael J. Walleri
330 Wendell St., Suite E
Fairbanks, AK 99701

<u>s/ Matthew Singer</u>

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT     PAGE 14 OF 14
FOR FAILURE TO EXHAUST CONTRACTUAL REMEDIES (DeLeon)
*FLEMING, ET AL. V. CARROLL, ET AL.*
CASE 4:04-CV-00034-RRB