Howard S. Trickey
Matthew Singer
JERMAIN, DUNNAGAN & OWENS, P.C.
3000 A Street, Suite 300
Anchorage, Alaska 99503
(907) 563-8844

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

REGINALD FLEMING, CHRISTOPHER    )
DELEON, CHRIS HAMPTON, WILLIAM    )
D. MCKILLICAN, and TODD    )
SCHLUMBOHM,    )
    )
                 Plaintiffs,    )
    )
    vs.    )
    )
FANNIE CARROLL, and the CITY OF    )
FORT YUKON, ALASKA,    )
    )
             Defendants.    )
_____ )    Case 4:04-cv-00034-RRB

**MEMORANDUM IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT ON EMPLOYMENT
CLAIMS, COUNTS III AND IV (TODD SCHLUMBOHM)**

## I.    INTRODUCTION

Defendants respectfully request that the Court enter summary judgment against

Plaintiff Todd Schlumbohm on his constructive discharge and 42 U.S.C. § 1983 claims

(Counts III and IV).  Even if Schlumbohm had a viable cause of action, he failed to

utilize the grievance process.  His claim is therefore barred because he failed to exhaust

his contractual remedies.  Schlumbohm also has no cause of action under § 1983 because

his due process rights were not denied. Instead, he was offered a due process hearing and declined to participate, thereby waiving any due process claims. Finally, Schlumbohm cannot state a wrongful constructive discharge claim because he was not constructively discharged and his discharge was in conformance with his contract.

## II.     FACTS OF THE CASE

### A.     Fort Yukon Police Chief Reggie Fleming Hires Schlumbohm

Schlumbohm was hired as a police officer for the City of Fort Yukon in March 2003. [Complaint ¶ 11] As will be explained in a moment, he was not qualified to be hired as a police officer in Alaska under the Alaska Police Standards Council regulations. Police Chief Fleming, another plaintiff in this case, hired him anyway. [Ex. A, Schlumbohm dep., p. 35; Ex. B, Fleming dep., pp. 266-267] Fleming apparently asserts that he based this on the mistaken assumption that the Village Police Officer standards were applicable.[1] [Fleming dep., pp. 266-267] Fleming told Schlumbohm that he would receive his basic police certification after working in Fort Yukon for a year, when in fact Schlumbohm was ineligible as a matter of law to be certified as an Alaska police officer. [Schlumbohm dep., p. 71]

---

[1]     Instead of the Village Police Officer standards, the normal Alaska police standards requirements apply to any "participating police department[.]" 13 AAC 85.010(b). According to the Alaska Police Standards Council, Fort Yukon is a participating department. *See* http://www.dps.state.ak.us/apsc/asp/member.asp .

Under the Alaska Police Standards Council regulations, a person cannot be hired as a police officer unless he meets certain qualifications.[2]  The regulations do not allow a person to be hired as a police officer if he has had two or more Driving While Intoxicated (DWI) convictions in the prior ten years.[3]    Schlumbohm had three prior DWIs convictions, two of which were within the prior ten years.  [Ex. C, FY 876, FY 879; Schlumbohm dep., p. 45]  He had also been arrested for a domestic abuse assault charge. [Ex. D, FY 924; Schlumbohm dep., p. 9]  He reported the DWIs on his Police Standards Council Personal History Statement.  [Ex. C, FY 876, FY 879]  But he failed to report his domestic abuse arrest when asked in the form to list all arrests.  [Ex. C, FY 878, FY 879] He signed a sworn statement under penalty of perjury that the information provided in the form was true and accurate to the best of his knowledge.  [Ex. C, FY 881]  Fleming apparently knew about Schlumbohm's DWIs but decided to hire him anyway under inapplicable standards.  [Fleming dep., pp. 266-267]  This was not the last time that Schlumbohm would make himself unqualified for employment as a police officer, and it was not the last time Fleming would look the other way.

## B.    Schlumbohm Works for Fort Yukon

Schlumbohm worked as a police officer until February 2004.  [Complaint ¶ 11] During this period, Schlumbohm's Alaska driver's license was suspended for driving without insurance. [Schlumbohm dep., p. 65] However, he continued to patrol Fort

---

[2]      *See* 13 AAC 85.010.

[3]      13 AAC 85.010(b)(2).

Yukon by car while his license was suspended. [Schlumbohm dep., pp. 66-67] According to Schlumbohm, Fleming knew about his suspended license and told him to patrol anyway. [*Id.*]

> Q.   [Fleming was] willing to look the other way with a suspended license?
> A.   He didn't actually look the other way, I mean it was kind of, hey, you screwed up here, it's – you need to – you need to get this taken care of.  He just said, you can continue working up here, but he said, limit driving, obviously, which I did, which was nice, I could do my reports, but he said, we'll get a city permit for you.
> Q.   But, in fact, you did drive the vehicle on a – while you had a suspended –
> A.   In Fort Yukon, yes.
> Q.   You drove the Fort Yukon police vehicle while your driving privileges with the State of Alaska were suspended?
> A.   For the state, yes.
> Q.   Do you know whether there are any laws or regulations that permit a city police chief to give a city driving permit to someone who has a suspended state drivers license?
> A.   I don't know.
> Q.   You just took Reggie Fleming at his word on that?
> A.   I did, yeah. [Schlumbohm dep., pp. 66-67]

 There is no provision of state law that authorizes a "city permit."  Fleming just ignored the law and allowed Schlumbohm to drive a patrol vehicle without a license.

As for Schlumbohm's job performance, the City had no problems with his performance as a police officer up until immediately prior to his February 2004 resignation.  That changed when the City terminated Reggie Fleming on February 9, 2004.

On February 9, 2004, the City Manager faxed Schlumbohm a letter stating that J.R. Wallace was the new police chief for Fort Yukon and that Schlumbohm would be

receiving a promotion and a raise.  [Ex. E, FY 1026]  The reason that Wallace was the new acting police chief was that Fleming had been terminated on February 9th for insubordination and generally doing a poor job running the police department.  [Ex. F, 144]  In the letter to Schlumbohm, the City Manager wrote: "Thank you for your time and efforts given to the City of Fort Yukon, and congratulations with your new position." [Ex. E, FY 1026]

Unfortunately, immediately after Schlumbohm received this letter, his job performance took a dramatic turn for the worse.

### C.     Schlumbohm Steals the Personnel Files and is Suspended with Pay

On February 7, 2004, the City Manager sent Schlumbohm a letter asking for, among other things, the police officers' personnel records so that they could be sent to the City's attorneys.  [Ex. G, FY 1010]  Schlumbohm called Fleming, who told him not to give the personnel files to her.  [Schlumbohm dep., p. 53]

> Q.     Now, your testimony is that you learned Reggie Fleming had been terminated while you were in Fort Yukon?
> A.     … I was unsure whether or not he was still – I mean if he was fired or if he was police chief.  That's why had I called him. He said if he was the chief.  And that is the time that he told me to take the files and secure them.
> Q.     Your testimony is also that you received notice that he had been terminated, you read a letter, right?
> A.     That's correct.
> Q.     And that you were promoted?
> A.     That's correct.
> Q.     And you were in Fort Yukon when you received notice?
> A.     Uh-hum.
> Q.     Yes?
> A.     Yes.

Q.     So, at the time you got on the plane to Fairbanks, you knew Reggie Fleming was no longer your chief?

A.     It was a letter.  I didn't know whether it was true or not.  That's why I had called and asked him, he said, yes, I am still the chief. [Schlumbohm dep., pp. 62-63]

Schlumbohm decided to ignore the City's letter telling him that Fleming had been terminated, and to instead comply with Reggie Fleming's instructions instead of the City's instructions:

Q.     So – so Reggie Fleming instructed you not to give the City manager the police department's personnel files?

A.     That's correct.

Q.     And to bring them to – to Fairbanks?

A.     He didn't say to bring them to Fairbanks, he said to secure them.

Q.     And so it was your decision to bring them to Fairbanks?

A.     My decision was I would keep them in my possession.

Q.     So you took them to your house in Fairbanks?

A.     That's correct.  [Schlumbohm dep., p. 53]

Schlumbohm removed from Fort Yukon these confidential personnel files of the entire department and flew to Fairbanks with the files in the cargo area of the plane. [Schlumbohm dep., p. 49]  He transferred them to his version of a secured area upon landing.  [Schlumbohm dep., p. 54]

Q.     What happened to the files next?

A.     They were put in my vehicle and transported to my house.

Q.     What did you do with them when you got to your house?

A.     They were put in the closet in my bedroom.

Q.     The closet of your bedroom?

A.     Uh-hum.

Q.     That's the secure place you took them?

A.     That's correct. [Schlumbohm dep., p. 54]

On February 11, 2004, the City discovered that Schlumbohm had taken the police department's confidential personnel files.  [Plfs' Disc. 112-113]  The City Manager sent Schlumbohm a notice of suspension and proposed termination. [*Id*.]  In the letter, the City Manager notified him that the reasons for the proposed termination included removal of the files, failure to return the files and insubordination.  [*Id*.]  He was "further notified, in accordance with the City of Fort Yukon Personnel Policy Manual handbook, Chapter 5, Section 3 that a pre-termination hearing has been set for Monday, February 16, 2004, at 10:00 a.m."  [*Id*.] Although the letter stated that the hearing was scheduled to be in front of the City Manager, it clearly stated afterwards that "if you request a hearing, it will not be before the City Manager."  [*Id*.]  The hearing was scheduled to heard in front of Mary Beth Solomon, a City Council member.  [Affidavit of Fannie Carroll ("Carroll Aff." ¶ 10]

### D.     Schlumbohm Quits Before His Pretermination Hearing and Fails to Follow the Grievance Process

Schlumbohm returned to Fort Yukon on or about February 16.  When he arrived, he met with Greg Russell and City Manager Fannie Carroll.  Mr. Russell was a police consultant for the City of Fort Yukon, working under contract with the Alaska Municipal League.  [Ex. I, Russell dep., p. 7]  He was a former police officer and former chief of police for Kotzebue and had been brought in to help during the transition period between police chiefs.  [Russell dep., p. 7 , 42]  Russell reviewed the Alaska standards for being a police officer with Schlumbohm, and discovered that he was not qualified to be a police officer. [Schlumbohm dep., pp. 45-46]

Memorandum in Support of Motion for Summary Judgment on Employment Claims,        Page 7
Counts III and IV (Todd Schlumbohm)
*Fleming, et al. v. Carroll, et al.*
Case 4:04-cv-00034-RRB

Q.    And so Greg Russell showed you the Alaska Police Standards Council Regulations?

A.    Yeah, he read them to me.

Q.    And – and you said you didn't meet one of those regulations?

A.    That's correct.

Q.    And what did he say to you, do you recall?

A.    He said, why do you think that you would be employed as a police officer if you don't meet this regulation? And I said, well, it was my assumption that it was up to the chief to make that decision.

Q.    What do you recall Mr. Russell telling you then?

A.    Afterwards, I don't remember what he said. [Schlumbohm dep., p. 45-46]

After learning that Schlumbohm was not qualified to serve as a police officer under the Alaska regulations, Fannie Carroll offered him a choice. [Carroll Aff. ¶ 12] He could proceed with the pre-termination hearing, knowing that he was unqualified for employment under state law, or he could resign. [*Id*.] Schlumbohm resigned then and there before his hearing took place. [Ex. J, 868; Schlumbohm dep., pp. 44-45] At no time did Schlumbohm ever file a grievance. [Schlumbohm dep., pp. 77, 79]

Q.    And so after you submitted this letter of resignation, did you submit to the city a written grievance?

A.    [The resignation] is the only thing that I gave Fannie Carroll. [Schlumbohm dep., p. 79]

## III.    ARGUMENT

### A.    Standard for Granting a Motion for Summary Judgment

Summary judgment is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to a judgment as a matter of law.[4] The Court must determine, viewing the evidence in the light most favorable to the nonmoving

---

[4]    *See* Fed.R.Civ.P. 56(c).

party, whether there are any genuine issues of material fact under the correctly applied and relevant substantive law."[5]  Under Alaska law, the interpretation of the terms of a contract presents a question of law.[6]  Likewise, the determination of whether exhaustion of remedies is required is a question of law.[7]

### B.    Schlumbohm's Failure to Take Part in His Pre-termination Hearing and the Grievance Process Bars Any Claim that He Might Have for Wrongful Discharge

Schlumbohm's claim is barred because he failed to exhaust his contractual remedies.  The Alaska Supreme Court has "consistently held that employees must first exhaust their contractual or administrative remedies, or show that they were excused from doing so, before pursuing a direct action against their employer."[8]  "A central principle of this doctrine is that a party is not entitled to seek judicial relief for a supposed or threatened injury until the available administrative remedies have been exhausted."[9]

---

[5]    *See Prison Legal News v. Lehman*, 397 F.3d 692, 698 (9th Cir. 2005) ("We apply the same standard used by the trial court under Rule 56 of the Federal Rules of Civil Procedure.  We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law (citations omitted)).

[6]    *Zuelsdorf v. University of Alaska, Fairbanks,* 794 P.2d 932, 933 (Alaska 1990).

[7]    *Varilek v. City of Houston*, 104 P.3d 849, 852 (Alaska 2004).

[8]    *Grant v. Anchorage Police Dep't.*, 20 P.3d 553, 557 (Alaska 2001) (*quoting Cozzen v. Municipality of Anchorage*, 907 P.2d 473, 475 (Alaska 1995)).

[9]    *Eidelson v. Archer*, 645 P.2d 171, 176 (Alaska 1982) (*citing McKart v. United States*, 395 U.S. 185, 193 (1969); *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 51 (1937)).  *See also Diedrich v. City of Ketchikan*, 805 P.2d 362, 366-68 (Alaska 1991) (holding that requiring exhaustion of remedies before a public employee can bring suit for wrongful discharge is not a violation of equal protection or of the right to jury trial).

In *Voigt v. Snowden, II*, the Alaska Supreme Court upheld the trial court's decision to dismiss the employee's lawsuit because he failed to exhaust administrative remedies.[10] Voigt argued that he had been wrongfully terminated.[11] Voigt had the right to file a grievance under the Alaska Court System Personnel Rules.[12] The Personnel Rules outlined the grievance procedures that concluded with an administrative hearing.[13] Although Voigt did file a timely grievance, he failed to follow up by requesting a hearing.[14] The Court held that Voigt's failure to exhaust his administrative remedies was unexcused and dismissed the claim.[15]

In *Grant v. Anchorage Police Dep't.*, the Alaska Supreme Court held that a terminated police officer's lawsuit alleging wrongful termination, breach of contract, unlawful discrimination, and breach of covenant of good faith and fair dealing was precluded because the officer had failed to grieve his termination.[16] Likewise, in *Eidelson v. Archer*, the plaintiff was required to exhaust administrative remedies in a suit alleging both contract and tort claims, including wrongful removal, intentional interference with contract and defamation.[17] The Court held that it was appropriate to

---

[10]     *Voigt v. Snowden, II*, 923 P.2d 778 (Alaska 1996).

[11]     *Id.* at 778-79.

[12]     *Id.* at 781.

[13]     *Id.* at 780.

[14]     *Id.* at 780.

[15]     *Id.* at 783.

[16]     *See Grant v. Anchorage Police Dep't.*,  20 P.3d 553, 555-56 (Alaska 2001).

[17]     *Eidelson v. Archer*, 645 P.2d 171 (Alaska 1982).

require exhaustion of remedies because "[o]ne of the primary purposes of the exhaustion of remedies rule is to promote judicial economy by affording an institution the opportunity to correct its own errors, so as to render judicial action unnecessary."[18]

In applying the Alaska state law doctrine of exhaustion of remedies, a "court must decide the following: (1) is exhaustion of remedies required; (2) did the complainant exhaust those remedies; and (3) is the failure to exhaust remedies excused?"[19]

### 1.     Schlumbohm was required to exhaust his administrative remedies.

This first part of the three-part test requires the Court to characterize the claim at issue.[20]  If an action is "an attempt to substitute a damage claim in tort for an unperfected administrative remedy," the complainant must first exhaust administrative remedies.[21]  It is indisputable that Schlumbohm was subject to the City of Fort Yukon's Personnel Policy Handbook ("Handbook"), which functioned as an employment contract.  [*See* Complaint ¶ 123]  The Handbook expressly states that the grievance process is applicable

---

[18]     *Id.* at 181 (*citing Van Hyning v. University of Alaska*, 621 P.2d 1354, 1356 (Alaska 1981)); *see also Municipality of Anchorage v. Higgins*, 754 P.2d 745 (Alaska 1998) (holding that claims of breach of contract, breach of implied covenant of good faith, intentional infliction of emotional distress, false procurement of employment, and violation of due process were barred because the plaintiff failed to exhaust administrative remedies); *Walt v. State*, 751 P.2d 1345 (Alaska 1988) (holding that wrongful discharge, defamation, breach of duty, violation of public policy, and negligence claims were barred by failure to exhaust remedies available under an applicable collective bargaining agreement).

[19]     *Eufemio v. Kodiak Island Hosp.*, 837 P.2d 95, 98-99 (Alaska 1992).

[20]     *Moore v. State, Dept. of Transp. & Pub. Facilities*, 875 P.2d 765, 767 (Alaska 1994).

[21]     *Id.* at 767; *State, Dept. of Transp. & Public Facilities v. Fairbanks North Star Borough*, 936 P.2d 1259, 1260-61 (Alaska 1997).

to an employee who does not like the result of his pre-termination hearing. [Handbook, Ch. 5 § 3, Ex. K, p. 14]

Schlumbohm's discharge claim is subject to the grievance process. The claim is based upon his allegedly forced resignation from a position as a regular employee. [Complaint ¶¶ 125-126]  Dismissal is expressly recognized as grievable in the employment contract.  [Handbook, Ch. 5 § 3, Ex. K, p. 14]  At the very least, this is an adverse action that is generally grievable.  [*Id.*, Ch. 7]  As a matter of law, Schlumbohm was required to exhaust his contractual administrative remedies.[22]

## 2.  Schlumbohm did not exhaust his administrative remedies.

On February 11, 2004 the City of Fort Yukon scheduled a pre-termination hearing for Schlumbohm in order to hear any grievances regarding his proposed termination. [Ex. H, 112-113]  Schlumbohm was notified that the hearing would be held on February 16.  [*Id.*]  Schlumbohm returned to Fort Yukon on the day of the hearing but chose to resign prior to the hearing and it never took place.  [Schlumbohm dep., pp. 45, 47] Schlumbohm admits that he never filed a grievance.  [Schlumbohm dep., pp. 77, 79]

## 3.  Schlumbohm's failure to exhaust his administrative remedies is not excused.

Schlumbohm was not excused from exhausting his administrative remedies.  The Alaska Supreme Court has recognized only a limited exception to the duty to exhaust remedies "where the administrative remedy is inadequate or where the pursuit of the

---

[22]    *Id.*

administrative remedy would be futile due to the certainty of an adverse decision."[23] Under this doctrine, it is a "requirement that an adverse decision be a 'certainty.'"[24]  The futility doctrine exists to protect an employee from manifest unfairness.  Where an arbitrator is biased, the conclusion is pre-determined, or the tribunal refuses to hear the employee's complaint, then the Alaska Supreme Court will excuse a failure to exhaust on futility grounds.[25]

Schlumbohm can satisfy none of these criteria.  He had the opportunity to an evidentiary hearing.  [Handbook, Ch. 5 § 3; Ex. K, p. 14]  Because the City Manager was involved in this decision to terminate, the City scheduled Mary Beth Solomon, a City Council member, to hear his complaint.  [Carroll Aff. ¶ 10]  If he did not like the result of the hearing, then he had the express right to pursue a grievance.  [Handbook, Ch. 5 § 3, Ex. K, p. 14]  The grievance process ended in a final binding decision in front of the City Council.  [Handbook, Ch. 7 § 2, Ex. K, pp. 20-21]  Schlumbohm has offered no evidence that the entire City Council would have been insurmountably biased.  He is not excused from exhausting his contractual and administrative remedies.

---

[23]    *Id.*

[24]    *Voigt v. Snowden, II*, 923 P.2d 778, 782 (Alaska 1996).

[25]    *See Bruns v. Municipality of Anchorage*, 32 P.3d 362, 371 & n.46 (Alaska 2001) (discussing futility doctrine).

**C.    Schlumbohm's Failure to Grieve Is Not a Due Process Violation on the Part of Defendants, and Therefore He Has No Cause of Action Under § 1983**

The Complaint also appears to state a claim for violation of "Procedural Due Process" as to each Plaintiff, including Schlumbohm.  [*See* Complaint, Count IV]  This claim is entirely based on denial of the grievance procedures.  Defendants are entitled to summary judgment on this claim as well.

Defendants are not arguing that the failure to utilize the grievance procedures itself bars Plaintiff's § 1983 claim under Alaska law.  That argument has been conclusively rejected by the United States Supreme Court.[26]  Rather, Defendants' argument is that the failure on the part of the employee to utilize the available due process procedures is not a due process violation on the part of the employer.  "A claim for violation of procedural due process has two components.  First, plaintiff must show that a protected property interest was taken.  Second, it must show that the procedural safeguards surrounding the deprivation were inadequate."[27]  In the context of public employment terminable only for cause, the right to adequate procedural safeguards requires "notice and an opportunity to

---

[26]    *See Felder v. Casey*, 487 U.S. 131, 147 (1988); *Diedrich v. City of Ketchikan*, 805 P.2d 362, 368-69 (Alaska 1991) (acknowledging that *Felder* controls on the issue of exhaustion of § 1983 claims).

[27]    Sierra Lake Reserve v. City of Rocklin, 938 F.2d 951, 956 (9th Cir. 1991) (vacated on other grounds in City of Rocklin v. Sierra Lakes Reserve, 506 U.S. 802 (1992)) (relevant portion reinstated in Sierra Lake Reserve v. City of Rocklin, 987 F.2d 662 (9th Cir. 1993)).

respond."[28]  Schlumbohm was provided with adequate procedural safeguards.  He simply chose not to use them.[29]

As is set forth above, Schlumbohm was aware that he had a pre-termination hearing scheduled and he returned to Fort Yukon for the hearing.  [Ex. H, 112-113; Schlumbohm dep., pp. 44-45]  He then chose to quit once he realized that he was not qualified to be certified as a police officer.  [Schlumbohm dep., pp. 43-45]  Instead, he could have made his case at the hearing and then grieved any adverse result.  If he did not like the result of this hearing, he had a right to contest its result through the grievance process.  [Handbook, Ch. 5 § 3, Ex. K, p. 14]  Schlumbohm's own testimony further establishes that he did not participate in the grievance process.  [Schlumbohm dep., pp. 77, 79]

Schlumbohm received the process he was due. The City complied with due process requirements by giving Schlumbohm notice and the opportunity to be heard. Schlumbohm's decision to quit instead of to proceed with the pre-termination hearing amounts to a "self inflicted wound," and not a due process violation on Defendants'

---

[28]     *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546 (1985).

[29]     *See Hibbs v. HDM Dep't of Human Res*., 273 F.3d 844, 873 (9th Cir. 2001), *aff'd on other grounds*, 538 U.S. 721 (2003) ("Because they gave Hibbs clear notice and a full opportunity to be heard, the procedures followed by the Welfare Division amply satisfy the due process requirements spelled out in *Loudermill* and *Gilbert [v. Homar,* 520 U.S. 924, 929 (1997)]. We therefore find no error in the district court's grant of summary judgment against Hibbs on his procedural due process claim.").

part.[30]  In short, the same facts which entitle Defendants to summary judgment based on

Schlumbohm's failure to exhaust his administrative remedies likewise bar Schlumbohm

from pursuing his procedural due process claim.[31]

### D.    Beginning the Process of Validly Terminating Schlumbohm For Cause is Not a Constructive Discharge

Schlumbohm cannot establish a constructive discharge claim under the facts that

he has alleged.  Under Alaska law, a constructive discharge claim is a two step process

because "[c]onstructive discharge is not an independent cause of action, but merely

satisfies the discharge element in a wrongful discharge claim."[32]  Under Alaska law in the

context of constructive discharges, "[t]o prevail on a wrongful termination claim an

employee must prove:  (1) that the employee was discharged by its employer and (2) that

the employer breached a contract or committed a tort in connection with the employee's

termination."[33]    Schlumbohm cannot show either element and each failure is

independently enough to support summary judgment on his constructive discharge claim.

---

[30]    *See U.S. v. Segal*, 423 F.3d 767, 776-77 (7th Cir. 2005) ("Segal first challenges the district court's decision to proceed with the hearing even though he had not received IFG financial statements from Fireman's Fund.  The problem with Segal's challenge is that he did not receive the documents because he did not sign a confidentiality agreement. … This was a self-inflicted wound, not a deprivation of due process by the district court.").

[31]    *See also, Pederson-Szafran v. Baily*, 837 P.2d 124, 129 n.3 (Alaska 1992) ("[O]ur conclusion that the superior court correctly granted summary judgment to the state because of Szafran's failure to file a timely administrative appeal, or to exhaust her administrative remedies, makes it unnecessary to address [her due process claim].").

[32]    *City of Fairbanks v. Rice*, 20 P.3d 1097, 1102  n.7 (Alaska 2000).

[33]    *Charles v. Interior Regional Housing Authority*, 55 P.3d 57, 59 (Alaska 2002).

### 1.    Schlumbohm was not constructively discharged.

"To establish constructive discharge, an employee has the burden of showing that a reasonable person in the employee's position would have felt compelled to resign."[34] "Courts have generally held that criticism of job performance or other management decisions do not, standing alone, create intolerable working conditions."[35]  The Alaska Supreme Court has indicated that there must be a prolonged campaign against the employee in order to show constructive discharge.[36]

Schlumbohm cannot make such a showing in this case because there was no prolonged campaign.  Schlumbohm was actually offered praise and a raise in the letter that Carroll sent him immediately prior to the discovery of the theft of the personnel files. [Ex. E, FY 1026]  He was sent a notice of suspension and proposed termination for cause once his theft of the personnel files was discovered.  [Ex. H, 112-113]  Then he was offered a choice of either proceeding with his pre-termination hearing or resigning when the City found out that he was not qualified under state law to be a police officer in Fort Yukon.  [Carroll Aff. ¶ 12]  He decided to resign.  [Ex. J, FY 868]

---

[34]    *Cameron v. Beard*, 864 P.2d 538, 547 (Alaska 1993).

[35]    *Id*.

[36]    *Pitka v. Interior Regional Housing Authority*, 54 P.3d 785, 789 (Alaska 2002) ("Pitka claims that she was constructively discharged because her work conditions were so intolerable she had to resign.  She claims that she was 'humiliated' by the executive director's criticism that she was a 'complainer,' that the grievance decision was 'incomplete, nonresponsive, and critical,' and that she 'could no longer work under [the executive director].'  However, 'criticism of job performance or other management decisions do not, standing alone, create intolerable workplace conditions' and the record does not indicate that IRHA 'engage[d] in a sustained campaign' against Pitka.").

This is not a prolonged campaign, and this is not a constructive discharge.

> **2.      Even if the actions of the city did constitute a constructive discharge, the discharge was not wrongful under Alaska law.**

Even if there was a constructive discharge, Schlumbohm still must show the second element of a breach of either contract or tort in order to have a viable termination claim under Alaska law.[37]  He cannot do so in this case.  His constructive discharge claim therefore fails as a matter of law.

Based on the other claims in this case, the basis for Schlumbohm's claim to wrongful discharge is presumably that there was a breach of the employment contract. [*See* Complaint, Counts II, IV]   But, there was no breach of the contract at all. Defendants began the process of validly terminating Schlumbohm for cause on February 11, 2004 because he had stolen the City's confidential personnel files.  [Ex. H. 112-113]

As was shown in the facts section, Schlumbohm admits that he took the personnel files.  [Schlumbohm dep., p. 53]  And, he admits that he did it on Reginald Fleming's orders after he had already received written notice from the City that Fleming had been terminated.  [Schlumbohm dep., p. 62]  Instead of leaving the personnel files in the right place, the police station, Schlumbohm secreted the files to Fairbanks and hid them in his closet.  [Schlumbohm dep., p. 54]  Only after the City informed him he would be terminated for stealing these files did Schlumbohm return the files to Fort Yukon. [Schlumbohm dep., p. 56]   These were the private, confidential records of every

---

[37]      *Charles v. Interior Regional Housing Authority*, 55 P.3d at 59.

employee in the police department.  Schlumbohm improperly removed them from the police department.

Among other things, this removal of confidential records left the City vulnerable to liability for breach of the privacy of its employees, as these records contained social security numbers and other confidential information.  The City need not tolerate the theft of its property by a rogue employee who ignores the direction of the City Manager and instead follows the direction of a police chief whom he knows has been terminated.  The City had valid, for-cause grounds to terminate Schlumbohm for this conduct.

On February 11, 2004, Schlumbohm was suspended for that reason.  He was placed on leave with pay, notified of his contractual rights under the Handbook, and told when his pre-termination hearing would be.  [Ex. H, 112-113]  All of this was necessary to comport with his due process rights under the Alaska and Federal Constitutions.[38] Then he simply quit rather than attend his pre-termination hearing because it had become apparent to him that he was not qualified for his job under state law.  [Schlumbohm dep., pp. 45-47]

These actions complied completely with Schlumbohm's employment contract, which allowed him only to be terminated for cause and gave him the right to a pre-

---

[38]    *See Chijide v. Maniilaq Ass'n of Kotzebue, Alaska*, 972 P.2d 167, 171 (Alaska 1999) (citing numerous state and federal cases for the proposition that due process is required under both constitutions when terminating a public for-cause employee); *Storrs v. Municipality of Anchorage*, 721 P.2d 1146, 1150 (Alaska 1986) (holding that, like the Federal constitution, the Alaska constitution requires notice and a pre-termination hearing, or, failing that, payment until a curative post-termination hearing can take place).

termination hearing and to grievance procedures if he did not like that result. [Handbook, Ch. 5 §3, Ch. 7 § 2, Ex. K, pp. 20-21] The City had for-cause reason to terminate and offered him his procedural rights under the contract. Defendants are not responsible for the fact that he chose to resign instead. He therefore has no viable claim for a constructive discharge wrongful termination. The second element of the tort under Alaska law, that that the discharge be a breach of contract or a tort, is not met.[39]

## IV.    CONCLUSION

Defendants respectfully request that the Court dismiss Schlumbohm's Counts III and IV. His discharge claims are barred by his failure to utilize the grievance process. His failure to utilize the grievance process is not a due process violation on the part of Defendants. His discharge was in conformance with this contract.

DATED at Anchorage, Alaska this 13th day of September, 2006.

JERMAIN, DUNNAGAN & OWENS, P.C.


By:    s/ Matthew Singer
          Matthew Singer
          3000 A Street, Suite 300
          Anchorage, AK  99503
          Phone:  (907) 563-8844
          Fax:  (907) 563-7322
          Alaska Bar No. 9911072

---

[39]    *Charles v. Interior Regional Housing Authority*, 55 P.3d at 59.

By:     s/ Howard S. Trickey
     Howard S. Trickey
     3000 A Street, Suite 300
     Anchorage, AK  99503
     Phone:  (907) 563-8844
     Fax:  (907) 563-7322
     Alaska Bar No. 7610138

**CERTIFICATE OF SERVICE**

I hereby certify that on September 13, 2006,
a true and correct copy of the foregoing
document was served electronically
on the following counsel of record:

Michael J. Walleri
330 Wendell St., Suite E
Fairbanks, AK 99701

s/ Matthew Singer
129944