Howard S. Trickey
Matthew Singer
JERMAIN, DUNNAGAN & OWENS, P.C.
3000 A Street, Suite 300
Anchorage, Alaska 99503
(907) 563-8844

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| REGINALD FLEMING, CHRISTOPHER DELEON, CHRIS HAMPTON, WILLIAM D. MCKILLICAN, and TODD SCHLUMBOHM,<br><br>            Plaintiffs,<br><br>   vs.<br><br>FANNIE CARROLL, and the CITY OF FORT YUKON, ALASKA,<br><br>            Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case 4:04-cv-00034-RRB |

**MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT ON
McKILLICAN'S EMPLOYMENT CLAIMS (COUNTS III AND IV)**

**I.     INTRODUCTION**

This Court should enter summary judgment against Plaintiff William McKillican on his claims for constructive discharge and denial of due process. He has failed to utilize the grievance process under his contract and has thereby failed to exhaust his contractual remedies. Likewise, he cannot state a claim for denial of due process because he never even attempted to use the contractual rights that he now claims were denied.

McKillican cannot state a claim for constructive discharge because he quit his job after the City Manager told him she was going to conduct a job evaluation. Even assuming the evaluation was going to be negative, as a matter of law the threat of one poor job evaluation is not a constructive discharge.

## II. STATEMENT OF FACTS[1]

### A. McKillican is Hired and Begins Applying for Other Employment

McKillican began his employment with the City of Fort Yukon on August 16, 2002. [Ex. A, McKillican dep., pp. 81-82] He enjoyed his job in Fort Yukon.[2] [McKillican dep., p. 83] However, he had no intention of actually living in town.

> Q. And did you intend to move your family to Fort Yukon?
> A. Absolutely not. [McKillican dep., p. 53]

Instead, his family remained near Fairbanks, in North Pole. [*Id.*] McKillican worked as a police officer almost a full year, until August 2003, when he quit is job.

### B. The City Manager Tells McKillican that She is Going to Give Him a Performance Evaluation and He Quits

McKillican alleges only one offending action on the part of Defendants. [McKillican dep., p. 70] The alleged incident is one contentious conversation with Fort Yukon's City Manager Fannie Carroll. [McKillican dep., pp. 70-71] Carroll was upset, as she acknowledged in her deposition. [Ex. B, Carroll dep., p. 60] She had been embarrassed by what she saw as McKillican slowing down a body search with the Alaska

---

[1] For the purpose of this motion only, all of Plaintiffs' factual statement are assumed to be correct.

[2] A. Like I stated before, I liked my job up there. [McKillican dep., p. 83]

State Troopers. [*See* Carroll dep., pp. 85-88] She was also upset because of what she viewed as violations of the Police Department confidentiality policy by talking to individual Council members [*See* Carroll dep., pp. 64-65] McKillican had signed a statement in the place of the Police Chief acknowledging that another employee would not do this. [*See* Ex. C, FY 793] Presumably he read the policy and understood it before he signed the document. During the conversation, Carroll told McKillican that she was going to perform a job evaluation of him. [McKillican dep., pp. 69-70]

> Q. And then what happened?
> A. I told her, I said, you – I said, don't even bother. I said because I'm – I quit. That's it.
> Q. And so I want you to assume for a minute that that conversation didn't take place that day, that Fannie Carroll did not tell you, I'm going to evaluate you right now. Would you have stayed employed?
> A. Absolutely. I like my job. I like my job. [McKillican dep., p. 70]

McKillican claims that he thought that he would be terminated if he received a single poor job evaluation. [McKillican dep., pp. 67-68] However he has no basis for this contention. He admits that Carroll never said that she was going to fire him. [McKillican dep., pp. 72-73]

> Q. So what was the worst that you thought was going to happen if you had allowed her to evaluate you?
> A. I was going to be fired.
> Q. She never actually in this conversation said, I'm going to fire you, did she?
> A. No.
> …
> Q. Never said any words to the effect of, I'm going to terminate you from employment?
> A. No. [*Id.*]

He had no other basis-in-fact that he would be fired as a police officer for Fort Yukon if he received a poor job evaluation.

> Q. Had – in your tenure at the City of Fort Yukon, had you seen any police officer be terminated for a bad job evaluation?
> A. No.
> Q. So you had no experience on which to base your conclusion that a poor job evaluation would automatically lead to termination?
> A. Well that's – I just assume that's common knowledge with any kind of employment. [McKillican dep., pp. 73-74]

He simply did not think that Carroll had the right motives for conducting a job evaluation. And, on this basis, McKillican quit his job working for the City of Fort Yukon Police Department.

> Q. Was that a – at the time was that a – were her motives a concern to you?
> A. Absolutely, I mean that's why I – that's why I – you know, I quit. [McKillican dep., p. 77]

### C. McKillican Fails to Even Attempt to Use the City's Grievance Process

At the time that he quit, McKillican was aware that there were grievance procedures for personnel actions that he disagreed with.

> Q. You understood that there was a process by which an employee could challenge an adverse employment action?
> A. Yes.
> Q. And in fact, there was a multi-step process, right?
> A. Yes. [McKillican dep., p. 75]

However, he never filed a grievance regarding the proposed job evaluation that he claims he thought was so mishandled that he had to quit his job.

> Q. Now, you never filed a grievance regarding Ms. Carroll's indication to you that she was going to perform a job evaluation, right?

>    A.   No, I didn't.
>    Q.   You believed that the city manager lacked the authority to evaluate you, right?
>    A.   I – I didn't question her authority, I told – I did not agree that it was appropriate.  [McKillican dep., p. 76]

The final step in the grievance process would have been a binding decision from the City Council after McKillican had a chance to make his case.  [Handbook, Ch. 7 § 2, Ex. D, pp. 20-21]  After that, he would have had the right to take his case to court, having exhausted his contractual remedies.  [*Id.*]  Instead, he decided not to file a grievance at all.

>    Q.   But point of fact, you never – never filed any grievance, right?
>    A.   I didn't file a grievance because of the fact I didn't think I was going to get a fair shake.
>    Q.   But you don't – you don't – you don't know what shake you would have reviewed – you would have obtained because of –
>    A.   Oh, I've got a pretty good idea.
>    Q.   Nobody from the city council ever told you what the outcome of the grievance would be, did they?
>    A.   No. No. They – as a matter of fact, they never – they knew what happened, every single one of them. They had the opportunity to talk to me about it. None of them did.  [McKillican dep., pp. 78-79]

But, there is no reason to think that he could not have gotten relief if he had followed the grievance process.  According to the one contemporary City Council member whose opinion is known, Debbie McCarty, the City Council did not always follow Carroll's recommendations.

>    Q.   In terms of the city council's decision-making, did the council always move in lock-step of what Fannie Carroll told them to do?
>    A.   The city council?
>    Q.   Yes.

> A. Was what Fannie told them to do? I wouldn't think so. [Ex. E, McCarty dep., p. 50]

In fact, as a City Council member, she would have reviewed Carroll's decision independently and contradicted it if it was wrong.

> Q. And so if Fannie Carroll made an employment decision and an employee sought to bring that to a hearing before the city council, as a city council member, would you have reviewed the decision independently and reached your own decision?
> A. If the grievance – if they followed the grievance procedures according to that policy, yes.
> Q. Would you be afraid to contradict or disagree with Fannie Carroll as a city council member?
> A. No.
> Q. Did you, in fact, sometimes disagree with Fannie Carroll?
> A. Actually, I did, yeah. [McCarty dep., pp. 50-51]

But, we will never know what would have happened for sure because McKillican decided not to file a grievance based on a gut feeling that he would not get a fair shake. [McKillican dep., p. 79] That, and he was conveniently offered employment the very next day with the Fairbanks Police Department. [McKillican dep., p. 80] He had finally gotten the job that he applied for the previous February with the promise that he could be available on two weeks notice. [McKillican dep., p. 80, Ex. F, p. 8] He was at work in Fairbanks five days later. [McKillican dep., p. 80] Instead of filing a grievance to get his job back with Fort Yukon, McKillican has sued for "constructive discharge" and denial of his due process rights. [Complaint, Count III, Count IV, pg. 21]

### III. ARGUMENT

#### A. Standard for Granting a Motion for Summary Judgment

Summary judgment is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to a judgment as a matter of law.[3] The Court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact under the correctly applied and relevant substantive law."[4] Under Alaska law, the interpretation of the terms of a contract presents a question of law.[5] Likewise, the determination of whether exhaustion of remedies is required is a question of law.[6]

#### B. McKillican's Claim is Barred Because He was Required to Exhaust His Contractual Remedies

McKillican's discharge claim is barred because he has admittedly failed to exhaust the grievance process. [McKillican dep., p. 76] The Alaska Supreme Court has "consistently held that employees must first exhaust their contractual or administrative remedies, or show that they were excused from doing so, before pursuing a direct action

---

[3] *See* Fed.R.Civ.P. 56(c).

[4] *See Prison Legal News v. Lehman*, 397 F.3d 692, 698 (9th Cir. 2005) ("We apply the same standard used by the trial court under Rule 56 of the Federal Rules of Civil Procedure. We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law (citations omitted)).

[5] *Zuelsdorf v. University of Alaska, Fairbanks,* 794 P.2d 932, 933 (Alaska 1990).

[6] *Varilek v. City of Houston*, 104 P.3d 849, 852 (Alaska 2004).

against their employer."[7]  "A central principle of this doctrine is that a party is not entitled to seek judicial relief for a supposed or threatened injury until the available administrative remedies have been exhausted."[8]

In *Voigt v. Snowden, II*, the Alaska Supreme Court upheld the trial court's decision to dismiss the employee's lawsuit because he failed to exhaust administrative remedies.[9] Voigt argued that he had been wrongfully terminated.[10]  Voigt had the right to file a grievance under the Alaska Court System Personnel Rules.[11]  The Personnel Rules outlined the grievance procedures that concluded with an administrative hearing.[12] Although Voigt did file a timely grievance, he failed to follow-up by requesting a hearing.[13]  The Court held that Voigt's failure to exhaust his administrative remedies was unexcused and dismissed the claim.[14]

In *Grant v. Anchorage Police Dep't.*, the Alaska Supreme Court held that a terminated police officer's lawsuit alleging wrongful termination, breach of contract,

---

[7]   *Grant v. Anchorage Police Dep't.*, 20 P.3d 553, 557 (Alaska 2001) (*quoting Cozzen v. Municipality of Anchorage*, 907 P.2d 473, 475 (Alaska 1995)).

[8]   *Eidelson v. Archer*, 645 P.2d 171, 176 (Alaska 1982) (*citing McKart v. United States*, 395 U.S. 185, 193 (1969); *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 51 (1937)). *See also Diedrich v. City of Ketchikan*, 805 P.2d 362, 366-68 (Alaska 1991) (holding that requiring exhaustion of remedies before a public employee can bring suit for wrongful discharge is not a violation of equal protection or of the right to jury trial).

[9]   *Voigt v. Snowden, II*, 923 P.2d 778 (Alaska 1996).

[10]   *Id.* at 778-79.

[11]   *Id.* at 781.

[12]   *Id.* at 780.

[13]   *Id.* at 780.

[14]   *Id.* at 783.

unlawful discrimination, and breach of covenant of good faith and fair dealing was precluded because the officer had failed to grieve his termination.[15] Likewise, in *Eidelson v. Archer*, the plaintiff was required to exhaust administrative remedies in a suit alleging both contract and tort claims, including wrongful removal, intentional interference with contract and defamation.[16] The Court held that it was appropriate to require exhaustion of remedies because "[o]ne of the primary purposes of the exhaustion of remedies rule is to promote judicial economy by affording an institution the opportunity to correct its own errors, so as to render judicial action unnecessary."[17]

In applying the Alaska state law doctrine of exhaustion of remedies, a "court must decide the following: (1) is exhaustion of remedies required; (2) did the complainant exhaust those remedies; and (3) is the failure to exhaust remedies excused?"[18]

### 1. McKillican was required to exhaust his administrative remedies.

This first part of the three-part test requires the Court to characterize the claim at issue.[19] If an action is "an attempt to substitute a damage claim in tort for an unperfected

---

[15]   See *Grant v. Anchorage Police Dep't.*, 20 P.3d 553, 555-56 (Alaska 2001).

[16]   *Eidelson v. Archer*, 645 P.2d 171 (Alaska 1982).

[17]   *Id.* at 181 (*citing Van Hyning v. University of Alaska*, 621 P.2d 1354, 1356 (Alaska 1981)); *see also Municipality of Anchorage v. Higgins*, 754 P.2d 745 (Alaska 1998) (holding that claims of breach of contract, breach of implied covenant of good faith, intentional infliction of emotional distress, false procurement of employment, and violation of due process were barred because the plaintiff failed to exhaust administrative remedies); *Walt v. State*, 751 P.2d 1345 (Alaska 1988) (holding that wrongful discharge, defamation, breach of duty, violation of public policy, and negligence claims were barred by failure to exhaust remedies available under an applicable collective bargaining agreement).

[18]   *Eufemio v. Kodiak Island Hosp.*, 837 P.2d 95, 98-99 (Alaska 1992).

[19]   *Moore v. State, Dept. of Transp. & Pub. Facilities*, 875 P.2d 765, 767 (Alaska 1994).

administrative remedy," the complainant must first exhaust administrative remedies.[20] It is indisputable that McKillican was subject to the City of Fort Yukon's Personnel Policy Handbook, which functioned as an employment contract. [*See* Complaint ¶ 123] The Handbook expressly states that the grievance process is applicable to "any matter which adversely affects [any] employees ability to perform his or her job[.]" [Handbook, Ch. 7 § 1, Ex. D, p. 20]

Under Alaska law, McKillican's constructive discharge claim is subject to the grievance process.[21] McKillican claims that Carroll's decision to give him a job evaluation so adversely affected him that he had to resign. [McKillican dep., p. 70] This was a matter that he claims adversely affected his ability to perform his job. Consequently, the grievance procedure applied. [Handbook, Ch. 7 § 1, Ex. D, p. 20] As a matter of law, McKillican was required to exhaust his contractual administrative remedies.[22]

---

[20]     *Id.* at 767; *State, Dept. of Transp. & Public Facilities v. Fairbanks North Star Borough*, 936 P.2d 1259, 1260-61 (Alaska 1997).

[21]     *See Cameron v. Beard*, 864 P.2d 538, 545 (Alaska 1993) (remanding constructive discharge claim back to trial court for a determination of whether the employees had exhausted the grievance process); *Beard v. Baum*, 796 P.2d 1344, 1348-49 (Alaska 1990) (analyzing whether or not the plaintiff had exercised his administrative remedies before recognizing that he had stated a claim for constructive discharge).

[22]     *Moore*, 875 P.2d at 767.

### 2. McKillican did not exhaust his administrative remedies.

McKillican never filed a grievance regarding Carroll's attempt to give him a job evaluation. [McKillican dep., pp. 78-79] He therefore failed to exhaust his contractual administrative remedies.

### 3. McKillican's failure to exhaust his administrative remedies is not excused.

McKillican "didn't file a grievance with the city council because of the fact I didn't think I was going to get a fair shake." [McKillican dep., p. 79] While futility is recognized by the Alaska Supreme Court as an excuse for failure to exhaust administrative remedies,[23] McKillican's unsupported subjective belief that he was not going to get a "fair shake" is not a valid excuse.

There are only narrow exceptions to the duty to exhaust. The Alaska Supreme Court has recognized an exception to the duty to exhaust "where the administrative remedy is inadequate or where the pursuit of the administrative remedy would be futile due to the certainty of an adverse decision."[24] Under this doctrine, it is a "requirement that an adverse decision be a 'certainty.'"[25] A reviewing committee's involvement in a prior decision will not establish futility unless that involvement has made it impossible for the committee to render an impartial decision.[26] Situations where the court has found

---

[23]   *Eidelson v. Archer*, 645 P.2d 171, 181 (Alaska 1982).

[24]   *Id.*

[25]   *Voigt v. Snowden, II*, 923 P.2d 778, 782 (Alaska 1996).

[26]   *Id.*

that exhaustion was excused include where one party is not subject to the contract in question,[27] where the reviewing board did not have the power to grant relief,[28] and where the form of the procedure itself was the contested issue.[29]

None of these circumstances is present here. Rather, McKillican simply failed to pursue a grievance because of his perception that he would not get a "fair shake." [McKillican dep., p. 79] His only basis for that contention is a gut feeling that he would not get a "fair shake" because Carroll was related to other people on the Council. [McKillican dep., pp. 79, 77] However, the only City Council member who has testified on the matter, Debbie McCarty, has stated that this is not the case. [McCarty dep., pp. 50-51] In fact, she thought that the City Council would have reached its own conclusions and possibly reversed Carroll's decisions if anyone had filed a grievance. [*Id.*] It was not a "certainty" that there would be an adverse decision from the City Council, as is required under the futility doctrine.[30] Consequently, McKillican is not excused from the duty to exhaust, so his failure to file a grievance is fatal to his claims.

---

[27] *See Sprucewood Inv. Corp. v. Alaska Housing Finance Corp.*, 33 P.3d 1156, 1164 (Alaska 2001).

[28] *See State, Dept. of Revenue v. Andrade*, 23 P.3d 58, 67 (Alaska 2001).

[29] *See Kleven v. Yukon-Koyukuk School Dist.*, 853 P.2d 518, 525 (Alaska 1993).

[30] *Voigt v. Snowden, II*, 923 P.2d at 782.

C.  **McKillican's Failure to Grieve Is Not a Due Process Violation on the Part of Defendants, and Therefore He Has No Cause of Action Under § 1983**

The Complaint also appears to state a claim for violation of "Procedural Due Process" as to each Plaintiff, including McKillican. [*See* Complaint, Count IV] Defendants are entitled to summary judgment on this claim as well.

Defendants are not arguing that the failure to utilize the grievance procedures itself bars Plaintiff's § 1983 claim under Alaska law. That argument has been conclusively rejected by the United States Supreme Court.[31] Rather, Defendants' argument is that the failure on the part of the employee to utilize the available due process procedures is not a due process violation on the part of the employer. "A claim for violation of procedural due process has two components. First, plaintiff must show that a protected property interest was taken. Second, it must show that the procedural safeguards surrounding the deprivation were inadequate."[32] In the context of public employment terminable only for cause, the right to adequate procedural safeguards requires "notice and an opportunity to

---

[31] *See Felder v. Casey*, 487 U.S. 131, 147 (1988); *Diedrich v. City of Ketchikan*, 805 P.2d 362, 368-69 (Alaska 1991) (acknowledging that *Felder* controls on the issue of exhaustion of § 1983 claims).

[32] *Sierra Lake Reserve v. City of Rocklin*, 938 F.2d 951, 956 (9th Cir. 1991) (*vacated on other grounds in City of Rocklin v. Sierra Lakes Reserve,* 506 U.S. 802 (1992)) (*relevant portion reinstated in Sierra Lake Reserve v. City of Rocklin,* 987 F.2d 662 (9th Cir. 1993)).

respond."[33] McKillican's due process claims cannot survive because he was provided with adequate procedural safeguards. He simply chose not to use them.[34]

The contractual grievance rights that McKillican refused to exercise form the entire basis of his due process claim.[35] [Complaint, Count IV] Whatever due process rights McKillican had in the grievance process were not violated by the City. It never had the chance to take any action because McKillican quit and never filed a grievance. [McKillican dep., pp. 70-71, 76] Rather, McKillican's failure to exercise his rights amounts to a "self inflicted wound," and not a due process violation on Defendants' part.[36] In short, the same facts which entitle Defendants to summary judgment based on

---

[33] *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546 (1985).

[34] See *Hibbs v. HDM Dep't of Human Res.*, 273 F.3d 844, 873 (9th Cir. 2001), *aff'd on other grounds*, 538 U.S. 721 (2003) ("Because they gave Hibbs clear notice and a full opportunity to be heard, the procedures followed by the Welfare Division amply satisfy the due process requirements spelled out in *Loudermill* and *Gilbert [v. Homar,* 520 U.S. 924, 929 (1997)]. We therefore find no error in the district court's grant of summary judgment against Hibbs on his procedural due process claim.").

[35] The progressive discipline provisions can begin at any point chosen by the City, only apply to suspensions and reprimands prior to termination and the suspensions are expressly grievable. [Handbook, Ch. 5 § 8, Ex. D, p. 15] If McKillican had a problem with the progressive discipline provision, his due process remedy under his contract was the grievance procedures.

[36] See *U.S. v. Segal*, 423 F.3d 767, 776-77 (7th Cir. 2005) ("Segal first challenges the district court's decision to proceed with the hearing even though he had not received IFG financial statements from Fireman's Fund. The problem with Segal's challenge is that he did not receive the documents because he did not sign a confidentiality agreement. … This was a self-inflicted wound, not a deprivation of due process by the district court.").

McKillican's failure to exhaust his administrative remedies likewise bar McKillican from pursuing his procedural due process claim.[37]

### D. McKillican Was Not Constructively Discharged

McKillican cannot establish a constructive discharge claim under the facts that he has alleged. Under Alaska law, a constructive discharge claim is a two step process because "[c]onstructive discharge is not an independent cause of action, but merely satisfies the discharge element in a wrongful discharge claim."[38] In the context of constructive discharges, "[t]o prevail on a wrongful termination claim an employee must prove: (1) that the employee was discharged by its employer and (2) that the employer breached a contract or committed a tort in connection with the employee's termination."[39] There is no need for the Court to reach the question of whether there has been a tort or a breach of contract because McKillican cannot show that he was constructively discharged. His claim fails because he cannot satisfy the first element of the tort.

"To establish constructive discharge, an employee has the burden of showing that a reasonable person in the employee's position would have felt compelled to resign."[40] In *Cameron v. Beard*, the Alaska Supreme Court explained that "courts have generally held

---

[37] *See also, Pederson-Szafran v. Baily*, 837 P.2d 124, 129, n.3 (Alaska 1992) ("[O]ur conclusion that the superior court correctly granted summary judgment to the state because of Szafran's failure to file a timely administrative appeal, or to exhaust her administrative remedies, makes it unnecessary to address [her due process claim].").

[38] *City of Fairbanks v. Rice*, 20 P.3d 1097, 1102 n.7 (Alaska 2000).

[39] *Charles v. Interior Regional Housing Authority*, 55 P.3d 57, 59 (Alaska 2002).

[40] *Cameron v. Beard*, 864 P.2d 538, 547 (Alaska 1993).

that criticism of job performance or other management decisions do not, standing alone, create intolerable working conditions."[41] The Supreme Court has indicated that there must be some sort of a prolonged campaign against the employee in order to show constructive discharge.[42] This is true no matter how subjectively affected the person is by a single remark.[43]

Like the plaintiff in *Pitka v. Interior Regional Housing Authority*, McKillican was not in a position where a reasonable person would have felt compelled to resign.[44] "'[C]riticism of job performance or other management decisions do not, standing alone, create intolerable workplace conditions' and the record does not indicate that [Defendants] 'engage[d] in a sustained campaign' against" McKillican.[45] He has admitted that he quit only because he thought that he was going to receive a poor evaluation. [McKillican dep., p. 70] He has provided no reasonable basis for his

---

[41]   *Id*.

[42]   *Pitka v. Interior Regional Housing Authority*, 54 P.3d 785, 789 (Alaska 2002) ("Pitka claims that she was constructively discharged because her work conditions were so intolerable she had to resign. She claims that she was 'humiliated' by the executive director's criticism that she was a 'complainer,' that the grievance decision was 'incomplete, nonresponsive, and critical,' and that she 'could no longer work under [the executive director].' However, 'criticism of job performance or other management decisions do not, standing alone, create intolerable workplace conditions' and the record does not indicate that IRHA 'engage[d] in a sustained campaign' against Pitka.").

[43]   *Id*. ("With respect to her claim that she was humiliated by Wilson's remarks that she was a 'complainer,' even if she were profoundly affected by that isolated remark, criticism of job performance alone is not enough to create intolerable work conditions.").

[44]   *Id*.

[45]   *Id*. ("However, 'criticism of job performance or other management decisions do not, standing alone, create intolerable workplace conditions' and the record does not indicate that IRHA 'engage[d] in a sustained campaign' against Pitka.")

contention that he was going to be fired. Instead, he claims that it was "common knowledge" that one bad job review would result in termination, even though he had never actually seen such a termination occur during his tenure in Fort Yukon. [McKillican dep., p. 74] The possibility of one poor evaluation that he could have challenged through the grievance process is not enough to show "that a reasonable person in [McKillican's] position would have felt compelled to resign."[46] A single conversation and the threat of a bad employment evaluation is nowhere near enough provocation to satisfy a constructive discharge claim.

### IV.   CONCLUSION

Defendants respectfully request that the Court grant summary judgment on McKillican's claims for Counts III and IV. He completely failed to utilize the grievance process. His wrongful discharge claims are barred and he has no viable due process claim for that reason. Additionally, he has failed to state a claim for constructive discharge because he cannot show that a reasonable person would have felt compelled to resign based on the threat of one poor job evaluation.

DATED at Anchorage, Alaska this 13th day of September, 2006.

JERMAIN, DUNNAGAN & OWENS, P.C.

By:   s/ Matthew Singer
         Matthew Singer
         Alaska Bar No. 9911072

---

[46]   *Cameron v. Beard*, 864 P.2d 538, 547 (Alaska 1993).

By: s/ Howard S. Trickey
Howard S. Trickey
Alaska Bar No. 7610138
3000 A Street, Suite 300
Anchorage, AK 99503
Phone: (907) 563-8844
Fax: (907) 563-7322

**CERTIFICATE OF SERVICE**

I hereby certify that on September 13, 2006,
a true and correct copy of the foregoing
document was served electronically
on the following counsel of record:

Michael J. Walleri
330 Wendell St., Suite E
Fairbanks, AK 99701

s/ Matthew Singer