Howard S. Trickey
Matthew Singer
JERMAIN, DUNNAGAN & OWENS, P.C.
3000 A Street, Suite 300
Anchorage, Alaska 99503
(907) 563-8844

Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA


| | | |
|---|---|---|
| REGINALD FLEMING, CHRISTOPHER DELEON, CHRIS HAMPTON, WILLIAM D. MCKILLICAN, and TODD SCHLUMBOHM, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| FANNIE CARROLL, and the CITY OF FORT YUKON, ALASKA, | ) ) ) | |
| Defendants. | ) ) | |
| | ) | Case 4:04-cv-00034-RRB |

### MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (REGINALD FLEMING)

## I.    INTRODUCTION

For several reasons, the City of Fort Yukon and former City Manager Fannie Carroll are entitled to summary judgment on each claim brought by former Police Chief Reginald Fleming. First, Fleming incorrectly asserts that he was a "for-cause" employee and entitled to the grievance rights of the City's personnel manual. Fleming had a written at-will employment contract which expressly waived his rights under the personnel

manual, including his rights to a "for cause" standard and his rights to any grievance process.   Second, even if he was somehow entitled to the "for cause" and grievance protections of the City's personnel manual, Fleming's claims are barred because he failed to exhaust the required grievance procedures.   Third, the City had good reason to terminate Fleming at the time of his termination, and it learned a week later of even more reasons why Fleming had to be terminated – Fleming was not legally qualified to work as an Alaskan police officer and was hiring other illegal officers.  The City's termination of Fleming is therefore justified under the after-acquired evidence doctrine and his claim is barred.   Fourth, as for Fleming's overtime wages claim (Count I), Fleming's supervisory duties as Chief of Police rendered him exempt from overtime under Fair Labor Standards Act (FLSA).   Consequently, Defendants are entitled to summary judgment on each of Fleming's claims.

## II.     STATEMENT OF FACTS

### A.     Fleming is Hired as the At-Will Police Chief

Fleming was hired as Chief of Police by the City of Fort Yukon in October 2001. [Complaint ¶ 7]  His employment contract stated: "Nothing in this contract shall prevent, limit, or otherwise interfere with the right of the City Council or the City Manager to terminate the services of the Employee at any time for any or no cause."  [Ex. A, FY 503] Also, while the City's personnel manual contained a "for cause" termination standard and grievance rights, Fleming's contract expressly waived these rights. Fleming and the City "agreed that, with the exception of the applicable section addressing vacation, leave,

health insurance, retirement benefits and travel, the provisions of the City of Fort Yukon

Personnel Policy Manual do not apply to this agreement." [Ex. A, FY 504]

Fleming was hired and paid a yearly salary of $50,000. [Ex. A, FY 502; Ex. B,

FY 662] Fleming was hired as police chief in order to reform the department. [Fleming

dep., p. 55] During his initial interview, the City Manager and City Council discussed

"that the police department had a bad reputation and they wanted that cleaned up." [*Id*.]

## B.      Problems Develop in the Police Department Under Fleming's Leadership

As Chief of Police, Fleming was the top ranking person in the police department

and he supervised the other officers. [Fleming dep., pp. 75-77] Fleming was also

responsible for deciding who got promoted and what trainings the officers could attend.

[Fleming dep., pp. 71-72] He also exercised some control over the dispatchers. [Fleming

dep., pp. 160-162]

> Q:      And you understood yourself to be responsible for scheduling the department?
> A.      Yes, sir.
> …
> Q.      You set the schedules for the other police officers and for the dispatchers?
> A.      Yes, sir. [Fleming dep., p. 71]

Fleming and the City Manager developed a personality conflict. He was unwilling

to take orders from anyone. As he noted regarding management conflicts with the City

Manager, "I would tell – to protect the city, I would tell the officers, I will give you your

directions." [Fleming dep., p. 250] As to whether the City Manager ever challenged his

authority, Fleming would only allow that she "[t]ried to."  [Fleming dep., p. 251]

However, the City Manager outranked him in the hierarchy of authority in the City.

[McCarty dep., p. 50]

> Q.    And again, the council had a chain of command, right?
> A.    Yes.
> Q.    And, Fannie Carroll was the top of that chain of command?
> A.    Yes, she was the city manager.  [McCarty dep., p. 50]

Eventually, Fleming's attitude towards the City Manager's authority led to his

termination, and the City expressly listed insubordination and disrespect for superiors as

reasons for his termination.  [Ex. E]

In December 2002, Fleming became ineligible for employment as a police officer

under the Alaska regulations because he had never received his basic police certification.[1]

However, he did not inform the City that he had never obtained his certification.  In fact,

in 2003 represented to the City Manager and the entire City Council that all of his

officers were certified.  [Affidavit of Fannie Carroll ("Carroll Aff."), ¶ 2]  Prior to his

termination, the City Manager was not aware that Fleming had not obtained his

certificate.  [Carroll Aff. ¶ 3]

---

[1]    13 AAC 85.020(b) ("A participating police department may not employ a person as a police officer for more than 14 consecutive months unless the person has a current basic certificate issued by the council under 13 AAC 85.040, or unless an extension is granted under (c) of this section."  There is no evidence that an extension was ever asked for or granted. But, all of Plaintiffs' certification documentation is currently subject to a discovery request that Plaintiffs have not complied with as of the time of this writing.)

Additionally, Fleming had hired at least one other unqualified officer. In March 2003, Fleming hired Todd Schlumbohm, another Plaintiff in this case, as a police officer. [Complaint ¶ 11] Schlumbohm was not qualified to be hired as a police officer in Alaska under the Alaska Police Standards Council regulations.

Under the Alaska Police Standards Council regulations, a person cannot be hired as a police officer unless he meets certain qualifications.[2] The regulations do not allow a person to be hired as a police officer if he has had two or more Driving While Intoxicated (DWI) convictions in the prior ten years.[3] Schlumbohm had three prior DWI convictions, two of which were within the prior ten years. [Ex. F, FY 876, FY 879; Schlumbohm dep., p. 45] He reported the DWIs on his Police Standards Council Personal History Statement. [Ex. G, FY 876, FY 879]

Fleming apparently knew about Schlumbohm's DWIs but decided to hire him anyway. In his deposition, he claims that he hired Schlumbohm as a "Village Police Officer." [Fleming dep., pp. 266-267]

> Q.    So, it's your testimony that you knew that Todd Schlumbohm did not meet the basic standards to be a police officer under the Alaska Police Standards Council?
> A.    He could be a VPO officer, sir.
> Q.    So he could not be a police officer?
> A.    He was a police officer, he was just a different type. He carried a gun, everything was just a different name, village police officer instead of what they call a police officer.

---

[2]    *See* 13 AAC 85.010.

[3]    13 AAC 85.010(b)(2).

Fleming was mistaken about the law. Fort Yukon is a participating department with the Alaska Police Standards Council, and as such its police officers must meet the Council's police officer standards, not the village police officer standards.[4] Other officers in the department understood this to be the case. As William McKillican, has testified:

> Q. Did you fill out an F-3 form?
> A. I believe that I did. I had to have. It was an APSC department, I had to have.
> Q. You understood that the City of Fort Yukon is an Alaska Police Standards Council department?
> A. Yes.
> Q. Its employees, its officers have to meet the APSC standards, correct?
> A. Yes. [McKillican dep., pp. 48-49]

So the people who worked under Fleming were aware of the proper standards, even if Fleming was not.

This was not the last time Fleming would look the other way for Schlumbohm. Schlumbohm's Alaska driver's license was suspended for driving without insurance. [Schlumbohm dep., p. 65] He continued to patrol Fort Yukon by car while his license was suspended. [Schlumbohm dep., p. 66-67] According to Schlumbohm, Fleming knew about his suspended license and told him to patrol anyway. [*Id.*]

> Q. [Fleming was] willing to look the other way with a suspended license?
> A. He didn't actually look the other way, I mean it was kind of, hey, you screwed up here, it's – you need to – you need to get

---

[4]    Instead of the Village Police Officer standards, the normal Alaska police standards requirements apply to any "participating police department[.]" 13 AAC 85.010(b). According to the Alaska Police Standards Council, Fort Yukon is a participating department. *See* http://www.dps.state.ak.us/apsc/asp/member.asp.

> this taken care of.  He just said, you can continue working up here, but he said, limit driving, obviously, which I did, which was nice, I could do my reports, but he said, we'll get a city permit for you.
>
> Q.    But, in fact, you did drive the vehicle on a – while you had a suspended –
>
> A.    In Fort Yukon, yes.
>
> Q.    You drove the Fort Yukon police vehicle while your driving privileges with the State of Alaska were suspended?
>
> A.    For the state, yes.
>
> Q.    Do you know whether there are any laws or regulations that permit a city police chief to give a city driving permit to someone who has a suspended state drivers license?
>
> A.    I don't know.
>
> Q.    You just took Reggie Fleming at his word on that?
>
> A.    I did, yeah.  [Schlumbohm dep., pp. 66-67]

There is no provision of state law that authorizes a "city permit," and a valid driver's license is a state requirement for being able to drive a car, while patrolling or otherwise.[5] In fact, municipalities are prohibited by statute from having their own licensing requirements.[6] This situation is emblematic of the way the police department functioned under Fleming's watch.  He acted as if he was the only authority, and eventually this led to his downfall.

---

[5]    AS 28.15.011(b) ("Every person exercising the person's privilege to drive, or exercising any degree of physical control of a motor vehicle upon a highway, vehicular way or area, or other public property in this state, is required to have in the possession of the person a valid Alaska driver's license issued under the provisions of this chapter for the type or class of vehicle driven, unless expressly exempted by law from this requirement.").

[6]    AS 28.15.011(c) ("A municipality may not require a person to obtain any other driver's license to drive or operate a motor vehicle in this state.").

**C.      Fleming is Terminated and Fails to Grieve His Termination**

Fleming worked as Chief of Police for the City of Fort Yukon until his employment was terminated in February 2004.  [Complaint ¶ 7]  In February 2004, the City Manager called Fleming at his home in Fairbanks and instructed him to return to the City to deal with personnel problems at the police department.  [Fleming dep., 174-175] Among other things, Fleming had taken no leadership to address a community petition to oust Officer Deleon, who had upset the community with an insensitive, overly-aggressive style of policing.[7]  [*See* Community Petition, Ex. I]   Fleming admits that he refused to comply with Ms. Carroll's request to return to Fort Yukon.  [Fleming dep., pp. 175, 177] Instead, he said, "if you are going to fire me, fire me[.]"  [Fleming dep., p. 178]

The City took Fleming up on his offer and sent him a letter of termination dated February 9, 2004.  [Ex. E]  Fleming received it that day.  [Fleming dep., p. 173]  The reasons listed for his termination included "insubordination, disrespect to superiors, failure to properly administer the Department, and breakdown of communications."  [Ex. E]

Fleming was employed under a contract that stated: "[n]othing in this agreement, shall prevent, limit, or otherwise interfere with the right of the City Council or the City Manager to terminate the services of the employee for any or no cause."  [Ex. B, FY 663] The City of Fort Yukon sent Fleming a letter of termination stating that he was an at-will

---

[7]      In the period between December 2003 and February 2004, relations between the City Manager and Chief Fleming deteriorated badly, as did relations between the police department and the community.

employee.  [Ex. E]  This letter gave alternative grounds for Fleming's termination if he chose to "challenge" the no cause termination.  [*Id.*]  The for-cause reasons for his termination included insubordination, failure to properly administer the Department, and breakdown of communications.  [*Id.*]

The City's Personnel Manual had a grievance procedure.  Fleming was aware of Fort Yukon's grievance process and how it worked.  [Fleming dep., p. 137]  In fact, Fleming was aware of every single step of the grievance process, including the final appeal to the City Council if he did not like the result of the initial hearing.  [Fleming dep., p. 139]  He had even instructed others in how to use the process while he was Chief of Police.  [Fleming dep., pp. 136-137]  He also had a copy of the personnel manual. [Fleming dep., pp. 142-143]

Fleming claims he was "not regulated by … what the personnel regulations says to me about doing something."  [Fleming dep., p. 147]  Fleming also claims that he had grievance rights under the personnel manual and was entitled to grieve his termination under the multi-step process.  [Fleming dep., p. 148]  Instead of doing so, Fleming claims that he told the City Attorney that he was going to file a grievance and that the City Attorney said "okay, you can do what you want to do[.]"  [Fleming dep., p. 143]  Then Fleming claims on the one hand that the City Council members were instructed not to talk to him personally, and on the other that he told a City Counsel member about his grievance.  [Fleming dep., pp. 145-146]  In either case, he never filed a written grievance.

Fleming instead filed suit for various employment wrongs in December 2004. [Complaint, ¶ 21]

## III.    STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to a judgment as a matter of law.[8]    The Court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact under the correctly applied and relevant substantive law."[9]    Under the FLSA, whether someone is an employee is a matter of law.[10]    Under Alaska law, the interpretation of the terms of a contract presents a question of law.[11]    Likewise, the determination of whether exhaustion of remedies is required is a question of law.[12]

## IV.    FLEMING'S WRONGFUL DISCHARGE AND 42 U.S.C. § 1983 CLAIMS ARE BARRED BECAUSE HE WAS AN AT-WILL EMPLOYEE AND HAD CONTRACTUALLY WAIVED THE PERSONNEL MANUAL'S PROVISIONS REGARDING TERMINATION AND GRIEVANCES

Fleming's wrongful termination and § 1983 claims are barred because he had no contractual right to for-cause termination or to the grievance process.    The basis for

---

[8]    *See* Fed.R.Civ.P. 56(c).

[9]    *See Prison Legal News v. Lehman*, 397 F.3d 692, 698 (9th Cir. 2005) ("We apply the same standard used by the trial court under Rule 56 of the Federal Rules of Civil Procedure.  We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. (citations omitted)).

[10]    *See Moreau v. Air France*, 356 F.3d 942, 945 (9th Cir. 2004).

[11]    *Zuelsdorf v. University of Alaska, Fairbanks,* 794 P.2d 932, 933 (Alaska 1990).

[12]    *Varilek v. City of Houston*, 104 P.3d 849, 852 (Alaska 2004).

Fleming's contention that his termination had to be "for just cause" is that he was terminated in violation of the Fort Yukon personnel manual and its grievance procedures. [Complaint ¶¶ 123, 124] Fleming's employment contract expressly waived his rights to a "for cause" termination standard or a grievance process.

It is well-established that an employee can bargain away rights to a for-cause termination standard. Indeed, the instant case is strikingly similar to *Ramsey v. City of Sand Point*.[13] In *Ramsey*, as here, an applicant to the chief of police position willingly signed an agreement that provided – in contrast to provisions in the municipal code – that the applicant's employment as chief of police would be at-will. The Alaska Supreme Court upheld the trial court's grant of summary judgment in favor of the city, finding that the plaintiff had waived his protections under the municipal code.[14]

Here, too, there is ample evidence that Fleming waived any contrary protections of the personnel manual. His signed contract expressly stated: "Nothing in this contract shall prevent, limit, or otherwise interfere with the right of the City Council or the City Manager to terminate the services of the Employee at any time for any or no cause." [Ex. A, FY 503] The contract also stated that it was "agreed that, with the exception of the applicable section addressing vacation, leave, health insurance, retirement benefits and travel, the provisions of the City of Fort Yukon Personnel Policy Manual do not apply to this agreement." [Ex. A, FY 504]

---

[13]     936 P.2d 126 (Alaska 1997).

[14]     *Id.* at 130.

Thus, Fleming expressly waived any right to a for-cause termination or the grievance process. His wrongful termination claim in Count III is based on a provision of the personnel manual – the "for cause" standard – which he expressly waived in his contract. This provision is expressly inapplicable to Fleming under his contract.

As an at-will employee, Fleming could be "fired for any reason that does not violate the implied covenant of good faith and fair dealing."[15] The City's reasons listed in Fleming's termination letter were insubordination and disrespect for superiors. [Ex. E] Fleming testified that when he was called to return to Fort Yukon by the City Manager, he told her that he would not come back. [Fleming dep., p. 177] Instead, he "said, if you are going to fire me, fire me[.]" [Fleming dep., p. 178] Taking him up on his offer cannot possibly be a breach of an at-will employment contract in Alaska.[16] Fleming contracted to be an at-will employee and this Court should therefore treat him as an at-will employee.

Likewise, Count IV's due process claim is barred by the express terms of Fleming's contract. To state a claim for violation of due process, it is axiomatic that the plaintiff must first establish that he has a property right.[17] The Alaska Supreme Court holds that "A state employee who serves at will has no expectation of continued

---

[15]    *Luedtke v. Nabors Alaska Drilling, Inc.*, 768 P.2d 1123, 1131 (Alaska 1989); *see also Pitka v. Interior Regional Housing Authority*, 54 P.3d 785, 789 (Alaska 2002).

[16]    *See id.* (holding that even simply firing an employee to avoid a personality conflict with another employee could not be a breach of the covenant of good faith and fair dealing for an at-will employee).

[17]    *Blackburn v. State, Dept. of Transp. and Public Facilities*, 103 P.3d 900, 906 (Alaska 2004)

employment and therefore no property right."[18]  Because Fleming has no property right,

his claim that procedural due process has been violated fails as a matter of law.[19]  Also,

while he claims in his complaint to have rights to the grievance procedures, his contract

expressly waived that section of the City's personnel manual.  Fleming's wrongful

termination and § 1983 claims therefore fail as a matter of law.

## V.     IN THE ALTERNATIVE, IF FLEMING HAD RIGHTS UNDER THE PERSONNEL MANUAL, THEN HIS CLAIM IS BARRED FOR FAILURE TO EXHAUST HIS CONTRACTUAL REMEDIES

As explained above, the City believes that Fleming's contract expressly waived

both the "for cause" protection and the grievance rights contained in the City's personnel

manual.  If this Court disagrees, then Fleming's wrongful discharge claim still fails as a

matter of law because he failed to complete the grievance process.  The Alaska Supreme

Court has "consistently held that employees must first exhaust their contractual or

administrative remedies, or show that they were excused from doing so, before pursuing

a direct action against their employer."[20]  "A central principle of this doctrine is that a

party is not entitled to seek judicial relief for a supposed or threatened injury until the

available administrative remedies have been exhausted."[21]

---

[18]    *Id.*

[19]    *Id.*

[20]    *Grant v. Anchorage Police Dep't.*, 20 P.3d 553, 557 (Alaska 2001) (*quoting Cozzen v. Municipality of Anchorage*, 907 P.2d 473, 475 (Alaska 1995)).

[21]    *Eidelson v. Archer*, 645 P.2d 171, 176 (Alaska 1982) (*citing McKart v. United States*, 395 U.S. 185, 193 (1969); *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 51 (1937)).  *See also Diedrich v. City of Ketchikan*, 805 P.2d 362, 366-68 (Alaska 1991) (holding that requiring

In *Voigt v. Snowden, II*, the Alaska Supreme Court upheld the trial court's decision to dismiss the employee's lawsuit because he failed to exhaust administrative remedies.[22] Voigt argued that he had been wrongfully terminated.[23]   Voigt had the right to file a grievance under the Alaska Court System Personnel Rules.[24]   The Personnel Rules outlined the grievance procedures that concluded with an administrative hearing.[25] Although Voigt did file a timely grievance, he failed to follow up by requesting a hearing.[26]  The Court held that Voigt's failure to exhaust his administrative remedies was unexcused and dismissed the claim.[27]

In *Grant v. Anchorage Police Dep't.*, the Alaska Supreme Court held that a terminated police officer's lawsuit alleging wrongful termination, breach of contract, unlawful discrimination, and breach of covenant of good faith and fair dealing was precluded because the officer had failed to grieve his termination.[28]   Likewise, in *Eidelson v. Archer*, the plaintiff was required to exhaust administrative remedies in a suit alleging both contract and tort claims, including wrongful removal, intentional

---

exhaustion of remedies before a public employee can bring suit for wrongful discharge is not a violation of equal protection or of the right to jury trial).

[22]    *Voight v. Snowden, II,* 923 P.2d 778 (Alaska 1996).

[23]    *Id.* at 778-79.

[24]    *Id.* at 781.

[25]    *Id.* at 780.

[26]    *Id.* at 780.

[27]    *Id.* at 783.

[28]    *See Grant v. Anchorage Police Dep't.,* 20 P.3d 553, 555-556 (Alaska 2001).

interference with contract and defamation.[29]   The Court held that it was appropriate to require exhaustion of remedies because "[o]ne of the primary purposes of the exhaustion of remedies rule is to promote judicial economy by affording an institution the opportunity to correct its own errors, so as to render judicial action unnecessary."[30]

In applying the Alaska state law doctrine of exhaustion of remedies, a "court must decide the following: (1) is exhaustion of remedies required; (2) did the complainant exhaust those remedies; and (3) is the failure to exhaust remedies excused?"[31]

## A.    Fleming Was Required to Exhaust His Administrative Remedies

This first part of the three-part test requires the Court to characterize the claim at issue.[32]   If an action is "an attempt to substitute a damage claim in tort for an unperfected administrative remedy," the complainant must first exhaust administrative remedies.[33] The City believes that Fleming's employment contract waived his rights under the City's Personnel Policy Handbook.   But if this Court disagrees, then it is indisputable that

---

[29]    *Eidelson v. Archer,* 645 P.2d 171.

[30]    *Id.* at 181 (*citing Van Hyning v. University of Alaska*, 621 P.2d 1354, 1356 (Alaska 1981)); *see also Municipality of Anchorage v. Higgins*, 754 P.2d 745 (Alaska 1998) (holding that claims of breach of contract, breach of implied covenant of good faith, intentional infliction of emotional distress, false procurement of employment, and violation of due process were barred because the plaintiff failed to exhaust administrative remedies); *Walt v. State*, 751 P.2d 1345 (Alaska 1988) (holding that wrongful discharge, defamation, breach of duty, violation of public policy, and negligence claims were barred by failure to exhaust remedies available under an applicable collective bargaining agreement).

[31]    *Eufemio v. Kodiak Island Hosp.*, 837 P.2d 95, 98-99 (Alaska 1992).

[32]    *Moore v. State, Dept. of Transp. & Pub. Facilities*, 875 P.2d 765, 767 (Alaska 1994).

[33]    *Id.*; *State, Dept. of Transp. & Public Facilities v. Fairbanks North Star Borough*, 936 P.2d 1259, 1260-61 (Alaska 1997).

Fleming was subject to the City of Fort Yukon's Personnel Policy Handbook, which functioned as an employment contract.  [*See* Complaint ¶ 123]  The Personnel Policy Handbook expressly states that the grievance process is applicable to an employee who is terminated.  [Personnel Policy Handbook Ch. 5 § 3, Ex. J., p. 14]

If he was entitled to grievance rights at all, then Fleming's wrongful discharge claim is certainly subject to the grievance process.  The claim is based upon his dismissal from a position as an employee of Fort Yukon.  [Complaint ¶¶ 123-124]  Dismissal is expressly recognized as grievable in the employment contract.  [Personnel Policy Handbook Ch. 5 § 3, Ex. J, p. 14]  In fact, taking Fleming at his word, if he had grievance rights, he started the grievance process by complaining to the City's lawyer.  [Fleming dep., pp. 139, 143-144]  In fact, this is directly analogous to the *Voight* case.[34]  Voigt filed a timely grievance, but failed to follow up by requesting a hearing.[35]  The Alaska Supreme Court held that Voigt's failure to exhaust his administrative remedies was unexcused and dismissed the claim.[36]

In Fleming's case, having talked to his supervisor's representative, the next step was to file a written grievance.  [Personnel Policy Handbook Ch. 7 § 2]  Fleming knew that the grievance process would lead to a hearing before the City Council and that it was a multi-step process.  [Fleming dep., p. 139]  The City Council itself had the power to

---

[34]    *Voight v. Snowden II*, 923 P.2d 778 (Alaska 1996).

[35]    *Id.* at 780.

[36]    *Id.* at 783.

remedy his termination and therefore the power to remedy this claim. [Personnel Policy Handbook Ch. 7 § 2] Fleming was required to exhaust his contractual administrative remedies.[37] Fleming failed to file a written grievance, so he failed to finish the process that he had started.

### B.    Fleming Did Not Exhaust His Administrative Remedies

Fleming did not exhaust his contractual administrative remedies. He spoke to the City Attorney, who told him to go ahead and file a grievance. [Fleming dep., pp. 143-144] He did not file anything at all in writing. [Fleming dep., p. 144] Talking to the City Attorney may have been a proper way to start the grievance process under the circumstances as Fleming presents them in his deposition. [Fleming dep., pp. 143-144] But, even taking him at his word, Fleming abandoned the grievance process at step 2 when he failed to submit a complaint in writing. [Ex. K] This is a failure to exhaust his contractual remedies.

### C.    Fleming's Failure to Exhaust His Administrative Remedies Is Not Excused

Fleming is not excused from exhausting his remedies. The Alaska Supreme Court has recognized a limited exception to this duty to exhaust remedies only "where the administrative remedy is inadequate or where the pursuit of the administrative remedy would be futile due to the certainty of an adverse decision."[38] Under this doctrine, it is a

---

[37] *Moore v. State, Dept. of Transp. & Pub. Facilities*, 875 P.2d 765, 767 (Alaska 1994).

[38] *Id.*

"requirement that an adverse decision be a 'certainty.'"[39]    A reviewing committee's involvement in a prior decision will not establish futility unless that involvement has made it impossible for the committee to render an impartial decision.[40]    Situations where the court has found that exhaustion was excused include where one party is not subject to the contract in question,[41] where the reviewing board did not have the power to grant relief,[42] and where the form of the procedure itself was the contested issue.[43]    There is no evidence that an adverse ruling in a hearing in front of the City Council would have been a certainty, as is required by the Alaska Supreme Court to excuse exhaustion.[44]    Fleming is not excused.

Consequently, while the City continues to believe that Fleming waived any right to a grievance process when he signed his employment contract, if he had any such rights, he failed to exhaust them.    Either way, his wrongful termination and due process claims fail as a matter of law.

---

[39]    *Voigt*, 923 P.2d at 782.

[40]    *Id*.

[41]    *See Sprucewood Inv. Corp. v. Alaska Housing Finance Corp.*, 33 P.3d 1156, 1164 (Alaska 2001).

[42]    *See State, Dept. of Revenue v. Andrade*, 23 P.3d 58, 67 (Alaska 2001).

[43]    *See Kleven v. Yukon-Koyukuk School Dist.*, 853 P.2d 518, 525 (Alaska 1993).

[44]    *Voigt*, 923 P.2d at 782.

## VI.    UNDER THE AFTER-ACQUIRED EVIDENCE DOCTRINE, FLEMING'S WRONGFUL TERMINATION CLAIM FAILS AS A MATTER OF LAW

As explained above, the City believes that Fleming was an "at will" employee and that it properly terminated him for his insubordinate refusal to return to work. The City also believes that if Fleming was not "at will" and instead was entitled to the protections of the personnel manual, as Fleming appears to allege, then his claim fails as a matter of law because he failed to exhaust. In this section, the City explains that even if neither of the arguments above are correct, the City's termination of Fleming is valid under the after-acquired evidence doctrine.

The Alaska Supreme Court recently acknowledged the after-acquired evidence doctrine and held that such evidence is admissible in employment cases in Alaska.[45] There are two versions of the after-acquired evidence doctrine. In federal courts involving discrimination claims, courts hold that where after-acquired evidence justifies a termination, the plaintiff will receive back-pay from the date of the wrongful employment action to the date the after-acquired evidence was discovered.[46]

But, in cases that do not assert civil rights-type claims and instead involve simply a dispute about a general employment matter, courts apply a different version of the after-

---

[45]    *See Domke v. Alyeska Pipeline Service Co., Inc.*, 137 P.3d 295, 304 (Alaska 2006); *Brogdon v. City of Klawock*, 930 P.2d 989, 992 (Alaska 1997) ("We rule at this time only that the limitation imposed by the trial court that evidence in support of new reasons for termination must be such as would have been discovered had termination not taken place is erroneous.").

[46]    *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 362 (1995); *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 759 (9th Cir. 1996).

acquired evidence rule.[47]  In routine employment cases, like the instant dispute, where the employee's claim is only related to a breach of the employment contract, many state courts hold that where after-acquired evidence justified a termination, the court will refuse to impose liability at all.[48]  Essentially, in these cases the public policy favors protecting the employer from dishonest employees rather than the other way around.[49]  In other words, "[s]ince the [plaintiffs] were not lawfully qualified for their jobs, they cannot be heard to complain that they improperly lost them."[50]  Such is our situation here, and it is likely that the Alaska Supreme Court would agree with these precedents.

[Complaint ¶¶ 123-124]

Fleming was not certified under the Alaska Police Standards Council standards. Fleming had never received his basic certification from the Council, although no one in Fort Yukon was aware of it during his employment.  [Carroll Aff. ¶ 6]  Assuming for this

---

[47]     *Camp v. Jeffer, Mangels, Butler & Marmaro*, 41 Cal. Rptr.2d 329, 339-40 (Cal.App. 2 Dist. 1995); *Gassman v. Evangelical Lutheran Good Samaritan Soc., Inc.*, 921 P.2d 224, 229-30 (Kan.App. 1996) ("Once the discriminatory actions of the employer are eliminated from the equations, we ultimately get back to the underlying principle that after acquired evidence is a complete bar to any recovery"); *Gassmann v. Evangelical Lutheran Good Samaritan Soc., Inc.*, 933 P.2d 743, 728-29 (Kan. 1997) (affirming court of appeals decision on after-acquired evidence because the claim was "founded on breach of an implied employment contract and raises only private concerns"); *Crawford Rehabilitation Ser. v. Weissman*, 938 P.2d 540, 548 (Colo. 1997) (the court began by recognizing that resume fraud, even when discovered after termination, may serve as a complete defense to claims of wrongful discharge. "The rule announced in *McKennon* … neither governs, nor in our view conflicts with our holding.").

[48]     *Teter v. Republic Parking System, Inc.*, 181 S.W.3d 330, 339-40 (Tenn. 2005).

[49]     *Camp*, 41 Cal. Rptr.2d at 339 ("the equities compel a different result where an employee who is disqualified from employment by government-imposed requirements nevertheless obtains a job by misrepresenting the pertinent qualifications.  In such a situation, the employee should have no recourse for an alleged wrongful termination of employment.).

[50]     *Id*. at 340.

motion that Fleming's rendition of the facts is correct, it was "understood that [he] had to work one year before [he] received his certification as an officer." [Fleming dep., pp. 54-55] But, this is where the understanding stopped. Fleming never told the City Manager that he had never become certified, and in fact represented that only officers capable of being certified were being hired. [Carroll Aff. ¶ 2]

Under Alaska law, an uncertified officer cannot be employed for more than 14 consecutive months.[51] By not telling anyone that he did not possess a basic certificate, Fleming put the Fort Yukon police department at risk and made it non-compliant with state law. [Carroll Aff. ¶ 9] This is more than sufficient to bar liability for his wrongful discharge claim under the proper state after-acquired evidence doctrine.

Fleming also had represented that he was only hiring certifiable officers. [*Id*.] If Defendants had become aware of Fleming's failure to gain his certificate, they would have been required by law to fire him on the spot and never could have employed him for more than 14 months.[52] Defendants would have done so. [Carroll Aff. ¶ 9] As it was, Fleming was able to conceal his lack of certification until eight days after he was terminated. [Carroll Aff. ¶ 6] The Court should grant summary judgment on the issue of liability for wrongful discharge because Fleming was unqualified for the job under state law.

---

[51]    13 AAC 85.020(b).

[52]    13 AAC 85.020(b) ("A participating police department may not employ a person as a police officer for more than 14 consecutive months unless the person has a current basic certificate issued by the council under 13 AAC 85.040, or unless an extension is granted under (c) of this section.").

In the alternative, as explained above, there are two after-acquired evidence doctrines – one which acts as a complete bar to liability, the other which allows only back pay from the date of the wrongful termination until the discovery of the new evidence that justifies determination.  The City believes this Court should apply the emerging doctrine in after-acquired evidence law, which is that such evidence bars all damages.  In the alternative, if the Court adopts the other doctrine after-acquired evidence rule, then it should enter summary judgment limiting damages to back pay..[53]  Fleming's lack of certification made him unable to continue to be a police officer under Alaska law.[54]  If the Court elects to apply this later doctrine, then  Fleming is only entitled to eight days of back pay, minus mitigation.   Eight days is the time that passed from Fleming's termination until the City obtained its stolen personnel files from the police department and was able to determine that Fleming was not certified by the Alaska Police Standards Council.   At minimum, the Court should grant Defendants' motion for summary judgment to the effect that Fleming's damages are limited by the after-acquired evidence doctrine to no more than eight days of back pay.

**VII.  DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON FLEMING'S FLSA OVERTIME CLAIM (COUNT I) BECAUSE FLEMING WAS AN EXEMPT SUPERVISORY EMPLOYEE**

Even if the City were not exempt from the FLSA as a small police department, as asserted in the City's Motion for Summary Judgment on Count I, the Court should enter

---

[53]    *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 362 (1995); *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 759 (9th Cir. 1996).

[54]    13 AAC 85.020(b).

summary judgment on Fleming's overtime claim because he was an exempt supervisory employee under the FLSA regulations in effect during his tenure.[55]

Under the FLSA, "any employee employed in a bona fide executive, administrative, or professional capacity" is exempt from the statute's overtime provisions.[56] Under the controlling Department of Labor regulations, there were two tests for whether someone fell into this category, a short test and a long test.[57] An employee was exempt under the short test if he met all parts of a four part test.[58] First, the employee had to be paid on a salary basis.[59] Second, he must be paid not less than $250 per week, not including board, lodging and other facilities.[60] Third, his "primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized department [or] subdivision thereof."[61] And fourth, that his primary duty "includes the customary and regular direction of the work of two or more employees."[62]

---

[55]    The overtime regulations were revised in 2004. Fleming worked from October 2001 until February 2004.

[56]    29 U.S.C. § 213(a)(1) ("The provisions of section 206 (except subsection (d) in the case of paragraph (1) of this subsection) and section 207 if this title shall not apply with respect to -- (1) any employee employed in a bona fide executive, administrative, or professional capacity[.]").

[57]    29 C.F.R. 541.1 (2003); 29 C.F.R. 541.1 (2002); 29 C.F.R. 541.1 (1998).

[58]    *Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1112 (9th Cir. 2001) (*citing* 29 C.F.R. 541.1(f)).

[59]    *Id.*

[60]    *Id.*

[61]    *Id.* (*quoting* 29 C.F.R. 541.1(f)).

[62]    *Id.* (*quoting* 29 C.F.R. 541.1(f)).

Fleming's employment met every criteria in the short test.  First, Fleming was paid on a salary basis.  [Fleming dep., p. 70; Ex. A, FY 502; Ex. B, FY 662]  Second, his salary was 50,000 a year during his employment.  [Defendants' Initial Disc. 502, 662]  Doing the math, he earned more than $960 a week, or nearly four times the required $250 per week.[63]

Third, Fleming's primary duty was to manage the police department, despite his assertion that he only spent 25 percent of his time managing it.  [Fleming dep., p. 75]  Even taking that statement as true, he was still a managerial employee because there were other "pertinent factors" to the primary duty determination.[64]  The Ninth Circuit's "primary duty" analysis when an employee spent less than 50 percent of their time managing people consisted of four parts.[65]  The Court analyzed (1) the relative importance of the managerial duties, (2) the frequency of exercise of discretionary powers, (3) the relative freedom from supervision, and (4) the relationship between the employee's salary and the wages paid to other employees.[66]

Fleming fit all of these criteria.  As Fleming himself put it:  "That's what they were paying me for, to make decisions.  That was my job, to make decisions on what was

---

[63]    *Id*.

[64]    *Id*. at 1114; 29 C.F.R. 541.103 (2003); 29 C.F.R. 541.103 (2002); 29 C.F.R. 541.103 (1998).

[65]    *Baldwin*, 266 F.3d at 1113-16.

[66]    *Id*.

going on with the police department and how to handle situations." [Fleming dep., pp. 155-156]

First, Fleming's managerial duties were more important than his non-managerial duties. He understood that he was responsible "for the day-to-day operations of the police department." [Fleming dep., p. 70] Fleming's principal value to the City of Fort Yukon was in managing the police department.

Second, Fleming frequently exercised his discretionary powers.

Q:    And you understood yourself to be responsible for scheduling
       the department?
B.    Yes, sir.
…
R.    You set the schedules for the other police officers and for the
       dispatchers?
A.    Yes, sir. [Fleming dep., p. 71]

Fleming was also responsible for deciding who got promoted and what trainings the officers could attend. [Fleming dep., pp. 71-72]

Third, he was relatively free from supervision. Within the police department, there was no one else to report to. [Fleming dep., p. 77] Fleming reported to the City Manager and the City Council. [Fleming dep., p. 77] But he was definitely the one person in charge "of a customarily recognized department or subdivision" of his employer.[67] According to Fleming, his control over the officers was superior to the City Manager's. As he noted regarding management conflicts with the City Manager, "I would tell – to protect the city, I would tell the officers, I will give you your directions."

_____
[67]    29 C.F.R. 541.1(f) (2003); 29 C.F.R. 541.1(f) (2002); 29 C.F.R. 541.1(f) (1998).

[Fleming dep., p. 250]  As to whether the City Manager challenged his authority, Fleming would only allow that she "[t]ried to."  [Fleming dep., p. 251]  This is more than enough independence under the regulations.[68]

Fourth, Fleming's salary was much higher than the average patrol officer.  He got paid at least $10,000 more than any of the other officers.  [Ex. A, FY 502; Ex B, FY 662; Ex. L, FY 1140]  He was paid more than the other officers because, as outlined in the two proceeding paragraphs, his primary job responsibilities were managing the department.

Lastly, Fleming managed at least two other employees at all times that he was employed as Chief of Police.  He managed dispatchers and police officers, including each of the other Plaintiffs in this case.  Indeed, in opposition to the City's motion for summary judgment on Count I, Fleming has asserted that the police department had five or more law enforcement officers at any one time, so he certainly will not dispute management over two or more employees at all times.

Because of the above facts, Fleming was an employee who was exempt from the overtime requirements of the FLSA.  The City has asserted in a separate motion that none of the Plaintiffs were entitled to overtime because of the FLSA's small police department exemption. But even if that exemption did not apply, Fleming's claim still fails as a matter of law because he was an exempt supervisory employee.

---

[68]     *Id.*

## VIII.  CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant summary judgment on each of Fleming's claims.

DATED at Anchorage, Alaska this 13th day of September, 2006.

JERMAIN, DUNNAGAN & OWENS, P.C.

By:___s/ Matthew Singer_____
      Matthew Singer
      Alaska Bar No. 9911072

By:___s/ Howard S. Trickey_____
      Howard S. Trickey
      Alaska Bar No. 7610138
      3000 A Street, Suite 300
      Anchorage, AK  99503
      Phone:  (907) 563-8844
      Fax:  (907) 563-7322

**CERTIFICATE OF SERVICE**

I hereby certify that on September 13, 2006,
a true and correct copy of the foregoing
document was served electronically
on the following counsel of record:

Michael J. Walleri
330 Wendell St., Suite E
Fairbanks, AK 99701

s/ Matthew Singer_____
128750

Memorandum in Support of Motion for Summary Judgment (Reginald Fleming)          Page 27
*Fleming, et al. v. Carroll, et al.*
Case 4:04-cv-00034-RRB