Michael J. Walleri
Law Offices of Michael J. Walleri
330 Wendell Street, Suite E
Fairbanks, Alaska  99701
(907) 452-4716
(907) 452-4725 (Facsimile)
Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| REGINALD FLEMING, CHRISTOPHER DELEON,  CHRIS HAMPTON, WILLIAM D. MCKILLICAN, and  TODD SCHLUMBOHM<br><br>Plaintiffs,<br><br>vs.<br><br>FANNIE CARROLL, and the CITY OF FORT YUKON, ALASKA<br><br>Defendants. | **MEMORANDUM**<br><br>**IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (FLEMING) AND**<br><br>**IN SUPPORT OF CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT RESPECTING NON-APPLICABILITY OF GRIEVANCE PROCEDURES**<br><br>Case No. F04-0034 CIV (RRB) |

The City of Fort Yukon and Fannie Carroll (collectively referred to as the

City) have moved for summary judgment as to all Chief Fleming his claims.[1] The

Court should deny the City's motion for summary judgment because there is

sufficient evidence to raise a genuine issue of fact that 1) Chief Fleming was

_____

[1] The claims involving Chief Fleming include Count I (Unpaid Overtime), Count II (Wrongful Termination); Count IV (Violation of 42 USC 1983-Procedural Due Process).

terminated in violation of public policy for investigating criminal activity of the City

Manager's father, and that 2) Chief Fleming was not exempt under the FSLA.

Chief Fleming DeLeon has filed a cross motion for partial summary judgment

seeking a rulings that the City's Grievance system did not apply to Chief Fleming.

I.    STANDARD FOR SUMMARY JUDGMENT.

A party is only entitled to summary judgment if the Court finds that "the

pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits… show that there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law."[2] A dispute over a

material fact exists if the evidence would allow a reasonable fact-finder to return a

verdict for the non-moving party.[3]  "(T)he mere existence of some alleged factual

dispute between the parties will not defeat an otherwise properly supported motion

for summary judgment; the requirement is that there be no genuine issue of material

fact.[4]  The non-moving party may defeat judgment by producing sufficient specific

facts to establish that there is a genuine issue of material fact for trial.[5]  "The

---

[2] *See* FRCP 56(c)
[3] *See Anderson v Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)
[4] *Anderson v Liberty Lobby, Inc.,* 477 U.S., at 247-248
[5] *Celotex Corp. v Catrett,* 477 U.S. 317, 322 (1986).

**Michael J. Walleri**

*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

plaintiff, to survive the defendant's motion, need only present evidence from which a jury might return a verdict in his favor. If he does so, there is a genuine issue of fact that requires a trial."[6]

## II.    FACTS.

The City of Fort Yukon is a small community of 570 people located at the confluence of the Yukon River and the Porcupine River, about 145 air miles northeast of Fairbanks.[7]  As a result, the community falls within the definition of a village for Police Council standards[8] and the minimum standards for police officers in the state do not apply within the community.[9]

Chief Fleming was hired as the chief of police for Fort Yukon in October 2001. He is not, and was not certified under as a police officer in the state.[10]

---

[6] *Anderson* v. *Liberty Lobby, Inc., ante,* at 257.

[7] http://www.commerce.state.ak.us/dca/commdb/CIS.cfm

[8] 13 AAC 89.150(3) defines a village as
   (3) "village" means a community off the interconnected Alaska road system, with a population of less than 1,000 persons based on the most recent federal census, which has been incorporated as provided in AS 29.18.

[9] 13 AAC 89.005 provides in relevant part,
   The requirements of 13 AAC 85.005-13 AAC 85.120 do not apply to village police officers identified in 13 AAC 89, except as specifically provided in 13 AAC 89.

[10] See Def. Memo at 4. In its motion, the City argues that it had cause to terminate Fleming because he was not qualified to serve as a police officer, and that he allowed other members of the force to serve. However, as noted, the City is looking at the wrong standards. The City is exempt from such requirements.

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

Ms. Fannie Carroll was the City Manager of Fort Yukon.[11]  Fannie Carrol is the daughter of Richard Carroll, who served on the City Council of Fort Yukon.[12] Richard was on the City Council when his daughter was hired as City Manager,[13] and had previously served as the City Mayor for a number of years.[14]

Debbie McCarty is the cousin of Fannie Carroll[15] and was also on the City Council during the relevant times.[16]  In early 2003, Chief Fleming led an investigation into embezzlement from the AC store in Fort Yukon. The investigation resulted in the arrest of Maggie John in December, and John Taylor, a former Mayor for Fort Yukon.[17]  The arrest of Maggie John by Officer DeLeon during Christmas of 2003 resulted in a number of complaints from the community.[18] The Maggie John/John Taylor investigation was the first successful investigation into

---

[11] Id.
[12] Plt. Ex. 1 (Carrol Depo) at 11: 12-13; 19: 21-25
[13] Id.
[14] Id., 14: 10-18
[15] Plt. Ex. 2 (McCarty Depo) 6:12-14
[16] Id., at 6:15-24
[17] Id., at 20:6-7
[18] Id. at 19:8- 20:5

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

embezzlement charges in Fort Yukon.[19] Fannie Carroll was shocked that the local

police force had been successful on investigating embezzlement.[20]

According to Debbie McCarty, the City council asked Chief Fleming to

investigate allegations of embezzlement from the City.[21]  Chief Fleming later

discussed the matter with Debbie McCarty, including the fact that Chief Fleming

believed that Richard Carroll (Fannie's father) was a suspect in the embezzlements

from the City.[22]  McCarty had heard rumors that Richard Carroll was suspected of

embezzling funds from the City for years.[23]

Chief Fleming deposition confirmed that Richard Carroll was a suspect in the

City embezzlement.[24]  This was not the first such investigation into embezzlement

from the city.  Indeed, former Fort Yukon police officer Keefer had also been

investigating the embezzlement of $200,000 from the City.[25]  During the Taylor/John

investigation Richard Carroll had opposed the commitment of city resources to

---

[19] Id., at pp. 26-27
[20] Plt. Ex. 3 (Fleming Depo.) 271:17- 272:1
[21] Plt. Ex. 2 (McCarty Depo) 20:24-22:25
[22] Id., at 23:1-6; 24:16-18
[23] Id., at 25:3-5
[24] Plt. Ex. 3 (Fleming Depo.) pp. 198-227
[25] Id., at 206-207

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

*Fleming, et. al. v City of Fort Yukon*                                                          *Page 5 of 23*
Memo: Def. Mot. Sum. Jud. (Fleming) & Cross Motion

embezzlement investigations.[26]  And in one executive session, Richard Carroll had

been the only City Council member to inquire of Chief Fleming as to the targets of

the City embezzlement investigation.[27]  Later, Fannie Carroll told Chief Fleming that

her dad (Richard Carroll) was mad at Chief Fleming for doing the investigation, and

threatened to go to Fairbanks and "dig up dirt" on Chief Fleming if he continued

with the investigation.[28]  The fact that Richard Carroll was so "mad" about the

investigation that he would raise it to Fannie (his daughter and City Manager),

raised further concerns with Chief Fleming that Richard was involved in the

embezzlements.[29]  This conversation between Fannie Carroll and Chief Fleming took

place about two (2) weeks before Chief Fleming was terminated by Fannie Carroll.[30]

       The Chief involved Officer DeLeon in the investigation of the embezzlements

from the City.[31]  However, DeLeon was also terminated before the investigation

could go much further.[32]  It was Officer DeLeon that had arrested Maggie John on

the embezzlement charges.

---

[26] Id., at 211
[27] Id, at 211:11-212:12
[28] Id. at 212:16--25
[29] Id. at 213:1- 22
[30] Id. at  214:13-215:1
[31] Id. at 220:4- 17
[32] Id.

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

On February 9, 2004, Fannie Carroll terminated Chief Fleming and Officer DeLeon.  In the exit interview process with Gregg Russell, Chief Fleming informed Russell of the investigation into Richard Carroll and that Flemming believed that his dismissal was connected to the investigation of Richard Carroll.[33]  However, Gregg Russell never followed up on the information that Fleming was investigating the City Manager's father for embezzlement shortly before he was fired.[34]

On February 16, 2004 --- the date set for Officer DeLeon's hearing before Mary Beth Solomon--- Officers DeLeon, Schlumbohm and Fleming returned from Fairbanks to Fort Yukon because they understood that a City Council meeting had been scheduled.[35]  The Officers had wanted to attend the City Council meeting, but Greg Russell, a consultant with the Alaska Municipal League advised them that they could not go into the Council chambers meet with the Council.[36]

---

[33] Id.
[34] Plt. Ex. 4 (Russell Depo) 63:15- 64:16
[35] Plt. Ex. 5 ( Schlumbohom Depo.) 79:23 – 80:12
[36] Id., 80:15- 81:14.  In his deposition, Gregg Russell indicated that he was unclear whether the city council meeting actually took place, and Mr. Russell believed that the officers actually declined to attend.  Plt. Ex. 4 (Russell Depo) 17:1-23  On the other hand, Councilwoman Debra McCarty indicated that she met individually with Russell that day, and that the Council may have met with Russell in executive session after her individual meeting, but she could not be sure that such a council meeting ever really took place.  Plt. Ex. 2 (McCarty Depo.) 39:17-41:20

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

*Fleming, et. al. v City of Fort Yukon*                                          *Page 7 of 23*
Memo: Def. Mot. Sum. Jud. (Fleming) & Cross Motion

After the termination of Chief Fleming and Officer DeLeon, all the investigative files for the City were 'lost. '  According to Officer Schlumbohm, the Alaska State Troopers conducted an investigation of the City criminal records, and discovered that all the investigative records for the City had been lost, including the files respecting Chief Fleming's investigation of Fannie's father for embezzling money from the City.[37]

### III.    THERE IS SUBSTANTIAL EVIDENCE THAT THE FIRING OF CHIEF FLEMING AND OFFICER DELEON WAS A PRETEXT TO COVERING UP OR TERMINATING THE INVESTIGATION OF THE CITY MANAGER'S FATHER FOR EMBEZZLEMENT OF CITY FUNDS.

Under Alaska law and the City of Fort Yukon Personnel Policy, a city employee may only be dismissed for just cause, and must be afforded a pre-termination hearing. [38]  Chief Fleming, however, had signed a contract – negotiated and executed by Mayor Richard Carroll --- that waived his rights under the personnel policy with

---

[37] Plt. Ex. 5 (Schlumbohm Depo) 94:22-97:1

[38] See Def. Ex. B, p14-15.  Chap. 5, Section 3. See also *Odum v. University of Alaska, 845 P.2d 432, 434 (Alaska, 1993);  Storrs v. Municipality of Anchorage, 721 P.2d 1146, 1149-50 (Alaska 1986), cert. denied, 479 U.S. 1032, 93 L. Ed. 2d 832, 107 S. Ct. 878 (1987); Kenai Peninsula Borough Bd. of Educ. v. Brown, 691 P.2d 1034, 1037 (Alaska 1984);  McMillan v. Anchorage Community Hosp., 646 P.2d 857, 864 (Alaska 1982); University of Alaska v. Chauvin, 521 P.2d 1234, 1238 (Alaska 1974);Nichols v. Eckert, 504 P.2d 1359, 1366 (Alaska 1973)*

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

the exception of those provisions relating to vacation, leave, health insurance, retirement benefits, and travel.[39]

Fleming was the only member of the Fort Yukon police department to have such a contract, and it is undisputed that the contract waived his rights to termination for cause only and his rights to a pre-termination hearing, and his rights to a grieve adverse employment decisions.[40]  In essence, the contract rendered Fleming an "at-will" employee.  At-will employees may be terminated for any reason that does not violate the implied covenant of good faith and fair dealing.[41] The covenant of good faith and fair dealing is implied in all at-will employment contracts.[42] "This covenant does not lend itself to precise definition, but it requires at a minimum that an employer not impair the right of an employee to receive the benefits of the employment agreement"[43] and that the "employer treat like

---

[39] Def. Memo., at 2-3; See Def. Exhibit B, at 3  The agreement also indicated that he might be terminated without cause upon the condition that he be paid one (1) month of his salary severance pay.  If Fleming were terminated for cause, the City was not obligated to pay the severance pay. Fleming was terminated for cause, and paid his severance pay.  The contract presented by the Defendants expired on November 20, 2003.  However, Chief Fleming signed another extended (one year) contact on November 6, 2003.  The terms of the contracts are identical on the topics under discussion in these motions.

[40] See Def. Memo, at 11-12

[41] Pitka v. Interior Reg'l Hous. Auth., 54 P.3d 785, 789(Alaska 2002

[42] Charles v. Interior Reg'l Hous. Auth., 55 P.3d 57, 62 (Alaska, 2002)

[43] Id.; citing *See, e.g., Holland v. Union Oil Co. of Cal., Inc.*, 993 P.2d 1026, 1032 (Alaska 1999); *French v. Jadon, Inc.*, 911 P.2d 20, 24 (Alaska 1996); *Revelle v. Marston*, 898 P.2d 917, 926 (Alaska 1995).

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

*Fleming, et. al. v City of Fort Yukon*                                    *Page 9 of 23*
Memo: Def. Mot. Sum. Jud. (Fleming) & Cross Motion

employees alike."[44]  An employer can commit either an objective or subjective breach

of the covenant.[45] The employer commits a subjective breach "when it discharges an

employee for the purpose of depriving him or her of one of the benefits of the

contract."[46] The objective aspect of the covenant requires that the employer act in a

manner that a reasonable person would regard as fair.[47] Examples of objective

breaches of the covenant would include disparate employee treatment, terminations

on grounds that were unconstitutional, and firings that violated public policy.[48] The

city concedes that Fleming could not be fired for a reason that violates the covenant

of good faith and fair dealing.[49]


As a general matter, corruption violates public policy, and the termination of

an at-will employee in furtherance of corruption or to cover up corruption violates

the covenant of good faith and fair dealing. *Central Bering Sea Fishermen's Ass'n v.*

*Anderson, 54 P.3d 271, 280 (Alaska 2002)* In that case, the Court held that the evidence

---

[44] Id. *Jones v. Cent. Peninsula Gen. Hosp.*, 779 P.2d 783, 789 (Alaska 1989).
[45] Id., citing *Revelle*, 898 P.2d at 927 ("An employer may not only breach the covenant of good faith and fair dealing through improper motive or intent but may also commit an objective breach of the covenant, by failing to 'act in a manner which a reasonable person would regard as fair.'") (quoting *Luedtke v. Nabors Alaska Drilling, Inc. ("Luedtke II")*, 834 P.2d 1220, 1224 (Alaska 1992)).
[46] Id.; citing *Finch v. Greatland Foods, Inc.*, 21 P.3d 1282, 1286-87 (Alaska 2001) (quoting *Ramsey v. City of Sand Point*, 936 P.2d 126, 133 (Alaska 1997)).
[47] *Id.;* citing *Finch v. Greatland Foods, Inc.*,  at 1286-87; *Holland*, 993 P.2d at 1032; *Ramsey*, 936 P.2d at 133.
[48] Id.; *ERA Aviation, Inc. v. Seekins*, 973 P.2d 1137, 1139 (Alaska 1999); *Luedtke II*, 834 P.2d at 1224.
[49] Def. Memo, at 12

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

presented was sufficient to allow a reasonable jury to believe that the employer's

actions were motivated to cover up an employees allegations of corruption.   The

same may be said here.

The evidence submitted to the Court clearly establishes that Fleming ---and to

a more limited extent DeLeon and Schlumbohm --- were investigating Richard

Carroll for embezzlement of City funds.  Richard Carroll was a city council member,

a former Mayor of Fort Yukon and the father of the City Manager that fired Fleming

and DeLeon.   Debra McCarty, a Carroll cousin and city council member was aware

of the investigation and Richard Carroll's suspected involvement.  While Fleming

had not told either Richard or Fannie Carroll that Richard was a suspect, both

Richard and Fannie Carroll knew of the investigation.   Within weeks of terminating

Fleming, Fannie Carroll threatened Fleming in an effort to stop the investigation.

After the firing, Fleming told the Gregg Russell, an investigator from the Alaska

Municipal League, of the investigation, however, Russell took not action to

determine whether the allegation were accurate, nor to investigate whether there a

basis to believe that Richard Carroll was embezzling funds from the City.  Finally,

after the termination of Fleming and DeLeon, the investigative records and evidence

respecting the alleged embezzlement disappeared.   There is substantial evidence

**Michael J. Walleri**

*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

that the stated reasons for Fleming's termination were mere pretext and that

Fleming and DeLeon were dismissed in furtherance of efforts by Fannie Carroll and

Richard Carroll to stop, or otherwise obstruct the criminal investigation.  As a

consequence, the fact that Fleming was an 'at-will' employee is irrelevant to his

claims of wrongful termination, because it violates public policy and the implied

covenant of good faith and fair dealing contained within all employment contracts

to terminate an employee for the purposes of covering up official corruption by

public officials.


### IV.    THE CITY'S ADMINISTRATIVE PROCEDURES DO NOT APPLY.

Oddly, the City argues that Fleming was required to exhaust his

administrative remedies.  However, as the City notes the contract between the City

and Fleming provides that the only provisions of the City Personnel Policy that

apply to Fleming relate to vacation, leave, health insurance, retirement benefits, and

travel.[50]  The grievance and pre-termination hearing provisions do not apply to

Fleming--- this fact is the same fact that renders Fleming an at-will employee.  The

same contract provisions which rendered Fleming an "at-will" employee make the

---

[50] Def. Memo., at 2-3; See Def. Exhibit B, at 3  The agreement also indicated that he might be terminated without cause upon the condition that he be paid one (1) month of his salary severance pay.  If Fleming were terminated for cause, the City was not obligated to pay the severance pay. Fleming was terminated for cause, and paid his severance pay.

**Michael J. Walleri**

*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

grievance and pre-termination hearing provisions of the personnel policy inapplicable to Fleming.  It would be illogical to suggest that Fleming was required to exhaust administrative remedies, where he is denied by contractual terms the access the procedures sought to be required of him.   The City's argument that Fleming was required to exhaust administrative remedies is illogical.

## V.    FLEMING DID ATTEMPT TO MEET WITH THE COUNCIL.

Fleming did attempt to meet with the Council on this matter.  Fleming returned to Fort Yukon from Fairbanks to meet with the Council on February 16, 2004.[51]  Earlier, DeLeon had requested a hearing before the City Council, and the City had set an executive session to meet with DeLeon on his concerns for the 18th,[52] but Carroll fired DeLeon before that meeting could occur.  When the officers returned to Fort Yukon to meet with the Council, Gregg Russell informed them that the City council would not meet with them.[53]   Clearly, Fleming, and the other officers, were attempting to bring their concerns to the City Council.  In Flemings

---

[51] Plt. Ex. 5 ( Schlumbohom Depo.) 79:23 – 80:12
[52] Plt. Ex. 6 (DeLeon Depo), at 128
[53] Plt. Ex. 5 ( Schlumbohom Depo.)., 80:15- 81:14.  In his deposition, Gregg Russell indicated that he was unclear whether the city council meeting actually took place, and Mr. Russell believed that the officers actually declined to attend.  Plt. Ex. 4 (Russell Depo) 17:1-23  On the other hand, Councilwoman Debra McCarty indicated that she met individually with Russell that day, and that the Council may have met with Russell in executive session after her individual meeting, but she could not be sure that such a council meeting ever really took place.  Plt. Ex. 2 (McCarty Depo.) 39:17-41:20

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

case, this was the only remedy available to Fleming and was entirely appropriate. However, Gregg Russell told Fleming and the other officers that the City Counsel would not meet with them.   Simply stated, Fleming attempted to access and was denied access to the only available avenue of redress, despite the fact he was not required under the terms of his employment to do so.

## VI.    DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON FLEMINGS FSLA CLAIM.

As previously noted,[54]  the Ninth Circuit has clearly and repeatedly held that "An employer who claims an exemption from the FLSA has the burden of showing that the exemption applies. . . ."[55]  In this regard, the proper standard of proof requires the employer to show the applicability of the exemption "plainly and unmistakably"[56]  The Ninth Circuit has noted, "since exceptions to humanitarian and remedial legislation must be narrowly construed, only those businesses clearly within both terms and spirit of exemption should be allowed to benefit from

---

[54] See Plt.Memo, Docket No. 88.  The US Supreme Court has explained
    The Fair Labor Standards Act was designed "to extend the frontiers of social progress" by "insuring to all our able-bodied working men and women a fair day's pay for a fair day's work." Any exemption from such humanitarian and remedial legislation must therefore be narrowly construed, giving due regard to the plain meaning of statutory language and the intent of Congress. To extend an exemption to other than those plainly within its terms and spirit is to abuse the interpretive process and to frustrate the announced will of the people.
*Phillips Co. v. Walling*, 324 U.S. 490, 493 (1945)
[55] *Donovan v. Nekton, Inc.*, 703 F.2d 1148, 1151 (9th Cir. 1983).
[56] *Cleveland v. City of Los Angeles, 420 F.3d 981*, 988 (9th Cir. 2005); See also *Donovan v. Nekton, Inc.*, 703 F.2d 1148, 1151 (9th Cir. 1983) (quoting *Phillips Co. v. Walling*, 324 U.S. at 493).

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

exemption to Fair Labor Standards Act."[57] Hence, there is little questioning that the City has the burden to prove that Plaintiffs meet each and every element of the claimed exemption.[58]

In its most recent motion, the City claims an FSLA overtime exemption in regards to Fleming alleging that he was employed in "bona fide executive, administrative, or professional capacity."[59]  The City has previously emphasized that the Fort Yukon police force was small.  As a result, Fleming more often than not worked as a line police officer performing the same duties as other policeman. Indeed, Fleming has testified in his deposition that he spent about 25% of his time managing the other police officers, and the remainder (i.e. 75%) of his time on patrol.[60]

Any employee employed in a bona fide executive, administrative, or professional capacity is excluded from the time-and-one-half provisions of the Fair Labor Standards Act[61] The Secretary has provided, in 29 C.F.R. § 541.2, multiple criteria which must be met to  qualify under the administrative exemption of 29

---

[57] *Brennan v Keyser (1974, CA9 Cal) 507 F2d 472, cert den (1975) 420 US 1004, 43 L Ed 2d 762, 95 S Ct 1446.*
[58] *Cleveland v. City of Los Angeles, 420 F.3d  at, 988*
[59] 29 USC §213 (a)(1);
[60] Plt. Ex. 3 (Fleming Depo) 75:7- 76:2
[61] 29 U.S.C. § 213(a) (1). *See Haber v Americana Corp., 378 F2d 854, (9th Cir., 1967), cert den (1967) 389 US 914, 19 L Ed 2d 262, 88 S Ct 242*

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

U.S.C. § 213 (a) (1).[62] One of these criteria is that no more than twenty per cent (20%)

of the employee's time be spent in non-administrative work.[63] "The test is not what

employees are called, but what they actually did." [64]  The Ninth Circuit has held that

where an employee testified that he performed 60% of his work in non-

administrative functions, and the employer failed to present any contrary evidence,

the employee was deemed non-exempt.[65] That is the case here, and the general rule

would hold that the Fleming was not exempt.


       The city argues that Fleming's primary duties was supervision of the police

force, and cites *Balwin v Trailer Inns., Inc.* [66]to suggest that if Flemings primary duty

was  supervision of the police force, he was exempt under FICA.  The Court in

*Baldwin* held that this Court must accept the employee's uncontroverted assertion

that Fleming worked approximately 75% of his time in non-exempt activities.[67]

However, in interpreting the primary duty requirement, although the percentage of

time spent on nonexempt tasks is relevant, it is not alone dispositive.[68]

---

[62] Id, at 856-857
[63] 29 C.F.R. § 541.2(d)
[64] *Haber v Americana Corp., 378 F2d 854 (9th Cir., 1967), cert den (1967) 389 US 914, 19 L Ed 2d 262, 88 S Ct 242*
[65] Id.
[66] 266 F.3d 1004 (9th Cir. 2001)
[67] Id., at 1114
[68] Id.

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

*Fleming, et. al. v City of Fort Yukon*                                              *Page 16 of 23*
Memo: Def. Mot. Sum. Jud. (Fleming) & Cross Motion

The regulation (29 C.F.R. § 541.100) now reads[69]

(a) The term "employee employed in a bona fide executive capacity" in section 13(a)(1) of the Act shall mean any employee:

(1) Compensated on a salary basis at a rate of not less than $ 455 per week (or $ 380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging or other facilities;

(2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

(3) Who customarily and regularly directs the work of two or more other employees; and

(4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

(b) The phrase "salary basis" is defined at § 541.602; "board, lodging or other facilities" is defined at § 541.606; "primary duty" is defined at § 541.700; and "customarily and regularly" is defined at § 541.701.

There is little question that Fleming met the first prong of these tests.[70]

However, there is substantial factual dispute as to whether Fleming met the other

factors set forth in the regulations.

---

[69] The applicable regulations have been amended since *Baldwin*.
[70] See Def. Memo, at

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

In particular, the regulations require that Fleming have "managed" the

department.  The regulations defined "management" to

> includes, but is not limited to, activities such as interviewing, selecting, and
> training of employees; setting and adjusting their rates of pay and hours of
> work; directing the work of employees; maintaining production or sales
> records for use in supervision or control; appraising employees' productivity
> and efficiency for the purpose of recommending promotions or other changes
> in status; handling employee complaints and grievances; disciplining
> employees; planning the work; determining the techniques to be used;
> apportioning the work among the employees; determining the type of
> materials, supplies, machinery, equipment or tools to be used or merchandise
> to be bought, stocked and sold; controlling the flow and distribution of
> materials or merchandise and supplies; providing for the safety and security
> of the employees or the property; planning and controlling the budget; and
> monitoring or implementing legal compliance measures.[71]

Fleming acknowledges that when Bonnie Thomas was the City Manager, she

allowed him to manage the Fort Yukon Police Department.[72]  However, under

Fannie Carroll the situation was substantially different.  Most notably, the one thing

that Fleming and Fannie Carroll agree upon is that the City Manager did personnel

evaluations.[73]  Indeed, the entire controversy over Officer McKillican arose because

---

[71] 29 CFR  § 541.102
[72] Plt. Ex. 3 (Fleming Depo) 75:7-9;
[73] Id. at 72:15-17 Plt. Ex. 1 (Carroll Depo) 53:8-17.  Fannie Carroll testified as follows:
      8      Okay.  As a city manager, did you have personnel
      9      responsibilities?
     10     A    Yes.
     11     Q    Okay.  And what were those responsibilities?

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

Fannie Carroll insisted upon doing his evaluation.[74] Fannie Carroll did not even feel

it was necessary to have Fleming present, nor consult with Fleming in doing

evaluations.[75]

Similarly, Fannie Carroll testified that Fleming did not do the scheduling of

the officers; i.e. that the officers worked together to devise a work schedule.[76]

Fleming noted that under Bonnie Thomas he did the scheduling.[77]  However, Fannie

Carroll would alter the work schedules without consultation with Fleming.[78] As

Fleming indicated, he was not the ultimate authority in the police department under

Fannie Carroll; rather Fannie Carroll told the officers that she was the ultimate

authority.[79]  Indeed, Fleming stated that even the dispatcher schedule was not up to

him; Fannie Carroll supervised their scheduling.[80]  Fleming could not issue routine

---

```
        12      A     To be the director.
        13      Q     For personnel issues, okay.  And so when a sexual
        14            harassment complaint came to you, that was within your
        15            responsibilities as a city manager, your personnel
        16            responsibilities?
17      A     Yes
```
[74] Plt. Ex. 1 (Carroll Depo) 61:5-7; 75:4-78:2
[75] Id. at 77:19- 78:2
[76] Id. 106:24-107:10
[77] Id. 57:11-14
[78] Id., at 169:10- 170:7
[79] Plt. Ex. 3 (Fleming Depo) 77:19- 78:12
[80] D.

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

directives to police department staff without Fannie Carroll's approval.[81]  Fannie

Carroll directed disciplinary actions.  In the case of DeLeon, Fannie Carroll

acknowledges that she initiated the suspension of Officer DeLeon for the events of

February 5, 2004.[82] Indeed, she believed that Fleming would not actually suspend

DeLeon and called Fleming that evening to make sure that Fleming placed DeLeon

on suspension.[83]

Fannie Carroll also made operational decisions.  For example, during a search

and rescue operation, the Troopers requested assistance from  Officer McKillican.[84]

Carroll directed McKillican not to assist, and McKillican stood down.[85]  Later Fannie

Carroll changed her mind and directed McKillican to assist and berated him in

public for not responding faster.[86]  On another occasion, Fannie Carroll recalled

from leave Officers DeLeon and Schlumbohm from Fairbanks and authorized a

charter of a plane for their transportation.[87]  Even in hiring, Fannie was involved in

doing the interview of Officer DeLeon and in orientating DeLeon.[88]   In that meeting,

---

[81] Id. at 170:15-18
[82] Plt. Ex. 1 (Carroll Depo) 125:8-126:9
[83] Id.
[84] Ex. 7 (McKillican Depo) 61:5-7; 75:4-78:2
[85] Id.
[86] Id.
[87] Ex. 6 (DeLeon Depo) 120:14- 125:9
[88] Id., 65:7- 66:9

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

*Fleming, et. al. v City of Fort Yukon*                                              *Page 20 of 23*
Memo: Def. Mot. Sum. Jud. (Fleming) & Cross Motion

Fannie instructed DeLeon to be selective in making arrests and to avoid irritating the

three major families in the village.[89] Fannie Carroll acknowledged that she warned

DeLeon about this and identified the three families as the Solomons, the Carrolls

and the Peters.[90]

The situation in Fort Yukon is very similar to the situation in *Dena' Nena'*

*Henash v Ipalook.*[91] In that case, the employee had filed and won a grievance

establishing her rights as a supervisory – i.e. exempt --- employee. However, the

Court held that the employee was supposed to have been a supervisor, but was

never actually given supervisory authority. As a result, the employee was deemed

to not be a supervisory employee for wage and hour purposes, and was therefore

non-exempt. The same applies here. Fleming was hired as a police chief, and

while Bonnie Thomas was the City Manager, he had full management of the

department. However, Fannie Carroll changed that, and essentially removed

management of the department from his control. *Nena' Henash v Ipalook* stands for

the principle that the Courts should look to the actual authority exercised rather

than the nominal title an employee possessed in determining whether the employee

---

[89] Id.
[90] Plt. Ex. 1 (Carroll Depo) 50:148-52:19
[91] 985 P.2d 442 (Alaska, 1999)

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

was a supervisory employee.  All of the evidence in this case clearly establishes that in reality Fannie Carroll was managing the police department; not Fleming.

In summary, it is clear Fleming did not qualify as an employee employed in an executive capacity with regard to three of the four criteria contained in 29 C.F.R. § 541.100.  Specifically, he performed patrol duties 75% of the time.  His primary duty was not management of the department after Fannie Carroll became City Manager, because Fannie directly managed the department.   Similarly, Fannie Carroll customarily and regularly directed the work of the department's employees; not Fleming.  And Fleming did not have the power to hire, fire, or discipline employees; this function was performed by Fannie.   There is not question that Fleming had the title, and, when initially employed, he was supposed to have been an executive employee managing the police department.  But the realities of the situation clearly demonstrate that Fannie Carroll had undermined his supervisory and management role.  Therefore, there is substantial evidence sufficient to raise a genuine dispute of fact to the extent that a reasonable jury might find that Fleming was not an executive employee.

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

**CONCLUSION**

For the reasons set forth above, the Court should deny the Defendants motion for summary judgment against Fleming.   Additionally, the Court should grant Flemings motion for partial summary judgment holding that that the City's Grievance system did not apply to Chief Fleming.


DATED: October 16, 2006          s/ Michael J. Walleri
                                 Law Offices of Michael J. Walleri
                                 330 Wendell Street, Suite E
                                 Fairbanks, AK 99701
                                 (907) 452-4716
                                 (907) 452-4725 (Facsimile)
                                 walleri@gci.net
                                 AK. Bar No. 7906060


Certificate of Service
I hereby certify that under penalty of perjury that a true and
 Correct copy of the foregoing was sent to the following counsel
of record on October 17, 2006 via ECFl  to:
Mr. Howard S. Trickey
Mr. Matt Singer
Jermain, Dunnagan & Owens, P.C.
3000 A Street, Suite 300
Anchorage, AK 99503


s/ Michael J. Walleri

Michael J. Walleri
Attorney at Law

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725