Michael J. Walleri
Law Offices of Michael J. Walleri
330 Wendell Street, Suite E
Fairbanks, Alaska 99701
(907) 452-4716
(907) 452-4725 (Facsimile)
Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| REGINALD FLEMING, CHRISTOPHER DELEON, CHRIS HAMPTON, WILLIAM D. MCKILLICAN, and TODD SCHLUMBOHM<br><br>Plaintiffs,<br><br>vs.<br><br>FANNIE CARROLL, and the CITY OF FORT YUKON, ALASKA<br><br>Defendants. | **MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON EMPLOYMENT CLAIMS (TODD SCHLUMBOHM)**<br><br>Case No. F04-0034 CIV (RRB) |

      The City of Fort Yukon and Fannie Carroll (collectively referred to as the City) have moved for summary judgment as to Officer Schlumbohm with regards to Count III (Constructive Termination); Count IV (Violation of 42 USC 1983- Procedural Due Process). [1] The thrust of the motion is that these claims should be not be allowed because Officer Schlumbohm terminated his employment and did

---

[1] This motion does not address Officer Schlumbohm claims in Count I (Unpaid Overtime).

**Michael J. Walleri**
*Attorney at Law*
330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

*Fleming, et. al. v City of Fort Yukon*             *Page 1 of 18*
Opp: Partial Sum. Jud. (Schlumbohm; Counts III & IV)
[Docket 102]

not avail himself of the pre-termination hearing and grievance procedures available to him under the Fort Yukon Personnel Policy.  The Court should deny the City's motion for summary judgment because there is sufficient evidence to raise a genuine issue of fact that Officer Schlumbohm's pre-termination hearing before Fannie Carroll – the person who terminated Schlumbohm--- was futile as was any effort to bring the matter before the City Council in a grievance.

Officer Schlumbohm has also filed a cross motion for summary judgment seeking a rulings that Officer Schlumbohm was constructively terminated.

As demonstrated below, Fannie Carroll

1) Engaged in a pattern of harassment of the police officers, including Officer Schlumbohm,

2) Terminated Chief Fleming and DeLeon to cut off a criminal investigation into suspicions that her father embezzled money from the City,

3) Promoted and praised Officer Schlumbohm upon these terminations in the hope to elicit his loyalty, and

4) Within days terminated him.

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

*Fleming, et. al. v City of Fort Yukon*                                                                 *Page 2 of 18*
Opp: Partial Sum. Jud. (Schlumbohm; Counts III & IV)
[Docket 102]

All the evidence suggests that the terminated officers attempted to meet with the City Council but were denied access and any grievance process would have been futile.

## I.   STANDARD FOR SUMMARY JUDGMENT.

The City is only entitled to summary judgment if the Court finds that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits… show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2] A dispute over a material fact exists if the evidence would allow a reasonable fact-finder to return a verdict for the non-moving party.[3]  "(T)he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.[4]  The non-moving party may defeat judgment by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial.[5]  "The plaintiff, to survive the defendant's motion, need only present evidence from which

---

[2] *See* FRCP 56(c)
[3] *See Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)
[4] *Anderson v Liberty Lobby, Inc.*, 477 U.S., at 247-248
[5] *Celotex Corp. v Catrett,* 477 U.S. 317, 322 (1986).

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

a jury might return a verdict in his favor. If he does so, there is a genuine issue of fact that requires a trial."[6]

In this case, there is sufficient evidence to establish that Ms. Carroll's actions toward Officer Schlumbohm 1) were initiated, in part, by improper motives, 2) were not what a "reasonable person would regard as fair, and 3) would compel a reasonable person in Officer Schlumbohm position to resign. Additionally, there is sufficient evidence to establish that the City's personnel policy was ineffective to protect Officer Schlumbohm rights as an employee, and that any effort to resort to the City's personnel policy would be futile.

## II. FACTS.
### A. The City's Municipal Code and Personnel System.

The City of Fort Yukon personnel code requires "just cause" for disciplinary actions, including terminations,[7] and requires that an employee be given a hearing

---

[6] *Anderson* v. *Liberty Lobby, Inc., ante*, at 257.
[7] Plt. Ex. 2, (City Personnel Code) at p. 14 (See §§ 1-3)

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

prior to termination.[8] It also establishes a progressive disciplinary procedure.[9] In the later case, only a supervisor may initiate a disciplinary procedure.[10]

The City of Fort Yukon Personnel policy has grievance procedures (Chapter 7).[11] The grievance process is a four-step process involving:

i)   an informal meeting between the employee and his supervisor.

ii) a written presentation to the Personnel officer followed by an informal resolution by Personnel officer;

iii) a right of appeal to the City Council.[12]

A party who does not agree with the results of a pre-termintaion hearing may used the grievance system to challenge an adverse decision.  In this case, Officer Schlumbohm's supervisor at the time was Chief Wallace. Fannie Carroll, as the City Manager was also the City Personnel Officer.[13]  Hence, in this situation, exhausting the grievance system means that Schlumbohm would have to first have an informal meeting with Chief Wallace.  If that did not resolve the problem, he needed to

---

[8] Id. at p14 (See §3
[9] Plt. Ex. 2, (City Personnel Code) at p. 15 (See § 8a)
[10] Id.
[11] Plt. Ex. 2, at p. 6 (§ 13)
[12] Id.  p. 21-30.
[13] Id., at p 6 (Chap. 1, §13)

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

*Fleming, et. al. v City of Fort Yukon*                                                                                 *Page 5 of 18*
Opp: Partial Sum. Jud. (Schlumbohm; Counts III & IV)
[Docket 102]

appeal the matter to Fannie Carroll. If that did not resolve the matter, he could only then appeal the matter to the city council.

### B. Schlumbohm's Employment and Termination.

Officer Schlumbohm was hired as a Village Police Officer (VPO) by the City of Fort Yukon in March, 2003.[14] He was not certified under as a police officer in the state, but was certified as VPO.[15] The City of Fort Yukon is a small community of 570 people located at the confluence of the Yukon River and the Porcupine River, about 145 air miles northeast of Fairbanks.[16] As a result, the community falls within the definition of a "village" for Police Council standards[17] and the minimum standards for police officers in the state do not apply within the community.[18] Rather, the VPO standards apply.[19] Eleven months after Schlumbohm was hired, the City of Fort Yukon fired the Chief Fleming and Officer DeLeon, and Officer

---

[14] See Def. Memo, at 2

[15] Schlumbohm was trained as a VPO in the winter of 2003. See Plt. Ex. 5 (Schlumbohm Depo) at 15:6-17; 92:23-93:11; See also Plt. Ex. 6 (Schlumbohm's VPO Certification) In its motion, the City argues that it had cause to terminate Schlumbohm because he was not qualified to serve as a police officer.. However, City is looking at the wrong standards. The City is exempt from such requirements. The City raises concerns that Officer He is not, and was not certified under as a police officer in the state. 13 AAC 89.005, infra.

[16] http://www.commerce.state.ak.us/dca/commdb/CIS.cfm

[17] 13 AAC 89.150(3) defines a village as
  (3) "village" means a community off the interconnected Alaska road system, with a population of less than 1,000 persons based on the most recent federal census, which has been incorporated as provided in AS 29.18.

[18] 13 AAC 89.005 provides in relevant part,
  The requirements of 13 AAC 85.005- 13 AAC 85.120 do not apply to village police officers identified in 13 AAC 89, except as specifically provided in 13 AAC 89.

[19] Id.

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

*Fleming, et. al. v City of Fort Yukon*  *Page 6 of 18*
Opp: Partial Sum. Jud. (Schlumbohm; Counts III & IV)
[Docket 102]

Schlumbohm was promoted and than suspended within a matter of days. [20] He resigned shortly thereafter.

Chief Fleming testified in his deposition that Fannie Carroll routinely verbally attacked the officers.[21] He indicated that he often had to step into the situation to try and calm things down. Ms. Carroll would often make accusations about an officer that they offended her or accosted her without foundation.[22] Officer Schlumbohm had been present in Fort Yukon when Officer McKillican was forced to resign in July of 2003.[23] As a result, he was fully aware of the erratic and unusual way the City conducted its business. In Addition, it is important to note that Officer Schlumbohm was aware that

1) Chief Fleming and Officer DeLeon were investigating Fannie Carroll's father for embezzlement of money from the City of Fort Yukon;[24]

2) Fleming was investigating Fannie Carroll in connection with the disappearance of the 911 tapes subpoenaed in the Carroll/Miller stalking matter:[25]

---

[20] Plt. Ex. 3, at 66:23-25
[21] Plt. Ex. 4, at pp. 248-249;
[22] Plt. Ex. 4, at pp. 248-249.
[23] These facts are detailed in the Memo in Opposition and Cross Motion for Summary Judgment as to Officer McKillican's claims filed contemporaneously with this memorandum.
[24] See Plt. Ex. 5 (Schlumbohm Depo) at 95:21-96:12

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

    3)   Schlumbohm was investigating the theft of a city check, in which Fannie interfered;[26] and

    4)   Troopers were investigating the disappearance of Fort Yukon's investigative files;[27]

In January of 2004, Chief Fleming and Officer DeLeon were terminated by Fannie Carroll. The actions were detailed in the Memorandum in Opposition and Support of Cross Motion for Summary Judgment concerning Chief Fleming and Officer DeLeon, and those facts are incorporated by reference in this Memorandum.

About the time that Fleming was fired, Schlumbohm was going on leave and returning to Fairbanks.  Before Schlumbohm learned that Chief Fleming had been terminated, he was contacted by Chief Fleming and ordered to remove personnel files from the police department, secure the evidence, and not give Fannie Carroll any 911 tapes if she asked for them.[28] Schlumbohm thought the orders were unusual and he called Capitan Tanner of the State Troopers for advice.[29] Capitan Tanner advised that he should follow his Chief's orders, and Schlumbohm secured

---

[25] Id., at 95:21-25
[26] Id. at 87:1-88:8
[27] Id, at 75:23-76:18
[28] Id. at 47-52
[29] Id.

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

the evidence locker and 911 tapes, and removed the personnel files and took them to Fairbanks where he secured them.[30] Schlumbohm did not remove any case or investigative files.[31] Subsequently, the investigative and case files for the city went missing, as well as the 911 tapes.[32]

The City falsely states that it did not learn that Schlumbohm removed the files until February 11th.[33] This is patently false, because in the same Memorandum of Law, the City admits that on February 7th, the City Manager sent Schlumbohm, who was still in Fort Yukon, a letter advising him to send her the personnel files and certain 911 tapes.[34] Between February 7th and February 9th, Schlumbohm returned to Fairbanks on leave. At that time, Fleming was still the Chief of Police; Fleming was not fired until February 9, 2004.[35]

On February 9, 2004, the same day that Fleming was fired, Schlumbohm was in Fairbanks. The City Manager faxed Schlumbohm a letter advising him that J.R.

---

[30] Id.
[31] Id.
[32] Id.
[33] Def. Memo, at 7
[34] Def. Memo, at 5; Def. Ex. G
[35] Def. Ex. F. The parties agree that Fleming was terminated on February 9th. See also Def. and Plt. Motions for Summary Judgment regarding Fleming.

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

Wallace was the new chief and that he was being promoted.[36] The suggestion that Schlumbohm actions amounted to "stealing" the personnel files is wholly inappropriate, because Fleming ordered him to remove the files prior to February 9th, and it is admitted by all parties that Fleming was still the Chief of Police at this time.

On February 11th, Fannie sent Schlumbohm a letter suspending him and giving him notice of a pre-termination hearing before Fannie Carroll on Monday February 16th, when he was due to return to Fort Yukon.[37] The On February 16th, Schlumbohm returned to Fort Yukon and returned the personnel records in his possession.[38] He also met with J.R. Wallace and Gregg Russell, a consultant from the Alaska Municipal League Joint Insurance Association.[39] Russell incorrectly advised Schlumbohm that he was not eligible to be a police officer in Fort Yukon, and offered to allow Schlumbohm to resign.[40] Officer Schlumbohm resigned, because, in his words, "I resigned from Fort Yukon because, to put it bluntly, it was either get fired or resign."[41]

---

[36] Def. Memo, at 4-5; Def. Ex. E
[37] Def. Memo at 7; Def Ex. H
[38]
[39] Plt. Ex. 5 (Schlumbohm Depo) at 44:17-45:1. DeLeon was also present in the meeting. Id.
[40] Id., at 44-46
[41] Plt. Ex. 5 (Schlumbohm Depo) at 43:23-24

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

Finally, it should be noted that between the time that Schlumbohm removed the records and his return to Fort Yukon, the Troopers conducted an investigation into the missing city records, and discovered that all the case files, investigative files and evidence tapes were missing from Fort Yukon.[42]

### III. SCHLUMBOHM WAS CONSTRUCTIVELY DISCHARGED AND HIS PROCEDURAL RIGHTS WERE VIOLATED.

The City of Fort Yukon Personnel policy has two separate sections dealing with dismissal (Chapter 5) and grievance procedures (Chapter 7).[43] As a starting point, it must be understood that the Alaska Supreme Court has consistently held that due process of law guaranteed by the United States and Alaska Constitutions requires a pre-termination hearing with regard to public employees, such as Officer Schlumbohm.[44] A public employee ordinarily has the right to an adversarial hearing before he may be effectively dismissed.[45] Chapter 5 of the City of Fort Yukon Personnel Policy (dealing with Dismissals) reflects this legal principle, by providing

---

[42] Id, at 75:16- 76:1; 94:22-96:20
[43] Def. Ex. B.
[44] *Odum v. University of Alaska*, 845 P.2d 432, 434 (Alaska, 1993); *Storrs v. Municipality of Anchorage*, 721 P.2d 1146, 1149-50 (Alaska 1986), cert. denied, 479 U.S. 1032, 93 L. Ed. 2d 832, 107 S. Ct. 878 (1987); *Kenai Peninsula Borough Bd. of Educ. v. Brown*, 691 P.2d 1034, 1037 (Alaska 1984); *McMillan v. Anchorage Community Hosp.*, 646 P.2d 857, 864 (Alaska 1982); *University of Alaska v. Chauvin*, 521 P.2d 1234, 1238 (Alaska 1974);*Nichols v. Eckert*, 504 P.2d 1359, 1366 (Alaska 1973)
[45] *Storrs v. Municipality of Anchorage*, 721 P.2d 1146, 1149-50 (Alaska 1986), cert. denied, 479 U.S. 1032, 93 L. Ed. 2d 832, 107 S. Ct. 878 (1987); K

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

*Fleming, et. al. v City of Fort Yukon*                        *Page 11 of 18*
Opp: Partial Sum. Jud. (Schlumbohm; Counts III & IV)
[Docket 102]

that a city employee may only be dismissed for just cause, and requiring a pre-termination hearing. [46] The pre-termination hearing is conducted by the City Manager.[47] Additionally, the policy provides for mandatory progressive discipline.[48] However, it is very clear that within the dismissal process, an employee only has grievance rights after the pre-termination hearing. Indeed, the personnel policy expressly provides, "An employee who is dismissed after a pre-termination hearing shall have the right to pursue a grievance under Chapter 7."[49]

      The stated reasons for the termination were

          1) removed personnel files

          2) refused to return the files upon demand

          3) insubordination

---

[46] See Def. Ex. K, p14-15. Chap. 5, Section 3, which reads
    An employee may be dismissed for just cause using the procedures of this Chapter, Section 8; except as otherwise provided by state statute, city charter, or city ordinance, **a city employee may be dismissed for only just cause.** Before an employee is dismissed, the City shall provide the employee with **written notice stating**
        a)     **the reasons for the proposed dismissal, and**
        b)     **the right to request a hearing before the City Manager**
    If the employee requests a hearing the City Manager shall promptly schedule a hearing during which the employee shall have the right to confront the witnesses against him, to testify in his own behalf and to call witness to testify on his behalf.
    An employee who is dismissed after a pre-termination hearing shall have the right to pursue a grievance under Chapter 7.

[47] Id.

[48] See Def. Ex. K, p. 15. Chap. 5, Section 8.

[49] Supra

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

    4) failure to follow commands and directives.

 The facts do not support these allegations. Schlumbohm was ordered by his chief at the time to remove the files. He complied with those orders. Fannie, who was not his operational superior, did not ask him to return the files after the 9th. She simply terminated him. It is illogical to suggest that he was insubordinate under these circumstances, particularly when there is not evidence that Fannie Carroll actually asked him to return the files to her. [50] Fannie was fully aware when she promoted him that he was retaining the files. The suggestion that Officer Schlumbohm had committed cause for termination is illogical and obviously pre-textual. Rather, it is obvious that Fannie initially believed that Schlumbohm was not a threat in her effort to stop the investigation of her father being conducted by Fleming and DeLeon. Within days, however, as the Troopers became involved in investigating Fort Yukon's missing 911 tapes and investigative files, Fannie became insecure, and she perceived Schlumbohm as a threat equal to Fleming and DeLeon. As a result, she terminated Schlumbohm as part of her efforts to impede the investigation of her father for embezzlement.

---

[50] Fannie says that she contacted the Troopers, but the Troopers never contacted Officer Schlumbohm before he returned to Fort Yukon with the files. Plt. Ex. 5, at pp. 56-57

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

To show constructive discharge under Alaska law the employee must prove that a "reasonable person in the employee's position would have felt compelled to resign." *Municipality of Anchorage v. Gregg,* 101 P.3d 181, 192n40 2004 (Alaska 2004)[51] In that case, a police officer who was involved in a extra-martial affair resulting in various violent confrontations between her husband and her lover.  She was found to have been constructively discharged because she was forced to either resign or risk being fired.[52]  That is exactly the situation faced by Schlumbohm.  As to Schlumbohm, the evidence is clear that he faced termination because he did was he was ordered to do by the Chief of Police at that time--- i.e. Chief Fleming.  He checked with Capitan Tanner of the State Troopers who advised him to follow his Chiefs orders.  Schlumbohm was not being fired because he refused to follow orders; he was fired for following the orders of his superior at the time, and that Fannie fired that superior who was investigating her father for criminal activity.  As a general matter, corruption violates public policy, and the termination of an

---

[51] Citing In *Charles v. Interior Hous. Auth.*, 55 P.3d 57, 59-60 (Alaska 2002), which explained
> To prevail on a wrongful termination claim an employee must prove: (1) that the employee was discharged by its employer and (2) that the employer breached a contract or committed a tort in connection with the employee's termination. … Constructive discharge "satisfies the discharge element in a wrongful claim. A constructive discharge occurs when "an employer makes working conditions so intolerable that the employee is forced into an involuntary resignation." To establish constructive discharge it is not necessary that the employee actually "prove that the employer acted with the specific intent of causing the employee to resign."″

[52] Alternatively, in Gregg, the plaintiff could have elected to loose her police certification, because she was seeking leave that she was entitled to under federal, state, and local laws

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

*Fleming, et. al. v City of Fort Yukon*  *Page 14 of 18*
Opp: Partial Sum. Jud. (Schlumbohm; Counts III & IV)
[Docket 102]

employee in furtherance of corruption or to cover up corruption violates the covenant of good faith and fair dealing. *Central Bering Sea Fishermen's Ass'n v. Anderson, 54 P.3d 271, 280 (Alaska 2002)* Thus, Schlumbohm was being terminated for no just cause, and in violation of public policy, which violated the covenant of good faith and fair dealing.

### IV. SCHLUMBOHM WAS EXCUSED FROM NOT ATTENDING THE PRE-TERMINATION HEARING AND FROM FILING A GRIEVANCE.

The City now claims that Schlumbohm failed to attend and contest his dismissal in the pre-termination hearing. This is incorrect, because the pretermination hearing was obviously futile. Courts have held that failure to exhaust administrative remedies may be excused where the administrative procedures are ineffective because of lack of meaningful access, bias, futility, or the possibility that the claimant could face irreparable harm if the administrative process is followed.[53]   In this case, the pre-termination hearing and any grievance to the City council were obviously futile,

---

[53] *Bruns v. Municipality Of Anchorage, Anchorage Water & Wastewater Utility, 32 P.3D 362, 371 (Alaska, 2001)*; Citing Kevin W. Reese, Administrative Remedies Must Be Exhausted Absent Circumstances Supporting an Exception to Exhaustion Doctrine, 47 S.C. L. Rev. 17, 22 (1995); *see also McCarthy v. Madigan, 503 U.S. 140, 148, 117 L. Ed. 2d 291, 112 S. Ct. 1081 (1992)* (explaining principle that a failure to exhaust administrative remedies may be excused when the administrative process is biased);

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

In Schlumbohm's case, the City offered a pre-termination hearing; however, it was obvious what the result was going to be. The hearing was before Fannie Carroll, who is the person who fired Schlumbohm in the first case. There is little question that the result would be adverse, and consequently, Schlumbohm was excused from attending the pre-termination hearing.[54]

Alternatively, the City suggests that Schlumbohm could have appealed directly to the City Council. However, the facts demonstrate that this avenue was not available to any of the Officers. Fleming and DeLeon returned to Fort Yukon from Fairbanks on February 16, 2004 --- the same day that Schlumbohm returned. Fleming and DeLeon returned in order to attend a Council meeting set for that day.[55] When the officers returned to Fort Yukon to meet with the Council, Gregg

---

*Bowen v. City of New York*, 476 U.S. 467, 483-84, 90 L. Ed. 2d 462, 106 S. Ct. 2022 (1986) (holding that a failure to exhaust administrative remedies may be excused when the claimant faces a danger of irreparable harm from the administrative process); *Robyns v. Reliance Standard Life Ins. Co.*, 130 F.3d 1231, 1236 (7th Cir. 1997) (applying standard that a failure to exhaust administrative remedies may be excused where "there has been a lack of meaningful access to the review procedures"); *Eidelson v. Archer*, 645 P.2d 171, 181 (Alaska 1982) (establishing that failure to exhaust administrative remedies may be excused where the pursuit of the administrative remedy would be futile due to the certainty of an adverse decision.)

[54] *Eidelson v. Archer*, 645 P.2d 171, 181 (Alaska 1982) (establishing that failure to exhaust administrative remedies may be excused where the pursuit of the administrative remedy would be futile due to the certainty of an adverse decision.)

[55] Plt. Ex. 5 ( Schlumbohom Depo.) 79:23 – 80:12

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

Russell informed them that the City council would not meet with them.[56] Clearly, Fleming and DeLeon were attempting to bring their concerns to the City Council. In Fleming's case, this was the only remedy available to Fleming and was entirely appropriate. However, Gregg Russell told Fleming and the other officers that the City Counsel would not meet with them. Simply stated, Fleming attempted to access and was denied access to the process that the city now claims Schlumbohm should have used. The circumstances would lead a reasonable person in Schlumbohm's position to believe that a grievance to the City Council would not be available to him.

Finally, the accompanying affidavit of Richard Miller, who was serving on the City Council at the time, confirms that the City Council would not be a neutral forum. According to Richard Miller, the majority of the City Council would have supported Fannie Carroll in such a grievance.

---

[56] Plt. Ex. 5 ( Schlumbohom Depo.)., 80:15- 81:14. In his deposition, Gregg Russell indicated that he was unclear whether the city council meeting actually took place, and Mr. Russell believed that the officers actually declined to attend. Plt. Ex. 7(Russell Depo) 17:1-23 On the other hand, Councilwoman Debra McCarty indicated that she met individually with Russell that day, and that the Council may have met with Russell in executive session after her individual meeting, but she could not be sure that such a council meeting ever really took place. Plt. Ex. 1 (McCarty Depo.) 39:17-41:20

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

*Fleming, et. al. v City of Fort Yukon*                                                                                 *Page 17 of 18*
Opp: Partial Sum. Jud. (Schlumbohm; Counts III & IV)
[Docket 102]

## CONCLUSION

The Court should deny the City's motion to grant summary judgment as to Schlumbohm's claims as to Count III and Count IV for the reasons set forth above. The Court should grant Schlumbohm's cross motion for summary judgment holding that he was constructively terminated.

DATED: October 30, 2006

s/ Michael J. Walleri

Law Offices of Michael J. Walleri
330 Wendell Street, Suite E
Fairbanks, Alaska 99701
(907) 452-4716
(907)452-4725 (Facisimile)
walleri@gci.net
AK. Bar No. 7906060

Certificate of Service
I hereby certify that under penalty of perjury that a true and
Correct copy of the foregoing was sent to the following counsel
of record on October 30, 2006 via ECFl to:
Mr. Howard S. Trickey
Mr. Matt Singer
Jermain, Dunnagan & Owens, P.C.
3000 A Street, Suite 300
Anchorage, AK 99503

s/ Michael J. Walleri

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

*Fleming, et. al. v City of Fort Yukon*
Opp: Partial Sum. Jud. (Schlumbohm; Counts III & IV)
[Docket 102]

*Page 18 of 18*