Howard S. Trickey
Matthew Singer
JERMAIN, DUNNAGAN & OWENS, P.C.
3000 A Street, Suite 300
Anchorage, Alaska 99503
(907) 563-8844

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| REGINALD FLEMING, *et al.* )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>FANNIE CARROLL, and the CITY OF )<br>FORT YUKON, ALASKA, )<br>)<br>Defendants. )<br>_____ ) | Case 4:04-cv-00034-RRB |

**REPLY IN SUPPORT OF DEFENDANTS'
<u>MOTION FOR SUMMARY JUDGMENT</u>
(REGINALD FLEMING)**

**I.    INTRODUCTION**

Plaintiff Reginald Fleming's opposition to the City of Fort Yukon's ("City") motion for summary judgment consists of a rendition of misinterpreted law and a wild conspiracy theory for which he cites no valid evidence. In support of his contentions, he cites with some frequency to a record that does not say what he claims. Also, many of the cases and regulations that he cites to do not stand for the legal principles he claims.

Fleming cannot defeat summary judgment with speculation, unsupported assertions, fabricated facts, and misstatements of the law.

The Court should grant summary judgment on Fleming's Fair Labor Standards Act ("FLSA") claim (Count I) because he was a supervisory executive employee. The Court should grant summary judgment on Fleming's wrongful termination claim because he was an insubordinate at-will employee and, conspiracy theories aside, he has offered no evidence contradicting that he was insubordinate. (Count II) The Court should grant summary judgment on Fleming's § 1983 claims because Fleming was an at-will employee and had no due process rights under any contract. (Count IV)

## II. ARGUMENT

### A. Fleming Cannot Defeat Summary Judgment with Unsupported Assertions, Speculation, and Misrepresentation

Fleming is entitled to have the facts reasonably construed in the light most favorable to him.[1] He is also entitled to have all <u>reasonable</u> inferences drawn in his favor.[2] He is not, however, permitted to fabricate facts or place the facts in a false light

---

[1] *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1027 (9th Cir. 2006) (*quoting Oliver v. Keller*, 289 F.3d 623, 626 (9th Cir. 2002)) ("Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are genuine issues of material fact and whether the district court correctly applied the relevant substantive law.").

[2] *Galvin v. Hay*, 374 F.3d 739, 745 (9th Cir. 2004) ("Viewing the evidence in the light most favorable to the nonmoving party, … and drawing all reasonable inferences in favor of that party, we must determine whether the district court correctly applied the relevant substantive law and whether there are any genuine issues of material fact.").

with unreasonable inferences.[3]  He does so repeatedly, even going so far as to misconstrue his own deposition testimony.[4]  The City has attached a table to this reply that compares Fleming's assertions to what the cited record actually shows.  [Ex. M]

### B. Fleming Was Exempt from the FLSA Overtime Provisions as a Supervisory Employee (Count I)

As the City's police chief, Fleming was an exempt supervisory employee and therefore he has no valid claim for overtime under the FLSA.  To avoid this exemption, Fleming offers a number of spurious legal arguments.  First, he makes an argument under the wrong test of the wrong regulation interpreting the wrong portion of the exemption.  [Plaintiffs' Opp., pp. 15-16]  Second, Fleming makes an argument based on two regulations that did not exist when he was employed with the City.  [Plaintiffs' Opp., pp. 17-18]  Third, Fleming makes the incorrect argument that he shared control of the police department with the city manager and is therefore not exempt under the FLSA.  [Plaintiffs' Opp., pp. 18-21]  In a sort of grand finale, Fleming asserts that he is not exempt under the FLSA based on an Alaska Supreme Court case construing the Alaska wage and hour statute.  [Plaintiffs' Opp., pp. 21-22]  None of these arguments have any merit, and the Court should find that Fleming was exempt under the short test as a supervisory executive employee under the FLSA.[5]

---

[3]   *Hernandez v. Spacelabs Medical, Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003) (The plaintiff "cannot defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements.").

[4]   *See* the attached table for a sample of the specific examples of this problem.  [Ex. M]

[5]   29 C.F.R. 541.1(f) (2003); 29 C.F.R. 541.1(f) (2002); 29 C.F.R. 541.1(f) (1998).

1.   **29 C.F.R. 541.2 is not the test for the FLSA exemption that the City argues that Fleming is exempt under.**

Fleming starts his FLSA argument by citing the wrong regulation and a case construing the wrong test under that regulation. [Plaintiffs' Opp., p. 16] Fleming cites 29 C.F.R. 541.2, which contains the test for who is exempt from the overtime provisions of the FLSA as an administrative employee.[6] The City does not argue that Fleming was exempt as an administrative employee. Rather, the City asserts that the police chief is an exempt <u>supervisory executive employee</u> under 29 C.F.R. 541.1. [Defendant Mem., p. 23] Fleming's argument that he was not exempt under 29 C.F.R. 541.2 answers a question that the City did not ask.

Moreover, Fleming provides the wrong answer to that question. Like the executive exemption under 29 C.F.R. 541.1, the administrative exemption contains a <u>short test</u> for whether employees who are paid more than $250 per week are exempt from the FLSA's overtime requirements.[7] Fleming concedes that he was paid more than $250 per week. Employees who are paid more than $250 are exempt if they meet the <u>short test</u>. Yet, Fleming relies on the 20 percent rule that comes from the <u>long test</u>.[8]

---

[6]   29 C.F.R. 541.2 (2003) ("The term *employee employed in a bona fide \*\*\* administrative \*\*\* capacity* in section 13(a)(1) of the Act shall mean any employee:"); 29 C.F.R. 541.2 (2002); 29 C.F.R. 541.2 (1998).

[7]   29 C.F.R. 541.2(e)(2) (2003); 29 C.F.R. 541.2(e)(2) (2002); 29 C.F.R. 541.2(e)(2) (1998).

[8]   29 C.F.R. 541.2(d) (2003) ("Who does not devote more than 20 percent … of his hours worked in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (c) of this section"); 29 C.F.R. 541.2(d) (2002); 29 C.F.R. 541.2(d) (1998).

[Plaintiffs' Opp., p. 16] And the case that he cites, *Haber v. Americana Corp.*, construes the <u>long test</u> for the administrative exemption under 29 C.F.R. 541.2.[9] [*Id*.] Fleming does not advance his cause by citing inapplicable regulations and cases that deal with the wrong test and the wrong exemption.

**2.    Fleming admits he was paid enough to fall under the "short test" for the supervisory employee exemption to the FLSA.**

Although he cites an inapplicable statute, Fleming has conceded that he was paid more than $455 per week for the purposes of the supervisory FLSA exemption. [Plaintiffs' Opp., p. 17][10] Under the FLSA regulations as they actually existed at the time of Fleming's employment with the City, an employee that was paid more than $250 per week fell under the short test.[11] Both parties therefore agree that Fleming was paid enough to fall under the short test.

**3.    Under the short test Fleming was an exempt supervisory employee.**

Under the short test at the time of Fleming's employment, an employee was exempt if he met all parts of a four part test.[12] First, the employee had to be paid on a

---

[9]    *Haber v. Americana Corp.*, 378 F.2d 854, 856-57 (9th Cir. 1967).

[10]    29 C.F.R. 541.100 did not exist prior to 2005. Prior to those changes, the test for whether an executive supervisory employee was exempt from the FLSA overtime provisions was contained in 29 C.F.R. 541.1. While referring to the post-2005 statute, Plaintiff noted that "[t]here is little question that Fleming met the first prong of these tests." The first prong is that a person is paid more than $455 a week. [Plaintiffs' Opp., p. 17]

[11]    29 C.F.R. 541.1(f) (2003); 29 C.F.R. 541.1(f) (2002); 29 C.F.R. 541.1 (1998).

[12]    *Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1112 (9th Cir. 2001) (*citing* 29 C.F.R. 541.1(f)).

salary basis.[13]  Second, he must be paid not less than $250 per week, not including board, lodging and other facilities.[14]  Third, his "primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized department [or] subdivision thereof."[15]  And fourth, that his primary duty "includes the customary and regular direction of the work of two or more employees."[16]

The City explained in its opening papers why Fleming was exempt from the overtime requirements of the FLSA under the short test contained in 29 C.F.R. 541.1(f). [Defendants' Mem., pp. 22-26]  Additionally, many of the unsupported factual premises upon which Fleming relies have been addressed in the attached table to this reply.  [Ex. M]  In the interest of brevity, the City will not re-argue those now.  Instead, the City will focus on where Fleming is incorrect in his construction of the relevant law or where his new position conflicts with sworn deposition testimony.

> **i.    Fleming's argument that he did not participate in the management of the City's Police Department under Carroll is both legally unsound and factually inaccurate under his own deposition testimony.**

Fleming's argument that he did not participate in "management" is specious.  He cites irrelevant regulations that were promulgated after he was no longer employed with the City and he ignores his own deposition testimony.  Initially, his iteration of what

---

[13]     *Id*.

[14]     *Id*.

[15]     *Id*. (*quoting* 29 C.F.R. 541.1(f)).

[16]     *Id*. (*quoting* 29 C.F.R. 541.1(f)).

constitutes "management" comes from the post-2005 regulations.[17] [Plaintiffs' Opp., p. 18] Under the regulations as they stood at the time and interpreted by the Ninth Circuit, the employee had to manage "the enterprise in which the employee is employed or of a customarily recognized department [or] subdivision thereof."[18] The fact that he had a boss does not make him non-exempt. In this case, Fannie Carroll was the manager of the City because she was City Manager. However, Fleming was the manager of the police department, which is certainly a "customarily recognized department" of the City.[19]

Also, Fleming's own deposition statements establish that he was in control of the department. According to him, if there was a conflict, he was the controlling authority. As he noted regarding management conflicts with Fannie Carroll, "I would tell – to protect the city, I would tell the officers, I will give you your directions." [Fleming dep., p. 250] As to whether the City Manager challenged his authority, Fleming would only

---

[17] *Compare* 29 C.F.R. 541.102 (2005) and 29 C.F.R. 541.102(b) (2003); 29 C.F.R. 541.102 (2002); 29 C.F.R. 541.102 (1998) ("For example, it is generally clear that work such as the following is exempt work when it is performed by an employee in the management of his department or the supervision of the employees under him: Interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the men and the property.").

[18] *Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1112 (9th Cir. 2001) (*quoting* 29 C.F.R. 541.1(f)).

[19] *Id.*

allow that she "[t]ried to." [Fleming dep., p. 251] As Fleming himself put it: "That's what they were paying me for, to make decisions. That was my job, to make decisions on what was going on with the police department and how to handle situations." [Fleming dep., pp. 155-156] Fleming understood that he was responsible "for the day-to-day operations of the police department." [Fleming dep., p. 70] Within the police department, there was no one higher for him to report to. [Fleming dep., p. 77] He was responsible for who got promoted and what trainings the officers could attend. [Fleming dep., p. 77] Fleming testified that he understood that he was in charge of scheduling the department.

> Q:  And you understood yourself to be responsible for scheduling the department?
> A:  Yes, sir.
> …
> Q.  You set the schedules for the other police officers and for the dispatchers?
> A.  Yes, sir. [Fleming dep., p. 71]

Fleming now claims "Fannie Carroll testified that Fleming did not do the scheduling of the officers; i.e. that the officers worked together to devise the work schedule." [Plaintiffs' Opp., p. 19] Fannie Carroll actually testified that Fleming was incompetent, not that the officers were supposed to be devising the schedule together.[20] Fleming's

---

[20]  
> Q:  Was it your understanding that there was no schedule for on-duty or off-duty of the officers?
>
> A:  If you can show me that I received and a schedule was kept for one complete month that – that would be great, I mean, there wasn't even – if you've got documentation on that, I would love to see it.

failure to correctly perform his job duties does not render him non-exempt. And, in any case, Fleming's own deposition testimony establishes that he thought that he had supervisory power when it came to managing the police department.

Similarly, the other officers viewed Fleming as the controlling authority in the police department. Fleming had given job evaluations to his fellow plaintiff William McKillican.

> Q: Have you ever had a job evaluation done in Fort Yukon?
> A: Verbally.
> Q: By who?
> A: By Reggie [Fleming]. [McKillican dep., p. 71-72]

McKillican quit his job because he thought that Fleming was the only person who should review his performance. [McKillican dep., p. 70] He "thought that my direct supervisor being the Chief of Police, Reggie Fleming, should do my evaluation." [McKillican dep., p. 70] Plaintiff Todd Schlumbohm ignored a direct order from Fannie Carroll in favor of an order from Fleming when he stole the police personnel files from the police department. [Schlumbohm dep., p. 47-48] Plaintiff Chris DeLeon saw Fleming as the

---

> Q: Well, I'm saying was there – do you know whether or not there was a schedule for when the …..
> A: I think they – they made schedules. It was that Reggie wasn't making the schedule for him to know who was where and who was, you know, home.
> Q: Do you know who was making the schedules?
> A: Well, I think the buck got passed a lot. It – that's called confusion, nobody really knew. The only people that were consistent in there would be a dispatcher that stayed and, you know, do you ask them to do someone else's job, I mean, that's just –
> Q: Well …..
> A: There – there was a lot of disorder. [Carroll dep., p. 106-107]

person in charge of the police department.  [DeLeon dep., p. 89]  His analysis of the police department power structure is instructive:

> Q: Did you understand there to be a chain of command within the police department and the city?
> A: Yes.
> Q: Who was at the top of the chain – chain of command?
> A: In my department, it would be Chief Fleming.
> Q: Who did he report to?
> A: The city manager, who was Fannie Carroll.
> Q: And did you understand that she was the personnel director for the city?
> A: I – yeah.  I came to know that, yeah.
> Q: And the chief reported to the city manager?
> A: Well, you know, I don't –
> Q: As you understood?
> A: Well, yes and no.  I mean, Reggie, I thought, reported to the city council was my understanding, but I might have been mistaken, so …
> Q: And then you reported to the chief?
> A: Correct.
> Q: You under – you saw him as your boss?
> A: Yes.
> …
> Q: Did you see Chief Fleming as responsible for hiring you?
> A: Yes.  Well, both he and Fannie in that meeting.
> Q: And then did you see him as responsible for setting your schedule?
> A: The large portion of it, yes.
> Q: When you said that you had a promotion to investigator; is that right?
> A: Uh-hum.
> Q: Who made that decision?
> A: Reggie.
> Q: Reggie Fleming?
> A: Uh-hum.  Chief Fleming.  [DeLeon dep., pp. 89-91]

Based on Fleming's own testimony and that of the other plaintiffs, it is indisputable that Fleming supervised the police department.  Fleming was the Chief of Police and his

"primary duty consist[ed] of the management of … a customarily recognized subdivision [of the City] and include[ed] the customary and regular direction of the work of two or more employees therein[.]"[21] Fleming is therefore exempt under the short test contained in 29 C.F.R. 541.1(f).

### ii. *Henash v. Ipalook* is an inapplicable case that construed the Alaska Wage and Hour Act, not the FLSA.

The case that Fleming cites to end his FLSA argument, *Henash v. Ipalook*, is completely inapplicable on several fronts.[22] First, although Fleming does not discuss this point, *Ipalook* is construing the Alaska Wage and Hour Act, not the FLSA.[23] Second, the Alaska Supreme Court never reached the issue of whether the plaintiff was an exempt employee because the defendant did "*not* appeal the court's finding that Ipalook was a non-exempt employee or the amount of the overtime awarded to Ipalook."[24] This case does not construe the FLSA and it is inapplicable to the question of the FLSA exemption now before the Court.

---

[21] 29 C.F.R. 541.1(f).

[22] 985 P.2d 442 (Alaska 1999).

[23] *Id.* at 444.

[24] *Id.* ("TCC appeals from the superior court's findings that Ipalook did not breach her fiduciary duty and from the award of liquidated damages. However, it does *not* appeal the court's finding that Ipalook was a non-exempt employee or the amount of the overtime awarded to Ipalook. Ipalook cross-appeals from the amount of the overtime award and from the amount of the prejudgment interest award.") (emphasis in original).

### C. Fleming Cannot Plead the New Tort of Breach of the Covenant of Good Faith and Fair Dealing in an Opposition

Fleming's new claim of the breach of the covenant of good faith and fair dealing has been raised for the first time in his opposition to summary judgment. He should not be allowed to do this. The pleadings framed a wrongful termination claim, not a breach of the covenant of good faith and fair dealing claim. Wrongful termination and breach of the covenant of good faith and fair dealing are different claims under Alaska law.[25] After the pre-trial scheduling order was entered, Fleming had 60 days to amend his complaint.[26] He did not do so, and he cannot do so now in an opposition to avoid summary judgment.[27]

### D. Fleming's Insubordination Was More Than Enough Reason to Terminate Him in the At-Will Employment Relationship and Fleming's Termination Was Not a Breach of the Implied Covenant of Good Faith and Fair Dealing

As an at-will employee, the City was within its rights to terminate Fleming for his insubordination. Fleming concedes that he was an at-will employee. [Plaintiffs' Opp., p. 9] As Fleming notes, "[a]t will employees may be terminated for any reason that does

---

[25] *See Miller v. Safeway, Inc.*, 102 P.3d 282, 288 (Alaska 2004) ("The causes of action for wrongful termination and breach of the implied covenant of good faith and fair dealing provide additional safeguards against employment practices that violate substantial and fundamental public policies.").

[26] Local Federal Rule 16.1(c)(6) ("Motions to amend pleadings or add parties must be filed not later than sixty (60) days after the date the Pretrial Scheduling Order is entered").

[27] *Id.*; *see also Tucson Elec. Power Co., Inc. v. Westinghouse Elec. Corp.*, 597 F.Supp. 1102 (D. Ariz. 1984) ("The issue of unconscionability will not be decided in this case. It is the conclusion of this court that the issue is not properly raised. At no time prior to the filing of the opposition papers did plaintiff indicate that this theory was to be pursued. It is not part of the complaint nor can it be inferred from the allegations in the complaint.").

not violate the implied covenant of good faith and fair dealing."[28] [*Id.*] If this Court allows Fleming to essentially amend his complaint in an opposition brief to assert a good faith and fair dealing claim, then the only question remaining is whether Fleming's termination breached the implied covenant of good faith and fair dealing. The Court should hold as a matter of law that the City did not breach the covenant.

As an initial matter, it should be noted that the main case Fleming uses to support his argument, *Central Bering Sea Fishermen's Ass'n v. Anderson*, never deals with the covenant of good faith and fair dealing.[29] [Plaintiffs' Opp., p. 10] In fact, the words "fair dealing" appear nowhere in the opinion. The Alaska Supreme Court instead dealt with whether it was proper to discuss the defendant's corruption during closing argument in order to get punitive damages.[30] It does not stand for the proposition that an at-will employee may not be fired for insubordination if he has made unsupported allegations of corruption of a family member of his boss. That is what Fleming would need it to say in order to survive summary judgment.

Instead, Fleming has a high hurdle to meet. The purpose of the covenant of good faith and fair dealing is to effectuate the reasonable expectations of the parties, not to alter or to add terms to the contract.[31] The Alaska Supreme Court has held that terminating an at-will employee simply because she did not get along with another

---

[28]  See *Luedtke v. Nabors Alaska Drilling, Inc.*, 768 P.2d 1123, 1131 (Alaska 1989).

[29]  54 P.3d 271 (Alaska 2002).

[30]  *Id.* at 280.

[31]  See *Era Aviation, Inc. v. Seekins*, 973 P.2d 1137, 1141 (Alaska 1999).

employee will not violate the covenant of good faith and fair dealing.[32] In this case, the City had a much better reason to terminate Fleming: he was insubordinate. [Ex. E] Fleming admits that when the City Manager asked him to return to Fort Yukon, he told her that he would not come back. [Fleming dep., p. 177] Instead, he "said, if you are going to fire me, fire me[.]" [Fleming dep., p. 178] The City simply took him up on his offer. Fleming does not dispute that he was insubordinate. [Defendants' Mem., p. 12] The Alaska Supreme Court has said that insubordination could be an independent basis for the termination of an at-will employee that does not violate the covenant of good faith and fair dealing.[33] Certainly the City is entitled to terminate an at-will employee for his direct insubordination.

Instead of disputing his insubordination, Fleming asserts that he was terminated because he was investigating Richard Carroll, a city council member, for corruption. Fleming's claim is analogous to a pre-textual discrimination case in that the City has explained that Fleming was terminated for insubordination and he asserts that the City's

---

[32] *See id.* ("Given the at-will nature of Era's employment contract with Seekins, we cannot say that the company's alleged desire to avoid a personality conflict between the employees would, if proved, amount to an impermissible motive for firing Seekins.").

[33] *Belluomini v. Fred Meyer of Alaska, Inc.*, 993 P.2d 1009, 1013 (Alaska 1999) ("Fred Meyer contends that undisputed evidence at trial established that Belluomini was fired for a number of reasons besides sexual harassment. We agree with Fred Meyer. The evidence that Belluomini introduced supported his claim that Fred Meyer did not follow all of its policies for termination of an employee for sexual harassment. But Belluomini did not dispute the evidence Fred Meyer introduced to show that it had also terminated him for insubordination, non-sexual harassment, and intimidation--conduct for which Fred Meyer's personnel manual provides no procedures analogous to those that apply under its sexual harassment policy.").

real reason was to retaliate because he was investigating Mr. Carroll. Fleming has not offered one iota of evidence to support this pretext theory. Instead, he offers only his unsupported speculation about Fannie Carroll's motives, and the wild assertions of counsel. Under Alaska law, a plaintiff cannot survive summary judgment in a pre-text case if she "failed to offer anything more than 'unsupported assumptions and speculation' to establish her theory of pretext."[34] Unsupported assumptions and speculation about why he was terminated is all Fleming has offered in his opposition.

Similarly, Fleming's conspiracy claims fail if this is analogized to a mixed motive discrimination case. "[A] plaintiff in a mixed-motive case must at least offer either direct evidence of prohibited motivation or circumstantial evidence strong enough to be functionally equivalent to direct proof."[35] "To meet this burden, the plaintiff in a mixed-motive case must present evidence of 'conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting on the discriminatory attitude.'"[36] "In a mixed-motive case, then, the claimant must go beyond establishing the existence of a potential retaliatory motive by adducing strong evidence--evidence akin to direct proof--that tends to establish the improper motive's substantial contributing role."[37] Fleming has failed to offer any such direct evidence to suggest that the City or Fannie

---

[34] *Mahan v. Arctic Catering, Inc.*, 133 P.3d 655, 662 (Alaska 2006) (*quoting French v. Jadon, Inc.*, 911 P.2d 20, 26 (Alaska 1996)).

[35] *Id*.

[36] *Id*. (*quoting Kinzel v. Discovery Drilling*, 93 P.3d 427, 435 (Alaska 2004)).

[37] *Id*. at 663.

Carroll was motivated, even in part, by some improper purpose.  Since Fleming fails to offer any evidence to support his retaliatory discharge claims, he cannot avoid summary judgment on his newly asserted good faith and fair dealing theory.

### E. Fleming's Admission that He Was an At-Will Employee Ends His § 1983 Due Process Claim (Count IV)

Fleming does not dispute that he was an at-will employee, in fact he has filed a cross-motion on the matter.  [Plaintiffs' Opp., p. 9; Plaintiffs' Cross-Motion]  "[I]t is undisputed that the contract waived his rights to termination for cause only and his rights to a pre-termination hearing, and his rights to a grieve [*sic*] adverse employment decisions."  [Plaintiffs' Opp., p. 9]  As was explained in the City's memorandum that accompanied the summary judgment motion, Fleming cannot have a § 1983 due process claim if he has no due process rights.  [Defendants' Mem., pp. 12-13]  To state a claim for violation of due process, Fleming first has to establish that he suffered a deprivation of a property right.[38]  Under Alaska law, "[an] employee who serves at will has no expectation of continued employment and therefore no property right."[39]  Since Fleming has no property right, his § 1983 due process claim fails as a matter of law.[40]  The Court should grant summary judgment on Fleming's Count IV claim.

---

[38] *Blackburn v. State, Dept. of Transp. and Public Facilities*, 103 P.3d 900, 906 (Alaska 2004).

[39] *Id*.

[40] *Id*.

## III.   CONCLUSION

The City respectfully requests that the Court should grant summary judgment on Fleming's FLSA claims because he was a supervisory executive employee. The Court should grant summary judgment on Fleming's wrongful termination claim because he was an insubordinate at-will employee and, conspiracy theories aside, he has offered no evidence contradicting that he was insubordinate. Finally, the Court should grant summary judgment on Fleming's § 1983 claims because Fleming was an at-will employee and so had no due process rights.

DATED at Anchorage, Alaska this 30th day of October, 2006.

                                  JERMAIN, DUNNAGAN & OWENS, P.C.

By:   s/ Matthew Singer
       Matthew Singer
       Alaska Bar No. 9911072

By:   s/ Howard S. Trickey
       Howard S. Trickey
       Alaska Bar No. 7610138
       3000 A Street, Suite 300
       Anchorage, AK  99503
       Phone:  (907) 563-8844
       Fax:  (907) 563-7322

**CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2006,
a true and correct copy of the foregoing
document was served electronically on the
following counsel of record:

Michael J. Walleri
330 Wendell St., Suite E
Fairbanks, AK 99709

By:  s/ Matthew Singer
133708