Case 4:04-cv-00034-RRB   Document 136-3   Filed 10/30/2006   Page 1 of 2

Deposition of William D. McKillican   Fleming, et al., vs. Carroll, et al.
Taken August 17, 2006   Case No. 4:04-cv-00034-RRB

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

REGINALD FLEMING, CHRISTOPHER )
DELEON, CHRIS HAMPTON, WILLIAM )
D. MCKILLICAN, and TODD )
SCHLUMBOHM, )
　　　　　　　　　　　　　　　　)
　　　　Plaintiffs, )
　　　　　　　　　　　　　　　　)
　　vs. )
　　　　　　　　　　　　　　　　)
FANNIE CARROLL and the CITY )
OF FORT YUKON, ALASKA, )
　　　　　　　　　　　　　　　　)
　　　　Defendants. )
_____)
Case 4:04-cv-00034-RRB


VIDEOTAPE DEPOSITION OF WILLIAM D. McKILLICAN

Taken Thursday, August 17, 2006

From the hour of 8:40 a.m. to 11:50 a.m.

Pages 1 through 141, inclusive

Volume 1

Taken by Counsel for Defendants

At

Offices of Heartland Court Reporters
100 Cushman Street, Suite 308
Fairbanks, Alaska 99701


Reported by:
CAROL A. McCUE, RMR
Heartland Court Reporters

Ex. N
pg. 1 of 2

Heartland Court Reporters   Telephone:   907-452-6727
Carol A. McCue, RMR  E-mail: carol.mccue@acsalaska.net   Fax:  907-488-7701

6b0c3aa5-a0a4-4c33-a00b-4241433e20f5

Case 4:04-cv-00034-RRB   Document 136-3   Filed 10/30/2006   Page 2 of 2

Deposition of William D. McKillican          Fleming, et al., vs. Carroll, et al.
Taken August 17, 2006                        Case No. 4:04-cv-00034-RRB

Page 70

1  I'm going to do -- and you know what, you're due for
2  your evaluation.
3    Q.  And -- and what did you say in response to
4  that?
5    A.  That was an indication, it was like, oh, I
6  didn't think that was appropriate. I thought that my
7  direct supervisor being the Chief of Police, Reggie
8  Fleming, should do my evaluation.
9    Q.  And then the city manager tell you that she
10 had authority under Title 29 to do your evaluation?
11   A.  She did tell me that, I believe. I -- I don't
12 remember what exact -- what title it was, but I
13 remember she was -- or she said something about her
14 going to get the personnel manual and she was going to
15 prove to me that she has the authority to write my
16 evaluation.
17   Q.  And then what happened?
18   A.  I told her, I said, you -- I said, don't even
19 bother. I said because I'm -- I quit. That's it.
20   Q.  And so I want you to assume for a minute that
21 that conversation didn't take place on that day, that
22 Fannie Carroll did not tell you, I'm going to evaluate
23 you right now. Would you have stayed employed?
24   A.  Absolutely. I like my job. I like my job.
25   Q.  So that was the -- that conversation was the

Page 71

1  reason you quit?
2    A.  That was the icing on the cake --
3    Q.  And your testimony --
4    A.  -- so to speak.
5    Q.  -- is, but for Fannie Carroll telling you I'm
6  going to evaluate you right now, in the context of that
7  conversation, you would not have quit your job?
8    A.  I think it was not just so much those terms,
9  it was the combination of the whole conversation, not
10 just that sentence.
11   Q.  That -- that is -- when you say that is --
12 that first she accused you of being a troublemaker?
13   A.  Absolutely.
14   Q.  You said, I'm not a troublemaker.
15   A.  Absolutely.
16   Q.  Then she said, okay, I'm going to do your
17 evaluation.
18   A.  Yes.
19   Q.  All right.
20   A.  And it was the way she said it to me.
21   Q.  You considered it a threat?
22   A.  Absolutely.
23   Q.  Have you ever had a job evaluation done in
24 Fort Yukon?
25   A.  Verbally.

Page 72

1    Q.  By who?
2    A.  By Reggie.
3    Q.  How did that go?
4    A.  Fine.
5    Q.  As far as you were aware, were there any
6  written evaluations?
7    A.  I don't believe so.
8    Q.  So what was the worst that you thought was
9  going to happen if you had allowed her to evaluate you?
10   A.  I was going to be fired.
11   Q.  She never actually in this conversation said,
12 I'm going to fire you, did she?
13   A.  No.
14   Q.  Fannie Carroll never said, I'm going to fire
15 you?
16   A.  No.
17   Q.  Never said any words to that effect?
18     MR. WALLERI: Asked and answered.
19     THE WITNESS: She never said, sir.
20     MR. WALLERI: Go ahead.
21 BY MR. SINGER:
22   Q.  I just want to, for the record, because we
23 were talking over, so --
24   A.  No.
25   Q.  -- I'm going to ask the question again.

Page 73

1    A.  She never said.
2    Q.  Never said any words to the effect of, I'm
3  going to terminate you from employment?
4    A.  No.
5      MR. WALLERI: Objection. Asked and answered
6  for the fourth time.
7  BY MR. SINGER:
8    Q.  What she said was I'm going to do a job
9  evaluation, right?
10   A.  I don't believe those were her exact words,
11 but that -- I believe that's what she meant.
12   Q.  That's what you understood her to be saying,
13 I'm going to evaluate your performance?
14   A.  It was the way she said it and the way she
15 provoked it up to that point.
16   Q.  That led to you conclude it was going --
17   A.  Led me to conclude that I was going to get a
18 poor performance evaluation and be terminated.
19   Q.  Had -- in your tenure at the City of
20 Fort Yukon, had you seen any police officer be
21 terminated for a bad job evaluation?
22   A.  No.
23   Q.  So you had no experience on which to base your
24 conclusion that a poor job evaluation would
25 automatically lead to termination?

Ex. N
pg. 2 of 2

19 (Pages 70 to 73)

Heartland Court Reporters              Telephone:  907-452-6727
Carol A. McCue, RMR  E-mail:  carol.mccue@acsalaska.net    Fax:  907-488-7701

6b0c3aa5-a0a4-4c33-a00b-4241433e20f5