Howard S. Trickey
Matthew Singer
JERMAIN, DUNNAGAN & OWENS, P.C.
3000 A Street, Suite 300
Anchorage, Alaska 99503
(907) 563-8844

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| REGINALD FLEMING, *et al.* | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| FANNIE CARROLL, and the CITY OF | ) |
| FORT YUKON, ALASKA, | ) |
| | ) |
| Defendants. | ) |
| _____ | )  Case 4:04-cv-00034-RRB |

**REPLY IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ON COUNT I**

## I.    INTRODUCTION

The City of Fort Yukon (the "City") is entitled to summary judgment on Plaintiffs'

Fair Labor Standards Act ("FLSA") claims (Count I).   Pursuant to 29 U.S.C. §

213(b)(20), the FLSA exempts small police departments from paying overtime if the

department has fewer than five law enforcement employees.   Plaintiffs' whole case

depends on falsely inflating the size of the Fort Yukon police department.   At first,

Plaintiffs alleged in their complaint that civilian dispatchers, the maintenance director,

and one temporary officer should be counted as law enforcement officers.   The City

moved for summary judgment because as a matter of law none of these people met the statutory and regulatory definition of a person employed in law enforcement.  So now, in their "Opposition and Cross-Motion" Plaintiffs adopt new theories.  For the first time, they ask the Court to include "jail guards," conveniently ignoring that Fort Yukon jail guards work for the <u>State of Alaska</u>, not the <u>City</u>.  Plaintiffs also want to count "Title 47" workers, but these are independent contractors working in health care, not law enforcement.  Even more incredibly, Plaintiffs ask the Court to <u>invalidate</u> and ignore the controlling Department of Labor regulations which exclude civilian dispatchers from the count of law enforcement employees.  And throughout their papers Plaintiffs seek to obfuscate by making unsupported factual assertions and angry accusations that have no basis in the record or reality.  In sum, Plaintiffs have failed to identify any disputed fact that prevents the Court from granting partial summary judgment in the City's favor on Count I.  The Fort Yukon Police Department never employed more than four persons in law enforcement, so it is exempt from overtime pay under 29 U.S.C. § 213(b)(20).

## II.    ARGUMENT

### A.    Whether the City Employed Fewer Than Five People in Law Enforcement is a Question of Law for the Court

The question of whether the overtime exemption in 29 U.S.C. § 213(b)(20) applies in this case does not raise a triable question of fact for a jury to decide.  It is instead a <u>question of law</u> for the Court.  This principle was clearly articulated in *Cleveland v. City*

*of Los Angeles.*[1]  "A district court's determinations regarding exemptions to the FLSA are questions of law."[2]

Plaintiffs are wrong to assert this is a jury question.  Even if there were a factual dispute here, which there is not, the question would be resolved by the court, not the jury. The United States Supreme Court itself has noted that the factual decisions underlying an FLSA exemption are to be decided by the court, not the jury.[3]  The correct standard is "that the facts necessary to a proper determination of the legal question whether an exemption to the FLSA applies in a particular case should be reviewed … pursuant to Rule 52(a), like the facts in other civil bench-tried litigation in federal courts."[4]  The court decides these factual questions, not the jury.[5]

The only question here is whether the City has employed more than five people in law enforcement during any given workweek.[6]  The City has sustained its burden of proof to the Court on this issue by providing affirmative affidavits showing that it never employed more than four law enforcement employees.  Plaintiffs have offered no viable arguments or facts otherwise.  The Court should find that the City did not employ more

---

[1]    *Cleveland v. City of Los Angeles*, 420 F.3d 981 (9th Cir. 2005).

[2]    *Id*. at  988  (*citing  Bothell v. Phase Metrics, Inc*., 299 F.3d 1120, 1124 (9th Cir. 2002)).

[3]    *Icicle Seafoods  v. Worthington*, 475 U.S. 709, 713 (1986).

[4]    *Id*.

[5]    Thus, if there were any facts in dispute, this Court would convene a preliminary hearing to resolve these preliminary questions of fact in a mini bench-trial.  Under no circumstances does the application of the 29 U.S.C. § 213(b)(20) exemption become a jury question.

[6]    *See* 29 U.S.C. § 213(b)(20).

than five people in law enforcement activities and that the exemption applies as a matter of law.[7]

## B.    The FLSA Regulations are Valid and Binding

Plaintiffs devote nearly seven pages of their opposition to the spurious argument that the FLSA regulations should be overturned because they conflict with Alaska state law.  [Plaintiffs' Opp., pp. 11-17]  Plaintiffs argue that these regulations are advisory and that "the FLSA regulations are interpretive of the statute" and that they are therefore not entitled to deference.  [Plaintiffs' Opp., pp. 12-13, 17]  Plaintiffs' argument is without any actual legal merit and has been contradicted by the United States Supreme Court. Also, invalidating these regulations in favor of a state statute would violate the Supremacy Clause of the United States Constitution.

### 1.    The FLSA regulations are entitled to *Chevron* deference and Plaintiffs have not shown that the regulations are an unreasonable interpretation of the FLSA.

The United States Supreme Court held in *Auer v. Robbins* that the FLSA regulations are entitled to the level of deference outlined in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*[8]  Under that doctrine, the Court "must sustain the Secretary [of Labor]'s approach so long as it is based on a permissible construction of the statute."[9]  The test is whether the regulation is an unreasonable reading of the FLSA,

---

[7]    *Cleveland*, 420 F.3d at 988.

[8]    *Auer v. Robbins*, 519 U.S. 452, 457-58 (1997); *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

[9]    *Id*. (*quoting Chevron*, 467 U.S. at 842-43).

not whether there are other differing, or even other plausible, readings of the statute.[10]
Plaintiffs have not offered any valid reasons for why the regulations are an unreasonable
reading of the FLSA exemption.

Plaintiffs instead seem to contend that the FLSA regulations are merely
interpretive and therefore not entitled to the same level of deference given to other
regulations. [Plaintiffs' Opp., pp. 12-13, 17] This is incorrect. The Supreme Court itself
has stated in relation to the FLSA that "[o]f course, the framework of deference set forth
in *Chevron* does apply to an agency interpretation contained in a regulation."[11] Under the
*Chevron* framework, "a court may not substitute its own construction of a statutory
provision for a reasonable interpretation made by the administrator of an agency."[12]

Plaintiffs have made no showing at all that these regulations are an unreasonable
interpretation of the FLSA. Instead, they merely assert that the FLSA regulations are
inconsistent with their own incorrect reading of Alaska law. [Plaintiffs' Opp., pp. 13, 16]
Plaintiffs cannot overcome *Chevron* deference.

---

[10]     *Id.* at 457-58.

[11]     *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (plurality opinion). In the
interest of clarity, the City notes that it is possible that an opinion letter regarding interpretation
of the FLSA would only be as valuable as its ability to persuade. In *Christensen v. Harris
County*, a plurality of the United States Supreme Court found this to be the case. [*Id.* at 587] It
is not at all clear that this position would command a majority of the Supreme Court as the
deciding opinion concurring in judgment advocated for the application of *Chevron* deference.
[*Id.* at 591] Justice Scalia concurred in judgment, but not in reasoning, because he thought that
the opinion letter was an unreasonable reading of the FLSA. [*Id.*] In his concurring opinion,
Justice Scalia also came to the conclusion that an opinion letter would be entitled to *Chevron*
deference. [*Id.* at 589-90] In any event, the regulations we are dealing with in this case are not
opinion letters and are regulations entitled to *Chevron* deference. [*Id.* at 587]

[12]     *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844
(1984).

2.    **Invalidating the FLSA regulations simply because they conflict with Alaska state law would violate the Supremacy Clause of the United States Constitution.**

Plaintiffs' reliance on a supposed conflict with state law is ill conceived. As discussed below, the state statutes do not conflict with the FLSA regulations. But, even if there was a conflict, the state statutes must bow to the federal regulations under the Supremacy Clause of the United States Constitution.

"The Supremacy Clause unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail."[13] The Ninth Circuit has noted that a state statute that attempted to limit the applicability of overtime laws "has no effect on the scope of the FLSA" because of the Supremacy Clause.[14] The FLSA was promulgated under the Commerce Clause.[15] "Just as state acquiescence to federal regulation cannot expand the bounds of the Commerce Clause, so too state action cannot circumscribe Congress' plenary commerce power."[16] The Supreme Court has "held repeatedly that state laws can be pre-empted by federal regulations as well as by federal

---

[13]    *Gonzalez v. Raich*, 545 U.S. 1, 125 S.Ct. 2195, 2212 (2005).

[14]    *Hale v. State of Ariz.*, 993 F.2d 1387, 1395 (9th Cir. 1993) ("Prisoners correctly contend that federal law controls their status as employees under the FLSA and that the state cannot rely on § 31-254(J) to defeat their claim. Under the Supremacy Clause, this state statute has no effect on the scope of the FLSA.").

[15]    29 U.S.C. § 202(b).

[16]    *Gonzalez*, 545 U.S. 1, 125 S.Ct. at 2213 (citations omitted).

statutes."[17]  If the state laws were truly in conflict, then the state law would be "nullified to the extent that it actually conflicts with federal law."[18]

### C.    Not All Police Department or City Employees Count as Persons Employed in Law Enforcement Activities

In defining "persons employed in law enforcement," the FLSA makes an important distinction between trained police officers and civilian employees of a police department.  Plaintiffs hope to inflate the police department by ignoring this distinction and including dispatchers and other untrained civilians.  Plaintiffs contend that any person who works for a police department is a person employed in law enforcement.  [Plaintiffs' Opp., p. 7]  This assumption permeates Plaintiffs' opposition, but it is simply not a correct reading of Alaska law or the FLSA.[19]  Under Plaintiffs' definition of "employed in law enforcement," a police department's janitor would count under the FLSA as a person employed in law enforcement.  The Court should reject Plaintiffs' bizarre argument in favor of a rule that is consistent with the FLSA, its regulations and a correct reading of Alaska law.

---

[17]    *Hillsborough County v. Automated Medical Labs.*, 471 U.S. 707, 713 (1985).

[18]    *Id.*

[19]    The idea that everyone employed in a municipal police department fits the first criteria of the "employed in law enforcement activities" test under the FLSA forms the logical basis for much of Plaintiffs' opposition.  The most specific instances include Plaintiffs' argument that the FLSA regulations are irrational under Alaskan law because there is only a training requirement.  [Plaintiffs' Opp., pp. 12-14]  The idea also forms the logical basis for their argument that dispatchers should be included in the number of people engaged in law enforcement activities.  [Plaintiffs' Opp., pp. 15-17 ("As noted above, **all** members a police department are peace officers.)]  Plaintiffs also return to it in their discussion of Mike Hardy's employment.  [Plaintiffs' Opp., p. 20]

1.    **Under Alaska law, a "peace officer" must be someone who spends her time performing police duties and functions in that capacity on a full time basis.**

Plaintiffs are incorrect to assert that "[a]ny member of a police force of an Alaskan Municipality is a peace officer." [Plaintiffs' Opp., p. 7] The Alaska Attorney General's office issued an opinion in 1977 explaining that under Alaska law the term "peace officer" included only public law enforcement officers with police-like duties.[20]

> Quite clearly, a peace officer is defined [under the statute] to mean public law enforcement officers having full police duties which as a general rule would include the following minimum requirements: the power to arrest for minor offenses; the power to detain a person taken into custody until that person is arraigned before a judge or magistrate; the power to use all necessary and reasonable force authorized by law, including the use of deadly force in limited circumstances; the authority to conduct investigations into suspected or known violations of the criminal law; the power to search with or without a warrant, persons, dwellings and other forms of property for contraband and evidence of a crime; the authority to suppress riots and to maintain order during emergencies and natural disasters; the authority to execute process issued by a court; and, in general, the discretionary authority to take such other action as is consistent and necessary with the exercise of these enumerated powers when essential to maintain the public peace, such as the authority to carry a concealed weapon.[21]

To be a peace officer, a person "must be empowered with the full range of police duties and authority and must be currently functioning on essentially a full time basis in that role."[22] Thus, civilian dispatchers, the maintenance director, and persons who look after

---

[20]    *See* Alaska Attorney General Opinion No. 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, 1977 WL 22059, *9563 (Sept. 18, 1977) (emphasis added).

[21]    *Id*. (emphasis in original).

[22]    *Id*. at *9564 (emphasis added).

the health of inebriants are not "peace officers" or persons employed in law enforcement.[23]

Plaintiffs' assertion that "[a]ny member of a police force of an Alaskan municipality is a peace officer with all appurtenant powers" is a misstatement of Alaska law.  [Plaintiffs' Opp., p. 7]

> **2.      Under the actual definition of "peace officer" under Alaska law, there is no conflict with the FLSA and none of the people who Plaintiffs claim were peace officers within the police department qualify as people engaged in law enforcement.**

Under the actual definition of a peace officer in Alaska, there is no conflict whatsoever with the FLSA regulation's requirements.   The § 213(b)(20) exemption applies to an employee who is "a uniformed or plainclothed member of a body of officers and subordinates who are empowered by State statute or local ordinance to enforce laws designed to maintain public peace and order and to protect both life and property from accidental or willful injury, and to prevent and detect crimes."[24]

Under both Alaska law and the FLSA, the person must spend a large majority of their time engaged in law enforcement to qualify as either a "peace officer" or a "person engaged in law enforcement."   Being a peace officer under Alaska law means that the

---

[23]      Amendments in 1990 changed the statute's structure and wording to the current form that Plaintiffs have misconstrued.  [1998 Alaska Op. Atty. Gen. 194, *686 n.1]  [Plaintiffs' Opp., p. 7]  "The 1990 amendments did not, however, alter the specific provisions interpreted in the 1977 opinion."  [1998 Alaska Op. Atty. Gen. 194, *686 n.1]  The Alaska Attorney General's Office reaffirmed the 1977 opinion in 1998.  [*Id.* at *686]  As the Attorney General's Office stated, "[w]e believe the advice provided in 1977 is still valid and we see no reason to overrule the opinion."  [*Id.*]

[24]      29 C.F.R. § 553.211(a).

person must be an officer of some sort "and must be currently functioning on essentially a full time basis in that role."[25]  Under the FLSA, a person must be engaged in law enforcement activities more than 80 percent of the time to count as a person engaged in law enforcement under the FLSA exemptions.[26]  In addition, the FLSA regulations require that a person have law enforcement training.[27]  No one who was an employee of Fort Yukon was a peace officer or engaged in law enforcement <u>except for the people who were hired as police officers</u>.  These police officers are exempt from overtime because there were never more than four of them.[28]

### D.    Jail Guards are Employed by the State of Alaska, Not the City, and the City's Title 47 Custodians are Contract Workers Not Employed in Law Enforcement

The State of Alaska, not the City of Fort Yukon, employs jail guards.  The State recently responded to a records subpoena and provided ample information to establish that these people work for the State, on the State's payroll, and not the City.  [*See* Ex. 7, Records Dep. Tr. of Trooper Searles & Dep. Exs. 2-5]  The State maintains the jail in the state building in Fort Yukon.  The State maintains an emergency prisoner guard program that pays jail guards to watch persons incarcerated in Fort Yukon for crimes.  [Ex. 7, Searles Dep. Ex. 2; Searles Dep. Ex. 3 ("<u>Since the guard will be a State of Alaska employee</u>, they need to have available to them a Supplemental Benefits System packet

---

[25]    Alaska Attorney General Opinion No. 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, 1977 WL 22059, *9564 (Sept. 18, 1977).

[26]    29 C.F.R. § 553.212.

[27]    29 C.F.R. § 553.211.

[28]    29 U.S.C. § 213(b)(20) (emphasis added).

with cover letter.")(emphasis added)]   The City does not pay any jail guards for any criminal matters.  [Aff. of M. Jackson, ¶ 9]   The City code does not have any crimes punishable by imprisonment.  [Aff. of M. Jackson, ¶ 3]   When the City's police officers arrest people on state crimes, the State pays for an emergency prisoner guard to watch the person until he/she is transferred to Fairbanks or released.  [*See id.*, ¶ 5]

The City occasionally separately contracts with some of the same people who work as State jail guards to watch over inebriants who are taken into custody under what the City calls a "Title 47," referring to the health and welfare statute, AS 47.37.170. [Aff. of M. Jackson, ¶ 18]  This is a civil health and welfare statute, not a criminal statute.[29] The City occasionally pays contract workers to assist with health and welfare work, but it does not employ correctional officers for law enforcement work.   These City health contractors are neither employees nor law enforcement workers, so they cannot be counted to inflate the size of the police department and negate its FLSA exemption. Plaintiffs seem to think that if the person worked in a jail house, that makes the person a City law enforcement officer, but this argument defies common sense and the regulatory definition.

### 1.    Jail guards are State, not City, employees.

The City was not an employer of the guards in their law enforcement duties with the State.  The State was the guards' employer, and the City did not jointly employ them. Like the question of whether someone is an employee under the FLSA, the question of

---

[29]     *See* AS 47. 37.170.

whether a party is a joint employer is a question of law.[30]  For this Court to determine if these jail guards were City employs, the factors from *Bonnette v. Calif. Health and Welfare Agency* provide basic guidelines:[31]

> [I]n deciding if an employer-employee relationship exists, has applied an "economic reality" test which identifies four factors: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  However, these particular factors are merely guidelines; "they are not etched in stone and will not be blindly applied." "The determination of whether an employer-employee relationship exists does not depend on 'isolated factors but rather upon the circumstances of the whole activity.'"[32]

 "The *Bonnette* factors, with their emphasis on control over the terms and structure of the employment relationship, are particularly appropriate where (as in *Bonnette* itself) it is clear that some entity is an 'employer' and the question is which one."[33]

Applying the facts of this case to these factors and the totality of the circumstances, it is readily apparent that the jail guards were State employees that the City did not jointly employ.  The guards were paid by the State pursuant to an Alaska statute and Alaska regulations.  [Ex. 7, Trooper Searles dep., pp. 9-13, 22 ("they were paid by the State when they did the guard hire in Fort Yukon.")]  The City did not

---

[30]    *Moreau v. Air France*, 356 F.3d 942, 945 (9th Cir. 2004).

[31]    *Bonnette v. Calif. Health and Welfare Agency*, 704 F.2d 1465 (9th Cir. 1983) (*disapproved of on other grounds Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528 (1985)).

[32]    *Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1325 (9th Cir. 1991) (*quoting Bonnette*, 704 F.2d at 1470.)

[33]    *Hale v. State of Ariz.*, 993 F.2d 1387, 1395 (9th Cir. 1993) (*quoting Vanskike v. Peters*, 974 F.2d 806, 809 (7th Cir. 1992)).

supervise the guards and had no control over the conditions of their employment.  [Aff. of Gary Webber; Aff. of M. Jackson]  And the State, not the City, maintained the jailers' necessary records for employment.  [Ex. 7, Trooper Searles dep. Ex. 2, 3]

> 2.    **The Title 47 contract work that some of these people did for the City was expressly civil health work, not law enforcement.**

Some of the people who work as State of Alaska emergency prisoner guards did contract work for the City.  This was civil health work, not law enforcement work, and is defined as such by statute.[34]  The work that these people did for the City was pursuant to AS 47.37.170, which requires the City to take persons incapacitated by alcohol into protective custody.[35]  Taking a person into "[p]rotective custody under (a) and (b) of this section <u>does not constitute arrest</u> and no entry or other record may be made to indicate that the person detained has been arrested or charged with a crime, except that a confidential record may be made that is necessary for the administrative purposes of the facility to which the person has been taken[.]"[36]  The reason that the jail is used at all is that the statute requires the police to take people incapacitated by alcohol to a state or municipal detention facility when no mental health facilities are available.[37]

---

[34]        AS 47.37.170(i).

[35]        AS 47.37.170(b).

[36]        AS 47.37.170(i) (emphasis added).

[37]        AS 47.37.170(b) ("If no treatment facility or emergency medical service is available, a person who appears to be incapacitated by alcohol or drugs in a public place shall be taken to a state or municipal detention facility in the area if it appears necessary for the protection of the person's health or safety.").

To this end, the City sometimes contracts with some of the State jail guards to watch the incapacitated, inebriated people.  [Aff. of M. Jackson, ¶ 18]  These contract workers are not City employees, and are most certainly not persons employed in law enforcement.

> In determining whether a person is an "employee" for purposes of social legislation such as the FLSA, the courts have identified a number of factors that should be considered. Although the list is not exhaustive, … the following [are] relevant factors: "1) The degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;  3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; 6) whether the service rendered is an integral part of the alleged employer's business."[38]

"Neither the presence nor the absence of any individual factor is determinative.  Whether an employer-employee relationship exists depends 'upon the circumstances of the whole activity,' and ultimately, whether, as a matter of economic reality, the individuals 'are defendant upon the business to which they render service.'"[39]

A number of facts point towards considering these people contractors for the Title 47 work they did for the City.  Title 47 work was not regularly scheduled.  [Webber Aff. ¶ 12]  The contractor could decide whether or not to take the assignment, and therefore decided whether or not to make money.  [*Id*.]  The job required a special skill, which was that the person be on the State's approved list of guards, as the City used the State jail for

---

[38]     *Donaovan v. Sureway Cleaners*, 656 F.2d 1368, 1370 (9th Cir. 1981) (*quoting Real v. Driscoll Strawberry Associates, Inc.*, 603 F.2d 748, 754 (9th Cir. 1979)) (citations omitted).

[39]     *Id*. (*quoting Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)) (citations omitted).

holding inebriants.[40]   There was no permanence to the working relationship since the guards came and went frequently.  [Aff. of M. Jackson, ¶ 24]  These are all facts that point towards a determination that these people were contractors in their work with the City.[41]   The determination "of whether an employee/employer relationship exists … depends 'upon the circumstances of the whole activity.'"[42]

Further, a person doing Title 47 work is not engaged in law enforcement.  The federal regulations contain the following important definitions.  First, in 29 C.F.R. 553.211(a), the Department of Labor set forth its three-part test for determining if a person is employed in law enforcement, and that test requires (1) being a member of a police force with (2) the power to arrest and (3) law enforcement training.  In 29 C.F.R. 553.211(e), the Department explained:

> Employees who do not meet each of the three tests described above are not engaged in "law enforcement activities" as that term is used in sections 7(k) and 13(b)(20).  Employees who normally would not meet each of these tests include … (11) Building guards whose primary duty is to protect the lives and property of persons within the limited area of the building." (emphasis added)

Thus a guard whose primary duty is to protect a person or a building is not considered a law enforcement officer.

In contrast, 29 C.F.R. 553.211 explains:

---

[40]      Under AS 47.37.170(b) "a person who appears to be incapacitated by alcohol or drugs in a public place shall be taken to a state or municipal detention facility[.]" There is no municipal detention facility in Fort Yukon.

[41]      *Real*, 603 F.2d at 754.

[42]      *Id.*

The term "any employee in law enforcement activities" also includes, by express reference, "security personnel in correctional institutions." A correctional institution is any government facility maintained <u>as part of a penal system for the incarceration or detention of persons suspected or convicted of having breached the peace or committed some other crime</u>. Typically, such facilities include penitentiaries, prisons, prison farms, county, city and village jails, precinct house lockups and reformatories. Employees of correctional institutions who qualify as security personnel for purposes of the section 7(k) exemption are those <u>who have responsibility for controlling and maintaining custody of inmates and of safeguarding them from other inmates</u> or for supervising such functions, regardless of whether their duties are performed inside the correctional institution or outside the institution (as in the case of road gangs).  (emphasis added)

Persons taken into protective custody under Title 47 are not "part of a penal system for the incarceration or detention of persons suspected or convicted of having breached the peace or committed some other crime."  There has been no crime.  And the persons the City pays to watch these drunks do not "have responsibility for controlling and maintaining custody of inmates and of safeguarding them from other inmates."  Drunks are simply not "inmates" and they are free to leave after 12 hours or when they sober up, whichever is less.

Plaintiffs recognize that inebriants taken in under Title 47 have not violated any criminal statute, yet they make the far-fetched argument that there has been a "common law … breach of the peace" and that therefore the Title 47 guards were acting in a law enforcement capacity.  [Plaintiffs' Opp., p. 10] [43]  "There are, of course, no common law crimes in Alaska."  The legislature has done away with common law crimes by statute.[44]  Title 47 is not a criminal statute, and work done under it therefore cannot constitute

---

[43]    *Olp v. State*, 738 P.2d 1117, 1118 (Alaska App. 1987).

[44]    AS 11.81.220.

dealing with criminals.[45]  These people were not acting in "law enforcement" when the City contracted with them to perform the City's statutory duty to babysit drunk people.

> **3.     Even if the Title 47 contract workers were counted, the number of people employed by the City in law enforcement was never more than four in any relevant workweek.**

Plaintiffs' "Title 47" argument is really a red herring, because even if the Court counted these contract health workers as law enforcement employees, they only increase the size of the police department above four law enforcement employees for two workweeks.  As City Manager Mike Jackson's affidavit and his Exhibit A demonstrate, even if they counted, these people do not inflate the department above four officers except for one week in February 2002, and one week in March 2002.  And the only Plaintiff working during those two weeks was Chief Fleming, who himself is exempt from the FLSA as a supervisory employee as provided in 29 C.F.R. 541.1(f).[46]  Other than those two weeks, the City never employed more than four in law enforcement *even if the Court includes Title 47 workers*.

> **E.     None of the Individuals Mentioned in Plaintiffs' Opposition Raise the Number of People Employed in Law Enforcement to More Than Four in any Given Workweek**

> **1.     J.R. Wallace.**

J.R. Wallace did serve as the fourth person employed in law enforcement during the time from when he began employment to when Reginald Fleming was terminated.

---

[45]     AS 47.37.170(i).

[46]     Chief Fleming's exempt supervisory status is subject of a separate motion for summary judgment filed by defendants at Docket 106.

[Plaintiffs' Opp., p. 20]  There was no fifth person who was engaged in law enforcement for Fort Yukon during any relevant period in which Wallace was employed.  [*See* Exhibit A to Jackson Aff.]  His employment does not entitle Plaintiffs to overtime pay under the FLSA.[47]

### 2.    Mike Hardy.

Even if Mike Hardy was included as a person employed in law enforcement, his employment is irrelevant to the current case.  His employment does not create any weeks where there were more than four people employed in law enforcement, even if the Court accepts that he should be included from February 2, 2002 to June 28, 2002.  [Plaintiffs' Opp., p. 20]  There still were only two other people also employed in law enforcement during the relevant weeks.  [*See* Attachment C to V. James Aff.]  This brings the total to three during any given workweek that Mike Hardy was employed.  [*Id.*]  Employing three people in law enforcement activities does not make the exemption inapplicable.[48]

### 3.    Gerald Alexander.

Gerald Alexander's employment with the City is irrelevant to the current case for the same reasons that Mike Hardy's employment with the City is irrelevant.  He was employed at a time when only two other people engaged in law enforcement were employed the City.  [*See* Attachment C to V. James Aff.; Ex. A to Jackson Aff.]

---

[47]     29 U.S.C. § 213(b)(20).

[48]     29 U.S.C. § 213(b)(20).

4.      The alleged "untrained officers."

Plaintiffs allege that Eric Tremblay, Debra Hardy and Charlotte Fleener were kept on as untrained officers, and that from that fact Plaintiffs are entitled to overtime. [Plaintiffs' Opp., p. 23]  Fleener and Tremblay were not used as untrained officers for the same reasons that are outlined in the City's original motion.  [Def. Mot., pp. 10-12, 17-20]  Without any factual basis in the record, Plaintiffs' contend that the City hired these people as "untrained officers" and failed to keep adequate records of their employment. [Plaintiffs' Opp., p. 22]  In fact, these people were hired as dispatchers (Fleener) and the maintenance director (Tremblay).   [Aff. of Fleener; Aff. of Tremblay]   Plaintiffs' argument is supported by two cases that do not stand for the propositions Plaintiffs assert. [Plaintiffs' Opp., p. 23 n. 59, 60]  And, it does not take into account the thousands of pages of payroll records that the City produced for them.

a.      The City kept the required payroll records and those records have been provided to Plaintiffs during discovery.

The City has provided Plaintiffs with 3,569 pages of documents, most of which are payroll records.   [Aff. of M. Jackson, ¶ 26]   Contrary to Plaintiffs' baseless accusations, these documents contain more than what is necessary to comply with the FLSA's recordkeeping requirements.  [Plaintiffs' Opp., pp. 22-23]

The recordkeeping requirements for non-exempt employees under the FLSA are laid out in 29 C.F.R. §516.2(a).  The recordkeeping requirements for employees that are exempt from the overtime provisions under 29 U.S.C. § 213(b)(20) are laid out in C.F.R. § 516.12.  [*See id.*]  The City complied with these requirements by keeping timesheets

and paystubs for all employees.  [Aff. of M. Jackson, ¶ 26]  And, in any case, Plaintiffs'

general accusations are irrelevant.  The cases that Plaintiffs use to support their legal

theory do nothing of the sort.[49]  [Plaintiffs' Opp., pp. 22-23]  Even if they did, Plaintiffs

have not come forward with any factual evidence "show[ing] that the City had a course

of dealing in which it employed untrained law enforcement officers, but failed to

maintain records of such employment."  [Plaintiffs' Opp., p. 23]  They have not pointed

to one specific instance where someone was employed by the City and proper records

were not kept.  General accusations will not suffice, and in the absence of any disputed

issue of material fact, Plaintiffs cannot survive summary judgment.[50]

> **b.    Plaintiffs' support for their theory that a records deficiency nullifies the FLSA exemption is not supported by their cited cases.**

Plaintiffs cite *Anderson v. Mt. Clemens Pottery Co.*,[51] purportedly to support their

assertion that faulty payroll records negate the City's small police department exemption.

The *Anderson* case, however, does not discuss the question of whether an exemption

could be proven.[52]  The words "exemption" and "exempt" do not appear once in the

opinion.  The case considers whether an employer could complain "that the damages lack

---

[49]    *See* Section II.D.4.b. of this reply.

[50]    Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest on the pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the party.").

[51]    328 U.S. 680 (1946).

[52]    *See id.*

the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements … of the Act."[53]  The Court found that the employer could not.[54]  The Court stated in the opinion that "we are assuming that the employee has proved that he has performed work and has not been paid in accordance with the statute. The damage is therefore certain.  The uncertainty lies only in the amount of damages arising from the statutory violation by the employer."[55]

The second case that Plaintiffs cite is equally inapplicable to the question before this Court.  In *Wirtz v. McClure*, the Tenth Circuit found that "[b]ecause the employer did not keep proper records the Secretary sustains the burden if it is proved that the employee 'has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'"[56]  Like *Anderson*, from which the above quotation stems, *Wirtz* adds nothing to the question of whether or not the small police department exemption applies to this case.  The words "exemption" and "exempt" do not appear anywhere in this opinion either.

Both of these cases might be applicable if the City's defense was that the Plaintiffs could not claim overtime wages because <u>Plaintiffs' hours</u> were not properly documented. That is not what this case is about.  The question is whether or not the small-department

---

[53]     *Id*. at 688.

[54]     *Id*.

[55]     *Id*.

[56]     *Id*. at 47 (*quoting Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)).

exemption applies, and Plaintiffs' cited cases do nothing to advance their position or support their arguments. In any event, the City has properly maintained and produced payroll records for each police department employee.

### 5.    Gary Webber.

Gary Webber was not employed by the City in a law enforcement capacity. He was employed by the City as a dispatcher, which is not a "law enforcement activity."[57] [Webber Aff., ¶ 4] He was employed by the State, not the City, as a jail guard. [Webber Aff., ¶ 5] The City also contracted with him on a few occasions to look after drunk people under Title 47. [Webber Aff., ¶¶ 9,10] Title 47 is expressly a civil statute, not a criminal statute.[58] His employment as a dispatcher does not make him an employee engaged in law enforcement activities.[59] His employment with the City was not as a person engaged in law enforcement under 29 U.S.C. § 213(b)(20). And even if he is counted as an officer, he generally does not bring the count above four. [Ex. A to Aff. of M. Jackson]

### 6.    Dale Hardy.

Like some of the other state jail guards, Dale Hardy worked under contract with the City as a civil health care worker in conformance with Title 47, AS 47.37.170.

---

[57]    29 C.F.R. 553.211(g).

[58]    AS 47.37.170(e) ("Protective custody under (a) and (b) of this section does not constitute an arrest and no entry or other record may be made to indicate that the person detained has been arrested or charged with a crime, except that a confidential record may be made that is necessary for the administrative purposes of the facility to which the person has been taken or that is necessary for statistical purposes where the person's name may not be disclosed.").

[59]    29 C.F.R. 553.211(g).

Plaintiffs' own Exhibit E to their opposition proves this point.  Title 47 is expressly a civil statute, not a criminal statute.[60]  His employment with the City was not as a person engaged in law enforcement under 29 U.S.C. § 213(b)(20).  His employment is irrelevant to whether the exemption applies.  And even if he were counted, he does not raise the count above four law enforcement officers, except for one week in March 2002.  [*See* Ex. A to Aff. of M. Jackson]

### 7.     The other jail guards.

It does not matter how many jail guards the State of Alaska employed in Fort Yukon during the relevant periods.  The question is whether the City employed them as law enforcement jail guards during the relevant workweeks.[61]  As was shown above, to the extent that these people did any work for the City, they were civil health care workers working under contract to comply with an expressly civil statute.[62]  Even if these Title 47 workers are counted, it only matters for two distinct workweeks, and the only Plaintiff employed during those two weeks was Chief Fleming, who is an exempt supervisory employee.

---

[60]     AS 47.37.170(e) ("Protective custody under (a) and (b) of this section does not constitute an arrest and no entry or other record may be made to indicate that the person detained has been arrested or charged with a crime, except that a confidential record may be made that is necessary for the administrative purposes of the facility to which the person has been taken or that is necessary for statistical purposes where the person's name may not be disclosed.").

[61]     29 U.S.C. § 213(b)(20).

[62]     AS 47.37.170(e).

### 8.     The dispatchers.

The Court should not count the dispatchers as people engaged in law enforcement. The governing regulation, 29 C.F.R. § 553.211(g), expressly states that "Not included in the term 'employee in law enforcement activities' are the so-called 'civilian' employees of law enforcement agencies or correctional institutions who engage in such support activities as those performed by [a] dispatcher[.]").  Plaintiffs are correct that counting the dispatchers as people engaged in law enforcement would make the FLSA exemption inapplicable, at least for some workweeks.  But the arguments Plaintiffs have made urging the Court to invalidate the FLSA regulations fly in the face of binding precedent and the Constitution.  The Court cannot ignore the regulations, and it should not count the dispatchers under the FLSA exemption.

## III.     CONCLUSION

The City respectfully requests that the Court grant its motion for partial summary judgment on Plaintiffs' FLSA claims (Count I).  Defendants did not employ more than five people in law enforcement activities during any given workweek, and have submitted affidavits to that effect.  If the Court treats Title 47 contract workers as persons employed in law enforcement, then there is one week in February 2002 and one week in March 2002 where the City had five "law enforcement employees," but the only plaintiff employed during that week was Chief Fleming, and as explained in a separate motion, he is exempt from the FLSA as a supervisory employee under 29 C.F.R. 541.1(f).  None of the other four plaintiffs ever worked during a single workweek where the City employed

more than four police officers *and* Title 47 workers.  Assuming this Court will follow the regulations, rather than ignore them, and treat civilian dispatchers as civilians, not law enforcement employees, then Plaintiffs DeLeon, McKillican, Hampton, and Schlumbohm cannot possibly show any workweek where the City ever had more than four law enforcement employees, so the City is entitled to summary judgment on Count I against each of those four.  If the Court treats Title 47 workers as law enforcement officers, then Fleming would be entitled to overtime for the two workweeks where the City employed more than four police officers and Title 47 workers, except that Chief Fleming is an exempt supervisory employee, as stated in a separate motion.  So, in sum, none of the Plaintiffs are entitled to overtime under the FLSA and Defendants are entitled to summary judgment on Count I.

DATED at Anchorage, Alaska this 31st day of October, 2006.

JERMAIN, DUNNAGAN & OWENS, P.C.

By:___s/ Matthew Singer_____
     Matthew Singer
     Alaska Bar No. 9911072

By:___s/ Howard S. Trickey_____
     Howard S. Trickey
     Alaska Bar No. 7610138
     3000 A Street, Suite 300
     Anchorage, AK  99503
     Phone:  (907) 563-8844
     Fax:  (907) 563-7322

**CERTIFICATE OF SERVICE**

I hereby certify that on October 31, 2006,
a true and correct copy of the foregoing
document was served electronically
on the following counsel of record:

Michael J. Walleri
330 Wendell St., Suite E
Fairbanks, AK 99701

s/ Matthew Singer
131474