Howard S. Trickey
Matthew Singer
JERMAIN, DUNNAGAN & OWENS, P.C.
3000 A Street, Suite 300
Anchorage, Alaska 99503
(907) 563-8844

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| REGINALD FLEMING, CHRISTOPHER DELEON, CHRIS HAMPTON, WILLIAM D. MCKILLICAN, and TODD SCHLUMBOHM, <br><br>                Plaintiffs, <br><br>     vs. <br><br> FANNIE CARROLL, and the CITY OF FORT YUKON, ALASKA, <br><br>                Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 4:04-cv-00034-RRB |

**DEFENDANTS' RESPONSE TO OPPOSITION TO
MOTION FOR PARTIAL SUMMARY JUDGMENT ON
EMPLOYMENT CLAIMS, COUNTS III and IV (TODD SCHLUMBOHM)**

## I.    INTRODUCTION

Todd Schlumbohm's opposition is like a magic trick.  He starts with a collection of interesting, yet incorrect, factual statements.  They are mostly uncited and periodically conflict with his own deposition testimony.  He then applies incorrect law to those factual statements and pulls an answer he likes out of the hat.  But, like a real magic trick, once

one looks at its operative parts the illusion disappears. The Court should grant summary judgment on his employment claims because: (A) his discharge was not wrongful; (B) he did not utilize the available process; and (C) he failed to exhaust the administrative process and exhaustion would not have been futile.

## II.    ARGUMENT

### A.    Schlumbohm has failed to create a disputed issue of material fact.

The City has filed a properly supported motion for summary judgment. "In response to a properly supported motion for summary judgment, the opposing party 'must set forth specific facts showing that there is a genuine issue for trial.'"[1] "In order to show that a genuine issue of material fact exists, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'"[2] Conclusory allegations unsupported by factual data cannot defeat summary judgment.[3] And, the Ninth Circuit "has refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony.'"[4]

Schlumbohm has failed to offer any evidence to refute the following material facts. On February 7, 2004, the City Manager sent Schlumbohm a letter asking for, among other things, the police officers' personnel records so that they could be sent to the

---

[1]    *Rivera v. National R.R. Passenger Corp.*, 331 F.3d 1074, 1078 (9th Cir. 2003) (*quoting Henderson v. City of Simi Valley*, 305 F.3d 1052, 1055-56 (9th Cir. 2002)).

[2]    *Id.* (*quoting Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)).

[3]    *Id.*

[4]    *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).

City's attorneys.  [Def. Ex. G, FY 1010]  On February 9, 2004, the City Manager faxed Schlumbohm a letter stating that Chief Fleming was dismissed and J.R. Wallace was the new police chief for Fort Yukon.  [Def. Ex. E, FY 1026]  Schlumbohm called co-plaintiff Reginald Fleming, who told Schlumbohm not to give the personnel files to her. [Schlumbohm dep., p. 53, 60]    Schlumbohm was in Fort Yukon at that time. [Schlumbohm dep., p. 59-60]  Schlumbohm then stole confidential personnel files from Fort Yukon, flew to Fairbanks and hid them in his bedroom closet.  [Schlumbohm dep., pp. 49, 54]  On February 11, 2004, the City discovered that Schlumbohm had taken the police department's confidential personnel files.    [Plfs' Disc. 112-113]    The City Manager sent Schlumbohm a notice of suspension and proposed termination. [*Id.*]  In the letter, the City Manager notified him that the reasons for the proposed termination included removal of the files, failure to return the files and insubordination.    [*Id.*] Schlumbohm was offered a pre-termination hearing. [*Id.*]  Schlumbohm resigned before his hearing took place.  [Def. Ex. J, 868; Schlumbohm dep., pp. 44-45]  At no time did Schlumbohm ever file a grievance.  [Schlumbohm dep., pp. 77, 79]

These facts constitute the necessary support for the City's motion for summary judgment.  Schlumbohm has failed to call them into question in his opposition, opting instead to make a series of unsupported conclusory statements. [*See e.g.* Schlumbohm Opp., pp. 13, 14-15, 17]  Even when he supports his arguments with citations, the

Case 4:04-cv-00034-RRB    Document 149    Filed 11/13/2006    Page 4 of 17

citations often do not support the argument.[5]  The material facts are not in dispute, and his opposition is not enough to survive summary judgment.

>    **B.    It makes no difference whether Schlumbohm was discharged or constructively discharged. In either case the City's actions were not wrongful and he was not _wrongfully_ discharged.**

The Court should grant summary judgment on Schlumbohm's discharge claim. He resigned, he was not discharged.  Even if he had been discharged, it was not wrongful because even Schlumbohm admits that he was terminated for insubordination for stealing personnel files.  [Schlumbohm dep., p. 64][6]  Wrongfulness is an element of a constructive discharge claim under Alaska law because "[c]onstructive discharge is not an independent cause of action, but merely satisfies the discharge element in a wrongful discharge claim."[7]  In the context of constructive discharges under Alaska law, "[t]o prevail on a wrongful termination claim an employee must prove:  (1) that the employee

---

[5]    A particularly glaring example of this is in footnote 15 where he cites "Schlumbohm's VPO certification" as proof that he was hired as a village police officer. When one goes to look at the cited exhibit, all that is there is a nearly blank piece of paper with the words "Schlumbohm's VPO Certification To Be Supplemented Plt's Ex. 6" printed on it. This certification document has been the subject of a document request from 2005 and a successful motion to compel discovery. [Minute Order at Docket 87] Schlumbohm has never produced it.  It appears that he still will not produce his claimed certification, but he is willing to cite a nearly blank piece of paper in its stead as if it were the document.

[6]    Q:    So again, what – what is it – what are the reasons as you understand why the city was going to terminate you if you didn't resign?
       A:    For insubordination.
       Q:    Specifically with regard to removal of the personnel files?
       A:    Yeah.  [Schlumbohm dep., p. 64]

[7]    _City of Fairbanks v. Rice_, 20 P.3d 1097, 1102  n.7 (Alaska 2000).

was discharged by its employer and (2) that the employer breached a contract or committed a tort in connection with the employee's termination."[8]

The City did not breach its contract or commit a tort in connection with Schlumbohm's termination. Schlumbohm's own testimony establishes that he was insubordinate and stole city property. When the City Manager asked for the files, Schlumbohm instead stole them, secreted them to Fairbanks, and hid them in his bedroom closet. [Schlumbohm dep., pp. 47-48, 54][9] Schlumbohm was terminated for cause for stealing the files and insubordination. [Plaintiffs' Doc 112-113] This is not a

---

[8]     *Charles v. Interior Regional Housing Authority*, 55 P.3d 57, 59 (Alaska 2002).

[9]     Q:     Tell me then about the – your removal of the personnel files.
        A:     One afternoon I was in the police department, she came in, she said she was going to Fairbanks to talk with her attorneys, the city attorneys, and she gave me a letter stating that she wanted 911 evidence tapes, case – case files and personnel files.
               I thought it was kind of odd that she would want these tapes and personnel files. It stated on there that I could get further permission if I felt I needed to, and I felt that I needed to.
               I called Chief Fleming and got told to secure the files. I called Captain Tanner with – he's a retired captain from the State Troopers, told him the situation, he says, if Reggie's your boss, then that's what you need to do. So I boxed up the files and secured them. [Schlumbohm dep., p. 47-48]
               …
        Q:     What happened to the files next?
        A:     They were put in my vehicle and transported to my house.
        Q:     What did you do with them when you got to your house?
        A:     They were put in the closet in my bedroom.
        Q:     The closet of your bedroom?
        A:     Uh-hum.
        Q:     That's the secure place you took them?
        A:     That's correct. [Schlumbohm dep., p. 54]

wrongful employment action. His discharge claim therefore fails as a matter of law whether he characterizes his resignation a wrongful discharge or a constructive discharge claim.

In response to this hard truth, Schlumbohm has constructed a fairy tale by playing with the dates. The overarching premise in Schlumbohm's opposition is that he could not have stolen the files because he took them to Fairbanks on co-plaintiff Reginald Fleming's orders before Fleming was terminated as police chief. [Schlumbohm opp., p. 9] Schlumbohm cites nothing that actually supports his claims that he had already taken the files to Fairbanks prior to Fleming's termination. [*Id*.] The basic thrust of the argument is that "[t]he suggestion that Schlumbohm's actions amounted to 'stealing' the personnel files is wholly inappropriate, because Fleming ordered him to remove the files prior to February 9th, and it is admitted by all parties that Fleming was still the Chief of Police at this time." [Schlumbohm opp., p. 10] Then Schlumbohm creates a conspiracy theory where he was never actually terminated for stealing the files. [Schlumbohm opp., p. 13] Instead, Carroll "terminated Schlumbohm as part of her efforts to impede the investigation of her father for embezzlement." [Schlumbohm opp., p. 13] He cites no evidence actually supporting his incoherent conspiracy theory. But, that doesn't stop him from coming up with a convoluted explanation on why it precludes summary judgment.

> As to Schlumbohm, the evidence is clear that he faced termination because he did was [*sic*] he was ordered to do by the Chief of Police at that time – i.e. Chief Fleming. … Schlumbohm was not being fired because he refused to follow orders; he was fired for following the orders of his superior at the

time, and that [*sic*] Fannie fired that superior who was investigating her father for criminal activity. As a general matter, corruption violates public policy, and the termination of an employee in furtherance of corruption or to cover up corruption violates the covenant of good faith and fair dealing. Thus Schlumbohm was being terminated for no just cause, and in violation of public policy, which violated the covenant of good faith and fair dealing. [Schlumbohm opp., p. 14. (citations omitted)][10]

And thus, by applying inapplicable case law to the incorrect assumption that Schlumbohm could not possibly have stolen the files because he left Fort Yukon too soon, a travesty of justice is created. This is a slick argument, but it fails way back at the beginning. Schlumbohm himself admitted during his deposition that <u>he was in Fort Yukon</u>, and had heard about Fleming's termination <u>before</u> he took the files to Fairbanks.

> Q:    Now, at what point did you learn that Reggie Fleming had been terminated?
> A:    She had faxed – gosh. There was so much paperwork involved. I know it was after that I had taken the files or I would not have called him. So it was shortly after that letter. I wasn't told by anybody, I read it my – myself by a letter that was faxed.
> Q:    So you saw the letter terminating Reggie Fleming?
> A:    Yeah, I think it was the termination of him and Chris DeLeon. And my –
> Q:    And you –
> A:    -- promotion.
> Q:    Did you then call Fleming or DeLeon to talk about it?

---

[10]    The one case that Schlumbohm cites in this section *Central Bering Sea Fishermen's Ass'n v. Anderson*, 54 P.3d 271, 280 (Alaska 2002), does not support his position. The case never deals with the covenant of good faith and fair dealing. In fact, the words "fair dealing" appear nowhere in the opinion. The Alaska Supreme Court instead dealt with whether it was proper to discuss the defendant's corruption during closing argument in order to get punitive damages. *Id*. The case does not stand for the proposition that an at-will employee may not be fired for insubordination if a co-worker has made unsupported allegations of corruption of a family member of his boss. Schlumbohm would need it to say that and would have to have some admissible evidence on that point in order to survive summary judgment.

A:     It's possible. I mean, there – there was a lot going on back and forth with all this. So phone calls are – who knows. It's very possible.

Q:     You don't have any specific recollection?

A:     I – I don't, other than reading the letter. And that letter was that Chief Fleming had been fired, Chris DeLeon had been fired, J.R. Wallace was not the acting chief, and I was going to be promoted and have a pay increase.

Q:     Where were you when you received that letter?

A:     I was in Fort Yukon.  [Schlumbohm dep., p. 59-60]

So, Schlumbohm's own testimony shows that he was <u>in Fort Yukon</u> when the February 9, 2004 letter arrived informing him that Fleming had been terminated.  Schlumbohm's further testimony also confirms that he left Fort Yukon with the files after he had read the letter.  Schlumbohm has also stated his understanding that this was the reason he was terminated.

Q:     Now, your testimony is that you learned Reggie Fleming had been terminated while you were in Fort Yukon?

A:     Yeah, there – I knew something was – was happening, I wasn't sure what it was happening. Reggie was not in Fort Yukon. The city manager was not in Fort Yukon. I was unsure whether or not he was still – I mean if he was fired or if he was police chief. That's why had I called him.  He said if his was the chief. And that is the time that he told me to take the files and secure them.

Q:     Your testimony is also that you received notice that he had been terminated, you read the letter, right?

A:     That's correct.

Q:     And that you were promoted?

A:     That's correct.

Q:     And you were in Fort Yukon when you received that notice?

A:     Uh-hum.

Q:     Right?

A:     Sure. Yes.

Q:     So you received that notice before you got on the plane to Fairbanks?

A:     Yes, I believe so.

Q:     Before you got on the plane to Fairbanks –

A:     Yeah.

Q:    -- with the personnel records?
A:    Uh-hum.
Q:    Yes?
A:    Yes.
Q:    So at the time you got on a plane to Fairbanks, you knew Reggie Fleming was no longer your chief?
A:    It was a letter. I didn't know whether it was true or not. That's why I had called and asked him, he said, yes, I'm still the chief.
Q:    The letter was from whom?
A:    I think it was – was it an attorney? Some attorney or something. I can't remember their attorney at the time.
Q:    So you took Reggie Fleming's word that he was chief over the letter from the city attorney who – indicating that Reggie Fleming had been terminated?
A:    Yeah. He said he had not seen a letter. He said I'm still the chief, I have not got any letter from anybody.
Q:    So again, what – what is it – what are the reasons as you understand why the city was going to terminate you if you didn't resign?
A:    For insubordination.
Q:    Specifically with regard to the removal of the personnel files?
A:    Yeah. [Schlumbohm dep., pp. 62-64][11]

Schlumbohm was in Fort Yukon when Fleming was terminated.  [Schlumbohm dep., p. 62].  He knew that Fleming had been fired.  [Schlumbohm dep., 59-60, 63-64] Nonetheless, he ignored the City Manager and stole city files at the behest of the ousted chief.  The City was entitled to fire Schlumbohm for theft of files.

**C.    Schlumbohm's procedural rights were not violated.**

Schlumbohm has offered no facts in his opposition that would allow the Court to determine that his procedural rights were violated.  Nothing in his opposition changes

---

[11]    Defendants note that a portion of this same passage is included in their original motion. Due to a drafting error, the section between the two "uh-hum" answers was omitted. *See also* Defendants' errata.

that fact that he was offered a chance to utilize his procedural rights and did not do so. "A claim for violation of procedural due process has two components. First, plaintiff must show that a protected property interest was taken. Second, it must show that the procedural safeguards surrounding the deprivation were inadequate."[12] In the context of public employment terminable only for cause, the right to adequate procedural safeguards requires "notice and an opportunity to respond."[13]

An employee cannot claim a due process violation when he has been offered a pre-termination hearing but refuses to attend. In *Mercado-Alicea v. P.R. Tourism Co.*, the court held that a public employee with a protected interest in employment was not deprived of a pre-termination hearing or his due process rights where the employee failed to attend the proffered hearing.[14] The right to a pre-termination hearing can be waived when the employee is offered a hearing and refuses to attend.[15] The Fifth Circuit

---

[12]   Sierra Lake Reserve v. City of Rocklin, 938 F.2d 951, 956 (9th Cir. 1991) (vacated on other grounds in City of Rocklin v. Sierra Lakes Reserve, 506 U.S. 802 (1992)) (relevant portion reinstated in Sierra Lake Reserve v. City of Rocklin, 987 F.2d 662 (9th Cir. 1993)).

[13]   *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546 (1985).

[14]   396 F.3d 46, 53 (1st Cir. 2005).

[15]   *See Ryan v. Illinois Dep't of Children & Family Serv.,* 185 F.3d 751, 761 (7th Cir. 1999) (the right to object to an arguably deficient hearing is waived when an employer offers a pre-termination hearing and a public employee facing termination fails to accept the offer by failing to appear.). *See also Flynn v. Sandahl,* 58 F.3d 283, 288 (7th Cir. 1995) ("employee cannot claim lack of due process when his employer offered him such a pre-termination hearing and he refused to attend."); *Cliff v. Bd. of Sch. Comm'rs of City of Indianapolis,* 42 F.3d 403, 414 (7th Cir. 1994) ("the right to such a hearing is waived when an employer offers a pre-termination hearing and the employee fails to accept.").

considered in *Galloway v. State of Louisiana* a case where the employee was offered a pre-termination hearing but did not attend because he was in the hospital.[16]  Later, rather than request a hearing, he bypassed the administrative procedure for an investigation alternative.   The court rejected his procedural due process claim, holding that "an employee cannot ignore the process duly extended to him and later complain that he was not accorded due process."  In the instant case, Schlumbohm did not attend the proffered hearing and so cannot now complain that he was not accorded due process.  Schlumbohm was provided with adequate procedural safeguards.  He simply chose not to use them.[17] His claim fails because he never attempted to utilize his due process rights.

     **D.**     **Schlumbohm failed to exhaust his administrative remedies, has offered no admissible evidence that it would have been futile to do so, and his termination claim is therefore barred.**

Schlumbohm makes no attempt in his opposition to show that he utilized his administrative remedies.   Instead, he claims that it would have been futile to do so. [Schlumbohm opp., p. 15]  To get there he misconstrues the City's arguments, ignores the correct legal standard and cites an unattached affidavit that could only contain inadmissible evidence.   He has not established any basis for concluding that it would

---

[16]     *Galloway v. State of Louisiana*, 817 F.2d 1154 (5th Cir. 1987).

[17]     *See Hibbs v. HDM Dep't of Human Res*., 273 F.3d 844, 873 (9th Cir. 2001), *aff'd on other grounds*, 538 U.S. 721 (2003) ("Because they gave Hibbs clear notice and a full opportunity to be heard, the procedures followed by the Welfare Division amply satisfy the due process requirements spelled out in *Loudermill* and *Gilbert [v. Homar,* 520 U.S. 924, 929 (1997)]. We therefore find no error in the district court's grant of summary judgment against Hibbs on his procedural due process claim.").

have been futile to pursue his administrative remedies, and his termination claim is therefore barred.

Schlumbohm appears to think that he can be excused from parts of the administrative process if he did not think that he would like the result. [Schlumbohm opp., p. 16] According to him, if he knew what the result of the first hearing would be then he did not have to attend or follow up with any of the subsequent remedies in his contract. [*Id*.] That is what the plaintiff in *Voight v. Snowden, II* also thought, but the Alaska Supreme Court found that he had failed to exhaust his administrative remedies and that exhaustion was not excused.[18] In that case the plaintiff took part in the first two steps of the administrative process.[19] His "next step in the administrative process was to request a hearing … . He did not. Instead, [his] attorney wrote to Chief Justice Rabinowitz, indicating that further administrative proceedings would be futile and that his client would pursue his case[.]."[20] The Alaska Supreme Court found that futility had not been established as a matter of law and that his claim was barred.[21] In coming to that conclusion, the Alaska Supreme Court noted that "the fact that [the plaintiff] had a further right to appeal to the governing board, which had not played any role in the

---

[18]   *Voigt v. Snowden, II*, 923 P.2d 778, 783 (Alaska 1996).
[19]   *Id*. at 780.
[20]   *Id*.
[21]   *Id*. at 783.

investigation or decision to terminate" was an important factor showing that exhaustion would not have been futile.[22]

In this case, if Schlumbohm did not like the result of his pre-termination hearing, then he had the express right to pursue a grievance. [Handbook, Ch. 5 § 3, Ex. K, p. 14] The grievance process ended in a final binding decision in front of the City Council. [Handbook, Ch. 7 § 2, Ex. K, pp. 20-21] Schlumbohm does not dispute these points. He instead claims that "the City suggests that Schlumbohm could have appealed directly to the City Council." [Schlumbohm opp., p. 16] In fact, Schlumbohm did not have the right to a direct appeal to the City Council and the City suggested it nowhere in its memorandum. He instead had the right to go in front of them as the final part of this grievance process. Then Schlumbohm claims that Fleming's experience with the city council created circumstances that "would lead a reasonable person in Schlumbohm's position to believe that a grievance to the City Council would not be available to him." [Schlumbohm opp., p. 17] This is not the correct legal standard. Futility must be a "certainty" in order for exhaustion of administrative remedies to be excused.[23]

Schlumbohm has offered no admissible evidence showing that the City Council would not have supported him had he followed the grievance process. He instead claims that Richard Miller's affidavit shows that the City Council would not have been a neutral

---

[22]    *Id*. at 782.
[23]    *Id*.

forum. [Schlumbohm opp., p. 17]  He failed to attach this affidavit. [24]  But, it would not establish futility even if Miller stated that "the majority of the City Council would have supported Fannie Carroll in such a grievance." [Schlumbohm opp., p. 17]   Miller's speculations of what other members of the council would have done is plainly inadmissible. ""To survive summary judgment, [the plaintiff] must present admissible evidence, not mere speculation[.]"[25]  "[M]ere speculation is not evidence[.]"[26]

Several courts have held that similar affidavit testimony is inadmissible to defeat a summary judgment motion.[27]  For example, in *Minus v. West*, the plaintiff tried to defeat summary judgment by offering the affidavit of a co-worker, who testified about the

---

[24]     McKillican did attach an affidavit from Miller stating that "it would have been futile for McKillican to file a grievance[.]"  This is dealt with in the reply to McKillican's opposition.

[25]     *Paladin Associates, Inc. v. Montana Power Co.*, 328 F.3d 1145, 1161 (9th Cir. 2003).

[26]     *Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625, 634 (9th Cir. 2005).

[27]     *See Cebula v. General Electric Co.*, 614 F. Supp. 260, 266 (N.D. Ill. 1985) (on summary judgment motion, court held as inadmissible an affidavit containing hearsay statements of co-workers asserting that GE had a plan to replace older workers with younger workers in order to cut costs.); *Farrar v. Dorothea Dix Hospital*, 829 F. Supp. 140, 145 (E.D. N.C. 1993) (plaintiff could not avoid summary judgment on civil rights claims by presenting affidavit of co-worker who testified about the employer's alleged mistreatment of plaintiff – the affidavit did not appear to be based on personal knowledge and lacked enough specificity to create a factual dispute); *Farrell v. Potomac Electric Power Co.*, 616 F. Supp. 995 (D.D.C. 1985) (plaintiff could not survive summary judgment where her affidavit did not measure up to the requirements of Civil Rule 56(e) because it contained only allegations and not "specific facts" that would be admissible as evidence).

employer's alleged motivations.[28]  These included "Schemitz did not want blacks in his office" and "Minus's race and color where factors in not being promoted … ."[29]  The court disregarded these affidavit opinions, holding that Evidence Rule 701 "bars lay opinion testimony that amounts to a naked speculation concerning the motivation for a defendant's adverse employment decision … unless the person testifying is involved in the employment decision at issue."[30]  Similarly, in *Connell v. Bank of Boston*, the First Circuit held that the testimony of an employee who said that employer was "determined to eliminate … senior employees" was inadmissible because the testimony pointed to no specific facts to buttress such a "broad assertion."[31]  In *Hester v. BIC Corporation*, the Second Circuit rejected the testimony of employees who said that the employer's actions were motivated by race.  The court held that "their speculative lay opinion that this differential is attributable to race rather than anything else, is not helpful in this case because it 'merely tells the jury what result to reach.'"[32]  An affidavit from Miller stating what he thought the City Council would have done had it considered Schlumbohm's situation will not save Schlumbohm from summary judgment.

---

[28]    2003 WL 21295122, *4. (E.D. N.Y. May 30, 2003)

[29]    *Id.*

[30]    *Id.* (*quoting Hester v. BIC Corp.*, 225 F.3d 178, 182-85 (2nd Cir. 2000) (vacating trial court's judgment on jury verdict where co-workers were permitted to testify that supervisor's treatment of employee was racially motivated).

[31]    924 F.2d 1169, 1177 (1st Cir. 1991).

[32]    *Hester*, 225 F.3d at 185 (*quoting United States v. Rea*, 958 F.2d 1206, 1215 (2nd Cir. 1992).

Like the *Voight* plaintiff, Schlumbohm "should have pursued his complaints through the grievance and administrative appeal process before turning to the courts for help. To hold otherwise would be to obviate the requirement that an adverse decision be a 'certainty.'"[33] Schlumbohm's "fears of a biased hearing could certainly have been allayed had he continued with the administrative process."[34] Schlumbohm is not excused from exhausting his contractual and administrative remedies.

## III. CONCLUSION

The Court should grant summary judgment on Schlumbohm's employment claims. He was not wrongfully terminated. His administrative remedies were not denied, he

---

[33] *Voigt  v. Snowden, II*, 923 P.2d 778, 782 (Alaska 1996)

[34] *Id*.

simply chose not to take part in them. And, this failure is not excused by the futility

doctrine.

DATED at Anchorage, Alaska this 13th day of November, 2006.

JERMAIN, DUNNAGAN & OWENS, P.C.


By:   s/ Matthew Singer
Matthew Singer
Alaska Bar No. 9911072


By:   s/ Howard S. Trickey
Howard S. Trickey
3000 A Street, Suite 300
Anchorage, AK  99503
Phone:  (907) 563-8844
Fax:  (907) 563-7322
Alaska Bar No. 7610138




***CERTIFICATE OF SERVICE***

I hereby certify that on November 13, 2006,
a true and correct copy of the foregoing
document was served electronically
on the following counsel of record:

Michael J. Walleri
330 Wendell St., Suite E
Fairbanks, AK 99701


s/ Matthew Singer
#135428