Michael J. Walleri
Law Offices of Michael J. Walleri
330 Wendell Street, Suite E
Fairbanks, Alaska  99701
(907) 452-4716
(907) 452-4725 (Facsimile)
Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| REGINALD FLEMING, CHRISTOPHER DELEON,  CHRIS HAMPTON, WILLIAM D. MCKILLICAN, and  TODD SCHLUMBOHM<br><br>                    Plaintiffs,<br><br>  vs.<br><br>FANNIE CARROLL, and the CITY OF FORT YUKON, ALASKA<br><br>                  Defendants. | **MEMORANDUM IN OPPOSITION TO DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT ON EMPLOYMENT CLAIMS (TODD SCHLUMBOHM)**<br><br>Case No. F04-0034 CIV (RRB) |

The City of Fort Yukon and Fannie Carroll (collectively referred to as the City) has filed a **renewed** motion for summary judgment as to Officer Schlumbohm with regards to Count III (Constructive Termination); Count IV (Violation of 42 USC 1983-Procedural Due Process). This motion constitutes an inappropriate "second bite" of the apple that is totally unrelated to this Court's leave to file a renewed

Michael J. Walleri
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

motion for summary judgment contained in the Court's order of February 2, 2007.[1] Rather, the issues raised have already been decided by the Court, and Defendants' offer no "new evidence" that should not alter the law of the case. Finally, in substance, the Court should deny the motion upon the merits.

## I. THE MOTION EXCEEDS THE ORDER GRANTING LEAVE OF COURT

Previously, the Court denied the City's motion for summary judgment holding that there were material facts in dispute sufficient to warrant trial as to Officer Schlumbohm.[2]  The City's current motion is improper because the time for dispositive motions has passed, and the Court's February 2nd Order granting leave to file a motion for summary judgment related only to damages; not liability.  The present motion goes to liability.

After the Court denied the City's motion for summary judgment against Officer Schlumbohm, the City filed a motion for sanctions related to the alleged failure of the Plaintiffs to provide discovery with respect to damages.[3]  In response, the Court ordered

---

[1] See Docket 183
[2] See Docket 173
[3] See Docket at 157.

Michael J. Walleri
*Attorney at Law*
330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

*Fleming, et. al. v City of Fort Yukon*                                    *Page 2 of 19*
Opp: Renewed  Sum. Jud. (Schlumbohm; Counts III & IV)
[Docket 189]

> …the Plaintiffs to provide defendants with the exact amount of damages they are seeking.  Defendant to have 10 days **from receipt of discovery** to file a new summary judgment.[4]

There is no question that the Court's leave to filed for summary judgment was to ameliorate the City's claim that it had been prejudiced by the alleged failure to provide the Defendant's with discovery.

The Plaintiff complied with the Court's order[5] and ten days later, City filed this renewed motion for summary judgment,[6]  which seeks to re-litigate the issues addressed by this Court in its prior order denying the City's motion for summary judgment against Officer Schlumbohm. The City's motion has nothing to do with damages, which was the purpose of the request for leave to file the motion; rather the City is attempting to re-litigate 1) whether the City of Fort Yukon is exempt from hiring officers who are certificated police officers, and 2) whether Officer Schlumbohm was excused from filing a formal grievance.  The motion is highly inappropriate because it is late, and exceeds the scope of leave to file a motion for

---

[4] The original motion also related to other matters.  The Court found that the Defendants other complaints were groundless.

[5] Docket 186 (2/23/07)

[6] Docket 189 (3/2/07)

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

*Fleming, et. al. v City of Fort Yukon*                                    *Page 3 of 19*
Opp: Renewed  Sum. Jud. (Schlumbohm; Counts III & IV)
[Docket 189]

summary judgment arising out of supplemental discovery provided by the Plaintiff

in response to the Court's minute order of February 2, 2007.[7]

## II.    THE COURT SHOULD UPHOLD THE LAW OF THE CASE AND DENY FOR FAILURE TO COMPLY WITH FEDERAL CIVIL RULES

The denial of a motion for summary judgment creates law of the case when it

"clearly intend[s] to decide the issues at hand."[8]   In the prior briefing, the parties

fully briefed the legal issues surrounding Fort Yukon's exemption from the

minimum standards for police officers because of the size of the community.[9]

Equally, the issue as to whether Officer Schlumbohm was excused from filing a

formal grievance was fully briefed.[10] It is manifestly clear that this Court intended

to decide the matter by noting that Gregg Russell admitted that he incorrectly

advised Schlumbohm that he was ineligible to be an officer in Fort Yukon.[11]

---

[7] Docket 183

[8] *Federal Ins. Co. v. Scarsella Bros., Inc., 931 F.2d 599, 601 n.4 (9th Cir. 1991)* (holding district court created law of the case in denying summary judgment by ruling that plaintiff was required by law to provide insurance coverage to defendant) *citing  Dessar v. Bank of Am. Nat'l Trust & Sav. Ass'n, 353 F.2d 468, 470 (9th Cir. 1965)* (indicating law of the case may be established when order denying summary judgment motion manifests intent to decide issue).

[9] Docket 132, at 6 n 15-19 and associated text.  Interestingly enough, the City failed to respond to the fact that the City of Fort Yukon was exempt from police officer certification standards, and therefore conceded the issue. See Docket 149 & 155. The fact that the City failed to respond on this point was noted at Docket 164.

[10] Docket 132

[11] See Docket 173, at 7 n 13  The order is factually incorrect. The order states that Gregg Russell "may have incorrectly advised Schlumbohm.  As discussed below, there is no real dispute about this. Russell admitted to advising Schlumbohm that he was ineligible to be an officer in Fort Yukon. *Infra.*

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

"Law of the case" principles provide that a court is generally precluded from reconsidering an issue that has already been decided by the same court.[12]  As a result, the fact that this Court has previously decided this issue, the Court is precluded from reconsidering the issue at this time.

Of course, the Federal Civil Rules do provide for reconsideration under certain circumstances.[13]  The City asserts no cognizable grounds under FRCP 60(b) for reconsideration.  The issue was thoroughly briefed by the parties.  There is nothing in FRCP 60(b) which authorizes that such relief, and absent the existence of such grounds, the law of the case operates to preclude reconsideration.    The Court has previously ruled that there are genuine questions of fact going to prevent summary judgment on these issues[14] and the City offers no justification for the Court to revisit the issue.[15]

---

[12] Thomas v. Bible, 983 F.2d 152, 154 (9th Cir. 1993)

[13] Relief from judgment under FRCP 60(b) requires that the moving party show (1) mistake, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud or other misconduct; (4) a void judgment; (5) a satisfied or discharged judgment; or (6) other "extraordinary circumstances" which prevented a party from making a timely appeal. *See United States v. Alpine Land & Reservoir Co., 984 F.2d 1047, 1049 (9th Cir. 1993).*

[14] Docket  173

[15] It is of course possible for the City to claim that the Court undertook mistake.  However, the City has not argued that the Court's order was the result of mistake or the Court's overlooking significant evidence.

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

### III.    THE COURT SHOULD DENY THE MOTION ON THE MERITS

Of course, the Court properly denied the City's motion for summary judgment and the facts, law and result remain the same. [16] Indeed, Court should have granted Officer Schlumbohm's motion for summary judgment.

**A)** **Factual Background.** Officer Schlumbohm worked for the City of Fort Yukon for eleven months between in March, 2003.[17] Unfortunately, the events surrounding Officer Schlumbohm's termination are somewhat confused because within a one week period, Fleming (his supervisor) and DeLeon's were terminated; Schlumbohm received conflicting advise as to whether and when Chief Fleming was fired, Schlumbohm was promoted to lieutenant and, ultimately, Schlumbohm's was

---

[16] Summary judgment require the Court to find that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits… show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* FRCP 56(c) A dispute over a material fact exists if the evidence would allow a reasonable fact-finder to return a verdict for the non-moving party. *See Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) "(T)he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson v Liberty Lobby, Inc.*, 477 U.S., at 247-248 The non-moving party may defeat judgment by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Celotex Corp. v Catrett,* 477 U.S. 317, 322 (1986). "The plaintiff, to survive the defendant's motion, need only present evidence from which a jury might return a verdict in his favor. If he does so, there is a genuine issue of fact that requires a trial." *Anderson* v. *Liberty Lobby, Inc., ante*, at 257. In this case, there is sufficient evidence to establish that Ms. Carroll's actions toward Officer Schlumbohm 1) were initiated, in part, by improper motives, 2) were not what a "reasonable person would regard as fair, and 3) would compel a reasonable person in Officer Schlumbohm position to resign. Additionally, there is sufficient evidence to establish that the City's personnel policy was ineffective to protect Officer Schlumbohm rights as an employee, and that any effort to resort to the City's personnel policy would be futile.

[17] Per City's admission contained at Docket 103, pp 2-3 See also Docket 129

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

threatened to resign or face termination. The chronology, according to Schlumbohm

is as follows:

**Tues. Feb. 3rd[18]**

- Schlumbohm returns to regular duty in FYU[19]

**Sat. Feb. 7th**
- Carroll asks (in person & by letter) for advising him to send her the personnel files and certain 911 tapes. [20]
- Schlumbohm calls Fleming who advised him to secure files.[21]

**Mon., Feb. 9th**
- Carroll informs Schlumbohm via letter of Fleming termination and his promotion to Lieutenant.[22]
- Schlumbohm calls Fleming who advised him that he is still the Chief and that he needs to secure files.[23]
- Schlumbohm calls Capt. Tanner (Alaska State Troopers) who advises Schlumbohm to follow instructions of Chief Fleming.[24]

**Tues. Feb. 10th**
- Schlumbohm leaves FYU on regular shift change and takes personnel files with him[25]

**Mon. Feb. 16th**
- Schlumbohm returns to FYU

---

[18] All dates 2004.
[19] Exhibit 1 (attached)
[20] Docket 103., at 5; See also Def. Ex. G & , Def. Ex. A p. 5 (Schlumbohm's Depo.) 47: 15-25 (cc of Schlumbohm's excerpts attached as Plt. Ex. 2)
[21] Id.
[22] Docket. 103, at 4-5; See also Def. Ex. E; See also Plt. Ex. 2 (attached) (Schlumbohm's Depo.) 59: 6-17; 59:23-60:3
[23] Plt. Ex. 2 (attached) (Schlumbohm's Depo.) 60: 9-14
[24] Docket 103, Def. Ex. A p. 5 (Schlumbohm' Depo.) 47:24-48:4
[25] Exhibit 1 (attached) See also Docket 103, Def. Ex. A p. 6 (Schlumbohm' Depo.) 49:1-6

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

- Schlumbohm returns personnel files to city per Carroll's request[26]
- Gregg Russell advised Schlumbohm
    1) he was ineligible to be a police officer at Fort Yukon[27]
    2) resign or be fired.[28]

**B)**    **Schlumbohm Resigned Because Russell Told Him That He Would**

**Be Fired If He Didn't Resign.**  The City's motion ignores the most critical fact.  As

Officer Schlumbohm stated,

> Q.  Why did you resign from your job at the police department in Fort Yukon?
> A.  … I resigned from Fort Yukon because, to put it bluntly, it was either get fired or resign.[29]

---

[26] Docket 103, Def. A p. 8 (Schlumbohm's Depo.) 61:14-24; See also Id, 56:18- 57:1
[27] Docket 103, Def. A pp. 4-5 (Schlumbohm's Depo.) 44:17-46:23;
[28] Docket 103, Def. A p. 4 (Schlumbohm's Depo.) 43:21-44:22
[29] Docket 103, Def. A p. 4 (Schlumbohm's Depo.) 43:21-24; quotedby Court at Docket 173, p. 7.
Schulimbohm further explained:

25  Q.  And why did -- why did you reach that

1  conclusion?
2     A.  That's what was offered to me.
3     Q.  And who offered that to you?
4     A.  Fannie Carroll and Greg Russell.
5     Q.  Was this in a particular conversation?
6     A.  Between me and Fannie, yes, and Greg Russell
7  had entered the room in private between them two and
8  discussed whatever they discussed, and he would come
9  back and talk to me, then I would go in there, and it
10  was just back and forth.
11        At that time -- the last time he entered the
12  room he came back and he says, she's probably going to
13  offer you to resign or be fired.  And she did.  And I
14  resigned at that time.
….
17    Q.  So all of this occurred on the same day that
18  you resigned --

Michael J. Walleri
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

It makes little difference as to why Schlumbohm was to be fired. As this Court noted, "Because the facts leading up to Schlumbohm's resignation are in dispute, and because the determination as to whether a reasonable person in Schlumbohm's position would have felt "compelled" to resign constitutes a question of material fact" summary judgment in favor of the City is not appropriate.[30] The fact that the City used various pretext to justify its threats to Schlumbohm is largely irrelevant.

C)    **The City Of Fort Yukon Is Exempt From The Certificated Police Officers Requirement.** The City argues that "Schlumbohm used his own discovery violations to manufacture a factual dispute regarding his eligibility for employment."[31] Essentially, the City argues that Schlumbohm failed to produce his VPO certification. Opposing counsel seeks to mislead this Court in the same manner that Gregg Russell misled Officer Schlumbohm in order to obtain his resignation.

---

19    A.  Yes.
20    Q.  -- February 16th –
21    A.  Yes.
Id.,

[30] Docket 173, p. 7 citing Charles v. Interior Hous. Auth., 55 P.3d 57, 59-60 (Alaska 2002), and Municipality of Anchorage v. Gregg, 101 P.3d 181, 192n40 2004 (Alaska 2004) which explained
[31] Docket 189, at 5 et. seq.

Michael J. Walleri
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

The City argues employment as a police officer in Fort Yukon requires police

certification under 13 AAC 85.005 et. seq.  [Minimum Standards for Police,

Probation, Parole, Correctional, and Municipal Correctional Officer].[32]  This is

incorrect.  Indeed, the regulation clearly states that

> The requirements of 13 AAC 85.005- 13 AAC 85.120 do not apply to village
> police officers identified in 13 AAC 89, except as specifically provided in 13
> AAC 89[33]

"Village police officers identified in 13 AAC 89," refers to police officers employed

in a community, like Fort Yukon" of less than 1000 population. [34]

---

[32] Police Standards are authorized under AS 18.65.130 - 18.65.290.   The statute authorizes the establishment of the Police Standards Council, AS 16.65.140 and delegates to the Council the power to prescribe standards for police officers in the State. See AS 18.65.242.  The statute also provides that a "person may not be appointed as a police officer, except on a probationary basis, unless the person" meets qualifications established by the Council. AS 18.65.240(a)  Additionally, the statute allows municipalities to exempt themselves from these requirements if the municipality enacts an ordinance meeting certain criteria AS 18.65.280

[33] 13 AAC 89.005

[34] 13 AAC 89.010 (b) states,
> Only a village may appoint a person as a village police officer.

 13 AAC 89.150(3) defines a village as
> (3) "village" means a community off the interconnected Alaska road system, with a
> population of less than 1,000 persons based on the most recent federal census, which has
> been incorporated as provided in AS 29.18.

> Exemptions to these provisions are arguable  contained in 13 AAC 89.140, which  provides
> The provisions of this chapter (i.e. 13 AAC 89) do not apply to a village **which has enacted an**
> **ordinance which specifically excludes it from AS 18.65.130 - 18.65.290** if the village
> maintains a police training program which equals or exceeds the requirements of 13 AAC
> 89.040 and whose instructors are certified under 13 AAC 87.040. (emphasis added)

This exemption does not apply because Fort Yukon has never enacted an ordinance to implement this exemption.

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

*Fleming, et. al. v City of Fort Yukon*                                                            *Page 10 of 19*
Opp: Renewed  Sum. Jud. (Schlumbohm; Counts III & IV)
[Docket 189]

Fannie Carroll testified that Fort Yukon was a "participating police department."[35]  The City points to 13 AAC 85.900(12) which provides

> "participating police department" includes the Alaska Department of Public Safety and a police department of any political subdivision of the state that has not excluded itself under the provision of AS 18.65.280 (b)".[36]

The City points to 13 AAC 85.010(a) which prohibits a participating department from hiring officers who fail to meet standard qualifications. It should be emphasized that the regulatory prohibition on employment of non-certificated officers is contained in this latter regulation [13 AAC 85.010(a)].

The problem with the City's argument is that the regulation mandating certification for participating departments --- i.e. 13 AAC 85.010(a) --- is one of the regulations which specifically does not apply to small communities with a population less than 1000. [37]   In other words, not all participating departments are subject to the restrictions of AAC 85.010(a); rather only those participating

---

[35] As noted, the Police Standards website also lists Fort Yukon as a participating department.  There is not dispute that Fort Yukon was a participating department.  Opposing counsel merely mischaracterizes the implications of that participation.

[36] Fort Yukon has not enacted an ordinance under AS 18.65.280.

[37] As noted above, 13 AAC 89.005 provides
> The requirements of 13 AAC 85.005- 13 AAC 85.120 do not apply to village police officers identified in 13 AAC 89, except as specifically provided in 13 AAC 89

Please note that 13 AAC 85.010(a) is specifically enumerated as as section of the regulations covered by this exemption.

Michael J. Walleri
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

departments in communities with populations over 1000 are subject to the

requirement.

The second argument asserted by Fort Yukon is equally misleading. Fort

Yukon complains that Schlumbohm has failed to produce his certification as a VPO,

and argues that Schlumbohm was not eligible to work as a VPO. However, under

the regulations, an officer may work as a VPO for up to one year without

certification.[38] More to the point, in order to receive certification, a VPO must be

employed as a village police officer at the time of application, and have completed

one year of full time employment as a VPO.[39]   In other words, Schlumbohm need

not have been certified and was not eligible for certification until he completed his

one year of probation.  Of course, Schlumbohm was threatened with termination

---

[38] 13 AAC 89.020(b), which provides
> A village may not employ a village police officer for a period of more than 12 consecutive
> months unless the officer has been certified under 13 AAC 89.030.

It should be noted that under subsection (c) of the regulation, a break in service for more than 90 days
restarts the running of time for the  exemption contained in 13 AAC 89.020(b).  Officer Schlumbohm
has had a break in service longer than 90 days from his employment at Fort Yukon. Hence, he is
eligible to work as a VPO in Fort Yukon for one year from any date of rehire.

[39] 13 AAC 89.030. provides
> (a) The council will issue a certificate as a village police officer to an applicant who
> (1) is, at the time of application, a full-time paid village police officer employed by a village
> and has satisfactorily completed 12 consecutive months of probation as a village police
> officer with that village immediately before application;
> (2) meets the requirements of 13 AAC 89.010;
> (3) successfully completes a training program meeting the requirements of 13 AAC 89.040;
> and
> (4) attests that he subscribes to the Law Enforcement Code of Ethics set out in 13 AAC
> 85.040(b) (5). (emphasis added)

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

because Gregg Russell led him to believe that he was not eligible to be a police officer and he forced to resign under a threat of involuntary termination before he was eligible to apply for certification as a VPO.[40]

In summary, the City presents a series of arguments premised upon false assumptions and mischaracterizations of the regulatory system governing rural Alaska law enforcement. Schlumbohm was legally employed by the City without Police Officer Certification because Fort Yukon is exempt from the certificated police officers requirement, regardless of whether Fort Yukon was a "participating department." Schlumbohm does not need to have a VPO certificate because he was not employed for over a year with the City, and his employment as a VPO was consistent with state regulations. And of course, there were no discovery violations because the City is demanding Schlumbohm produced a certificate that Schlumbohm does not/ nor could have in his possession. As a consequence, the Court should reject the City's arguments on these matters.

Michael J. Walleri
*Attorney at Law*
330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

---

[40] Of course there was no discovery violation as claimed by the City's counsel. Officer Schlumbohm produced his VPO training certification, which was sufficient to allow him to work, up to one year, as a VPO under the regulations. *Supra*. at n 36-38.

*Fleming, et. al. v City of Fort Yukon*                                                   *Page 13 of 19*
Opp: Renewed Sum. Jud. (Schlumbohm; Counts III & IV)
[Docket 189]

**D)**     **Officer Schlumbohm Was Excused From Filing A Formal Grievance.**

The city wishes to re-litigate its contention that Schlumbohm failed to exhaust his municipal remedies, which was fully briefed previously.  The Court specifically held that, in light of the conversations of Gregg Russell advising Schlumbohm that he was ineligible to be a police officer, "the grievance process may have appeared futile to someone in Schlumbohm's position." The City seeks reconsideration of this holding.

The city is wrong when it states that an employee must always exhaust his administrative remedies.[41]  Indeed, Courts have held that failure to exhaust administrative remedies may be excused where the administrative procedures are ineffective because of lack of meaningful access, bias, futility, or the possibility that the claimant could face irreparable harm if the administrative process is followed.[42]

---

[41] Docket 189 at 7

[42] *Bruns v. Municipality Of Anchorage, Anchorage Water & Wastewater Utility, 32 P.3D 362, 371 (Alaska, 2001);* Citing Kevin W. Reese, Administrative Remedies Must Be Exhausted Absent Circumstances Supporting an Exception to Exhaustion Doctrine, 47 S.C. L. Rev. 17, 22 (1995); *see also McCarthy v. Madigan, 503 U.S. 140, 148, 117 L. Ed. 2d 291, 112 S. Ct. 1081 (1992)* (explaining principle that a failure to exhaust administrative remedies may be excused when the administrative process is biased); *Bowen v. City of New York, 476 U.S. 467, 483-84, 90 L. Ed. 2d 462, 106 S. Ct. 2022 (1986)* (holding that a failure to exhaust administrative remedies may be excused when the claimant faces a danger of irreparable harm from the administrative process); *Robyns v. Reliance Standard Life Ins. Co., 130 F.3d 1231, 1236 (7th Cir. 1997)* (applying standard that a failure to exhaust administrative remedies may be excused where "there has been a lack of meaningful access to the review procedures"); *Eidelson v. Archer, 645 P.2d 171, 181 (Alaska 1982)* (establishing that failure to exhaust administrative remedies

Michael J. Walleri
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

In this case, the pre-termination hearing and any grievance to the City council were obviously futile. The hearing would be before Fannie Carroll. The City suggests that Russell's comments cannot give rise to a reasonable inference that the grievance process was futile because "Investigator Russel did not have the 'final say' or indeed any say in the resolution of Schlumbohm's grievance."[43] Once again, the City presents a disingenuous argument which fails to present the context of the discussions. While Russell did not have 'final say" in the grievance, Fannie Carroll did. The conversation with Schlumbohm was not with Russell alone. As Schlumbohm explained, Fannie Carroll was clearly a participant:

> Q. Why did you resign from your job at the police department in Fort Yukon?
> A. I re -- I resigned from Fort Yukon because, to put it bluntly, it was either get fired or resign.
> Q. And why did -- why did you reach that conclusion?
> A. That's what was offered to me.
> Q. And who offered that to you?
> A. Fannie Carroll and Greg Russell.
> Q. Was this in a particular conversation?
> A. Between me and Fannie, yes, and Greg Russell had entered the room in private between them two and discussed whatever they discussed, and he would come back and talk to me, then I would go in there, and it was just back and forth. At that time -- the last time he entered the room he came back and he says, she's probably going to offer you to resign or be fired. And she did. And I resigned at that time.[44]

---

may be excused where the pursuit of the administrative remedy would be futile due to the certainty of an adverse decision.)
[43] Docket 189, p. 8
[44] Docket 103, Def. A p. 4 (Schlumbohm's Depo.) 43:21-44:14

Michael J. Walleri
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

*Fleming, et. al. v City of Fort Yukon*                                            *Page 15 of 19*
Opp: Renewed Sum. Jud. (Schlumbohm; Counts III & IV)
[Docket 189]

In other words, Russell was acting as an intermediary in direct discussions between Fannie Carroll and Schlumbohm.  Russell was directly representing Fannie Carroll when he indicated that Carroll was going to offer Schlumbohm the opportunity to resign or be fired, which she did.  That context clearly indicates that Russell was not acting alone, but was acting on behalf of Carroll. Carroll  is the person who actually offered Schlumbohm the opportunity to resign or be fired. And, of course, the pre-termination hearing was being handled by Carroll, who was offering him an opportunity to resign or be fired.  There is little question that the hearing would have been futile.

The City argues that it makes no sense to distinguish between Schlumbohm, and DeLeon and McKillican in regards to the futility of the grievance procedures.[45] Indeed, DeLeon and McKillican would agree.  McKillican was never offered a pre-termination hearing at all. Of course, how could he go to a pre-termination hearing if none were set.   Moreover, as the tape of the McKillican/Carroll conversation indicates, Fannie told McKillican that she was the personnel officer and had full ability to do his evaluation.[46] While Carroll was the personnel officer, she lacked the authority to do the evaluation.  Fannie did not have the authority to do McKillican's

**Michael J. Walleri**
*Attorney at Law*
330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

---

[45] Dockewt 189, at 8
[46] CD accepted at Docket 85

*Fleming, et. al. v City of Fort Yukon*                                        *Page 16 of 19*
Opp: Renewed  Sum. Jud. (Schlumbohm; Counts III & IV)
[Docket 189]

evaluation.   In all cases, evaluations are to be done by supervisors.[47]  Fleming was

McKillican's supervisor; not Fannie Carroll.[48]  Under the personnel policy, the Chief

of Police --- i.e. Chief Fleming --- was the only person who could have properly

evaluated the police officers.  Moreover, Fannie's incorrectly advised McKillican that

she could do the evaluation at that time.  McKillican's evaluation was to be done in

November.[49]  McKillican was in a similar position as Schlumbohm in that he was

being advised incorrectly about his rights under the personnel policy by the  City

Manager, who was the person who would ultimately  hear the grievance if one were

brought.[50]


    In DeLeon's case, a pre-termination hearing was set for February 16th.[51]  DeLeon

returned to Fort Yukon on February 16 to grieve his termination.[52]  No hearing was

---

[47] Docket 127, Plt. Ex. 2. ((City Personnel Code)  §§ 1, 2, and 3) See also, p 10, §13
[48] Id. The policy provides specifically that law enforcement personnel are to be "evaluated by their respective professional supervisor…." Id. ( See § 3(C)); In this case, Officer McKillican's supervisor was Chief Fleming. Docket 127,  Plt. Ex. 3 (McKillican Depo.)  at 70: 3-8; 76:14-17; See also Plt. Ex. 4 (Fleming Depo.) at 73
[49] Docket 127, Plt. Ex. 2, (City Personnel Code) at p. 12 (See § 1)
[50] If Fleming could not resolve the problem --- i.e. reverse the actions of his boss ---the personnel policy required McKillian to appeal to Fannie, the city manger. Docket 127, Plt. Ex. 2, (City Personnel Code) at p. 8-9 (See §2, Step 2)  The City Manager was the Personnel Officer. Id., at p 6 (Chap. 1, §13)
[51] Docket 173, p. 6 n 11, citing Docket 131, p 7
[52] Plt. Ex. 2 (attached) 43:21-44:14; 44:25-45:1; 72:5-73:4; 79:23-81:6

Michael J. Walleri
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

actually conducted.[53]   It is hard to exhaust remedies, when access to those remedies is denied.[54]

In summary, there were facts in dispute as to whether the process appeared futile to someone in Officer Schlumbohm's position.[55]

**CONCLUSION**

The Court should deny the renewed motion for summary judgment by the City as to Officer Schlumbohm.

DATED: March 20, 2007                    s/ Michael J. Walleri

Law Offices of Michael J. Walleri
330 Wendell Street, Suite E
Fairbanks, Alaska 99701
(907) 452-4716
(907)452-4725 (Facsimile)
walleri@gci.net
AK. Bar No. 7906060

---

[53] Id.
[54] The manager appointed Mary Beth Solomon to hold the hearing. Docket 92, Ex. E, at 1 There is nothing in the City code which allows such a deviation from procedure.  DeLeon did not want to attend the hearing chaired by Mary Beth Solomon, because 1) Ms. Solomon wanted to disband the City police force in favor of a tribal police force, 2) DeLeon had arrested  Ms. Solomon for DUI recently, 3) Fannie Carroll had made statements to Greg Russell that some or all of the City Council members had already taken positions on his termination, 4) Chief Fleming believed that DeLeon would not have a fair hearing, and 5) Councilman Richard Miller believed that the police officers would not receive a fair hearing. See generally Docket 124, at 17 -20
[55]   It is equally true that there were facts in dispute as to whether the process appeared futile to persons in Officer DeLeon and Officer McKilican situation.  They have moved for relief from judgment as to their claims.  See Docket 196

Michael J. Walleri
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

Certificate of Service
I hereby certify that under penalty of perjury that a true and
 Correct copy of the foregoing was sent to the following counsel
of record on March 20, 2007 via ECFl  to:
Mr. Howard S. Trickey
Mr. Matt Singer
Jermain, Dunnagan & Owens, P.C.
3000 A Street, Suite 300
Anchorage, AK 99503

s/ Michael J. Walleri

**Michael J. Walleri**
*Attorney at Law*

330 Wendell St., Suite E
Fairbanks, Alaska 99701
(907) 452-4716
FACSIMILE
(907) 452-4725

*Fleming, et. al. v City of Fort Yukon*                    *Page 19 of 19*
Opp: Renewed  Sum. Jud. (Schlumbohm; Counts III & IV)
[Docket 189]