1

1          IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF ALASKA

3

4    REGINALD FLEMING, CHRISTOPHER     )
     DELEON, CHRIS HAMPTON, WILLIAM    )
5    D. MCKILLICAN, and TODD           )
     SCHLUMBOHM,                       )
6                                      )
                 Plaintiffs,           )
7                                      )
          vs.                          )
8                                      )
     FANNIE CARROLL and the CITY       )
9    OF FORT YUKON, ALASKA,            )
                                       )
10               Defendants.           )
     _____ )
11   Case 4:04-cv-00034-RRB

12

13

14        **VIDEOTAPE DEPOSITION OF TODD SCHLUMBOHM**

15          Taken Thursday, August 17, 2006

16     From the hour of 1:48 p.m. to 3:36 p.m.

17          Pages 1 through 103, inclusive

18                  Volume 1

19         Taken by Counsel for Defendants

20                     At

21      Offices of Heartland Court Reporters
              100 Cushman Street, Suite 308
22            Fairbanks, Alaska 99701

23

24   Reported by:
     CAROL A. McCUE, RMR
25   Heartland Court Reporters

COPY

EXHIBIT  2
PAGE  1  OF 23

Deposition of Todd Schlumbohm                Fleming, et al., vs. Carroll, et al.
Taken August 17, 2006                        Case No. 4:04-cv-00034-RRB

Page 47

1      A.    No, she was not.

2      Q.    What were the reasons that you believed you

3  were going to be terminated if you did not resign?

4      A.    That was told to me by Greg Russell.

5      Q.    What -- what was the reason?

6      A.    I don't believe there was a reason.  He

7  said -- oh, there had been some personnel files, I was

8  on probation for that.  And that was an issue with

9  Fannie Carroll.

10          And when I returned the files, she

11 stated that -- or I told her that I did not take these

12 files to deprive or, you know, mislead anybody.

13     Q.    Tell me then about the -- your removal of the

14 personnel files.

15     A.    One afternoon I was in the police department,

16 she came in, she said she was going to Fairbanks to

17 talk with her attorneys, the city attorneys, and she

18 gave me a letter stating that she wanted 911 evidence

19 tapes, case -- case files and personnel files.

20          I thought it was kind of odd that she would

21 want these tapes and personnel files.  It stated on

22 there that I could get further permission if I felt I

23 needed to, and I felt that I needed to.

24          I called Chief Fleming and got told to secure

25 the files.  I called Captain Tanner with -- he's

EXHIBIT 2
PAGE 2 OF 23

Heartland Court Reporters            Telephone:  907-452-6727
Carol A. McCue, RMR E-mail:  carol.mccue@acsalaska.net  Fax:  907-488-7701

Deposition of Todd Schlumbohm          Fleming, et al., vs. Carroll, et al.
Taken August 17, 2006          Case No. 4:04-cv-00034-RRB

Page 48

1  retired captain from the State Troopers, told him the

2  situation, he says, if Reggie's your boss, then that's

3  what you need to do.  So I boxed up the files and

4  secured them.

5      Q.   What -- you say Fannie Carroll gave you a

6  letter?

7      A.   She did.

8      Q.   What did you do with the letter?

9      A.   I've still got it.

10     Q.   Have you produced it to your lawyer?

11     A.   I have.

12     Q.   Has he produced it in this litigation?

13     A.   I haven't seen it, no.

14     Q.   Do you know why it hasn't been produced?

15     A.   No, I don't.

16          MR. WALLERI:  Objection.  Assumes facts not in

17  evidence.  You're assuming that it has not been

18  produced.

19  BY MR. SINGER:

20     Q.   If it -- you don't -- you don't have any

21  knowledge one way or the other if it's been produced;

22  is that your testimony?

23     A.   I don't know.

24     Q.   Tell me, then, what is it -- what is it that

25  you did to secure these files?

EXHIBIT 2
PAGE 3 OF 23

Heartland Court Reporters          Telephone:  907-452-6727
Carol A. McCue, RMR E-mail:  carol.mccue@acsalaska.net  Fax:  907-488-7701

b1ff2803-13ca-404a-b6a3-6937c6c73b0e

Deposition of Todd Schlumbohm                    Fleming, et al., vs. Carroll, et al.
Taken August 17, 2006                      Case No.  4:04-cv-00034-RRB

Page 49

1      A.    The best I could, I had a -- there was a box I

2  taped.  I took the box to our residence, which was

3  placed in my bedroom that only I stayed in.  The next

4  morning we flew to Fairbanks and I had the files with

5  me at my residence.  And that's what I was told to do

6  with them, just keep them secured.

7      Q.    Well, let me -- let me understand.  Did Reggie

8  Fleming instruct you to take the files and bring them

9  to Fairbanks?

10     A.    That's correct.

11     Q.    So that's -- when he told you to secure them,

12  he specifically instructed you, get the personnel files

13  and bring them to me in Fairbanks?

14     A.    He didn't say, bring them to me in Fairbanks.

15     Q.    What did he say?

16     A.    He said secure them, and that was the best

17  that I could secure them.

18     Q.    The best you could secure them was to tape

19  them up and take them --

20     A.    Keep them in my possession, yes.

21     Q.    Now, they weren't in your possession when you

22  got on the plane, correct, you checked them as luggage?

23     A.    They were still in the same area as I was

24  because Warbelow's flies your cargo behind you.     EXHIBIT  2
                                                        PAGE 4 OF 23

25     Q.    Right.  And there's an evidence locker at the

Heartland Court Reporters           Telephone:  907-452-6727
Carol A. McCue, RMR E-mail:  carol.mccue@acsalaska.net  Fax:  907-488-7701

b1ff2803-13ca-404a-b6a3-6937c6c73b0e

Deposition of Todd Schlumbohm                    Fleming, et al., vs. Carroll, et al.
Taken August 17, 2006                            Case No. 4:04-cv-00034-RRB

Page 50

1    police department?

2        A.    There is.

3        Q.    You didn't put them in there?

4        A.    No.

5        Q.    You didn't put them under a lock and key?

6        A.    No, I did not.

7        Q.    You took -- now, what -- isn't it true that

8    the -- what you -- what you removed was one box, right?

9        A.    That is correct.

10       Q.    And that box was the personnel files for the

11   police department?

12       A.    That is correct.

13       Q.    Not 911 evidence tapes?

14       A.    No.

15       Q.    Not case files?

16       A.    Nope.

17       Q.    You didn't secure those?

18       A.    Those were in their own locker inside the

19   police department.

20       Q.    So there was a secure locker within the police

21   department?

22       A.    There's an evidence locker that is secured --

23       Q.    And it was secured?

24       A.    -- with a lock.          EXHIBIT 2
                                        PAGE 5 OF 23

25       Q.    And so you felt you were complying with your

b1ff2803-13ca-404a-b6a3-6937c6c73b0e

Deposition of Todd Schlumbohm          Fleming, et al., vs. Carroll, et al.
Taken August 17, 2006                  Case No. 4:04-cv-00034-RRB

Page 51

1    chief's direct order to secure these documents and

2    evidence by leaving them secure in the police

3    department?

4         A.   No, I brought them back with me.

5         Q.   As to the -- but there -- you said there were

6    three items, the 911 evidence tapes, right?

7         A.   Those are just what she requested, not what I

8    had taken.

9         Q.   So did Reggie Fleming tell you only to secure

10   the personnel files?

11        A.   Yeah.  And he said don't -- and do not give

12   her the tapes.

13        Q.   Did he tell you to secure the tapes with the

14   case files?

15        A.   I didn't know where the tapes were that she

16   was looking for.

17        Q.   And what about the case files?

18        A.   The case files were in the same drawer that

19   they had always been put in.

20        Q.   Under lock?

21        A.   I don't believe those were locked.

22        Q.   So you weren't concerned about securing -- or

23   you took no action to secure 911 evidence tapes or case

24   files?

25        A.   The tapes were in the police department and

EXHIBIT    2
PAGE 6 OF 23

Heartland Court Reporters          Telephone:  907-452-6727
Carol A. McCue, RMR  E-mail:  carol.mccue@acsalaska.net  Fax:  907-488-7701

Deposition of Todd Schlumbohm          Fleming, et al., vs. Carroll, et al.
Taken August 17, 2006                  Case No. 4:04-cv-00034-RRB

Page 52

1   they were in a pull-out drawer.  That's where all of

2   our evidence tapes were --

3        Q.    So you took --

4        A.    -- were put.

5        Q.    -- so you took no action to secure the

6   911 evidence tapes?

7        A.    Those, I did not bring with me.

8        Q.    Or -- you didn't do anything to secure the

9   911 evidence tapes?

10       A.    I didn't.  I didn't.

11       Q.    Nor did you do anything to secure case files?

12       A.    Case files, no.

13       Q.    The thing -- the thing that you decided to

14  secure was the personnel files?

15       A.    That's what I was told to do.

16       Q.    By Reggie Fleming?

17       A.    That's correct.

18       Q.    Did he tell you not to bother with the

19  911 tapes and --

20       A.    Did not.

21       Q.    -- case files?

22       A.    Did not.

23       Q.    And so --

24       A.    What he told me was don't give her any of the

25  tapes.  Take the personnel files and get them out of

b1ff2803-13ca-404a-b6a3-6937c6c73b0e

Deposition of Todd Schlumbohm                Fleming, et al., vs. Carroll, et al.
Taken August 17, 2006                        Case No. 4:04-cv-00034-RRB

Page 53

1    there and secure them.

2         Q.    Did he tell you why?

3         A.    He did not tell me why.

4         Q.    So -- so Reggie Fleming instructed you not to

5    give the city manager the police department's personnel

6    files?

7         A.    That's correct.

8         Q.    And to bring them to -- to Fairbanks?

9         A.    He didn't say bring them to Fairbanks, he said

10   secure them.

11        Q.    And so it was your decision to bring them to

12   Fairbanks?

13        A.    My decision was I would keep them in my

14   possession.

15        Q.    So you took them to your house in Fairbanks?

16        A.    That's correct.

17        Q.    And how did you contact Reggie Fleming with

18   regard to these files?

19        A.    By phone.

20        Q.    When did you call him?

21        A.    As soon as I got the letter, probably within a

22   half hour after the letter.

23        Q.    Did you call him when you got to Fairbanks?

24        A.    I believe so.

25        Q.    And did you meet with him?

EXHIBIT 2
PAGE 8 OF 23

Heartland Court Reporters          Telephone:  907-452-6727
Carol A. McCue, RMR E-mail:  carol.mccue@acsalaska.net  Fax:  907-488-7701

b1ff2803-13ca-404a-b6a3-6937c6c73b0e

Deposition of Todd Schlumbohm                Fleming, et al., vs. Carroll, et al.
Taken August 17, 2006                        Case No. 4:04-cv-00034-RRB

Page 54

1      A.    I don't recall meeting with him.

2      Q.    Did he meet you at the airport?

3      A.    It's very possible.

4      Q.    Reggie Fleming met you at the airport and you

5  had the personnel files with you?

6      A.    No.  I do remember a phone call.  Yeah, Reggie

7  very well could have been there.  I -- he could have

8  been there.  I don't know.  I can't remember exactly if

9  he was there.  There was a few times we've met there.

10     Q.    And did you transfer custody of the personnel

11  files to the chief?

12     A.    No, I did not.

13     Q.    Did you -- did he look at them?

14     A.    No.

15     Q.    What happened to the files next?

16     A.    They were put in my vehicle and transported to

17  my house.

18     Q.    What did you do with them when you got to your

19  house?

20     A.    They were put in the closet in my bedroom.

21     Q.    The closet of your bedroom?

22     A.    Uh-hum.

23     Q.    That's the secure place you took them?

24     A.    That's correct.

25     Q.    Were they locked there?

b1ff2803-13ca-404a-b6a3-6937c6c73b0e

Deposition of Todd Schlumbohm          Fleming, et al., vs. Carroll, et al.
Taken August 17, 2006               Case No. 4:04-cv-00034-RRB

Page 55

1      A.   No.

2      Q.   In any of your law enforcement training at the

3    police academy were you ever instructed that the proper

4    place to secure evidence or items of import was your

5    closet at home?

6      A.   No.

7      Q.   And did Reggie Fleming tell you to take these

8    personnel files to your closet at home?

9      A.   Not that specific spot, no, but I felt that

10    was probably a good spot.

11      Q.   Okay.  Now, how did they make -- these files

12    make their way back to --

13      A.   I transported them back myself.

14      Q.   Okay.  Did you -- did you meet with Reggie

15    Fleming before transporting them back?

16      A.   I don't recall meeting with Reggie, no.

17      Q.   Did you look in the files to see if they were

18    complete?

19      A.   I did not look through the files.

20      Q.   Did you look at your file?

21      A.   I did not look at my file.

22      Q.   Your testimony is you didn't look at your own

23    personal file?

24      A.   I had looked at it previous, I didn't need to

25    look at it.

EXHIBIT ___ 2
PAGE 10 OF 23

Heartland Court Reporters          Telephone:  907-452-6727
Carol A. McCue, RMR E-mail:  carol.mccue@acsalaska.net   Fax:  907-488-7701

Deposition of Todd Schlumbohm                 Fleming, et al., vs. Carroll, et al.
Taken August 17, 2006                         Case No. 4:04-cv-00034-RRB

Page 56

1       Q.    Where was the personnel file in the police
2   department before you removed it?
3       A.    It was in the desk, the main desk, I guess the
4   chief's desk, and then there's the bottom drawer there.
5       Q.    So then you -- you decided to take the
6   personnel files back to Fort Yukon?
7       A.    Uh-hum.
8       Q.    Yes?
9       A.    That's correct.
10      Q.    Had you been contacted by the State Troopers?
11      A.    No, I had not.
12      Q.    Had you ever been contacted by the State
13  Troopers regarding your removal of personnel files?
14      A.    Never.
15      Q.    Had you been contacted by Greg Russell?
16      A.    No, I have not.
17      Q.    Had you been contacted by anyone with
18  instructions to return those files to Fort Yukon by
19  anyone?
20      A.    By Fannie Carroll.
21      Q.    What did she say to you?
22      A.    It was a letter that was served to me stating
23  that I was on probation for, what do they call that,
24  not doing what she asked, and removing the personnel
25  files.  And she stated also in there that I had removed

EXHIBIT ___2___
Page __11__ of 23

Heartland Court Reporters                    Telephone:  907-452-6727
Carol A. McCue, RMR E-mail: carol.mccue@acsalaska.net  Fax:  907-488-7701

Deposition of Todd Schlumbohm          Fleming, et al., vs. Carroll, et al.
Taken August 17, 2006                   Case No. 4:04-cv-00034-RRB

Page 57

1    911 tapes and case files, which is incorrect.

2        Q.    Did anybody witness what you removed from the

3    police department?

4        A.    No.  I was the only one there.  But Fleming

5    knew I had them, DeLeon knew I had them, and Captain

6    Tanner, at that time, knew I had them.

7        Q.    How did DeLeon know you had them?

8        A.    I told him that I was going to remove the

9    personnel files.

10       Q.    Where was DeLeon?

11       A.    I think we both flew back at the same time

12   that week.

13       Q.    So he knew you had the personnel files?

14       A.    Yeah.

15       Q.    Yeah.  So you specifically discussed with

16   Chris DeLeon that you were removing personnel files

17   from the police department and taking them to

18   Fairbanks?

19       A.    Yes.

20       Q.    And you think you were on the plane together?

21       A.    Yeah, I thought -- there was a time there that

22   we both -- we both went back the same, but if we left

23   the same or not, I'm not sure.

24       Q.    Do you recall, did the two of you fly back on

25   the same flight and meet Reggie Fleming in the airport?

EXHIBIT 2
PAGE 12 OF 23

Heartland Court Reporters          Telephone:  907-452-6727
Carol A. McCue, RMR E-mail:  carol.mccue@acsalaska.net  Fax:  907-488-7701

Deposition of Todd Schlumbohm                Fleming, et al., vs. Carroll, et al.
Taken August 17, 2006                        Case No. 4:04-cv-00034-RRB

Page 58

1        A.   I don't remember DeLeon being there.

2        Q.   Do you remember Fleming being at the airport?

3        A.   I -- I vaguely remember Fleming be there,

4   yeah.

5        Q.   You had a --

6        A.   I had the box, yes.

7        Q.   The bankers box of personnel files?

8        A.   Yes.

9        Q.   And it's your testimony that Fleming did not

10  look at the personnel files?

11       A.   That's correct.

12       Q.   Did not take them?

13       A.   No.

14       Q.   Did not take any of the documents out of them?

15       A.   No.

16       Q.   Now Captain Tanner, he was not a law

17  enforcement officer at the time?

18       A.   He was the captain of the State Troopers.

19       Q.   Well, you said retired.  Was he not retired --

20       A.   He is now retired.  At the time, no, he was

21  not, he was still a captain of the State Troopers.

22       Q.   So it's your testimony you called the State

23  Troopers and told them you were removing personnel

24  files?

25       A.   Exactly.

EXHIBIT 2
PAGE 13 OF 23

Heartland Court Reporters          Telephone:  907-452-6727
Carol A. McCue, RMR E-mail:  carol.mccue@acsalaska.net  Fax:  907-488-7701

b1ff2803-13ca-404a-b6a3-6937c6c73b0e

Deposition of Todd Schlumbohm                Fleming, et al., vs. Carroll, et al.
Taken August 17, 2006                        Case No. 4:04-cv-00034-RRB

                                                              Page 59

1       Q.   What day did you do that?

2       A.   The same day that letter is dated, so probably

3   the first part of February.  The month of February.

4       Q.   Now, at what point did you learn that Reggie

5   Fleming had been terminated?

6       A.   She had faxed -- gosh.  There was so much

7   paperwork involved.  I know it was after that I had

8   taken the files or I would not have called him.  So it

9   was shortly after that letter.  I wasn't told by

10  anybody, I read it my -- myself by a letter that was

11  faxed.

12      Q.   So you saw the letter terminating Reggie

13  Fleming?

14      A.   Yeah, I think it was the termination of him

15  and Chris DeLeon.  And my --

16      Q.   Did you --

17      A.   -- promotion.

18      Q.   Did you then call Fleming or DeLeon to talk

19  about it?

20      A.   It's possible.  I mean, there -- there was a

21  lot going on back and forth with all this.  So phone

22  calls are -- who knows.  It's very possible.

23      Q.   You don't have any specific recollection?

24      A.   I -- I don't, other than reading the letter.

25  And the letter was that Chief Fleming had been fired,

EXHIBIT 2
PAGE 14 OF 23

Heartland Court Reporters          Telephone:  907-452-6727
Carol A. McCue, RMR  E-mail:  carol.mccue@acsalaska.net  Fax:  907-488-7701

b1ff2803-13ca-404a-b6a3-6937c6c73b0e

Deposition of Todd Schlumbohm                Fleming, et al., vs. Carroll, et al.
Taken August 17, 2006                        Case No. 4:04-cv-00034-RRB

Page 60

1    Chris DeLeon had been fired, J.R. Wallace was now the

2    acting chief, and I was going to be promoted and have a

3    pay increase.

4        Q.   Where were you when you received that letter?

5        A.   I was in Fort Yukon.

6        Q.   Let me get this straight.  Had you already

7    removed the personnel files?

8        A.   I think this was before.

9        Q.   So you knew Fleming had been terminated before

10   you removed the personnel files?

11       A.   Not before.  That's why I had called him.  I

12   said, Reggie, you're -- are -- you're still the chief;

13   is that correct?  He said, yes.  Because we -- and he

14   said, yes.  And that's when I called Captain Tanner.

15       Q.   Okay.  But then --

16       A.   To verify just if -- if he had not been the

17   chief at the time, I still got permission from somebody

18   else.

19       Q.   And then you removed the files, you say?

20       A.   Correct.

21       Q.   But you were in Fort Yukon when you learned

22   that Chief Fleming had been terminated?

23       A.   After the fact.

24       Q.   But -- but before you got on the plane with

25   the files?

EXHIBIT 2
PAGE 15 OF 23

Heartland Court Reporters           Telephone:  907-452-6727
Carol A. McCue, RMR E-mail: carol.mccue@acsalaska.net  Fax:  907-488-7701

b1ff2803-13ca-404a-b6a3-6937c6c73b0e

Deposition of Todd Schlumbohm            Fleming, et al., vs. Carroll, et al.
Taken August 17, 2006                    Case No. 4:04-cv-00034-RRB

Page 61

1     A.   My recollection was that he was still the

2  chief at that time.  And I had verified with Fleming

3  that he was still the chief.  And he stated yes.

4     Q.   Well, let me just try and understand all the

5  trips back and forth between Fort Yukon and Fairbanks.

6     A.   Yeah, there was plenty.

7     Q.   How many were there between the day when you

8  removed the files and flew to Fort Yukon and the day

9  you resigned?

10    A.   The day I removed them I was back here for my

11 week.  Went back after my week and I -- I returned the

12 files, and that's -- that was it.  That was the only

13 one flight.

14    Q.   Okay.  So -- and isn't it so that the

15 instructions from Fannie Carroll to return the files

16 came after your promotion?

17    A.   That's correct.

18    Q.   I want to just have a time line here for

19 myself.  There's the day when you removed the files?

20    A.   Yes.

21    Q.   And the same day you flew, right, Fleming

22 tells you to secure the files?

23    A.   Yeah.  It was the next day that I flew, I

24 believe.

25    Q.   Next day.  Second day after that you fly to

Heartland Court Reporters            Telephone:  907-452-6727
Carol A. McCue, RMR E-mail:  carol.mccue@acsalaska.net  Fax:  907-488-7701

b1ff2803-13ca-404a-b6a3-6937c6c73b0e

Deposition of Todd Schlumbohm                    Fleming, et al., vs. Carroll, et al.
Taken August 17, 2006                            Case No. 4:04-cv-00034-RRB

                                                                    Page 62

1    Fairbanks.  Right?

2        A.    I believe so.

3        Q.    You say you're there for a whole week?

4        A.    I believe I was in town for a whole week.

5        Q.    And then you fly back to Fort Yukon?

6        A.    Correct.

7        Q.    And you have the personnel files with you?

8        A.    That's correct.

9        Q.    And then how soon after that did you resign?

10       A.    I believe it was the same day.

11       Q.    Now, your testimony is that you learned

12   Reggie Fleming had been terminated while you were in

13   Fort Yukon?

14       A.    Yeah, there -- I knew something was -- was

15   happening, I wasn't sure what it was happening.  Reggie

16   was not in Fort Yukon.  The city manager was not in

17   Fort Yukon.  I was unsure whether or not he was

18   still -- I mean, if he was fired or if he was the

19   chief.  That's why had I called him.  He said if he was

20   the chief.  And that is the time that he told me to

21   take the files and secure them.

22       Q.    Your testimony is also that you received

23   notice that he had been terminated, you read a letter,

24   right?

25       A.    That's correct.

Heartland Court Reporters              Telephone:  907-452-6727
Carol A. McCue, RMR E-mail:  carol.mccue@acsalaska.net  Fax:  907-488-7701

b1ff2803-13ca-404a-b6a3-6937c6c73b0e

Deposition of Todd Schlumbohm                Fleming, et al., vs. Carroll, et al.
Taken August 17, 2006                        Case No. 4:04-cv-00034-RRB

Page 63

1    Q.   And that you were promoted?

2    A.   That's correct.

3    Q.   And you were in Fort Yukon when you received

4  that notice?

5    A.   Uh-hum.

6    Q.   Right?

7    A.   Sure.  Yes.

8    Q.   So you received that notice before you got on

9  the plane to Fairbanks?

10   A.   Yes, I believe so.

11   Q.   Before you got on the plane to Fairbanks --

12   A.   Yeah.

13   Q.   -- with the personnel records?

14   A.   Uh-hum.

15   Q.   Yes?

16   A.   Yes.

17   Q.   So at the time you got on the plane to

18  Fairbanks, you knew Reggie Fleming was no longer your

19  chief?

20   A.   It was a letter.  I didn't know whether it was

21  true or not.  That's why I had called and asked him, he

22  said, yes, I'm still the chief.

23   Q.   The letter was from whom?

24   A.   I think it was -- was it a attorney?  Some

25  attorney or something.  I can't remember their attorney

EXHIBIT 2
PAGE 18 OF 23

Heartland Court Reporters          Telephone:  907-452-6727
Carol A. McCue, RMR E-mail:  carol.mccue@acsalaska.net   Fax:  907-488-7701

b1ff2803-13ca-404a-b6a3-6937c6c73b0e

Deposition of Todd Schlumbohm                    Fleming, et al., vs. Carroll, et al.
Taken August 17, 2006                            Case No. 4:04-cv-00034-RRB

Page 72

1    stone --

2        A.    Yes.

3        Q.    -- to other law enforcement jobs?

4        A.    Yes.

5        Q.    Do you have any personal knowledge about why

6    the city terminated Christopher DeLeon?

7        A.    Other than after the meeting that he was

8    involved where Reggie had removed him from the -- from

9    the room.  She had called -- we were all in the office

10   and Fannie had called and talked to Reggie, wanted him

11   released from his duty, wants him on probation.  Reggie

12   denied that.  Told her that he would send him home for

13   the rest of the night.

14            She then called back again later, Reggie

15   stated that she had said that she was afraid for her

16   safety because Chris DeLeon had a gun.

17       Q.    And so the city manager instructed the police

18   chief, as you understand it, to put DeLeon on

19   administrative leave?

20       A.    Uh-hum.

21       Q.    Right?

22       A.    That's correct.

23       Q.    And Chief Fleming hung up the phone and did

24   not put DeLeon on administrative leave?     EXHIBIT ___
                                                 PAGE 19 OF 23

25       A.    Did not.  That was not the procedures of the

Heartland Court Reporters            Telephone:  907-452-6727
Carol A. McCue, RMR E-mail: carol.mccue@acsalaska.net  Fax:  907-488-7701

Deposition of Todd Schlumbohm                 Fleming, et al., vs. Carroll, et al.
Taken August 17, 2006                         Case No. 4:04-cv-00034-RRB

Page 73

1    police department.

2        Q.    So Chief Fleming disregarded the city

3    manager's instructions?

4        A.    Yeah.

5        Q.    He decided to have a different procedure?

6        A.    The procedures of the police department.

7        Q.    Okay.  So the police department, you and

8    Mr. Fleming, you believed you could operate independent

9    of the city manager's instructions?

10       A.    I don't know.  He said he had -- they have

11   procedures that they follow, and that was not the

12   procedure to go to.

13       Q.    Was there some written procedure that he was

14   referring to?

15       A.    Apparently.  I didn't ever get a look, I never

16   looked at them.

17       Q.    You'd never seen --

18       A.    Never seen them.

19       Q.    Never seen any written procedure --

20       A.    No.

21       Q.    -- that suggested the chief can disregard the

22   city manager's instructions?          EXHIBIT 2
                                          PAGE 20 OF 23

23       A.    I don't know.  But I know some other police

24   departments people get writ up first, they will get put

25   on leave, then if it continues, then they go through

Heartland Court Reporters          Telephone:  907-452-6727
Carol A. McCue, RMR  E-mail:  carol.mccue@acsalaska.net  Fax:  907-488-7701

b1ff2803-13ca-404a-b6a3-6937c6c73b0e

Deposition of Todd Schlumbohm                Fleming, et al., vs. Carroll, et al.
Taken August 17, 2006                        Case No. 4:04-cv-00034-RRB

Page 79

1       A.    Yeah.  Greg Russell had told me to -- I told
2   him what -- what I write -- I've never wrote a letter,
3   just I said what I just put on there that I resign at
4   this date.  He said, don't put personal reasons.  And
5   then, obviously, he made me write in the 2004 that I
6   had forgot.
7       Q.    And so after you submitted this letter of
8   resignation, did you submit to the city a written
9   grievance?
10      A.    This is the only thing that I gave Fannie
11  Carroll.
12      Q.    Okay.  You didn't, then, ask for a hearing,
13  for example?
14      A.    No.  I only asked about the city council
15  members being present, and that was before this.
16      Q.    That was because of your belief that the city
17  council had to be present to terminate you?
18      A.    A certain amount of members, I thought, had to
19  be present before we were given the option to resign or
20  be terminated.
21      Q.    What was -- where did that belief come from?
22      A.    That's just -- I don't -- who knows.
23      Q.    Did a -- after they were terminated, did
24  Fleming and DeLeon come back to Fort Yukon?
25      A.    Me and DeLeon were -- after terminated, after

EXHIBIT 2
PAGE 21 OF 23

Heartland Court Reporters              Telephone:  907-452-6727
Carol A. McCue, RMR  E-mail:  carol.mccue@acsalaska.net   Fax:  907-488-7701

b1ff2803-13ca-404a-b6a3-6937c6c73b0e

Deposition of Todd Schlumbohm          Fleming, et al., vs. Carroll, et al.
Taken August 17, 2006                  Case No. 4:04-cv-00034-RRB

Page 80

1   me and DeLeon went up on this date, and he was there,

2   and I don't -- I think Reggie may have came in later

3   this day.

4       Q.   So -- so you -- DeLeon had been fired while

5   you were in Fairbanks, right?

6       A.   I can't remember if he was in Fairbanks or

7   Fort Yukon, either one, Reggie or DeLeon.

8       Q.   And you guys -- you guys flew back from

9   Fairbanks to Fort Yukon --

10      A.   Yes.

11      Q.   -- on February 16th --

12      A.   Yes.

13      Q.   -- together?

14      A.   Yes.

15      Q.   And he was no longer a police officer?

16      A.   I -- I don't know if he was or not or if

17  that's why he came up because we knew that there was

18  going to be a city council meeting that night, we

19  wanted to attend the city council meeting.  We were

20  refused to go to the city council meeting.

21      Q.   Why -- why did you refuse to go to the city

22  council meeting?                        EXHIBIT __2__
                                            PAGE 22 OF 23

23      A.   We didn't refuse to, we were asked not to go

24  into the city council member by Greg Russell.  He says,

25  you guys just hang out here.  They went in, they went

Heartland Court Reporters          Telephone:  907-452-6727
Carol A. McCue, RMR E-mail:  carol.mccue@acsalaska.net  Fax:  907-488-7701

b1ff2803-13ca-404a-b6a3-6937c6c73b0e

Deposition of Todd Schlumbohm          Fleming, et al., vs. Carroll, et al.
Taken August 17, 2006                  Case No. 4:04-cv-00034-RRB

Page 81

1    to executive session, he came back, he says, we are in
2    executive session with the city attorneys.  That's it.
3         Q.   And then did you go in?
4         A.   No.
5         Q.   Why not?
6         A.   We were asked not to go in.
7         Q.   It's your testimony you were asked not to go
8    in?
9         A.   (Witness nods head.)
10             MR. WALLERI:  You need to say -- you need to
11   verbalize.
12             THE WITNESS:  Yeah.  We -- we were asked not
13   to go into the city council meeting and to wait until
14   it was over with.
15   BY MR. SINGER:
16        Q.   Okay.  Now, you never submitted, again, a
17   written grievance or a written request for a hearing?
18        A.   No, I didn't.  I was not aware of what those
19   were at the time.
20        Q.   You were aware that there was a Personnel
21   Manual Handbook?
22        A.   Yeah.
23        Q.   And that it had a grievance chapter in it?
24        A.   Yeah.  I probably -- I'm sure I read it.
25        Q.   Did -- did you -- you're sure you read it?

Heartland Court Reporters          Telephone:  907-452-6727
Carol A. McCue, RMR  E-mail:  carol.mccue@acsalaska.net  Fax:  907-488-7701

b1ff2803-13ca-404a-b6a3-6937c6c73b0e