Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

REGINALD FLEMING, CHRISTOPHER      )
DELEON, CHRIS HAMPTOM, WILLIAM D.  )
MCKILLICAN, and TODD SCHLUMBOHM,   )
                                   )
          Plaintiffs,              )
                                   )
vs.                                )
                                   )
FANNIE CARROLL, and the CITY OF    )
FORT YUKON, ALASKA,                )
                                   )
          Defendants.              )
                                   )

Case No. 4:04-CV-00034-RRB

STATUS HEARING

February 2, 2007

Page 22

1   so we don't have to sort through thousands and thousands
2   --
3           THE COURT: You are going to get that in
4   20 days.
5           MR. SINGER: Just to be clear, Your Honor,
6   what we want is for him to explain what he earned in his
7   subsequent employment. And what I'm concerned about is
8   you have instructed the plaintiff to calculate what he
9   thinks his damages are, and we don't think the plaintiff
10  is correctly calculating his damages.
11          And what we want to know so we can correctly
12  calculate the damages is what he has earned and what his
13  salary is and the financial terms of his employment.
14          THE COURT: Well, there is a -- he admits
15  there is a date at which his salary is as much or more
16  than it was at Fort Yukon, so all -- once it reaches
17  that date, it becomes irrelevant, so between the time of
18  his discharge and the time he is -- (inaudible) -- once
19  he reaches the point in time, which is very soon, I
20  understand, where he is making the same as he was at
21  Fort Yukon it becomes irrelevant.
22          MR. SINGER: We just want an answer in an
23  interrogatory under oath that sets forth his salary for
24  these positions, and then we can make our own
25  calculation.

Page 23

1           THE COURT: He has 20 days to set forth the
2   amount of damages defendant seeks and the specifics as
3   to how that figure was reached, which would include the
4   salary that he was making at each of these subsequent
5   jobs up until the point in time that the salary equalled
6   what he was making at Fort Yukon.
7           MR. WALLERI: We have no problems with
8   complying with that. What we do have a problem with is
9   the bad faith --
10          THE COURT: You keep wanting to talk about
11  bad faith. I'm trying to get to the meat of the issue
12  and I think that if you will do that within 20 days,
13  that will move us significantly down the road.
14          You say that they filed this motion just to
15  upset you.
16          MR. WALLERI: Pure harassment.
17          THE COURT: Pure harassment. Is that true?
18  Obviously if the motion is filed for pure harassment
19  it's not only unprofessional, but I would cite code of
20  conduct and all kinds of things.
21          MR. SINGER: Your Honor, it couldn't be
22  further from the truth, and the record speaks for
23  itself. We served discovery a year and a half ago. We
24  sent a half dozen letters asking over a course of three
25  months and outlined specifically what we wanted

Page 24

1   plaintiff to address.
2           We then moved to compel. When the responses
3   to the court's ordered compelling were inadequate, we
4   sent three more letters.
5           THE COURT: I know what you want. You want
6   to know how much money they are requesting and why.
7           MR. SINGER: Simply on one interrogatory we
8   would like the answer. I don't know what else we could
9   have done.
10          MR. WALLERI: They could have actually sat
11  down and talked to me when they said they were going to
12  and then they canceled their appointment and never
13  rescheduled and then filed a motion to compel.
14          That they did do, and there is no question
15  that they did that.
16          THE COURT: Okay. It doesn't sound very
17  good.
18          MR. WALLERI: No, it doesn't, Your Honor.
19  It's totally unprofessional, and that's what's
20  characterized these entire discovery proceedings.
21          And it is not -- this could happen once or
22  twice in a case. The problem is that we have had this
23  over the entire -- these kinds of behaviors coming from
24  opposing counsel during the entire proceedings. We
25  believe that it is not necessarily oversight. It is not

Page 25

1   necessarily neglect or just simply a bad move on a given
2   day.
3           It happens to be a concerted effort of
4   harassment during the entire proceedings relative to
5   discovery.
6           THE COURT: Okay. So what else can we
7   accomplish today?
8           MR. SINGER: Your Honor, I think from
9   counsel's comments, the other matter that we are
10  concerned about is whether we have now obtained from the
11  plaintiff all of his documentation regarding his police
12  certification.
13          THE COURT: Why do you need that?
14          MR. SINGER: Because the court found a
15  question of fact based on a document we hadn't been
16  produced. We did not have in our file, which was this
17  certificate that he attended a two-week village police
18  officer training, and specifically the city on the day
19  that Mr. Schlumbohm quit, the city determined that his
20  criminal record prevented him from working as a
21  certified police officer.
22          And the plaintiff's response was he didn't
23  have to meet that requirement because he was working as
24  a village police officer, which is a different standard,
25  and they say he was certified as such.

Page 26

    Well, what we now know, unless there is some
other document out there that we haven't been produced,
is that he was not a certified village police officer,
he didn't have a certificate from the Alaska Police
Standards Council.
    He had a certificate that he attended the
two-week training. And so we would like the opportunity
to renew our summary judgment motion and brief this
issue for the court because we think that it was not
properly presented to the court and at the time that we
moved -- (inaudible) -- which included the certificate,
by plaintiff's counsel's accusations, we didn't present
that document.
    I will remind the court that the reason
Mr. Schlumbohm was before this -- (inaudible) -- was
because when Mr. Fleming was terminated as the chief,
the city informed Schlumbohm he was going to be promoted
to acting chief and his first act was to take the city's
confidential personnel records, including his own
record, and see that they got to Fairbanks.
    So perhaps those documents that used to be
in files -- (inaudible) -- so for whatever reason the
certificate about his training, we didn't have at the
time we moved for summary judgment.
    THE COURT: So what are you requesting?

Page 27

    MR. SINGER: I'm just -- I would like the
opportunity after we get response to this court's
discovery order today, to evaluate whether there is a
reason, a good faith reason to bring a new summary
judgment motion.
    THE COURT: Take ten days after you get the
discovery.
    MR. SINGER: That's fine.
    THE COURT: Anything else? Listen --
(inaudible) -- this is a day that really should be
fairly simple and straightforward. He was either
terminated improperly or he wasn't.
    If he was terminated improperly, he is
entitled to damages as set forth by the law. And that's
it. Pretty straightforward.
    I don't decide those things, a jury does.
Now, what about this -- I want to try to get this matter
tried before we get through the appeal process.
    MR. WALLERI: Your Honor, we would actually
-- because the court didn't dismiss Officer Schlumbohm's
-- we haven't tried it yet, but the court dismissed
Officer Schlumbohm's overtime claim also, and, of
course, we respectfully disagree with the court's ruling
on that or else we wouldn't have brought the claim to
begin with.

Page 28

    And so --
    THE COURT: So what are you going to do
about it?
    MR. WALLERI: What we would like to do
actually, Your Honor, is I think in the interest of --
you talked about it quite a bit. In the interest of
judicial economy, it makes a lot more sense for us to
just simply certify -- of course, it isn't a final order
as to Officer Schlumbohm. It is a final order as to all
the others.
    What we would like to do is just certify
Officer Schlumbohm's question to the Ninth Circuit so
they can -- on your overtime issue, stay the matter and
have the whole thing decided by the Ninth Circuit.
    THE COURT: I wouldn't mind that, but I
don't know what the defendant thinks about that.
    MR. SINGER: (Inaudible) -- we moved
yesterday for final judgment pursuant to Civil Rule
54(b).
    THE COURT: That would be subject to appeal.
    MR. WALLERI: We would need to have the
court certify Officer Schlumbohm's --
    THE COURT: I would just as soon then wait
and have one trial.
    MR. WALLERI: I would too, Your Honor.

Page 29

    THE COURT: So if I was -- (inaudible)
    MR. SINGER: Your Honor, the concern we need
to get squared away, the plaintiff has asserted an
interesting theory about damages, which is that he gets
back pay from the date of the termination until trial.
    THE COURT: Well, I don't know if that's
true. I mean, I'm not -- (inaudible) -- because of the
mediation requirement.
    MR. SINGER: We would certainly want to get
that resolved before we agree to a two-year stay of this
case.
    MR. WALLERI: I don't think we have a
problem with staying the damage claim as to the date of
the stay on that theory and we'll just --
    THE COURT: (Inaudible)
    MR. WALLERI: On that issue. In other
words, as to whether, if there is no mitigation, we
wouldn't have a problem with staying it as to the entry
of the order pursuant --
    THE COURT: So your understanding will be
that more and more damages can be accrued while you are
waiting for the appeal?
    MR. WALLERI: If there is no mitigation then
they would be able to -- because the theory here, Your
Honor, is that he is entitled to back pay until he would