Howard S. Trickey
Matthew Singer
JERMAIN DUNNAGAN & OWENS, P.C.
3000 A Street, Suite 300
Anchorage, Alaska 99503
(907) 563-8844

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| REGINALD FLEMING, CHRISTOPHER DELEON, CHRIS HAMPTON, WILLIAM D. MCKILLICAN, and TODD SCHLUMBOHM,<br><br>          Plaintiffs,<br><br>     vs.<br><br>FANNIE CARROLL, and the CITY OF FORT YUKON, ALASKA,<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 4:04-cv-00034-RRB |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'
<u>MOTION FOR RELIEF FROM JUDGMENT</u>**

**INTRODUCTION**

At Docket 173, this Court correctly granted summary judgment on the claims asserted by Fleming, DeLeon, Hampton, and McKillican. The Court then entered final judgment as to these four plaintiffs. [Docket 191] Having waited until after entry of final judgment, Plaintiffs now seek to re-litigate their claims, asking to set aside judgment pursuant to Civil Rule 60(b). In so doing, Plaintiffs misstate this Court's prior ruling,

mischaracterize applicable law, and seek to allege new theories never pled in their complaint. Because there is no valid reason to set aside the final judgment, Defendants, City of Fort Yukon and Fannie Carroll, respectfully request that the Court summarily deny Plaintiffs' Rule 60(b) motion.

## COUNT I – OVERTIME: THE COURT APPLIED THE COURT LEGAL STANDARD

Plaintiffs contend that the Court applied the wrong burden of proof on the FLSA claim. But this is simply incorrect. The law is that a city is exempt from the FLSA if it employs fewer than four persons in law enforcement.[1] In *Cleveland v. City of Los Angeles*, the Ninth Circuit explained that a "district court's determinations regarding exemptions to the FLSA are questions of law."[2]

The Court applied the correct burden of proof. The City demonstrated with affirmative evidence on summary judgment that it was entitled to the FLSA exemption. [*See* Docket 22, Vera James Aff.; Docket 143, Michael Jackson Aff.] Plaintiffs then had the obligation under Civil Rule 56 to produce affidavits or evidence to create a genuine issue of fact or show that the City was not entitled to judgment as a matter of law. The rule expressly states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not

---

[1]   *See* 29 U.S.C. § 213(b)(20).

[2]   *Cleveland v. City of Los Angeles*, 420 F.3d 981, 988 (9th Cir. 2005) (*citing Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1124 (9th Cir. 2002)).

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

so respond, summary judgment, if appropriate, shall be entered against the adverse party.[3]

Plaintiffs produced no such evidence showing that any one of them ever worked in a single workweek with more than three other persons who met the <u>legal test</u> to be defined as persons "employed in law enforcement."[4] Plaintiffs' entire case depended on the Court treating civilian dispatchers, the maintenance director, and Title 47 health workers as persons "employed in law enforcement." The Court correctly held as a matter of law that these persons did not meet the statutory and regulatory definition to count as law enforcement officers. [Docket 173 at 3-4]

The City met its burden of proof with affirmative evidence showing the number of persons working in law enforcement met the exemption in 29 U.S.C. § 213(b)(20). The Court made no error.

**WRONGFUL TERMINATION (DELEON) – THERE IS NO DISPUTE OF FACT THAT DELEON FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES**

DeLeon now argues that the Court erred by overlooking "the fact that DeLeon returned to Fort Yukon on February 16." This is a red herring argument. Pursuant to the City's personnel manual, the City offered DeLeon a pre-termination hearing. [Docket 92, Ex. E] That letter indicated that if DeLeon did not want a hearing, he was to contact the City in writing so that the hearing could be canceled. [*See id.*]

DeLeon expressly and in writing declined to participate in a pre-termination hearing. His attorney wrote not one, but two letters expressing DeLeon's refusal to

---

[3] Federal Civil Rule 56(e).

[4] 29 U.S.C. § 213(b)(20); 29 C.F.R. 553.211.

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR RELIEF FROM JUDGMENT             PAGE 3
*FLEMING, ET AL. V. CARROLL, ET AL.*
CASE NO. 4:04-cv-00034-RRB

attend a hearing.  His lawyer wrote: "I have a copy of a letter to him from Fannie Carroll, City Manager, dated February 11, 2004, inviting him to a hearing on February 16, 2004, where grounds for his dismissal would be discussed.  <u>Mr. DeLeon declines to participate in such a hearing</u>."  [Docket 92, Ex. F (emphasis added)]  In a second letter, DeLeon's attorney wrote: "<u>Mr. DeLeon does not request, and will not be participating in any hearing at which any remedy for job action or discipline recently taken against him could result</u>."  [Docket 92, Ex. G (emphasis added)]  While DeLeon did offer to speak to the City Council, he expressly stated that he would not participate in any hearing that could redress his grievance.  [*See id.*]

Alaska law requires an employee to exhaust his available grievance remedies.[5]  In *Municipality of Anchorage v. Higgins*, the Alaska Supreme Court concluded that an employee's claims were barred because he failed to exhaust, even though "two of the [remedy's] three steps ... involved appeals to the very individuals responsible for [the action under protest]," because the third step of the remedy was not demonstrably futile.[6]  By the same token, DeLeon could not avoid his duty to exhaust by refusing to attend his pre-termination hearing.

Further, the personnel manual provides an employee a hearing before the entire City Council only at a later step in the grievance process.  [*See* Docket 92, Ex. B at 20]

---

5    *See State v. Beard*, 960 P.2d 1, 5 (Alaska 1998).

6    754 P.2d 745, 747-48 (Alaska 1988).

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR RELIEF FROM JUDGMENT                                              PAGE 4
*FLEMING, ET AL. V. CARROLL, ET AL.*
CASE NO. 4:04-cv-00034-RRB

Nothing permitted DeLeon to skip the first steps of the grievance procedure.[7]  Thus, the Court correctly held that DeLeon's claims are barred as a matter of law for failure to exhaust his available remedies.

**MCKILLICAN WAS NOT CONSTRUCTIVELY DISCHARGED**

The Court committed no error in rejecting McKillican's constructive discharge claim.  [Docket 173 at 8]  It is well established in the law that a negative performance evaluation does not constitute a constructive discharge.[8]  Accordingly, the Court correctly held that:

> McKillican cannot state a claim for constructive discharge because he quit his job after the City Manager told him she was going to conduct a job evaluation.  Even assuming the evaluation was going to be negative, as a matter of law the threat of one poor job evaluation is not a constructive discharge.  [*Id.*]

McKillican argues that since he thought he was about to be terminated, he suffered a constructive discharge.  The fatal flaw in McKillican's latest theory is that his own deposition testimony shows that he had no reasonable basis for thinking that he was about to be terminated.  McKillican testified:

---

[7]  *See generally Voigt v. Snowden*, 923 P.2d 780, 781-82 (Alaska 1996) (employee's claim was barred where he failed to follow through with each step in the grievance process).

[8]  *See Pitka v. Interior Regional Housing Authority*, 54 P.3d 785, 789 (Alaska 2002) ("Pitka claims that she was constructively discharged because her work conditions were so intolerable she had to resign.  She claims that she was 'humiliated' by the executive director's criticism that she was a 'complainer,' that the grievance decision was 'incomplete, nonresponsive, and critical,' and that she 'could no longer work under [the executive director].'  However, 'criticism of job performance or other management decisions do not, standing alone, create intolerable workplace conditions' and the record does not indicate that IRHA 'engage[d] in a sustained campaign' against Pitka.").

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR RELIEF FROM JUDGMENT                                                 PAGE 5
*FLEMING, ET AL. V. CARROLL, ET AL.*
CASE NO. 4:04-cv-00034-RRB

Q: So what was the worst that you thought was going to happen if you had allowed her to evaluate you?
A: I was going to be fired.
Q: She never actually in this conversation said, I'm going to fire you, did she?
A: No.
Q: Fannie Carroll never said, I'm going to fire you?
A: No.
Q: Never said any words to that effect?
  MR. WALLERI: Asked and answered.
  THE WITNESS: She never said, sir.
  MR. WALLERI: Go ahead.
BY MR. SINGER:
Q: I just want to, for the record, because we were talking over, so --
A: No.
Q: -- I'm going to ask the question again. [Plaintiffs' Ex. 1, p. 3]
A: She never said.
Q: Never said any words to the effect of, I'm going to terminate you from employment?
A: No.
  MR. WALLERI: Objection. Asked and answered for the fourth time.
BY MR. SINGER:
Q: What she said was I'm going to do a job evaluation, right?
A: I don't believe those were her exact words, but that -- I believe that's what she meant.
Q: That's what you understood her to be saying, I'm going to evaluate your performance?
A: It was the way she said it and the way she provoked it up to that point.
Q: That led you to conclude it was going --
A: Led me to conclude that I was going to get a poor performance evaluation and be terminated.
Q: Had -- in your tenure at the City of Fort Yukon, had you seen any police officer be terminated for a bad job evaluation?
A: No.
Q: So you had no experience on which to base your conclusion that a poor job evaluation would automatically lead to termination?
A: Well, that's -- I just assume that's common knowledge with any kind of employment. [Docket 105, Ex. A, McKillican dep., pp. 73-74]

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

McKillican had no reasonable basis to conclude that he was going to be terminated. The whole of McKillican's testimony shows that the City Manager was going to evaluate McKillican's performance. Taking the facts in the light most favorable to McKillican, he quit his job rather than allow City Manager Fannie Carroll to conduct a performance evaluation. Even speculating, as McKillican does, that his performance evaluation would have been negative, had it occurred, the law is crystal clear that a single <u>negative performance evaluation does not constitute constructive discharge</u>.[9] Accordingly, the Court correctly held that McKillican was not constructively discharged.[10]

**BECAUSE FLEMING CONTRACTED TO BE AN AT-WILL EMPLOYEE, HE HAD NO RIGHT TO JUST CAUSE TERMINATION OR A PRE-TERMINATION HEARING**

Fleming makes the astounding argument that <u>all</u> public employees are entitled to just cause termination and a pre-termination hearing. [Plaintiffs' Memo., p. 7] Fleming is simply wrong and ignores controlling Alaska law – even the cases cited by Fleming disprove his assertion. Because Fleming executed an at-will employment agreement, the Court correctly held that Fleming had no right to just cause termination or a due process hearing. [Docket 173 at 9]

---

[9] *Id.*

[10] McKillican compares his claim to that of Todd Schluhbohm. But with Schluhbohm, the City does not dispute that he would have been fired had he not quit. In sharp contrast, there is no evidence that McKillican's job was ever at risk. The only evidence he produced was that Fannie Carroll proposed to conduct an immediate performance evaluation.

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR RELIEF FROM JUDGMENT      PAGE 7
*FLEMING, ET AL. V. CARROLL, ET AL.*
CASE NO. 4:04-cv-00034-RRB

The Alaska Supreme Court addressed this issue in *Blackburn v. State, Dept. of Transp. and Public Facilities*.[11] In that case, a probationary state employee claimed that various state statutes gave him a right to just cause termination.[12] The Alaska Supreme Court rejected plaintiff's theory, holding that Blackburn was an at-will employee unless a statute, personnel rule or contract provision gave him rights to employment.

> Because we find nothing in the state statutes, the state personnel rules, or the CBA that requires the state to apply any kind of objective standard to probationary employee retention decisions, or otherwise indicates that probationary employees are entitled to just cause protection, we affirm the superior court's determination that <u>Blackburn was an at-will employee whom the state could dismiss without just cause</u>.[13]

The Court rejected Blackburn's contention that he had any due process rights relating to his employment.

> [The trial] court concluded that Blackburn, as an at-will employee, had no property interest in his continued employment that was subject to due process protections. Blackburn argues that he was not an at-will employee and therefore had a property interest in his employment. Because we agree that Blackburn was an at-will employee, we affirm. <u>A state employee who serves at will has no expectation of continued employment and therefore no property right</u>.[14]

Because Fleming was an at-will employee, he had no right to a just cause termination or a due process hearing.

Incredibly Fleming cites cases that squarely reject his proposition that all public employees have "just cause" and due process rights. For example, he relies on *Storrs v.*

---

[11]   *Blackburn v. State, Dept. of Transp. and Public Facilities*, 103 P.3d 900 (Alaska 2004).

[12]   *Id*. at 904.

[13]   *Id*. at 906 (emphasis added).

[14]   *Id*. (citation omitted) (emphasis added).

*Municipality of Anchorage*.[15]  [Plaintiffs' Memo., p. 7 n.15]   In that case, the Alaska Supreme Court noted that:

> Public employees, *other than those serving "at will,"* have a sufficient property interest in continued employment to warrant due process protection prior to termination.[16]

The other cases Fleming cites involve contractual, statutory or tenure guarantees of just cause termination[17] or defendant concessions that due process applied.[18]  None of the cited cases stand for the proposition that an at-will public employee has rights to just cause termination or due process hearings.  Fleming had no right to a just cause termination or to procedural due process because he expressly contracted to be an at-will employee.

---

[15]   *Storrs v. Municipality of Anchorage*, 721 P.2d 1146 (Alaska 1986).

[16]   *Id.* at 1148 (emphasis added).

[17]   *Kenai Peninsula Borough Bd. of Educ. v. Brown*, 691 P.2d 1034, 1037 (Alaska 1984) (applying AS 14.20.180 as the standard for tenured teachers' termination rights); *McMillan v. Anchorage Community Hosp.*, 646 P.2d 857, 863-64 (Alaska 1982) (applying hospital bylaws as standard of doctor's staff privileges rights); *University of Alaska v. Chauvin*, 521 P.2d 1234, 1238 (Alaska 1974) ("a tenured employee of a state university has an interest in continued employment which rises to the level of a property interest protected by the fourteenth amendm[e]nt."); *Nichols v. Eckert*, 504 P.2d 1359, 1360, 1364 n.9 (Alaska 1973) (termination mid-way though year violated property interest of teachers working under contract.).

[18]   *Odum v. University of Alaska*, 845 P.2d 432, 434 (Alaska 1993) ("the University agrees that Odum was entitled to a pre-termination hearing"); *McMillan v. Anchorage Community Hosp.*, 646 P.2d 857, 863-64 (Alaska 1982) ("it is not clear from the record whether the hospital would qualify as a quasi-public hospital.  However, the hospital stipulated to review of its actions to determine whether they comported with due process, and has conceded that its procedures must meet due process requirements.").

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR RELIEF FROM JUDGMENT                                                              PAGE 9
*FLEMING, ET AL. V. CARROLL, ET AL.*
CASE NO. 4:04-cv-00034-RRB

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

**PLAINTIFFS DID NOT ALLEGE A "PUBLIC POLICY" CLAIM, NOR DID THEY PRODUCE ANY EVIDENCE TO SUPPORT SUCH A CLAIM**

The last argument offered by Plaintiffs is also the most bizarre. Plaintiffs contend that each was "fired" in order to "prevent investigations into government corruption by the targets of the investigation." As both a matter of law and fact, this argument is without merit.

*McKillican*

McKillican argues that his "firing" was done to "cover up the fact that Fannie Carroll has used the 911 phone system to tape conversations with Dick Miller." But, as discussed above, McKillican was not fired, he quit. Even assuming McKillican's other allegation is true – that Fannie Carroll was motivated to evaluate McKillican's job performance for purely personal, even evil reasons – his claim still fails as a matter of law. It is black letter law that a negative performance evaluation is not sufficient to establish a constructive discharge.[19] McKillican's claim failed because he could show no facts to justify his decision to quit. In the absence of such facts, Fannie Carroll's motivations for proposing to conduct McKillican's performance evaluation are immaterial.[20]

---

[19] *See Pitka v. Interior Regional Housing Authority*, 54 P.3d 785, 789 (Alaska 2002).

[20] Even if McKillican had been constructively discharged, he still would have had an obligation to exhaust his grievance rights and so his claims are barred for failing to so do. *See State v. Beard*, 960 P.2d 1, 7 (Alaska 1998) (holding that employee had duty to exhaust grievances rights before asserting a constructive discharge claim).

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR RELIEF FROM JUDGMENT       PAGE 10
*FLEMING, ET AL. V. CARROLL, ET AL.*
CASE NO. 4:04-cv-00034-RRB

### *DeLeon*

DeLeon's claim failed as a matter of law because he failed to exhaust his available administrative remedies. [Docket 173 at 5-6] The exhaustion doctrine applies whether or not DeLeon's termination was wrongful. The whole point of the doctrine is to allow the City to remedy mistakes and wrongful actions in a prompt manner, without litigation.[21] If DeLeon believed that the City Manager acted improperly in terminating him, he should have filed a grievance and taken the matter through the multi-step grievance procedure. DeLeon admitted that he did not know how the City Council would ultimately rule and that several members of the Council were sympathetic to his position. [Docket 92, Ex. A, DeLeon dep., pp. 140-147]   Since DeLeon failed to exhaust his remedies, his claim is barred as a matter of law.

### *Fleming*

When he opposed summary judgment, Fleming asserted that his termination was a breach of the covenant of good faith and fair dealing (even though he did not plead that claim in his complaint). Now Fleming tries again to recharacterize his claim under yet another new legal theory; this time it is "wrongful termination in violation of public policy." Once again, Fleming is asserting a new cause of action not alleged in his

---

[21]   *See Voigt v. Snowden*, 923 P.3d 780, 781 (Alaska 1996) ("the exhaustion of administrative remedies doctrine allows an administrative agency to perform functions within its special competence--to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies.").

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

complaint. It is way too late for new theories.[22] Because Fleming had his bite at the apple, he is not permitted a second bite after judgment.

Moreover, this issue was already thoroughly briefed by the parties and correctly decided by the Court. Fleming's opposition to summary judgment raised these very same conspiracy allegations and the Court correctly granted summary judgment. The City offered admissible affidavit testimony explaining that Fleming was terminated because of his insubordinate refusal to return to work in Fort Yukon. Plaintiffs never offered one shred of evidence to suggest that their conspiracy theory had anything whatsoever to do with their terminations. A plaintiff cannot avoid summary judgment by offering unsupported conspiracy theories and self-serving conjecture about the City's motives for termination. Plaintiffs have never produced a shred of evidence to suggest that the City was motivated by an improper purpose.

Several courts have held that a plaintiff's speculation about an employer's motives is inadmissible to defeat a summary judgment motion.[23] For example, in *Minus v. West*,

---

[22]  *See Lussier v. Dugger*, 904 F.2d 661, 667 (11th Cir. 1990) (Rule 60(b) motions "should not be used to raise arguments which could, and should, have been made before the judgment is issued."); *Tucson Elec. Power Co., Inc. v. Westinghouse Elec. Corp.*, 597 F.Supp. 1102 (D. Ariz. 1984) ("The issue of unconscionability will not be decided in this case. It is the conclusion of this court that the issue is not properly raised. At no time prior to the filing of the opposition papers did plaintiff indicate that this theory was to be pursued. It is not part of the complaint nor can it be inferred from the allegations in the complaint.").

[23]  *See Cebula v. General Electric Co.*, 614 F.Supp. 260, 266 (N.D. Ill. 1985) (on summary judgment motion, court held as inadmissible an affidavit containing hearsay statements of co-workers asserting that GE had a plan to replace older workers with younger workers in order to cut costs.); *Farrar v. Dorothea Dix Hospital*, 829 F.Supp. 140, 145 (E.D. N.C. 1993) (plaintiff could not avoid summary judgment on civil rights claims by presenting affidavit of co-worker who testified about the employer's alleged mistreatment of plaintiff – the affidavit did not appear to be based on personal knowledge and lacked enough specificity to create a factual dispute);

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

the plaintiff tried to defeat summary judgment by offering the affidavit of a co-worker, who testified about the employer's alleged motivations, including "Schemitz did not want blacks in his office" and "Minus's race and color were factors in not being promoted …."[24]  The court disregarded these affidavit opinions, holding that Evidence Rule 701 "bars lay opinion testimony that amounts to a naked speculation concerning the motivation for a defendant's adverse employment decision … unless the person testifying is involved in the employment decision at issue."[25]  Similarly, in *Connell v. Bank of Boston*, the First Circuit held that the testimony of an employee who said that the employer was "determined to eliminate … senior employees" was inadmissible because the testimony pointed to no specific facts to buttress such a "broad assertion."[26]  In *Hester v. BIC Corporation*, the Second Circuit rejected the testimony of employees who said that the employer's actions were motivated by race.  The court held that "their speculative lay opinion that this differential is attributable to race rather than anything else, is not helpful in this case because it 'merely tells the jury what result to reach.'"[27]

---

*Farrell v. Potomac Electric Power Co.*, 616 F.Supp. 995 (D.D.C. 1985) (plaintiff could not survive summary judgment where her affidavit did not measure up to the requirements of Civil Rule 56(e) because it contained only allegations and not "specific facts" that would be admissible as evidence).

[24]     2003 WL 21295122, *4. (E.D. N.Y. May 30, 2003).

[25]     *Id.* (*quoting Hester v. BIC Corp.*, 225 F.3d 178, 182-85 (2d Cir. 2000) (vacating trial court's judgment on jury verdict where co-workers were permitted to testify that supervisor's treatment of employee was racially motivated).

[26]     924 F.2d 1169, 1177 (1st Cir. 1991).

[27]     *Hester*, 225 F.3d at 185 (*quoting United States v. Rea*, 958 F.2d 1206, 1215 (2d Cir. 1992)).

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

Fleming offered no evidence whatever to support his wild conspiracy theory that Fannie Carroll terminated his employment in order to prevent a criminal investigation. Under Alaska law, a plaintiff cannot survive summary judgment in a pre-text case if she "failed to offer anything more than 'unsupported assumptions and speculation' to establish her theory of pretext."[28] Unsupported assumptions and speculation about why he was terminated is all Fleming offered in his opposition to summary judgment.

Similarly, Fleming's conspiracy claims fail if this is analogized to a mixed motive discrimination case. "[A] plaintiff in a mixed-motive case must at least offer either direct evidence of prohibited motivation or circumstantial evidence strong enough to be functionally equivalent to direct proof."[29] "To meet this burden, the plaintiff in a mixed-motive case must present evidence of 'conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting on the discriminatory attitude.'"[30] "In a mixed-motive case, then, the claimant must go beyond establishing the existence of a potential retaliatory motive by adducing strong evidence--evidence akin to direct proof--that tends to establish the improper motive's substantial contributing role."[31] Fleming failed to offer any direct evidence to suggest that the City or Fannie Carroll was motivated, even in part, by some improper purpose. Since Fleming failed to offer any

---

[28]   *Mahan v. Arctic Catering, Inc.*, 133 P.3d 655, 662 (Alaska 2006) (*quoting French v. Jadon, Inc.*, 911 P.2d 20, 26 (Alaska 1996)).

[29]   *Id*.

[30]   *Id*. (*quoting Kinzel v. Discovery Drilling*, 93 P.3d 427, 435 (Alaska 2004)).

[31]   *Id*. at 663.

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR RELIEF FROM JUDGMENT   PAGE 14
*FLEMING, ET AL. V. CARROLL, ET AL.*
CASE NO. 4:04-cv-00034-RRB

evidence to support his retaliatory discharge claims, he cannot avoid summary judgment by redressing his conspiracy theory as a "public policy" claim.

**CONCLUSION**

For the foregoing reasons, the City and Fannie Carroll respectfully request that the Court deny Plaintiffs' motion for relief from judgment. The Court decided summary judgment only after review of thorough and extensive briefing. The Court did not overlook any facts and it correctly applied the law, so there is no basis for setting aside the judgment.

DATED at Anchorage, Alaska this 6th day of April, 2007.

JERMAIN DUNNAGAN & OWENS, P.C.

By: *s/ Matthew Singer*
    Matthew Singer
    Alaska Bar No. 9911072

By: *s/ Howard S. Trickey*
    Howard S. Trickey
    Alaska Bar No. 7610138
    3000 A Street, Suite 300
    Anchorage, AK 99503
    Phone: (907) 563-8844
    Fax: (907) 563-7322

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR RELIEF FROM JUDGMENT  PAGE 15
*FLEMING, ET AL. V. CARROLL, ET AL.*
CASE NO. 4:04-cv-00034-RRB

CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2007,
a true and correct copy of the foregoing
document was served electronically
on the following counsel of record:

Michael J. Walleri
330 Wendell St., Suite E
Fairbanks, AK 99701

*s/ Matthew Singer*

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322